SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK  :

    -against-  :  Indictment No. 13525-96

JOHN K. O'HARA,  :  <u>AFFIRMATION</u>

    Defendant.  :
------------------------------------------x

STATE OF NEW YORK, COUNTY OF KINGS

    MAGALY LUCAS, an attorney duly admitted to practice before the courts of the State of New York, affirms under penalty of perjury, as follows:

    1. I submit this affirmation in connection with the case of People v. John O'Hara, the trial of which ended on May 13, 1997. I was scheduled to testify in that trial -- to be called by the defense -- but I refused to do so because I had been threatened by the prosecutor, Mr. O'Mara, that if I testified and John O'Hara "went down", I would "go down with him".

    2. Sometime in 1990 I bought the building at 553 47th Street, Brooklyn, New York. I also lived there until November 30, 1992 -- one month after Mr. O'Hara moved in to an apartment in the same building. After I moved out others moved in on December 1, 1992, rented for a period of time and then, about a year later, purchased the building.

    3. Mr. O'Hara said he wanted to move in to that building because it was in the district in which he wanted to run for

assemblyman. I agreed to permit him to live rent free because he had permitted me to live rent free in his apartment when we were living together in 1990. He agreed, at my request, to make sure my renters paid their rent to the bank.

4. On October 21, 1996 I was contacted for the first time by Allen Presser, an investigator from the Brooklyn District Attorney's office. He left a post-it note on my door asking me to call him and I did so the next day and we spoke. He called me again on October 29 and he questioned me again thereafter. Our conversations concerned my ownership of the building on 553 47th Street in Brooklyn and John O'Hara's residence in that building in 1992 and 1993.

5. In March of 1997, I was served with a subpoena to bring certain records to court, which I did, and ADA O'Mara copied what he wanted. However, Mr. O'Mara told me that I could get in big trouble for what I told Mr. Presser.

6. Some weeks later I was asked to come to court by Mr. O'Hara's attorney, Mr. Meyers. I appeared in court ready to testify at trial. But the trial was adjourned and the Judge told me to come back another day. At that time, Mr. O'Mara told me, that he was not going to call me and that "If you testify and he goes down, you'll go down" and "and we're not giving you any immunity."

7. I started to complain to the Judge about what Mr. O'Mara said, but she cut me off, telling me it was not her jurisdiction. I assumed she had heard most, if not all, of what he

- 2 -

had threatened.

8. Thereafter I told Mr. Meyers I would not testify, in view of the DA's threats. I was frightened, that the District Attorney's Office would get on my case, would try to indict me for something (the way they did with Mr. O'Hara), that they might do something to affect my license to practice law. I do not practice criminal law. No one told me and I did not know that I could get immunity if I appeared and claimed my fifth amendment privilege, despite what Mr. O'Mara said -- and that I could not be forced to testify unless I got immunity. Had I been told that, I would not have refused to appear.

9. If not for the DA's threats, I would have testified at John's trial to the fact that he did reside at the 47th Street house beginning in October 1992.

Dated July 23rd 1997
New York, New York

Magaly Lucas