```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:  CRIMINAL TERM:  PART 33
---------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,


     -v-                                    Indict. No.
                                            13525-1996


JOHN K. O'HARA,

                              Defendant.
---------------------------------------x

                              320 Jay Street
                              Brooklyn, New York

                              January 12, 2017



B E F O R E:

     Hon. MIRIUM CYRULNIK, Justice of the Supreme Court
                         County of Kings


A P P E A R A N C E S:

OFFICE OF ERIC GONZALEZ, ESQ.
DISTRICT ATTORNEY, KINGS COUNTY
   BY:  MARK HALE, ESQ.
        ASSISTANT DISTRICT ATTORNEY


DENNIS KELLY, ESQ.
   Attorney for Defendant
   137 Glen Head Road
   Glen Head, New York




                              JEAN DEBIASE, RPR
                              SENIOR COURT REPORTER
```

```
                              2
 1                    - Proceedings -

 2              THE COURT CLERK:  Calling Number 1 from the Part

 3     33 calendar, Indictment 13525 of 1996, John O'Hara.  Case

 4     is in the motion section on the calendar.

 5              Appearances.

 6              MR. KELLY:  For Mr. O'Hara, Dennis Kelly, 137

 7     Glen Head Road, Glen Head, New York and co-counsel, Mirel

 8     Fisch.

 9              Good afternoon, Your Honor.

10              THE COURT:  Good afternoon.

11              MR. HALE:  For the Office of the District

12     Attorney, Mark Hale.

13              Good afternoon, Your Honor.

14              THE COURT:  Good afternoon.

15              Good afternoon, Mr. O'Hara.

16              JOHN O'HARA:  Good afternoon, Your Honor.

17              THE COURT:  This has been an Article 440 motion

18     that's been pending for a period of time while the

19     District Attorney's Office Conviction Review Unit was

20     conducting a review of the matter.

21              Mr. Hale.

22              MR. HALE:  Your Honor, I believe, we have

23     reached a resolution in this particular matter.

24              I would invite counsel to make a motion in

25     regard to the matter.
                            - JD -
```

```
                         - Proceedings -                         3

 1

 2            THE COURT:  Okay.

 3            MR. KELLY:  Yes, Judge.  Based upon our

 4   stipulation that I'm going to read portions of into the

 5   record, we'd be moving to supplement our 440 motion to

 6   include a claim for newly discovered evidence in that the

 7   People have recently discovered that a material witness

 8   who testified against defendant at trial provided false

 9   and misleading testimony which was of such character that

10   had the witness testified truthfully, the verdict would

11   have been more favorable to the defendant.

12            Judge, based upon that and in anticipation of

13   Your Honor granting that on consent of the District

14   Attorney, we would withdraw our previously entered motion

15   based upon selective prosecution and, obviously, consent

16   to the dismissal, Judge.

17            MR. HALE:  Your Honor, the People do not oppose

18   the amended motion by way of affirmation.  The case

19   against Mr. O'Hara, specifically, the third trial which

20   resulted in the conviction, which is the subject of the

21   review by the Conviction Review Unit which is before the

22   Court, there became an issue within the case as to the

23   habitability of the claimed address by Mr. O'Hara at 553

24   47th Street here in Brooklyn.  Specifically, the People's

25   witnesses who claimed to have been in possession of the

                            - JD -
```

1  - Proceedings -

2 property at the time said that Mr. O'Hara, not only that

3 he did not live there but that the basement area, which

4 was the claimed address, was an unfinished uninhabitable

5 wreck.  The defense case, including testimony by

6 Mr. O'Hara and other witnesses, counter that by saying

7 that no, it was a finished basement that it had all the

8 accoutrement of an apartment and was suitable for that use

9 and was, in fact, used by Mr. O'Hara and other people for

10 that purpose.

11         In the course of the trial a rebuttal witness

12 was called by the prosecution.  That witness had never

13 before testified in any of the previous trials against

14 Mr. O'Hara.  That witness said, in substance, that the

15 basement was, in fact, unfinished -- that this person was

16 the previous owner of the building had said that the

17 basement was unfinished and that the area was not suitable

18 for an apartment, or words to that effect.  This was used

19 to great advantage by the prosecution during the

20 summations saying that this woman, who had no dog in the

21 fight, so-to-speak, you know, testified that the basement

22 was uninhabitable, that it could not have been an

23 apartment, that, therefore, made the People's witnesses

24 truth tellers and the defense's witnesses liars.  It is

25 our belief and our opinion that that was a crucial piece

|   |   |
|---|---|
| 1 | - Proceedings - |
| 2 | of evidence which put the prosecution over the top, |
| 3 | so-to-speak, having come off of a hung jury in which the |
| 4 | jury could not make a decision. |
| 5 | Now, concededly, during the course of the trial |
| 6 | and from the evidence that we've examined, Mr. O'Hara had |
| 7 | established what would be sufficient contacts with the |
| 8 | subject address so that he could, if, in fact, it was a |
| 9 | habitable apartment, could have elected that it be his |
| 10 | voting address and that there was insufficient proof that |
| 11 | he could not have elected it to be his voting address. |
| 12 | So, again, this particular evidence came to be key.  Now, |
| 13 | the Conviction Review Unit, as part of our evaluation of |
| 14 | the case, our investigation of the case, were able to |
| 15 | contact this person who's now widowed and living in the |
| 16 | western United States.  Specifically, we asked her what |
| 17 | the condition of the basement was at the time that the |
| 18 | building was conveyed, which was about two years before |
| 19 | the subject indictment or the allegations on the subject |
| 20 | indictment, and she gave us a much different account than |
| 21 | she had given at trial.  Specifically, she said that her |
| 22 | husband had, in fact, finished the basement, that drywall |
| 23 | had been put up and painted, that a drop ceiling had been |
| 24 | put in, the flooring had been installed, that there was a |
| 25 | kitchenette, that there was a shower, a half bath and a |

- JD -

6

- Proceedings -

shower and that the area, by the analysis of Conviction Review, would have been suitable as an apartment. She had little or no explanation about why her testimony was in such deviation from that particular description; although she was asked specifically at trial, you know, was it an apartment, and she indicated she had never considered it an apartment and said that the finishing out of the basement was something that had been done when they had put a pool in the back yard and that they used it as a general entertainment area. Again, CRU sees this as a very critical point in determining the proof against Mr. O'Hara and whether he could have elected the apartment understanding that the People's burden of proof during those trials had to be that the apartment, even though there was the contacts that would make it electable as a voting address, it was, in fact, a sham. In other words, that it was uninhabitable.

It is axiomatic, as far as the People are concerned, that if a conviction was obtained by evidence which was incomplete, false or misleading, as we have determined this to be, then the conviction, itself, cannot stand. And that's why we are joining in the case. This raises a substantial insurmountable reasonable doubt as to the guilt of Mr. O'Hara on this particular case.

- JD -

7

- Proceedings -

Now, we go further than in joining the motion to vacate and would further indicate that there is no present ability nor any desire to retry Mr. O'Hara on this case. Because of this revelation and many others, we've had the occasion to examine all of the evidence in the case; the evidence which was printed at trial, evidence which was not presented at trial, newly discovered evidence, and on balance, it appears to the People that this case has reasonable doubt in it which we don't believe could or should result in a verdict of guilt beyond a reasonable doubt, and because of that, Your Honor, because of that uncertainty, we would posit that justice would not be served by going forward with the trial against Mr. O'Hara, that it would not be served by continuing this indictment in any fashion and ask that on that basis, in the interest of justice, that the indictment also be dismissed and sealed.

THE COURT: Okay. I want to commend counsels for Mr. O'Hara, Mr. Kelly, prior counsel for their persistence in this matter. I also want to commend the District Attorney's Office, the Conviction Review Unit for undertaking such a thorough review and for being willing to address an issue that needed to be rectified. So I've received and reviewed a stipulation vacating the

- JD -

8

1                      - Proceedings -

2       conviction signed by Mr. Hale for the acting District

3       Attorney, Eric Gonzalez and by Mr. Kelly on behalf of

4       Mr. O'Hara and I have so ordered that stipulation.  The

5       440 motion, based upon selective prosecution, is deemed

6       withdrawn.  The conviction is vacated by stipulation.  The

7       indictment is dismissed and sealed.

8                MR. KELLY:  Thank you very much, Judge.

9                I would also like to thank the District Attorney

10      and Mr. Gonzalez for following through on Ken Thompson's

11      promise to give John O'Hara justice in this case, and he

12      did a non-partisan and a very thorough investigation that

13      lead to this.  I would like to thank Mr. Hale and

14      Mr. Gonzalez and thank the Court, Your Honor.

15               THE COURT:  You're welcome.

16               Mr. O'Hara, I know you were already restored to

17      the Bar of the state.  I'm glad that this has been

18      rectified and you can now move forward without this on

19      your record.

20               JOHN O'HARA:  Thank you.

21               THE COURT:  Thank you.

22               Give us copies of the stipulation and I'll sign

23      it.

24               (Whereupon, the matter is concluded.)

25

                              - JD -

```
 2                    C-E-R-T-I-F-I-C-A-T-E

 3

 4          I, JEAN DeBIASE, a Registered Professional Reporter

 5   and Senior Court Reporter for and within the State of New

 6   York, hereby certify that the foregoing is a true and

 7   accurate representation of my stenographic notes.

 8

 9

10                        _____
                          JEAN DeBIASE, RPR
11                        SENIOR COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                - JD -
```