Clerk's Office
Filed Date:
10/22/2021
U.S. DISTRICT
COURT-EDNY
BROOKLYN
OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHN O'HARA

                  Plaintiff,                               MEMORANDUM AND ORDER
                                                                        17-CV-4766 (ILG) (RML)

        - against -

CITY OF NEW YORK, DISTRICT
ATTORNEY CHARLES J. HYNES,
ASSISTANT DISTRICT ATTORNEY JOHN P.
O'MARA, ASSISTANT DISTRICT
ATTORNEY ANGELO M. MORELLI,
ASSISTANT DISTRICT ATTORNEY DINO
AMOROSO, DISTRICT ATTORNEY
INVESTIGATOR ALLEN PRESSER,
ASSEMBLYMAN JAMES F. BRENNAN,
JOHN W. CARROLL, ESQ., JOHN KEEFE,
AND JEFFREY WAITE, ESQ.,

                  Defendants.
-----------------------------------------------------------x

**GLASSER**, Senior United States District Judge:

        Plaintiff John O'Hara commenced this action against Defendants City of New York (the

"City"), former District Attorney Charles J. Hynes ("DA Hynes"), Assistant District Attorney John

P. O'Mara ("ADA O'Mara"), Assistant District Attorney Angelo M. Morelli ("ADA Morelli"),

Assistant District Attorney Dino Amoroso ("ADA Amoroso"), District Attorney Investigator

Allen Presser ("Investigator Presser") (collectively the "DA Defendants"), Assemblyman James

F. Brennan ("Assemblyman Brennan"), John Keefe ("Keefe"), Jeffrey Waite, Esq. ("Waite")

(collectively the "State Defendants"), and John W. Carroll, Esq. ("Carroll") (together with the DA

Defendants and State Defendants, the "Defendants"), to seek recompense for what he claims was

a politically motivated conspiracy and baseless prosecution designed to neutralize and punish him

for his political activities against the "Brooklyn Democratic Machine."

O'Hara's complaint alleges claims for conspiracy, malicious prosecution, abuse of process, retaliation, supervisory liability, selective prosecution, fabrication of evidence, and *Monell* claims in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York. [ECF No. 1, ("Compl.")]. On May 31, 2019, the Court granted in part and denied in part Defendants' motions to dismiss. [ECF No. 68]. In its ruling, the Court dismissed, *inter alia*, Plaintiff's third and eleventh causes of action – both premised on an alleged fabrication of evidence – as time barred.

One week after the Court's ruling, the Supreme Court decided *McDonough v. Smith*, 139 S. Ct. 2149 (2019), which held that "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." 139 S. Ct. at 2154-55. In light of the Supreme Court's decision, the Court granted Plaintiff's motion to reconsider its prior dismissal and permitted the parties to submit supplemental briefing on two issues: (1) the effect of *McDonough* on Plaintiff's fabricated-evidence claims, if any; and (2) the merits of Plaintiff's fabricated-evidence claims. [ECF No. 99].

The Court has now considered the parties' supplemental briefing. For the following reasons, Defendants' motions to dismiss with respect to Plaintiff's fabrication of evidence claims are **DENIED**.

## BACKGROUND

Although the Court set forth a detailed factual background in its prior Memorandum and Order on Defendants' motions to dismiss, *see* [ECF No. 68], the Court believes that a restatement of it would be helpful.

**The Parties**

O'Hara is an attorney, a registered Democrat, and was a political activist in the 1980s and 1990s. In 1989, he supported DA Hynes in Hynes' campaign for the Office of Kings County District Attorney ("KCDA"). Compl. at ¶ 24. DA Hynes was in office from 1989 until 2013, when he lost reelection to District Attorney Kenneth P. Thompson ("DA Thompson"). As part of his campaign, DA Thompson highlighted certain abuses during DA Hynes' tenure, including using his office to prosecute O'Hara for election fraud – the prosecution that underlies this civil action. *Id.* at ¶ 258. On January 29, 2019, DA Hynes died; his wife, as administrator of his estate, was subsequently substituted in as a party. [ECF Nos. 57, 87].

ADA O'Mara, ADA Morelli, and ADA Amoroso were all employed by the KCDA as Assistant District Attorneys while DA Hynes was in office. Compl. at ¶¶ 9-11. Investigator Presser was also employed by the KCDA during that period. *Id.* at ¶ 12. Assemblyman Brennan was a member of the New York State Assembly; Carroll was his attorney and Keefe was his Chief of Staff. *Id.* at ¶¶ 13-15. Waite was an investigating attorney with the New York State Board of Elections ("BOE"). *Id.* at ¶ 16.

**The 1990 State Assembly Election**

In 1990, O'Hara ran against incumbent Assemblyman Brennan in the Democratic primary. *Id.* at ¶ 25. DA Hynes promised O'Hara that in exchange for O'Hara's support in his bid for reelection, he would support O'Hara in his campaign against Brennan. *Id.* at ¶ 27. However, DA Hynes later made an agreement with Assemblyman Brennan that would require O'Hara to withdraw from the race, leaving Brennan unopposed, while O'Hara could run unopposed for Democratic State Committee District Leader instead. *Id.* at ¶ 29. ADA Amoroso conveyed that agreement to O'Hara, but O'Hara declined to withdraw, affirmed that he would be running for

State Assembly, and expected DA Hynes' support as promised. *Id.* at ¶ 30. O'Hara did run without Hynes' support, and lost. *Id.* at ¶ 31.

**Defendants' Investigation and Prosecution of O'Hara**

O'Hara alleges that after the 1990 election, DA Hynes and Assemblyman Brennan developed a "personal and professional animus" toward him. *Id.* at ¶ 32. O'Hara claims that they, along with the other Defendants, conspired to retaliate against him by conjuring up an election crime and indicting and prosecuting him for that crime. *Id.* at ¶¶ 65-68. According to the Complaint, in 1994, Assemblyman Brennan, Keefe, and Carroll hired a private investigator to report on O'Hara's residency as a basis for eliminating him as a political opponent. *Id.* at ¶ 65. Those efforts were ultimately unsuccessful. *Id.* at ¶ 67.

In 1996, DA Hynes arranged a meeting at the KCDA with ADA Morelli, ADA O'Mara, Assemblyman Brennan, and Keefe to plan to prosecute O'Hara by alleging that he voted from a residence in which he did not live, knowing that the allegation was baseless. *Id.* at ¶¶ 88, 90, 92. Assemblyman Brennan pledged his support for ADA Morelli's Democratic nomination for Supreme Court Justice in 1997 in exchange for ADA Morelli pursuing a criminal prosecution against O'Hara. *Id.* at ¶ 94. ADA Morelli agreed. ADA Amoroso and Carroll concurred with that proposed plan. *Id.* at ¶ 89. O'Hara alleges that it was part of the agreement that the DA Defendants and State Defendants would falsely claim that the BOE was investigating O'Hara for violating the election laws, and that it wanted the assistance of the KCDA. *Id.* at ¶ 95. They allegedly induced Waite to go along with this plan. *Id.* at ¶ 97.

When the KCDA's investigation concerning O'Hara's residence failed to produce incriminating evidence, ADA O'Mara, Investigator Presser, Assemblyman Brennan, Keefe, and Carroll agreed to falsify other evidence. *Id.* at ¶ 110. Towards that end, Assemblyman Brennan,

Keefe, and Carroll advised ADA O'Mara and Investigator Presser to ask Rafael Munoz, Roberto Lozano, and Quetzal Martinez if they would be willing to participate in the plan in return for sufficient favorable incentives relating to a pending criminal investigation. *Id.* at ¶ 111. Munoz, Lozano, and Martinez agreed, and moved into the 47th Street brownstone in December 1992, thus becoming O'Hara's upstairs neighbors while he lived in the basement there. *Id.* at ¶ 112.

Assemblyman Brennan, Keefe, and Carroll subsequently met Munoz, Lozano, Martinez, ADA O'Mara, and Investigator Presser. *Id.* at ¶ 117. ADA O'Mara and Investigator Presser agreed to assist Munoz, Lozano, and Martinez with the criminal charges pending against them in exchange for their false testimony that they moved into the brownstone in October 1992 – when O'Hara claims to have moved into the basement apartment – and that O'Hara never lived there. *Id.* at ¶ 118. ADA O'Mara, Assemblyman Brennan, and Carroll utilized the men, and the false testimony they provided, in the criminal proceedings against O'Hara. *Id.* at ¶¶ 112, 195.

O'Hara was arrested in October 1996 and charged with one count of offering a false instrument for filing in the first degree under Penal Law § 175.35, one count of false registration under Election Law § 17-104(4), and five counts of illegal voting under Election Law § 17-132(3). *Id.* at ¶¶ 128, 131.

**O'Hara's Three Criminal Trials**

O'Hara was tried three times for election fraud. *Id.* at ¶ 157. The main issue at each trial was whether, between November 1992 and November 1993, O'Hara lived in the basement apartment of a brownstone on 47th Street in Brooklyn that was owned by his then-girlfriend, Magaly Lucas. *Id.* at ¶ 160. At the first trial, which occurred in May 1997, the false testimony of Munoz and Lozano was critical to the jury finding O'Hara guilty on all seven felony counts. *Id.* at ¶ 162. O'Hara was sentenced to 5 years of probation, 1,500 hours of community service and a

fine of $14,192; in addition, he was disbarred. *Id.* at ¶¶ 172-73. In August 1998, O'Hara's conviction was reversed because of a trial error. *Id.* at ¶ 176.

O'Hara was tried again from May 25 to June 2, 1999, and that second trial resulted in a mistrial. *Id.* at ¶¶ 191-92. O'Hara was then tried a third time from June 23 to July 1, 1999. *Id.* at ¶ 194. At that third trial, ADA O'Mara realized that he needed additional incriminating evidence to secure a conviction. *Id.* at ¶ 197. Therefore, in addition to relying on the same fabricated-evidence as he had in the first two trials, ADA O'Mara and Investigator Presser obtained new incriminating evidence, namely, false testimony from Josephine Vales. Vales was the prior owner of the 47th Street brownstone. Vales' son, David, had a lengthy criminal record, and had previously been prosecuted by the KCDA. Investigator Presser visited Vales and told her that if she cooperated with ADA O'Mara and testified that there was no basement apartment at the 47th Street brownstone and that no one had ever lived there, the KCDA would assist her son with his legal issues. Thereafter, ADA O'Mara obtained her consent to Presser's offer and instructed her how to testify falsely in court. *Id.* at ¶¶ 197-98.

ADA O'Mara knowingly solicited Vales' false testimony at trial. *Id.* at ¶¶ 197, 199. At the trial, Vales testified that she sold the brownstone to Lucas in 1990 and that in all the years her family lived there, the basement was never livable. *Id.* at ¶ 199. ADA O'Mara relied heavily on Vales' seemingly unbiased testimony in his summation to the jury. *Id.* at ¶ 202.

O'Hara was convicted on all counts; on October 18, 1999, he was sentenced to a conditional discharge, the condition being that he be trouble-free for three years, $14,615 in penalties and restitution, $6,000 in fines, and the completion of 1,500 hours of community service. *Id.* at ¶¶ 202-03. His conviction was affirmed on appeal. *Id.* at ¶¶ 204-05.

O'Hara's Exoneration

On October 6, 2009, O'Hara was reinstated to the New York State Bar. *Id.* at ¶¶ 256-57.

DA Thompson won the election in 2013 and created a Conviction Review Unit to examine many

troubling convictions obtained by DA Hynes, including O'Hara's conviction. *Id.* at ¶¶ 258-60.

On January 12, 2017, the KCDA vacated O'Hara's conviction and moved to dismiss the indictment

against him. *Id.* at ¶¶ 262, 264.  The indictment was dismissed that day. *Id.* at ¶ 265.

## DISCUSSION

### I.    Standard of Review

Having granted O'Hara's motion, the Court now re-considers Defendants' motions to

dismiss *de novo* on the two discreet issues previously specified. *Daniels v. Gladstone*, No. 16-cv-

190 (PKC) (JO), 2019 WL 3502924, at *10 (E.D.N.Y. July 31, 2019) (reviewing underlying

motion *de novo* after granting motion to reconsider); *Joseph v. Chase Manhattan Bank, N.A.*, 751

F. Supp. 31, 33 (E.D.N.Y. 1990) (reconsidering motion *de novo*).  As such, the Court applies the

same standard of review it did in evaluating Defendants' motions to dismiss the first time. *See*

[ECF No. 68], at 8.

### II.   The Effect of *McDonough* on O'Hara's Fabricated-Evidence Claims

The first question the Court directed the parties to address is the effect of the Supreme

Court's decision in *McDonough* on the Court's prior ruling.

#### A.    Defendants' Arguments

The State Defendants admit that "the Supreme Court's decision in *McDonough* may render

timely the Plaintiff's fabricated evidence claims against Brennan and Keefe." [ECF No. 102], at

7.  In contrast, Defendant Carroll ignores the question of timeliness and argues instead that

*McDonough* created a new requirement of favorable termination in order to bring a fabricated-

evidence claim.  According to Carroll, the vacatur of O'Hara's conviction did not constitute a

7

favorable termination because it did not indicate O'Hara's innocence, and thus O'Hara's claims are still barred. [ECF No. 104], at 3-7. The DA Defendants, having already conceded that *McDonough* renders O'Hara's fabricated-evidence claims timely, *see* [ECF No. 94], similarly focus on the purportedly new favorable termination requirement and argue that O'Hara cannot satisfy that requirement. [ECF No. 105], at 7-8, 13.

**B.       Analysis**

The Court previously dismissed O'Hara's fabricated-evidence claims solely on the ground that they were untimely. In its earlier decision, the Court relied on the Second Circuit's now-reversed decision in *McDonough v. Smith*, 898 F.3d 259 (2d Cir. 2018), and held that the elements of O'Hara's claims were satisfied – and thus his claims accrued – when he was convicted and sentenced in 1997. O'Hara commenced this action in 2017, far past the running of the applicable statute of limitations. Therefore, the Court concluded, O'Hara's claims were untimely. *See* [ECF No. 68], at 9-10.

In the Supreme Court's recent ruling in *McDonough*, the Court expressly overruled the Second Circuit and adopted the rule followed by other circuits that "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have terminated in his favor." *McDonough*, 139 S. Ct. at 2154-55. Here, O'Hara's "favorable-termination" did not occur until January 12, 2017, when his conviction was vacated and the indictment against him was dismissed. Compl. at ¶ 265, Ex. M [ECF No. 1-15]. O'Hara commenced this action on August 15, 2017, within the applicable 3-year statute of limitations. *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015).

Turning, then, to Defendant Carroll's and the DA Defendants' argument concerning a new "favorable termination" requirement, recent Second Circuit precedent enables the Court to quickly dispel it. In *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021), the Second Circuit directly addressed

and rejected the arguments that Carroll and the DA Defendants now advance regarding a "favorable termination" requirement for a fabricated-evidence claim.  The court explained that "*McDonough* did not alter the substantive elements of a fabricated-evidence claim as it is understood in this Circuit." *Smalls*, 10 F.4th at 135.  Rather, the Supreme Court held that

> "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run." . . . In reaffirming the *Heck* rule while extending it to ongoing prosecutions, *McDonough* no more required an affirmative indication of innocence than *Heck* did. . . .
>
> Whether the proceeding was terminated in a manner indicative of innocence therefore is not dispositive in the context of a section 1983 fair-trial claim, and we have never required that a plaintiff alleging such a claim establish a favorable termination indicative of innocence.

*Id.* at 135-39 (quoting *McDonough*, 139 S. Ct. at 2158).

The Court thus finds that *McDonough*'s impact on O'Hara's fabricated-evidence claims is that it renders them timely.

## III.    The Merits of O'Hara's Fabricated-Evidence Claims

Having found that O'Hara's fabricated-evidence claims are timely, the Court now turns to evaluating whether they are pled sufficiently to withstand Defendants' motions to dismiss.

Initially, the Court rejects the State Defendants' argument that O'Hara's fabricated-evidence claims should be subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Rule 9(b) is the exception to the general liberal Rule 8 and because it has the effect of closing the courthouse doors to aggrieved plaintiffs, its application should be made with care.  The Court has not found any authority within the Second Circuit to support the application of Rule 9(b) to a Section 1983 claim that relies on allegations of fabricated-evidence; rather, in cases where the dismissal of fabricated-evidence claims is reviewed on appeal, the review has been subject only to

9

Rule 8. *See, e.g., Smalls*, 10 F.4th at 131. The case law to which the State Defendants point in support of their argument is distinguishable and unpersuasive.

The Second Circuit's reasoning in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), is instructive on this question. In *Pelman*, the court considered the application of Rule 9(b) to New York State's consumer protection statute, codified at Section 349 of New York's General Business Law. Although that statute prohibits "deceptive acts or practices," the Second Circuit reasoned that the statute is not subject to Rule 9(b)'s heightened standard because its scope "extends well beyond common-law fraud to cover a broad range of deceptive practices . . . [and] a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud." *Pelman*, 396 F.3d at 511; *see also F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-cv-3551 (ILG) (RLM), 2012 WL 1890242, at *7 (E.D.N.Y. May 23, 2012) (applying *Pelman* to claims brought under Section 5 of the Federal Trade Commission Act, which prohibits any "unfair or deceptive acts or practices in or affecting commerce," and holding that because the statute is broader than, and does not require the same elements of common law fraud, it is not subject to Rule 9(b)).

Here, Section 1983 protects individuals from violations of their civil liberties by government actors, including through conduct that is generally understood as tortious, of which fraud is only one possibility. Because Section 1983's scope is far broader and does not require the satisfaction of the elements of common law fraud, the Court concludes that a claim brought pursuant to the statute should not be subjected to Rule 9(b)'s heightened pleading standard.

Pursuant to Rule 8, then, to state a Section 1983 claim on the basis of fabricated-evidence, a plaintiff must plead that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff

suffers a deprivation of life, liberty, or property as a result." *Smalls*, 10 F.4th at 132 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).   Therefore, "[i]n order to have a cognizable claim . . . a plaintiff must establish a causal connection between the fabricated evidence and a deprivation of liberty." *Lopez v. City of N.Y.*, 105 F. Supp. 3d 242, 247 (E.D.N.Y. 2015).

### A.    State Defendants

With respect to the State Defendants, O'Hara's fabricated-evidence claims only pertain to Assemblyman Brennan and Keefe.  The State Defendants contend that O'Hara has failed to allege the first, second, and fourth elements required for the claim.

First, the State Defendants argue that neither Assemblyman Brennan nor Keefe were "investigating officials."   Rather, they argue, at the time Assemblyman Brennan was a state legislator and Keefe was a member of Brennan's legislative staff.  The specific title of the government official is not the determinative factor in evaluating whether this element is satisfied; rather, the test is whether the government officer was "acting in an investigating capacity." *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000); *see also Davenport v. City of N.Y.*, No. 15-cv-5890 (MKB), 2017 WL 4356883, at *18 (E.D.N.Y. Sept. 28, 2017) ("An investigating official may be any governmental actor that investigates alleged criminal activity"); *Cook v. City of N.Y.*, 243 F. Supp. 3d 332, 353 (E.D.N.Y. 2017) (claim could be brought against employees of child services).

Here, the Complaint alleges that Assemblyman Brennan and Keefe were working together with ADA O'Mara and Investigator Presser during the KCDA's investigation of O'Hara. *See* Compl. at ¶¶ 81-82, 109-12.  It was their intent, according to the Complaint, to deprive O'Hara of his liberty through the fabrication of evidence.  Such allegations are sufficient at this stage to satisfy the first element. *Zahrey*, 221 F.3d at 349.

Second, the State Defendants contend that the Complaint does not allege that Assemblyman Brennan or Keefe fabricated information. "The 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (quoting *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006)). "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Id.* (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)). It does not, however, require that the named defendant be the one who himself specifically created the fabricated information. *See Jackson v. Nassau Cty.*, No. 18-cv-3007 (JS) (AKT), 2021 WL 3207168, at *13 (E.D.N.Y. July 28, 2021) (fabricated-evidence claim sufficiently stated where plaintiff alleged that defendants coordinated accounts of witnesses); *Kellner v. City of N.Y.*, No. 17-cv-1268 (MKB), 2021 WL 4251343, at *12 (E.D.N.Y. Sept. 17, 2021) (malicious prosecution claim sufficiently stated where allegations indicated that defendant personally participated in the investigation into Plaintiff, including by directing which attorneys would be excluded from the investigation and by directing third parties to obtain certain evidence against Plaintiff).

Here, the Complaint alleges that Assemblyman Brennan and Keefe "advised ADA O'Mara and Investigator Presser" to speak with three men who would purportedly agree to provide false information and then convened a meeting at which that agreement was reached. *See* Compl. at ¶¶ 111, 117. Although the Complaint does not allege that either Assemblyman Brennan and Keefe specifically created the purportedly false testimony or made the offer of assistance in exchange for false testimony, it does specifically allege their personal, direct involvement in the process through

which O'Hara's constitutional rights were to be violated. This is sufficient to satisfy the second element of the claim.

Finally, the State Defendants argue that the Complaint fails to allege that either Assemblyman Brennan or Keefe forwarded fabricated information to the prosecutor. Simply causing prosecutors to meet with witnesses who were then allegedly induced by them to give false testimony, the State Defendants contend, is insufficient to satisfy the fourth element of a fabricated-evidence claim. However, it is not necessary for a defendant to personally forward the allegedly fabricated-evidence directly to the prosecutor in order to be liable. *See Cook*, 243 F. Supp. 3d at 353; *Gadsden v. City of N.Y.*, No. 14-cv-6687 (RJD) (RER), 2017 WL 5178439, at *5 (E.D.N.Y. Sept. 15, 2017). Moreover, in this case the Complaint alleges that Assemblyman Brennan and Keefe arranged the meeting they did specifically with ADA O'Mara so that ADA O'Mara would meet the individuals who would provide the false testimony. To find that such conduct does not satisfy the requirement of forwarding fabricated information to prosecutors would be putting style over substance to the detriment of the O'Hara's constitutional rights.

The Court therefore finds that the Complaint adequately alleges a fabricated-evidence claim against Assemblyman Brennan and Keefe.

## B.    City Defendants

The City Defendants make three arguments as to why, they say, the Complaint's fabricated-evidence charges must be dismissed against them: first, that allegations made "upon information and belief" are not permitted for fraud-based claims, of which a fabricated-evidence claim is one; second, with respect to DA Hynes, that the Complaint fails to allege that he had any role in procuring the allegedly false testimony; and third, that the fabricated-evidence was not likely to influence a jury.

Beginning with the City Defendants' contention that O'Hara impermissibly pleads his fabricated-evidence claims "upon information and belief," their contentions are flawed for the following reasons. First, O'Hara's fabricated-evidence claims are not fraud-based claims. Similar to the State Defendants' argument concerning the application of Rule 9(b), the City Defendants fail to cite any authority – and this Court has found none – in which a court dismissed a fabricated-evidence claim because it was pled "upon information and belief." Second, even if it were impermissible to plead a fabricated-evidence claim "upon information and belief," the only allegations in the Complaint that are so pled concern some insignificant reference to asset forfeiture checks, which have no relevance to the disposition of this motion at all. *See* Compl. at ¶¶ 119, 165. None of the other relevant allegations concerning the solicitation, acquisition, or use of the purportedly false testimony are pled "upon information and belief." *See id.* at ¶¶ 110-18, 134, 162-63, 198-99, 202.

Next, turning to the fabricated-evidence claims' applicability to DA Hynes, the City Defendants contend that the Complaint fails to allege that DA Hynes had any role with respect to procuring the allegedly false testimony.[1] Although O'Hara does not allege any direct personal involvement in the meetings where the fabricated evidence was procured or the trials at which the evidence was used, it does, as the Court has already found, adequately allege that DA Hynes was involved in a conspiracy to "neutralize" O'Hara as a political operative. Indeed, the most casual reading of this saga would identify DA Hynes as the creator of the time bomb that exploded when he enlisted ADA O'Mara the other Defendants to activate it. It is a core principle of conspiracy that the activities of each are attributable to all. *Pinkerton v. United States*, 328 U.S. 640, 647

---

[1] In their reply papers, the City Defendants add ADA Amoroso to this argument. Because the argument was raised for the first time in reply with respect to ADA Amoroso, the Court does not consider it. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 195 (E.D.N.Y. 2015) ("courts should not, and do not, consider contentions raised for the first time in a reply brief").

(1946).   Thus, the Complaint's failure to specifically allege DA Hynes' participation in the meetings where the fabricated-evidence was procured does not require the dismissal of the fabricated-evidence claims against him.

Finally, with respect to the fabricated-evidence's likelihood of influencing a jury, the City Defendants argue that because the fabricated-evidence was redundant of O'Hara's testimony and argument at trial and on appeal of his state court convictions, it was not likely to influence a jury. Although it would suffice to question the City Defendants' assurance of what is likely to influence a jury, for them to assert that O'Hara's testimony would have been sufficient, and that the fabricated-evidence was not necessary, would be remarkable if, as is assumed to be true on this motion, but for the fabricated-evidence there would not have been sufficient evidence to prosecute. Additionally, it was City Defendants themselves who were responsible for introducing the purportedly redundant evidence.   But for the falsified evidence that was presented, the testimony and argument that the City Defendants say was redundant would not have otherwise existed.   In essence, the City Defendants are trying to take advantage of a *fait accompli*, faulting O'Hara for conceding the impact of incriminating evidence when they were responsible for fabricating and introducing that evidence in the first place.

The Court therefore finds that the Complaint adequately alleges a fabricated-evidence claim against the City Defendants.

C.    **Defendant Carroll**

Defendant Carroll makes three arguments in support of his motion to dismiss the fabricated-evidence claims against himself: first, that he had nothing to do with the allegedly fabricated-evidence from Vales, which is what O'Hara alleges led to his loss of liberty; second, that alternative probable cause existed for O'Hara's conviction such that the fabricated-evidence was not the proximate cause of O'Hara's loss of liberty; and third, that the Complaint offers only

barebones, conclusory allegations of conspiracy with respect to Carroll's involvement, and thus is insufficient to withstand a motion to dismiss.

With respect to Carroll's first argument, while it is true that the Complaint alleges that it was Vales' testimony that ultimately "sealed O'Hara's fate," Compl. at ¶ 202, the Complaint also alleges that the fabricated testimony from Munoz and Lozano was included in the third trial. *Id.* at ¶ 195. Even if it was Vales' testimony that put the evidence 'over the top,' so to speak, all of the evidence upon which that testimony relied to reach 'over the top' must be included in the calculus that led to O'Hara's deprivation of liberty, and the relative weight which the jury may have assigned to any given piece of evidence as meaningfully or significantly incriminating is not for the Court or counsel to divine. Because the Complaint alleges Carroll's involvement in the acquisition of fabricated-evidence from Munoz and Lozano, *see id.* at ¶¶ 110-12, 117, it adequately alleges his involvement in causing O'Hara's loss of liberty.

An additional reason Carroll's first argument fails, and also why his third argument fails, is that the Complaint adequately alleges Carroll's involvement in the single conspiracy to "neutralize" O'Hara as a political threat. Indeed, the Court has already addressed the Complaint's allegations of conspiracy and found that it sufficiently pleads the involvement of all Defendants to withstand their motions to dismiss. *See* [ECF No. 68], at 15 n.3, 17. Despite Carroll's argument to the contrary, the Complaint includes ample allegations concerning Carroll's direct involvement in the conspiracy. *See* Compl. at ¶¶ 65-66, 68, 74, 89-90, 110-12, 117. As noted above, as a member of the conspiracy, Carroll is, as a matter of law, liable for each act taken in furtherance of the conspiracy, even if he was not directly involved in the specific act. *See Pinkerton*, 328 U.S. at 647. Thus, the fact that he may not have been directly involved in the solicitation or use of the fabricated testimony from Vales is irrelevant to his liability for that act.

16

Turning to Carroll's second argument concerning the presence of alternative probable cause, "probable cause is not a defense to a fair trial claim based on the fabrication of evidence." *Frost v. N.Y.C. Police Dep't*, 80 F.3d 231, 247 (2d Cir. 2020); *see also Hoyos v. City of N.Y.*, 650 F. App'x 801, 803 (2d Cir. 2016); *Garnett*, 838 F.3d at 277-78. Even if it were a defense, though, it was because Carroll and the other Defendants regarded the sham address plan as unlikely to succeed that the fabricated-evidence was contrived and presented at trial. *See* Compl. at ¶ 110. Carroll's argument about the fact that O'Hara was convicted is similarly flawed: that O'Hara was convicted of having illegally voted from a sham address cannot establish the existence of independent probable cause to prosecute when that conviction is alleged to be the product of the use of fabricated-evidence. *See* [ECF No. 104], at 9.

The Court therefore finds that the Complaint adequately alleges a fabricated-evidence claim against Carroll.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss O'Hara's fabrication of evidence claims are **DENIED**.

SO ORDERED.

Dated:      Brooklyn, New York
            October 22, 2021

                                        /s/_____
                                        I. Leo Glasser
                                        Senior United States District Judge