# EXHIBIT F



**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

Kenneth P. Thompson
District Attorney

## SPECIAL INVESTIGATIONS DIVISION

CASE # C1101/16                    Page 1 of 1

| Date | Report # | Case Entry |
|------|----------|------------|
| 5/16/16 | 1 | RECEIVED CASE |
| 5/16/16 | 2 | ATTEMPT TO LOCATE MEGALY LUCAS — |
| 5/16/16 | 3 | ATTEMPT TO SPEAK WITH YUETTE AGUIRRE — |
| 5/17/16 | 4 | RAFAEL ▮▮▮▮ MUNOZ (TELEPHONE) — |
| 5/18/16 | 5 | ROBERT LOZANO (TELEPHONE) — |
| 5/17/16 | 6 | QUETZAL MARTINEZ (DECEASED) — |
| 5/20/16 | 7 | YUETTE AGUIRRE (INTERVIEW) — |
| 5/23/16 | 8 | GRACE PHILLIPS (INTERVIEW TELEPHONE) |
| 5/25/16 | 9 | PHONE MESSAGE LEFT (MEGALY LUCAS) |
| 5/25/16 | 10 | INTERVIEW OF VICKI LYNN GLUCHAN |
| 6/08/16 | 11 | INTERVIEW OF JOSEPHINE VALES (LAS VEGAS) |

Yvette Aguirre

BRENDAN GILL
566 47th St BRKLYN NY

5/24/16
1630

GEORGINA SWEENY - LEFT CARD
AT 566 47th ST HOME OF BRENDAN
GILL - (DAUGHTER N(AU) - Δ IS ON VACATION
IN FLORIDA -

6/24/16 1620 HAS PRESENT AT 566 47th
ST - HOME OF BRENDAN GILL - WRITER ASKED
GILL IF HE KNEW ~~~~~ WHETHER OR NOT
JOHN O'HARA RESIDES ACROSS THE STREET
AT 553 47th ST HE STATED THAT HE
DOESNT KNOW - HE REMEMBER THE VARS
FAMILY ~~~~~

000013

JAMES McCALL
Attachment For O'HARA

VICKI LYNN GUVEIYIAN

(O'HANDS GIRLFRIEND)

GRACE

PHILLIPS

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 7

*AFTER 12 PM ANY DAY*
*5-18-16 - 1530 HRS*

### 4. Juan Perez
500 Ave L, NW Apartment 1010
Winter Haven, Florida 33881
(646) 226-8620

Juan Perez testified at O'Hara's first trial, even though he was a former political opponent. He came to the 47th Street house on Election Day in November 1993. They were campaigning that day for David Dinkins' re-election as Mayor.

Mr. Perez was scheduled to testify at O'Hara's second trial, but my understanding is that ADA O'Mara warned him that he was subject to prosecution for perjury and as a result he didn't show up. O'Hara recently spoke to him and he indicated he was willing to speak with your office.

### 5. Grace Phillips (we have no contact information).

*STATEN ISLAND NY - BINGHAMTON NY*

She was the next door neighbor at 47th Street and testified at the first trial about seeing O'Hara at the house. She said that construction by the new upstairs occupants damaged the house and that she saw dozens of crack vials outside it (after O'Hara had left) (*see* First Trial Tr. 359-71). She testified that, shortly before Magaly Lucas purchased the house and she saw O'Hara apparently living in it, the basement apartment was in "perfect" condition (Third Trial Tr. 246-261). (This was consistent with the affidavit of Denise Murray, Exh. E.)

### 6. James McCall
8701 Shore Road – Apt: 136
Brooklyn, New York 11209
(718) 833-0111

He was O'Hara's election law attorney in 1993 and visited him at the 47th Street residence during that time. My understanding is the defense did not call him out of fear that the prosecution would insinuate fraud allegations in cross-examination which would prejudice the defense even though they

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 8

weren't true. He can explain as well the election law litigation that O'Hara
was immersed in during this period.

### 7. Denise Murray (deceased in 2014)

Her affidavit, see Exh. E, together with the affidavit of Magaly Lucas
and the appraisal report, refutes the false rebuttal testimony of Josephine
Vales that the D.A.'s Office used to convict O'Hara at the third trial. Vales'
testimony that the basement was never habitable as an "apartment" also is
contradicted by the testimony during the first trial of People's witness
Munoz, who acknowledged that the basement was "an apartment" and
included a stove, refrigerator, sink and bathroom (Tr. 226-27), and by his
testimony during the 1994 civil proceeding (Tr. 37) (responding, when asked
"[h]ow many units are in the building," that "[t][here's three floors and the
basement" and that he rented them out).

### 8. Other witnesses.

Any of the other witnesses who testified in O'Hara's favor at the three
trials.

### 9. Documentary Evidence showing residency at 47th Street (page references are to the first trial):

American Express monthly statements from February to September
1993 mailed to 47th Street, introduced at trial as Exh. F and
attached hereto also as Exh. F (see T. 350-352);

Monthly Chase bank statements from February to September 1993
mailed to 47th Street crime scene, introduced at trial as Exh. G and
attached hereto also as Exh. G (see T. 341-345);

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 9

OCA attorney registration with change of residence to 47th Street during normal biennial registration date of March 1993, introduced at trial as Defense Exh. D and attached here as Exh. H (*see* T. 475-77);

Documents from NYC Campaign Finance Board listing 47th Street as O'Hara's residence, introduced at trial as Exh. B and reproduced here as Exh. I (*see* T. 411- 414); and

Testimony of Eugene Moore, District Manager from the local Community Board, that notices of meetings were mailed to O'Hara at the 47th Street residence (1st trial, pp. 434-43).

## Facts to Consider About the Veracity and Integrity of the People's Case

This case, as the records of your Office establish, resulted from a complaint to the State Elections Board, and then to the D.A.'s Office, by John O'Hara's political and personal rival, James Brennan, and his staff member, James Keefe. Brennan and his allies, and O'Hara, had been challenging each other's election petitions and candidacies for years. In 1994, Brennan retained a private investigator to investigate O'Hara's residence, filed a complaint with the Elections Board, initiated the civil proceeding challenging O'Hara's candidacy for the Assembly, and then complained to the D.A.'s Office, which used the information Brennan spoon fed it to build a criminal case against O'Hara.

As a document in your Office's files, entitled "People v. John K. O'Hara, Preparation for Grand Jury Presentation," indicates, *see* Exh. J, the People's theory, given to them by Brennan, was that O'Hara really was living only at 579 61st Street, a rent-stabilized apartment, all along, and his claimed residencies at 553 47th Street, and then 6017 4th Avenue, were false in order to qualify him to run for office in particular election districts (see "Objective: Proof that O'Hara registered and voted from false addresses. … Subsidiary

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 10

proof of 6017 4th Avenue address as possible false residence beginning in
1993.")  Indeed, this had been the claim in the civil proceeding – that both
claimed residences were false.  But the problem with this theory, which the
D.A.'s Office ultimately abandoned, is that investigation showed that O'Hara
really was living, as of January 1994, at the 4th Avenue location.  If he was
really living there, why wouldn't he previously have established an actual
occupancy at 47th Street?

Numerous law-abiding, respectable individuals testified, or gave
affidavits under oath establishing, that O'Hara really did establish an actual
residency, during 1992-93, at the 47th Street location, and as the defense
documentary exhibits showed, he gave that listing to various government
entities and businesses and received mail there.  (See, e.g., Exh. K, D.A.'s
Chronological Data Sheet, noting that DIs' investigation of 553 47th Street
had revealed that "postal carrier states mail for O'Hara presently being
delivered @ this location.").  Why would these legitimate individuals have
perjured themselves at all, let alone at a time when Hynes' Office was so
powerful and would regularly use heavy-handed tactics with witnesses?  If
they knew O'Hara really wasn't living there, wouldn't they have feared
prosecution for lying?   What was the evidence proving O'Hara had
orchestrated a sham residence and recruited all these individuals to lie for
him?  It was the testimony of two fraudsters with criminal records who had a
substantial motivation to lie, Munoz and Lozano, and the surprise, last-
minute testimony of Ms. Vales.

ADA O'Mara continually portrayed Munoz, Lozano, and their co-
resident, Quetzal Martinez, as poor, pathetic dupes who had somehow been
tricked into buying the 47th Street house from O'Hara's former girlfriend
Magaly Lucas, and made it seem as if O'Hara was in on the fraud.  Martinez
had a very substantial criminal record, including current cases, and was not
called to testify, even though he was in court.  Munoz, too, had a serious
felony record for a shooting assault and had just been released from four
years in prison when he moved into the house.  Lozano admittedly was
operating his ice cream truck business without a valid driver's license, which
subjected him to potential arrest and the loss of his principal source of

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 11

income.    All three men admittedly defrauded the State of Virginia by
certifying they were residing there, to illegally obtain drivers' licenses, when
they were in fact residing in New York.  As Ms. Lucas can tell you, they
falsely claimed to be brothers and they admitted at the third trial having
used those false Virginia drivers' licenses as identification to deceive her into
entering into the contract with her.  None of the men's criminal acts from
Virginia to New York were of any interest to the Brooklyn D.A.'s Office under
Mr. Hynes, which had just one mission:  to convict John O'Hara.

### The People Manufacture A Real Estate Scam
### To Deflect Attention From Their Witnesses' Own Deceit

The prosecution at each trial insisted, based upon their two witnesses'
testimony, that the men had never received a deed for the 47th Street house
and somehow they had been defrauded.  At the first trial, ADA O'Mara
referred to the house transaction as a "scam" and accused O'Hara and
Magaly Lopez of taking the men for a "ride" (T. 688).  At the second trial,
O'Mara elicited from Munoz that his signature was not on the deed, as if that
supported his claim he had been scammed. Tr. 129.  This led the defense,
anticipating a similar sleight-of-hand at the third trial, to introduce expert
testimony that only the seller signs such a deed, not the buyer. Tr. 236. Still,
at the third trial, Roberto Lozano again claimed he never received a deed and
believed he was being "gypped" (Tr. 197-98).  Before a jury that included 11
black people, ADA O'Mara then compared O'Hara's alleged complicity in
fraud with Ms. Lucas to those of a murderer and slave trader, invoking the
biblical story of Joseph:

"I remember the story of Joseph. Now Joseph had a
multi layered coat and he was preferred by his father
and that upset his brothers and the brothers, the
older brothers took him out to the field and they were
going to kill him so the inheritance would go to them,
but they got greedy. So, they didn't kill him. They
sold him into slavery and took the money, but as long

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 12

> as he was alive the inheritance didn't go back to
> them. When they went back to the father, they took
> goat's blood and spread it on the coat so they would
> get the inheritance.  Fooled the father for a little
> while until Joseph appeared again because he wasn't
> dead. That's just a superficial effort to try to fool
> people. Ask yourselves if that is not what happened
> here ..." (T. 464).

In fact, it was the three men who scammed Ms. Lucas.  They induced
Ms. Lucas to trust them, claiming they were hard-working "brothers" with
valid Virginia drivers' licenses, except they weren't brothers, they had serious
criminal records, and their Virginia licenses were fraudulent.  They exercised
their option to buy the house without any down payment, just an agreement
to assume the mortgage payments, only to then not make a single payment
while simultaneously earning rental income. *See* Third Trial Tr. at pp. 198-
99 (Lozano admits making no payments on the building while collecting rent
from tenants).  Meanwhile, they ran the house into the ground; neighbors
found large numbers of crack vials outside the house.  The deed they claimed
had been fraudulently withheld from them was publicly filed at the County
Clerk's Office. *See* third trial tr., pp. 231-36, and Exh. A.  It had been easily
available all along.  All they had to do was ask their attorney for it.  The
prosecution knew this.  Yet they used their witnesses to shamelessly
manipulate the jury.

These three men – in and out of criminal trouble, defrauding the State
of Virginia into issuing false drivers' licenses, operating an unlawful ice
cream truck business without a valid driver's license, violating a purchase
agreement that they had induced the previous owner to enter into through
fraud, and facing foreclosure – had every reason to please an influential
Assemblyman, and then the D.A.'s Office, when they were approached to lend
their assistance in making a case against John O'Hara.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 13

Lozano and Munoz gave demonstrably false statements and testimony
about crucial issues bearing upon not only their credibility but about the
charges against Mr. O'Hara. One such false statement, described above, was
their false claim that they didn't make mortgage payments because they
didn't receive a deed. Another was their false statements concerned when
they obtained ownership of the 47th Street house. At the 1994 civil
proceeding brought against O'Hara, Lozano erroneously testified that he
obtained ownership of the building in 1992, but then was shown the New
York City records showing the conveyance to him and his partners in
November, 1993, and corrected himself. Civil Tr. 32-33. Notwithstanding his
awareness that the conveyance occurred in November 1993, he repeated his
false statement to the D.A.s Office, when he was interviewed, that the
conveyance occurred in 1992. See Exh. K, D.A.'s Chronological Data Sheet
"DIs' confirmed Lazano [sic] lives at location and owns building since
1992..."). As the purported owner from 1992 on, his claim that he knew
O'Hara didn't live there during 1992-93 might have seemed credible to
prosecutors single-mindedly trying to make a case against O'Hara, and they
would have had little reason to check with the previous owner, Ms. Lucas.
This may explain why she wasn't interviewed until *after* O'Hara was
indicted.

Also relevant to the two witnesses' credibility was Lozano's false story
at the first two trials that their reason for agreeing to go along with O'Hara's
story that he was living at the 47th Street house was O'Hara's promise, like
some Tammany Hall fixer, to take care of their "sanitation" or "garbage"
tickets. See Lozano's testimony at first trial, pp. 160-61 ("He said he would
take care of it") and second trial, pp. 135-37 ("[H]e said, 'Look, I'll take care of
those tickets, don't worry about it...""). Lozano and the People dropped this
claim at the third trial after O'Hara proved, at the second trial, that no such
ticket for that location was issued until 1994 – after O'Hara moved out – at
which point 11 such tickets were issued (evidently because it was then that
the new owners made the house into an unlivable construction zone). See
Second Trial Tr., at 168-75 (testimony of Bob Delasalla). It is difficult to
understand how anyone could credit their testimony then (or now) in view of

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 14

Lozano's fundamental lie about their purported reason for going along with O'Hara's alleged fraud.[2]

After indicting O'Hara and, no doubt under pressure from District Attorney Hynes to continue this prosecution regardless of the inconvenient facts undercutting the men's credibility, ADA O'Mara succeeded in blunting the impact of the men's fraudulent involvement in the house conveyance, and their false statements. He did so by creating the untrue impression that O'Hara had somehow been involved in defrauding *them*. Through this tactic, the prosecution succeeded in diverting attention from their star witnesses' deceitful, manipulative tactics, obscured the true facts, and unfairly used the situation to disparage O'Hara.

As for Josephine Vales, her surprise, last-minute testimony that the basement area wasn't inhabitable when she sold the house to Ms. Lucas in 1990, shocked the defense, which had no ability to challenge it, as it came

---

[2] Significantly, at the third trial, the People dropped any effort to have the jury infer, based upon utility and postal records, that O'Hara did not establish a residency at 47th Street, relying instead entirely on the credibility of its two initial and one rebuttal witnesses. O'Hara had shown at the first two trials, and also proved as part of his defense in the third trial, that the overwhelming documentary evidence on this point was in his favor. The difficulty of using records to establish that O'Hara did or did not establish a residency at 47th Street was illustrated by the Brooklyn Union Gas records, for example, which showed the absence of any account for Lozano at 47th Street before December 28, 1992, whereas Magaly Lucas's account continued at least through November 30, 1992. (There was no account in Munoz's name until February, 1995.) One could infer from this evidence that O'Hara was living there in November, as he testified, whereas Lozano did not move in until the end of December, contrary to the testimony of Lozano and Munoz that they moved in during October. Thus, it could further be inferred, they weren't in a position to know whether O'Hara was there in November, when he registered to vote from that residence – the basis for several of the counts of conviction. *See, e.g.,* Testimony of Washington Donoso, Brooklyn Union Gas Company, Second trial, pp. 140-41. Significantly, Mr. Donoso acknowledged that he could not tell whether the meter on the first floor might have also covered a gas line into the basement, further undercutting the significance of the documentary evidence with respect to whether the basement apartment was occupied by Mr. O'Hara. Tr. 141-42.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 15

immediately before summations. Her testimony was important to buttress the otherwise questionable testimony of Lozano and Munoz. The defense was given no prior notice of her testimony before she appeared, for the first time, as a rebuttal witness for the People during the third trial. What brought about her testimony is known only to her, ADA O'Mara, and perhaps the D.I.s who found her, but certainly, at least after the end of the trial, it was apparent she had lied.

The defense 330 motion showed that the cellar or basement area she claimed had never been used as an apartment and was essentially uninhabitable in fact was a rentable apartment, according to the bank appraisal conducted in 1990 at the time she sold the house, as well as the detailed affidavits of Magaly Lucas and Denise Murray. Indeed, it also was contradicted by Lozano's own admission in the civil proceeding in 1994: when asked "[h]ow many units are in the building," he answered: "There's three floors and *the basement*." Tr. 37 (emphasis added). The D.A.'s Office prevailed upon the court to deny the defense 330 motion on the theory that the testimony of these witnesses could have been presented at trial, even though the defense had not known that Ms. Vales, after not having testified at either of the first two trials, suddenly would emerge as a last-minute rebuttal witness and would lie. The CRU is not so constrained and can take another look at her testimony and investigate what may have led her to give it. There were rumors in the neighborhood after the trial that she may have been motivated by the vulnerability of her son, David Vales, who had a criminal record and had filed for bankruptcy. O'Hara's attorney's affirmation in support of his 330 motion noted rumors in the community that David Vales had a truck hijacking charge. While we haven't been able to substantiate this rumor, you would have superior access to law enforcement records, including any proceeding that may have been dismissed and sealed. You also may be able to determine if Ms. Vales had any other reason to lie. Even if her motivation cannot be uncovered (perhaps she simply responded to pressure by the D.A.'s Office), the weight of the evidence shows that her testimony was untruthful.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 16

### Other Things To Investigate

Exh. K, the Chronological Data Sheet, upon information and belief, was never disclosed to the defense. It contains *Rosario* material – Lozano's false statement that he owned the house since 1992, which he apparently made to the D.A.'s Office even though it was brought to his attention at the 1994 civil proceeding and he acknowledged that the conveyance occurred in November 1993 – and *Brady* material – the statement by the postal carrier that he had delivered mail to O'Hara at the location. The only postal carrier who testified at trial was in another district and had no knowledge of mail deliveries on 47th Street.[3]

---

[3] This does not appear to be the only *Rosario/Brady* violation committed by the D.A.'s office in this prosecution. During the first trial, ADA O'Mara tried to smear O'Hara by asking a defense witness if she was "aware" that O'Hara's petitions to get on the ballot as a candidate for the Assembly had been invalidated for "fraud." O'Hara had not put his character in evidence, nor was there any evidence that he was personally responsible for any defective, let alone fraudulent, petitions. When O'Hara's counsel objected that this was a distortion of what had occurred, ADA O'Mara represented that he had the "actual transcript of the proceedings. What occurred is this: There was a challenge to the petitions, including those by the way of the person who was up on the stand. There is substantial testimony taken. The Judge began to issue a ruling concerning Mr. O'Hara's residency and also concerning the petitions, and, in fact, had verbally said he was disqualifying them…" First Trial Tr. 404-05. However, ADA O'Mara did not disclose the transcript to the defense until 1999, shortly before the second trial, when the defense demanded it. It contained the testimony of People's witnesses Lozano (pp. 30-38) and Parras (pp. 18-30), and plainly constituted (at least) *Rosario* material. (ADA O'Mara had obtained it through a subpoena notwithstanding that it was sealed; it had not been available to the defense.)

The civil transcript also shows that Mr. O'Mara's representations to the court were inaccurate. Most of the testimony at the hearing concerned whether there were insufficient valid petition signatures to sustain O'Hara's candidacy -- whether campaign workers had obtained some signatures that they did not personally witness or which were otherwise technically defective -- but little or no evidence of fraud, and none of the failings were shown to have been known to or caused by O'Hara. At no time did the judge indicate he was going to make a finding that O'Hara's residency was fraudulent, or that the petitions were fraudulent. In the end, O'Hara agreed to withdraw his petitions and to end his candidacy, "without admitting any of the

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 17

Handwritten notes from the case file indicate that the Office considered offering O'Hara an ACD, evidently because it "would foreclose [a] lawsuit for malicious prosecution." Exh. L. It would be interesting to learn who wrote this and why.

Finally, we wonder about whether there was any undisclosed financial, law enforcement, or other consideration given Lozano and Munoz, each of whom testified at no less than three trials even though, they claimed, they had no interest in this matter. Interestingly, their friend and co-purchaser of the 47th Street house, Quetzal Martinez, had an extensive criminal record, including a drug use history, and it is possible his friends were motivated to testify by their knowledge, expectation, or hope that not only would they obtain law enforcement consideration for themselves, but that Martinez would as well.



Please let me know if I can assist your re-investigation in any other

---

allegations ... based on an insufficient number of [valid] signatures in the petition," nothing more. Tr. 322-24.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 18

way.  I look forward to hearing from you.

Sincerely yours,

Joel B. Rudin

JBR/tp
Encls.

# EXHIBIT A



Print Report   |   Contact Us   |   Help

Case 1:17-cv-04766-LDH-RML Document 145-7 Filed 02/26/24 Page 110 of 719 PageID #: 4012

Page 2 of 5

NORMA PHILLIPS

553 47ST
Brooklyn - Decor (Property)

553
47th
57

OWNER
553 47th St Brooklyn M -

MEGACH LUCAS



LEFT SEVERAL
MESSAGES - NO RESPONSE
OR CALL BACK —

5/25/16  0945 Present

HOME OF MEGAN Y LUCAS
WITH DET ZUFFI
NO ANSWER - LEFT CARD
AND LEFT MESSAGE ON
PHONE

MS LUCAS CALLED BACK LEFT
MESSAGE - DOES NOT WANT TO
COOPERATE - WITH THIS INVESTIGATION
ADA HALL NOTIFIED

https://secure.accurint.com/app/bps/main                                    5/16/2016

RAPS

Rafael Muroz

RAFAEL MUNOZ    5/17/16  1110 Hrs
1135-

OHARA

WASTE OF TIME - TRYING TO GET OVER - He DIDN'T
LIVE AT 553 47th ST - WHEN He LIVED THERE.
IT'S WASTING TAX PAYERS MONEY- ROBERT LOZANO LIVED
ON THE 1ST FLOOR - THERE IS A BASEMENT IN THE BUILDING -
IT WAS A POLITICAL CASE - O'HARA IS LYING - DOESN'T WANT
TO GET INVOLVED AGAIN -

RAPS

ROBERTO LOZANO

ON 5/18/16 AT [REDACTED] DETAILS CONTACTED,
ROBERT LOZANO - MALE - [REDACTED] - OF [REDACTED]
[REDACTED] REGARDING 553 47ᵗʰ ST. ( [REDACTED] )

LOZANO STATED THAT O'HARA DID NOT LIVE AT 553 47ᵗʰ
ST WHEN HE RESIDED THERE. ALSO STATED THAT THERE
WAS A BSMT AND AT ONE TIME WHILE HE WAS THERE A TENANT
LIVED THERE. FOR A SHORT TIME. HE FURTHER STATED THAT
HE SAW O'HARA IN FRONT OF THE LOCATION A COUPLE OF
TIMES DRINKING COFFEE AND TAKING PICTURES OF THE
HOUSE. AT THIS TIME LOZANO WILL NOT SPEAK ABOUT THIS
CASE ANYMORE. DOES NOT WANT TO COOPERATE.

QUENTZAL MARTINEZ  m/#/35  ✓

SS# [redacted]  DOA

ROBERT LOZANO  [redacted]

[redacted]

PDMLITED  ✓

+ son [redacted]  PHYSICIAN

MAGALY C LUCUS  [redacted]

DOB [redacted]  SS# [redacted]

RAFAEL    MUÑOZ    █████████    ✓

██████████████



Cell #

0745 HAS SPOKE WITH ROBERTO LOZANO

LIVES IN █ NOW—

HE STATED THAT O'HARA DID NOT LIVE AT 553 4TH ST BKLYN
WHEN HE LIVED THERE - THERE IS A BSMT APT AT THE LOCATION - SAW
O'HARA A COUPLE OF TIMES THEN IN F/O BUILDING DRINKING COFFEE AND
TAKING PICTURES - LOZANO DOES NOT WANT TO SPEAK ANY FURTHER —

555
47 th St Bklyn -













553
47th St. Bkun





000271









O'HARA

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK    :

         -against-    :    Indictment No. 13525-96

JOHN K. O'HARA,    :    AFFIRMATION

            Defendant.    :

------------------------------------------x

STATE OF NEW YORK, COUNTY OF KINGS

      MAGALY LUCAS, an attorney duly admitted to practice before the courts of the State of New York, affirms under penalty of perjury, as follows:

      1. I submit this affirmation in connection with the case of People v. John O'Hara, the trial of which ended on May 13, 1997. I was scheduled to testify in that trial -- to be called by the defense -- but I refused to do so because I had been threatened by the prosecutor, Mr. O'Mara, that if I testified and John O'Hara "went down", I would "go down with him".

      2. Sometime in 1990 I bought the building at 553 47th Street, Brooklyn, New York. I also lived there until November 30, 1992 -- one month after Mr. O'Hara moved in to an apartment in the same building. After I moved out others moved in on December 1, 1992, rented for a period of time and then, about a year later, purchased the building.

      3. Mr. O'Hara said he wanted to move in to that building because it was in the district in which he wanted to run for

assemblyman.  I agreed to permit him to live rent free because he had permitted me to live rent free in his apartment when we were living together in 1990.  He agreed, at my request, to make sure my renters paid their rent to the bank.

4.   On October 21, 1996 I was contacted for the first time by Allen Presser, an investigator from the Brooklyn District Attorney's office.  He left a post-it note on my door asking me to call him and I did so the next day and we spoke.  He called me again on October 29 and he questioned me again thereafter.  Our conversations concerned my ownership of the building on 553 47th Street in Brooklyn and John O'Hara's residence in that building in 1992 and 1993.

5.   In March of 1997, I was served with a subpoena to bring certain records to court, which I did, and ADA O'Mara copied what he wanted.  However, Mr. O'Mara told me that I could get in big trouble for what I told Mr. Presser.

6.   Some weeks later I was asked to come to court by Mr. O'Hara's attorney, Mr. Meyers.  I appeared in court ready to testify at trial.  But the trial was adjourned and the Judge told me to come back another day.  At that time, Mr. O'Mara told me, that he was not going to call me and that "If you testify and he goes down, you'll go down" and "and we're not giving you any immunity."

7.   I started to complain to the Judge about what Mr. O'Mara said, but she cut me off, telling me it was not her jurisdiction.  I assumed she had heard most, if not all, of what he

- 2 -

had threatened.

8.    Thereafter I told Mr. Meyers I would not testify, in view of the DA's threats.    I was frightened, that the District Attorney's Office would get on my case, would try to indict me for something (the way they did with Mr. O'Hara), that they might do something to affect my license to practice law.    I do not practice criminal law.    No one told me and I did not know that I could get immunity if I appeared and claimed my fifth amendment privilege, despite what Mr. O'Mara said -- and that I could not be forced to testify unless I got immunity.    Had I been told that, I would not have refused to appear.

9.    If not for the DA's threats, I would have testified at John's trial to the fact that he did reside at the 47th Street house beginning in October 1992.

Dated July _23rd_ 1997
New York, New York

Magaly Lucas

- 3 -

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY :    PART 17
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

        -against-

                                      Indictment No. 13525/96

                                         AFFIRMATION

JOHN KENNEDY O'HARA,

                    Defendant.
------------------------------------------------------------X
STATE OF NEW YORK) ss: KINGS COUNTY)

        MAGALY LUCAS, an attorney duly admitted to practice before the courts of the State of New York, affirms under penalty of perjury, as follows:

1. That, in late June of 1999 during the course of a conversation with Mr. Carlos Ferreiro, a client and friend, Mr. Ferreiro, informed me that Mr. Hernandez was trying to urgently get in touch with me. At the time that Mr. Hernandez was looking for me I was employed by the New York City Board of Education and worked as a teacher at P.S. 128, which is located on Audubon Avenue and 169th street in Manhattan.;

2. I recall the specifically date of my conversation with Mr. Ferreiro because it was just after 5th grade graduation.  Mr. Ferreiro informed me that Mr. Hernandez had called about two weeks prior on several occasions.

3. After the graduation, which took place June 25, 1999, I went on vacation with my family to Cape May, New Jersey.  My family had planned this vacation to coincide with the end of the school year and my sister's arrival from Zimbabwe.

4. I returned from my vacation after the Fourth of July weekend, and began to work on a special project at the district 6 main office.   About a week latter I contacted Mr. Hernandez, who informed me that he wanted me to testify at Mr. O'Hara's trial. However the trial had already taken place.  At that time he informed me of the outcome of the trial and specifically discussed the testimony of Mrs. Josephine Vales. He stated that Mrs. Vales had disavowed the existence of a finished basement at 553 47th street, Brooklyn, New York.  I told Mr. Hernandez that statement was untrue and that I recall an appraiser's report which referred to the apartment in the basement of that building;

EXHIBIT A

5. Finding the document was difficult because I had recently moved from 319 West 47th Street, New York to 40-74th Street, Apt. 2B, North Bergen, New Jersey. My correspondence was forwarded to my office located at 403 West 38th Street, New York, New York. My voice mail was also forwarded to that address. I have worked primarily as a teacher, since the spring of 1997. During the spring and early summer of 1999 I seldom return to the 38th Street office/apartment;

6. Sometime in late August I found the appraiser's report on the 553 47th Street property. The report had been prepared by the GreenPoint Savings Bank in 1990. I gave the report to Mr. Hernandez. The report indicates that there was a finished basement at 553 47th street, Brooklyn, New York at the time that I purchased the property from Mr. and Mrs. Vales in 1990.

7. In 1991 I decided to sell the building and moved to a subleased apartment on West 45th Street in Manhattan, N.Y. At that point in time I permitted John O'Hara to live in the basement apartment in return for his commitment to supervise the work and payment of the mortgage by Messrs. Lozano, Munoz and Martinez pending the closing of the property. These three individuals signed a lease with an option to buy the property within a year.

Dated: September 22, 1999
New York, New York

Magaly Lucas



The Green Point
Savings Bank
Chartered 1868        Member FDIC

MORTGAGE APPRAISAL
Telephone (718) 670-7957

41-60 MAIN STREET ⊙ FLUSHING, N.Y. 11355-3920

MAGALY LUCAS
45 DANNER AVENUE
HARRISON, NY  10528


                                    Re :  PRUCHASE
                          Premises:  553 47 STREET
                                     BROOKLYN, NY  11220


        We have received your request for a copy of an appraisal report
of the above stated premises.
        Enclosed please find your copy.


                              Sincerely,

                              Mortgage Appraisal Department


    Enc.


                          EXHIBIT C

                            000283

crofiche No: _____
PLACEMENT VALUE : 

RUST #:
000009000285

VALUATION

Application No. _____

d  20x90  ¹ ⁊²  Range of Sales:
Lot Size @ Value of :

$  80,000

ROVEMENTS :
36000  Squient
Cubic ft.  @ $  51 0    Per Sq. Foot  183600
       %  Depreciation    Per Cube
                          36750
l Depreciated Value _____  146880    $  146880    Garage

                                       Total $  846880

APPRAISAL                    ASSESSED VALUE        FIRE INSURANCE REQUIRED [60%]

i  $  80,000                  $  2400             Struct: A $ _____
rmts $ 155,000               $ _____            B $ _____
$  235,000                   $  12,000            C $ _____
1.9.90                                            Total $  150,000
                             Year _____  Taxes $  1140

I hereby certify that I have examined the above property to my best judgement the value is as stated above and
amount is loan   the amount of $ _____

                                       12 ⁴⁵-1  _____ Appraiser

BAY RIDGE    5 14

Commitment Issued _____
Mortgage number _184042-0-14_  5-4-90
Map Section _3_  Block _157_  Lot _54_
SMSA _____  Quadrant _ID BIS_  DATE _1.9.90_
FEB 13 1990

EMSED A L _____ S53  47  ST  BROOKLYN  11220

COUNTY: KINGS  LOT SIZE: 20 X 90.75 REG  AREA _1827_  sq. ft. ZONING Residential / Commer.

STRUCTURE[s]: No. of Stories _2+BASE_ Type _BROWNSTONE + BRICK  2 FAMILY_
[ ] Detached  [ ] Semi-Detached  [✓] Attached  Year Built ABT 1910

DIMENSIONS:
Main _20 X 45_  Ext. _7x6 VEST  (B)_  Ext. _____
Ext. _____  Ext. _4x2 2+BASEBAY (F)_  Ext. _____
Ext. _____  Ext. _____  Courts _____

| (Layout) | RENT |  |
|---|---|---|
| 1 Level | | Total No. Apts. _2_  Total Rooms _15_ |
| 1 Level | | Total Baths _4_  Total Bedrooms _6_ |
| 3 Level | | Total Kitchens _3_  Other _BOIL_ |
| 2nd Level | 5R · B   450 NL | Garage: Att+Det _NONE_ |
| 3rd Level | 4R · B   OWNER | Driveway: Common+Pvt _NONE_ |
| Basement | 3R · B | Monthly Rent: $ OWNER+950  Ann. Rent $ O+ 5400 |
| Cellar | 3R·B BOIL 5'R" | |

NEIGHBORHOOD: GOOD  RESIDENTIAL / COMMERCIAL AREA.  SIMILAR AND VARIOUS TYPE DWELLINGS ON BLOCK.
S OF 39 ST
E OF 4TH AV
AVERAGE INCOME GROUP.

NEIGHBORHOOD FACILITIES: Schools _2 BL_  Churches _2 BL_  Stores _ON BL_  Other _____
Transportation _BUS_  Utilities [+]water [+]electric [+]gas [+]sewers [ ] cesspools [ ]

| GENERAL CONDITION | E | G | F | P | EXTERIOR | | GENERAL CONDITION | E | G | F | P | INTERIOR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAVEMENT | | ✓ | | | [+]mac [ ] asph [ ] | | FLOORS | | ✓ | | | [+]w [ ]pk [ ]ply [ ] |
| SIDEWALKS & CURBS | | ✓ | | | [ ]conc [ ]slate [ ] | | WALLS | | ✓ | | | [+]drywall [+]pl [ ] |
| DRIVEWAY | | ✓ | | | [ ]conc [ ]mac [ ] | | CEILINGS | | ✓ | | | [+]drywall [+]pl [ ] |
| ROOF | | ✓ | | | [ ]asph [+]rubb [ ] | | KITCHENS-FLOORS | | ✓ | | | [+]vi [ ]lino [ ]cer [ ]cpt [ ] |
| CHIMNEYS | | ✓ | | | [ ]bk [ ]galv [ ] | | CABINETS | | ✓ | | | [+]wd [ ]form [ ]met [ ] |
| LEADERS & GUTTERS | | ✓ | | | [ ]alum [ ]copp [+]galv [ ] | | SINKS | | ✓ | | | [+]s/d [ ]d/d [+]st/s [ ]porc [ ] |
| FIRE ESCAPES | | ✓ | | | [ ] YES [+]NO | | APPLIANCES | | ✓ | | | [+]refrig [ ]dw [ ]wash/mch [ ] |
| PAINT | 4 | | | | WORK REQUIRED: [ ] YES [ ] NO | | RANGES | | ✓ | | | [+]gas [ ]elec [+]st [ ]wo [ ] |
| CORNICE | | ✓ | | | [ ]asph [ ]slate [+]wd [+]MET | | BATHS-FLOORS | | ✓ | | | [+]cer [ ]vt [ ]lino [ ]cpt [ ] |
| FOUNDATION | | ✓ | | | [ ]conc [ ]CB [ ]stone [ ] | | WALLS | | ✓ | | | [+]cer [ ]drywall [ ]pl [ ] |
| FRONT WALL | | ✓ | | | [ ]bk [ ]alum [ ]stucco [ ]wd/sh [ ] | | TUBS | | ✓ | | | [+]calbl [ ]bl [ ]legs [ ] |
| | | | | | [ ]asbsh [ ]asph/sh [+] P | | SHOWERS | | ✓ | | | [ ]ti [ ]stall [ ] |
| SIDE & REAR WALLS | | ✓ | | | [+]bk [ ]alum [ ]stucco [ ]wd/sh | | BASINS | | ✓ | | | [+]vanity [ ]hang [ ]ped [ ] |
| | | | | | [ ]asbsh [ ]asph/sh [ ] | | FUEL/FUEL CAPACITY | | | | | [+]gas [+]oil [ ]elec [ ]  GALS |
| FRAME AND SASH | | ✓ | | | [+]t/t [ ]slde [ ]case [+]wo | | HEATING SYSTEM | | ✓ | | | [+]steam [ ]hw [ ]hot air [ ] |
| | | | | | [ ]alum [ ]wd [ ]vinyl [+] | | HOT WATER SUPPLY | | ✓ | | | [ ]gas [+]oil [ ]elec [+]tnkls [ ]auto |
| PORCH | | ✓ | | | [ ]EP [ ]OP [ ]Scrn [ ] | | AIR CONDITIONING | | ✓ | | | YES [ ] NO [+]t [ ]cntrl [ ]wall [ ]window |
| GARAGE | | | | | | | PLUMBING | | ✓ | | | [ ]brass [+]ci [+]galv [ ] |
| MISCELLANEOUS | | ✓ | | | | | MISCELLANEOUS | | ✓ | | | 100 AMP IB |

46 ST
| 5 | | 6 |
|---|---|---|
| AV | 90.9 / 90 | AV N |
47 ST

OWNS PROP 18 YRS
BUYER TO OCCUP PER OWNER
C71 ACTION TEAM SOLD  NOT N/A
60'S KITCH + 2.60'S BATH  IN DUPLEX
90'S KITCH + 20'S BATH  4TH FL
POTENTIAL RENTABLE IN RURAL - NO
PRIVATE ENTRANCE - SMALL ROOMS
TELERENT SEMI-ROW! NDWY

BAKED BLOCK EXTERIOR  PAINT  GOOD

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY :    PART 17
---------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

       against-

                                                 Indictment No. 13525/96

                                                   AFFIDAVIT

JOHN O'HARA,

                   Defendant.
---------------------------------------------------------------------X

STATE OF NEW YORK) ss: KINGS COUNTY)

DENISE MURRAY, being duly sworn, deposes and says:

1.  I am familiar with the matters hereinafter set forth. This affidavit is submitted in support of the above-named defendant's motion for an order pursuant to Criminal Procedure Law § 330.30, to set aside the verdict;

2.  I lived at 563 47th street, Brooklyn, New York, a two- family residential brownstone, for approximately 29 years. I moved from that locale in 1991. I currently reside at 89 Bard Avenue, Staten Island, New York, 10301, apartment 2R. I am 38 year old and on disability retirement from the U.S. Postal Service;

3.  The area of 47th street where I lived was and still is very a family oriented neighborhood. During my 29 years living at 563 47th street I became well acquainted with most of my neighbors. This included the Vales, who lived a few houses down at 553 47th street. In the late summer of 1989 I was invited to live with the Vales in their home at 553 47th street. I lived with them for approximately 4 months. I lived on the second floor of their brownstone. It was my practice to often have meals in the basement apartment with, David and Rebecca, Mrs. Vales' son and daughter-in-law. We were childhood friends and contemporaries. All our meals were made, served and eaten in the basement. The basement had one large studio room, a small parlor, a functional kitchen and separate bathroom;

4.  I am also aware that the Vales had renovated and finished the basement apartment of the 553 47th street location in the early/ mid-1980's to accommodate their older son Mark, whose wife Debbie had given birth to a son, Mark, Jr. They lived in the basement prior to David, his wife Rebecca and their two young daughters, Christie and Michele. .

5. During my stay at the Vales I often helped Rebecca tend to her young daughters. Christie was two at the time, and Michele, was a newborn. This also took place in the basement apartment of David and Rebecca located at 553 47th street location;

6. I became aware of Mrs. Josephine Vales' testimony in a passing conversation with an old neighborhood friend, Grace Phillips. She asked me whether or not I had not once lived with the Vales. This conversation occurred in late August. At that time I informed her that I would be willing to speak the Mr. O'Hara's attorney. I called his office in the first week of September. I do not personally know Mr. O'Hara.

_____

DENISE MURRAY

Denise Murray
(Print Name)

On September _18_ , 1999, before me personally came Denise Murray, to me known to be the person described in and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that she executed the same.

Notary Public
Commission Expires: April 22, 2000
NYS Drivers License 762-486-345

Charles D. Parisi Jr.
Notary Public, State of New York
Registration #02PA5059032
Qualified in Richmond County
My Commission Expires
April 22, 2000

000288

# EXHIBIT F

# Statement of Account

0021/0026

ARAG0201
1365

09 7   1

TERMS - PAYMENT DUE IN FULL. PLEASE PAY BY 10/04/93.

| | Account Number | Pay By | Total Amount Due |
|---|---|---|---|
| | 3711-012515-22006 | 10-04-93 | $424.55 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526 000042455000042455B

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 09-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone. Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $535.26 | $535.26 | $424.55 | $424.55 |

| Amex Ref. No | Item No | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835249-0 | | PAYMENT RECEIVED - THANK YOU | 09/06 | | 535.26 |
| 007250-2 | 001 | ACHILLEUS OE, ATHENS GREECE | | | |
| | | 26,900 GREEK DRACHMA  BILLED AS | | 117.45 | |
| 501250-2 | 002 | DITMARS FLOWER SHOP ASTORIA    NY | | | |
| | | 025012833 FLOWERS/PLANTS NY144530 09/07/93 | | | |
| 501253-2 | 003 | MEDICI SHOES       NEW YORK      NY | | 173.20 | |
| | | 360428876 MEN/WOMENS APPAREL/ACC 09/09/93 | | | |
| 501257-2 | 004 | TUTTA PASTA BROOKLYN NY | | 86.60 | |
| | | 000392474 FOOD AND BEVERAGE     09/14/93 | | | |
| 501260-2 | 005 | HARRY HASSON & SON FATLANTIC CITY NJ | | 17.80 | |
| | | 26000505  FLOWERS           09/16/93 | | 29.50 | |
| | | ACCOUNT TOTAL | | $424.55 | $535.26 |

*Dept Fin Evid
Santo, Acc
5/27/99*

To serve you better, we are making changes to the Cardmember newsletter.
Watch for a new look coming soon!

N2
001 02.
(12L   OL)

000290



# Statement of Account

0019/0026

ABAQ020
3498

08 7    2

YOUR ACCOUNT IS 30 DAYS PAST DUE.  PAYMENT MUST BE RECEIVED
BY 09/06/93 TO AVOID A DELINQUENCY CHARGE.

| Account Number | Closing Date | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 08-18-93 | $535.26 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526 0005352600000228399

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 08-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $306.87 | $.00 | $228.39 | $535.26 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | Charges | Credits |
|---|---|---|---|---|
| 090229-2 | 001 | LAPIS, ATHENS GREECE | | |
| | | 53,500 GREEK DRACHMA  BILLED AS | 228.39 | |
| | | ACCOUNT TOTAL | $228.39 | $.00 |

We are pleased to announce that Car Rental Loss and Damage Insurance (CRLDI) continues
to be available for rentals from all agencies that accept the Card, both domestically
and internationally (except rentals in Italy and New Zealand).  This supersedes the program
materials restricting coverage to only fifteen rental companies.

%2   001 OZ.
(12 3L  )

000291

# Statement of Account

0017/0026

ARAQ0203
606

07 7    1

TERMS - PAYMENT DUE IN FULL. PLEASE PAY BY 08/03/93.

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 08-03-93 | $306.87 |

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526 0003068700003068?5

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| **JOHN KENNEDY OHARA** | 3711-012515-22006 | 07-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $2,677.17 | $2,677.17 | $306.87 | $306.87 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835175-0 | | PAYMENT RECEIVED - THANK YOU | 06/24 | | |
| 832183-2 | | PAYMENT RECEIVED- AMEX OFFICE | 07/02 | | 1,200.00 |
| | | | | | 1,477.17 |
| 552195-2 | 001 | BRITTANIA BEACH HTL NASSAU BAHAMAS | | | |
| | | REFER TO CHARGE FROM NASSAU BAHAMAS | | | |
| 052196-2 | 002 | DOLLAR RENT A CAR BROOKLYN NY | | 38.89 | |
| | | INV#376320 | | | |
| 501170-2 | 003 | VICTORIA SECRET CAT COLUMBUS | OH | 136.46 | |
| | | 684961071 CATLG MDSE 800-888-1500 06/18/93 | | 131.52 | |
| | | **ACCOUNT TOTAL** | | **$306.87** | **$2,677.17** |

Travel smart this summer and get your Travelers Cheques the easy way: call 1-800-ORDER-TC
24 hours a day and get your Travelers Cheques in any of seven currencies delivered right to your
door.  First Class Mail delivery is FREE and you pay only the customary 1% transaction fee.
Order with the Optima Card or use a personal check (please have your checkbook handy).
To order your Travelers Cheques, call 1-800-ORDER-TC.

W2
001 OZ.
(12L    )

0015/0026

BRAC0301
2793

06  7      2

YOUR ACCOUNT IS 30 DAYS PAST DUE. PAYMENT MUST BE RECEIVED
BY 07/06/93 TO AVOID A DELINQUENCY CHARGE.

| Account Number | Closing Date | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 06-17-93 | $2,677.17 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY ·11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY  10116-2855

1101251526 0026771700010048436

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 06-17-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone. Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $1,672.34 | $.00 | $1,004.83 | $2,677.17 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | | Charges | Credits |
|---|---|---|---|---|---|---|
| 501147-2 | 001 | APPLE VACATIONS 000459233 TOURS/TICKETS | NEWTOWN SQUARE | PA 05/26/93 | 644.00 | |
| 501156-2 | 002 | COMFORT INN 015630781 LODGING | EDGEWATER | NJ 06/03/93 | 44.52 | |
| 501160-2 | 003 | BALLY'S PARK PLACE 001330970 LODGING | ATLANTIC CITY | NJ 06/07/93 | 225.76 | |
| 501162-2 | 004 | BRIDGE CAFE 016210827 FOOD/BEV | NEW YORK | NY 06/10/93 | 90.55 | |
| | | **ACCOUNT TOTAL** | | | **$1,004.83** | **$.00** |

W2    001 OZ
(12L3L   )

000293



# Statement of Account

ARAQ0203
4050

0013/0026

05 7 1

TERMS - PAYMENT DUE IN FULL, PLEASE PAY BY 06/03/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 06-03-93 | $1,672.34 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY   11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY   10116-2855

1101251526 0016723400016723349

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 05-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $1,009.87 | $1,009.87 | $1,672.34 | $1,672.34 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 832132-2 | | PAYMENT RECEIVED- AMEX OFFICE | 05/12 | | |
| 873118-2 | 001 | HOLIDAY INN CROWN PLAZA SAN JUAN PR INV#415539 | | | 1,009.87 |
| 872124-2 | 002 | DISCOUNT RENT A CAR SANTURCE PR INV#596461 | | 162.60 | |
| 663111-2 | 003 | TRANS WORLD AIRLINES BROOKLYN TKT# 0151508548601 | NY | 149.75 | |
| 501116-2 | 004 | WINDOWS ON THE WORLDNEW YORK D1160721 FOOD-BEV | 04/05 NY | 358.00 | |
| 501119-2 | 005 | HOTEL CARIB INN ISLA VERDE PR 0428       LODGING | 04/25/93 | 45.18 | |
| 501124-2 | 006 | RAM'S HEAD INN #3 ABSECON NJ 000597575 FOOD AND BEVERAGE | 04/29/93 | 703.55 | |
| 501124-2 | 007 | RAM'S HEAD INN #3 ABSECON NJ 000292560 FOOD AND BEVERAGE | 05/01/93 | 193.39 | |
| | | | 05/01/93 | 59.87 | |
| | | ACCOUNT TOTAL | | $1,672.34 | $1,009.87 |

#2   001 02.
(12L 4 )



# Statement of Account

BBA003005

0011/0026                                                          04 7   12  0  1                    2163

TERMS - PAYMENT DUE IN FULL.  PLEASE PAY BY 05/03/93.

| | Account Number | Pay By | Total Amount Due |
|---|---|---|---|
| | 3711-012515-22006 | 05-03-93 | $1,009.87 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN          NY
11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY   10116-2855

1101251526 00100987000100987 2

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 04-17-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $1,136.55 | $1,136.55 | $1,009.87 | $1,009.87 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835091-O | | PAYMENT RECEIVED - THANK YOU | 04/01 | | 1,136.55 |
| 501095-2 | 001 | ST MAGGIE'S CAFE NEW YORK NY 000108899 FOOD AND BEVERAGE | 04/02/93 | 92.75 | |
| 501095-2 | 002 | LA SERRE RESTAURANT ALBANY NY 000611195 FOOD AND BEVERAGE | 04/05/93 | 300.85 | |
| 501096-2 | 003 | OMNI ALBANY NEW YORK ALBANY NY 29550    LODGING | 04/06/93 | 163.79 | |
| 603098-2 | 004 | TRANS WORLD AIRLINES MARLTON NJ TKT# 0159200124444 | 03/05 | 452.48 | |
| | | ACCOUNT TOTAL | | $1,009.87 | $1,136.55 |

The Purchase Protection(sm) Plan and Lemon Assurance have been extended
through July 31, 1993.  Watch for the June statement insert for changes effective August 1, 1993.
The Purchase Protection Plan is underwritten by Insurance Company of North America.
a CIGNA company.  Coverage is subject to the terms, conditions and exclusions of the policy.

W2



# Statement of Account

0009/0026

B9A00300:

03  7    12  0  1                3522

TERMS - PAYMENT DUE IN FULL.  PLEASE PAY BY 04/03/93.

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN          NY
11220-1310

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 04-03-93 | $1,136.55 |

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY  10116-2855

1101251526 0011365500012692215

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 03-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $256.14 | $388.80 | $1,269.21 | $1,136.55 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | | Charges | Credits |
|---|---|---|---|---|---|---|
| 501048-2 | | BALLY'S PARK PLACE   ATLANTIC CITY   N | | 02/15 | | |
| 501048-2 | 001 | 001358860 LODGING | | | | |
| | | BALLY'S PARK PLACE   ATLANTIC CITY   NJ | | 02/15/93 | | 388.80 |
| 501048-2 | 002 | 001358940 LODGING | | | | |
| | | BALLY'S PARK PLACE   ATLANTIC CITY   NJ | | 02/15/93 | 388.80 | |
| 501049-2 | 003 | 001358900 LODGING | | | | |
| | | SHORT RIBS RSTR BROOKLYN NY | | 02/17/93 | 388.80 | |
| 501055-2 | 004 | 000500533 FOOD AND BEVERAGE | | NY | | |
| | | WINDOWS ON THE WORLDNEW YORK | | 02/18/93 | 25.00 | |
| 501056-2 | 005 | D0550258 FOOD-BEV | | NY | | |
| | | MACY'S HERALD SQUARENEW YORK | | 02/24/93 | 34.69 | |
| | | 011616038 JEWELRY | | | 431.92 | |
| | | **ACCOUNT TOTAL** | | | **$1,269.21** | **$388.80** |

Look in this month's Newsletter for valuable information on the
Benefits and Services available exclusively to Cardmembers.

K2

000296



# Statement of Account

0007/0026    ABA002093    02  7    12  0  1    3486    W2

TERMS · PAYMENT DUE IN FULL.  PLEASE PAY BY 03/04/93.

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN          NY
11220-1310

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 03-04-93 | $256.14 |

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526  0002561400002561144

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 02-16-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $88.68 | $88.68 | $256.14 | $256.14 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835026-0 | | PAYMENT RECEIVED - THANK YOU | 01/26 | | 88.68 |
| 822017-2 | | ANNUAL MEMBERSHIP FEE JOHN KENNEDY OHARA | | | |
| | | PERIOD 03/93  THRU 02/94 | | 55.00 | |
| 063021-2 | 001 | BRONX ACURA BRONX NY      INV#112541 | | 50.00 | |
| 501021-2 | 002 | TROPWORLD          ATLANTIC CITY   NJ | | | |
| | | 000000668 LODGING | | 33.55 | |
| 501029-2 | 003 | CAFE IGUANA      NEW YORK      01/20/93 | | | |
| | | DO294780 FOOD-BEV               NY | | 29.25 | |
| 501029-2 | 004 | CAFE IGUANA      NEW YORK      01/26/93 | | | |
| | | DO294783 FOOD-BEV               NY | | 16.00 | |
| 501029-2 | 005 | ST MAGGIE'S CAFE NEW YORK NY   01/27/93 | | | |
| | | 000302038 FOOD AND BEVERAGE | | 48.40 | |
| 501033-2 | 006 | WINDOWS ON THE WORLDNEW YORK    01/29/93 | | | |
| | | DO330377 FOOD-BEV               NY | | 23.94 | |
| | | | 01/28/93 | | |
| | | ACCOUNT TOTAL | | $256.14 | $88.68 |

Read the enclosed "For Members Only" newsletter for information
on the financial planning benefits of the American Express® Card.



# EXHIBIT G



May 25,1999

NYS Supreme Court
CIVIC CENTER Part 10
360 Adams Street
Subpoena Records Dept.-rm 436
Brooklyn NY 11201

RE:    People V. John O'Hara

Dear Sir/Madam:

Enclosed please find photocopies of documents you had requested responsive to the above referenced  summons  served upon Chase  Bank. .

The enclosed documents are true and accurate records kept by Chase in its

normal course of business.

I trust that this will  comply with any evidentiary rules of the court.  This information is provided in compliance with the subpoena, but in lieu of appearance.

Very truly yours,

Ona Weiner
212 552-2707

Enc.
FILE:  29050

*Dept G in Evd*
*Sonti, Acc*
*5/27/99*

**Chemical Bank**

S30323001575309        OORTCVC1 01 00000000001575309    0000501810311    A
MR. JOHN K O'HARA                          661
553 47TH STREET                            018
BROOKLYN NY 11220-4636

| PAGE 1 OF 2 | | | | |
|---|---|---|---|---|
| Statement Period | | Enclosures | Account Number | |
| FEB 25 - MAR 23, 1993 | | 5 | 001-575309 | |
| Previous Balance | 954.19 | 2 Credits | 2,896.89 | Balances |
| Closing Balance | 2,847.24 | 11 Debits | 1,003.84 | Date    Amount |

BASIC CHECKING

DEPOSITS AND CREDITS

| | | | | | |
|---|---|---|---|---|---|
| FEB 26 | 1,448.45 | MONTCLARE&GUA | AS OF 02-26 | | |
| | | SALARY DEP  ECS PMS 08263 | | | |
| MAR 15 | 1,448.44 | MONTCLARE&GUA | AS OF 03-15 | | |
| | | SALARY DEP  ECS PMS 08263 | | | |

CHECKS AND DEBITS

| | | | |
|---|---|---|---|
| FEB 26 | 120.00 | ATM-4600  WITHDWL CARD# 00046658377 | |
| | | WORLD TRADE  23272 | AS OF  2-25 |
| | | NEW YORK CITY,NY NYCE | SEQ-100534 |
| MAR 08 | 100.00 | ATM-2301  WITHDWL CARD# 00046658377 | |
| | | BALLY PARK PLACE 3 | AS OF  3-06 |
| | | ATLANTIC CITY,NJ NYCE | SEQ-112590 |
| MAR 17 | 80.00 | ATM-6611  WITHDWL CARD# 00046658377 | |
| | | 52 BROADWAY | AS OF  3-16 |
| | | N.Y.C.        ,NY CBNY | SEQ-004246 |
| MAR 18 | 100.00 | ATM-8883  WITHDWL CARD# 00046658377 | |
| | | 401 FLATBUSH AVE. | AS OF  3-18 |
| | | B'KLYN        ,NY CBNY | SEQ-008643 |
| MAR 19 | 100.00 | ATM-7461  WITHDWL CARD# 00046658377 | |
| | | 260 COLUMBUS AVE. | AS OF  3-18 |
| | | N.Y.C.        ,NY CBNY | SEQ-003986 |
| MAR 23 | 5.50 | MONTHLY SERVICE CHARGE | |
| | | $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH | |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAR 02 | 320 | 54.00 | MAR 15 * | 363 | 66.26 |
| MAR 04 | 321 | 57.48 | MAR 19 | 364 | 20.60 |
| MAR 10 * | 324 | 300.00 | | | |

* INDICATES SKIP IN CHECK SEQUENCE

SERVICE CHARGES

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS  $  5.50.

Balances

| Date | Amount |
|---|---|
| FEB 26 | 2,282.64 |
| MAR | |
| 2 | 2,228.64 |
| 4 | 2,171.16 |
| 8 | 2,071.16 |
| 10 | 1,721.16 |
| 15 | 3,153.34 |
| 17 | 3,073.34 |
| 18 | 2,973.34 |
| 19 | 2,852.74 |
| 23 | 2,847.24 |

** T 3**

**Chemical Bank**

S30323001575309        OORTCVC1 01 00000000001575309    0000501810311    A
MR. JOHN K O'HARA                          661

Chemical Bank

930323061575309      DORTCVC1 01 00000000001575309   0000501810311   A
                     MR. JOHN K O'HARA                           661
                     553 47TH  STREET                            D18
                     BROOKLYN  NY  11220-4636

PAGE  2 OF  2

| Statement Period | Enclosures | Account Number |
|---|---|---|
| FEB  25 - MAR  23, 1993 | 5 | 001-575309 |

| Previous Balance | Credits | Balances |
|---|---|---|
| Closing Balance | Debits | Date | Amount |

$ 4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR SAM CASH MACHINES.

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS

oo U 3oo

000301

ChemicalBank

930423001575309      OORTCVCI 01 00000000001575309    0000901810311   A
               MR. JOHN K O'HARA                       661
               553 47TH STREET                         018
               BROOKLYN  NY  11220-4636


PAGE   1 OF   2

| Statement Period | | Enclosures | Account Number | | |
|---|---|---|---|---|---|
| MAR 24 - APR 23,1993 | | 9 | 001-575309 | | |
| Previous Balance | 2,847.24 | 2 Credits | 2,896.91 | Balances | |
| Closing Balance | 2,653.53 | 15 Debits | 3,090.62 | Date | Amount |

BASIC CHECKING

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | MAR | | |
| | DEPOSITS AND CREDITS | | | | 26 | | 2,415.28 |
| | | | | | 29 | | 2,195.28 |
| MAR 31 | 1,448.45 MONTCLARE&GUA | | AS OF 03-31 | | 31 | | 3,553.73 |
| | SALARY DEP  ECS PM# 08263 | | | | APR | | |
| APR 15 | 1,448.46 MONTCLARE&GUA | | AS OF 04-15 | | 2 | | 2,207.18 |
| | SALARY DEP  ECS PM# 08263 | | | | 6 | | 2,193.18 |
| | | | | | 7 | | 1,809.37 |
| | CHECKS AND DEBITS | | | | 12 | | 1,759.37 |
| | | | | | 14 | | 1,548.44 |
| MAR 29 | 50.00 ATM-6617  WITHDWL CARD# 00046658377 | | | | 15 | | 2,921.90 |
| | 52 BROADWAY | AS OF  3-29 | | | 19 | | 2,561.28 |
| | N.Y.C.      ,NY CBNY   SEQ-D09180 | | | | 23 | | 2,653.53 |
| MAR 29 | 170.00 ATM-7462  WITHDWL CARD# 00046658377 | | | | | | |
| | 260 COLUMBUS AVE.     AS OF  3-27 | | | | | | |
| | N.Y.C.      ,NY CBNY   SEQ-003128 | | | | | | |
| MAR 31 | 90.00 ATM-6613  WITHDWL CARD# 00046658377 | | | | | | |
| | 52 BROADWAY           AS OF  3-31 | | | | | | |
| | N.Y.C.      ,NY CBNY   SEQ-005840 | | | | | | |
| APR 02 | 210.00 ATM-7461  WITHDWL CARD# 00046658377 | | | | | | |
| | 260 COLUMBUS AVE.     AS OF  4-02 | | | | | | |
| | N.Y.C.      ,NY CBNY   SEQ-005122 | | | | | | |
| APR 06 | 14.00 CHECKBOOK CHARGE | | | | | | |
| | AS OF 02-93 | | | | | | |
| APR 23 | 7.75 MONTHLY SERVICE CHARGE | | | | | | |
| | $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH | | | | | | |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAR 26 | 325 | 383.81 | APR 07 * | 370 | 383.81 |
| MAR 26 * | 365 | 48.15 | APR 14 | 371 | 47.43 |
| APR 02 | 366 | 1,136.55 | APR 14 * | 373 | 163.50 |
| APR 15 | 367 | 75.00 | APR 19 | 374 | 260.62 |
| APR 12 | 368 | 50.00 | | | |

* INDICATES SKIP IN CHECK SEQUENCE


SERVICE CHARGES




** 023 **

---

ChemicalBank

OORTCVCI 01 00000000001575309    0000901810311   A

ChemicalBank

930423001575309     OORTCVC1 01 00000000001575309    0000901810311   A
                    MR. JOHN K O'HARA                              661
                    553 47TH STREET                               018
                    BROOKLYN NY 11220-4636

PAGE  2 OF  2

| Statement Period | Enclosures | Account Number | Balances | |
|---|---|---|---|---|
| MAR 24 - APR 23,1993 | 9 | 001-575309 | | |
| Previous Balance | | Credits | Balances | |
| Closing Balance | | Debits | Date | Amount |

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS $   7.75.
$ 4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR 2AM CASH MACHINES.

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

oo P23oo

ChemicalBank

ChemicalBank

930525001575309        OORTCVC1 01 0000000000001575309        0000701810311    A

```
        MR. JOHN K O'HARA                    661
        553 47TH STREET                      018
        BROOKLYN  NY  11220-1310
```

PAGE  1 OF  2

| Statement Period | | Enclosures | Account Number | | |
|---|---|---|---|---|---|
| APR 24 - MAY 25,1993 | | 7 | 001-375309 | | |
| Previous Balance | 2,653.53 | 1 Credits | 1,000.00 | Balances | |
| Closing Balance | 1,527.53 | 13 Debits | 2,126.00 | Date | Amount |

BASIC CHECKING

DEPOSITS AND CREDITS

MAY 13        1,000.00 DEPOSIT

CHECKS AND DEBITS

| | | | | Balances | |
|---|---|---|---|---|---|
| APR 27 | 150.00 | ATM-4900  WITHDWL CARD# 00046658377 | | APR | |
| | | BPPR EXP. SAN JUAN        A# OF  4-27 | | 27 | 2,503.53 |
| | | PR&AN JUAN       ,PR NYCE    8EQ-002325 | | 28 | 2,403.53 |
| APR 28 | 100.00 | ATM-4900  WITHDWL CARD# 00046658377 | | MAY | |
| | | CARIBE HILTON SAN        A# OF  4-27 | | 4 | 2,352.09 |
| | | SAN JUAN       ,P NYCE     SEQ-005320 | | 5 | 2,312.09 |
| MAY 10 | 100.00 | ATM-2598  WITHDWL CARD# 00046658377 | | 10 | 2,212.09 |
| | | 5323 5TH AVENUE          AS OF  5-08 | | 11 | 2,152.09 |
| | | BROOKLYN       ,NY NYCE    SEQ-017743 | | 12 | 881.65 |
| MAY 11 | 60.00 | ATM-0031  WITHDWL CARD# 00046658377 | | 13 | 1,681.65 |
| | | BLKHR8E/ENG CK 397        A# OF  5-10 | | 14 | 1,597.10 |
| | | PLEASANTVILLE,NJ NYCE     SEQ-026518 | | 17 | 1,534.53 |
| MAY 14 | 20.00 | ATM-2301  WITHDWL CARD# 00046658377 | | 25 | 1,527.53 |
| | | BALLY PARK PLACE 3        AS OF  5-14 | | | |
| | | ATLANTIC CITY,NJ NYCE     SEQ-101185 | | | |
| MAY 25 | 7.00 | MONTHLY SERVICE CHARGE | | | |
| | | $4.00 MAINT + 75¢ CHK/WITHDWL/PURCH | | | |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAY 05 | 376 | 40.00 | MAY 12 | 504 | 1,009.87 |
| MAY 04 | 377 | 51.44 | MAY 14 | 505 | 19.55 |
| MAY 12 * | 502 | 460.57 | MAY 14 | 506 | 45.00 |
| MAY 17 | 503 | 62.57 | | | |

* INDICATES SKIP IN CHECK SEQUENCE

SERVICE CHARGES

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS  $  7.00,
$  4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR 8AM CASH MACHINES.

•• J2400

ChemicalBank

930525001575309        OORTCVC1 01 0000000000001575309        0000701810311    A
        MR. JOHN K O'HARA                    661
        553 47TH STREET                      018

oo J240o

Chemical Bank
930525001575309       OQRTCVC1 01 00000000001575309    0000701810311    A
        MR. JOHN K O'HARA                                661
        553 47TH  STREET                                 018
        BROOKLYN  NY  11220-1310

PAGE   2 OF   2

| Statement Period | Enclosures | Account Number | | |
|---|---|---|---|---|
| APR  24 - MAY  25,1993 | 7 | 001-575309 | | |
| Previous Balance | Credits | | Balances | |
| Closing Balance | Debits | | Date | Amount |

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS, DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

oo K240o

ChemicalBank

930623001575309        OORTCVC1 01 00000000001575309    0000601810311    A
        MR. JOHN K O'HARA                                661
        553 47TH STREET                                  0.18
        BROOKLYN  NY  11220-1310

PAGE   1 OF   1

| Statement Period | | Enclosures | Account Number | |
|---|---|---|---|---|
| MAY 26 - JUNE 23, 1993 | | 6 | 001-575309 | |
| Previous Balance | 1,527.53 | 1 Credits | 1,200.00 | Balances |
| Closing Balance | 1,504.67 | 7 Debits | 1,222.86 | Date | Amount |

### BASIC CHECKING

### DEPOSITS AND CREDITS

JUN 23      1,200.00 CASH DEPOSIT

### CHECKS AND DEBITS

JUN 23      4.00 MONTHLY SERVICE CHARGE
            $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAY 27 | 507 | 37.22 | JUN 18 | 512 | 25.00 |
| JUN 03 | 508 | 403.00 | JUN 23 | 513 | 500.00 |
| JUN 09 * | 511 | 170.00 | JUN 16 * | 526 | 83.64 |

        * INDICATES SKIP IN CHECK SEQUENCE

|  | Balances |
|---|---|
| MAY 27 | 1,490.31 |
| JUNE 3 | 1,087.31 |
| 9 | 917.31 |
| 16 | 833.67 |
| 18 | 808.67 |
| 23 | 1,504.67 |

### SERVICE CHARGES

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS  $  4.00.
$  4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR SAM CASH MACHINES.

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

** K13 **

ChemicalBank
930623001575406        OORTMBP 01 00000000001575406    0000001840211    A
                                                        661

ChemicalBank

930726001575309       OORTCVC1 01 00000000001575309    0000701810311    A
                      MR. JOHN K O'HARA                    661
                      553 47TH STREET                      018
                      BROOKLYN NY 11220-1310

| PAGE   1 OF   1 | | | | |
|---|---|---|---|---|
| Statement Period | | Enclosures | Account Number | |
| JUNE 24 - JULY 26, 1993 | | 7 | 001-575309 | |
| Previous Balance | 1,504.67 | 1 Credits | 400.00 | Balances |
| Closing Balance | 231.21 | 9 Debits | 1,673.46 | Date    Amount |

BASIC CHECKING

| | | | JUNE | |
|---|---|---|---|---|
| | DEPOSITS AND CREDITS | | 25 | 275.02 |
| | | | JULY | |
| JUL 20 | 400.00 CASH DEPOSIT | | 14 | 254.08 |
| | | | 16 | 234.08 |
| | | | 19 | 120.30 |
| | CHECKS AND DEBITS | | 20 | 520.30 |
| | | | 22 | 461.91 |
| JUL 16 | 20.00 ATM-6611  WITHDWL CARD# 00046658377 | | 26 | 231.21 |
| | 52 BROADWAY        AS OF  7-15 | | | |
| | N.Y.C.      ,NY CBNY   SEO-009258 | | | |
| JUL 26 | 4.00 MONTHLY SERVICE CHARGE | | | |
| | MAINTENANCE CHARGE       4.00 | | | |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| JUN 25 | 514 | 29.65 | JUL 22 | 518 | 33.39 |
| JUN 25 | 515 | 1,200.00 | JUL 14 * | 527 | 20.94 |
| JUL 22 | 516 | 25.00 | JUL 19 | 528 | 113.78 |
| JUL 26 | 517 | 226.70 | | | |

* INDICATES SKIP IN CHECK SEQUENCE

SERVICE CHARGES

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

** M16**

ChemicalBank

930726001575406       OORTMBP 01 0000000001575406    0000001840211    A
                                                        661

**ChemicalBank**

930824001575309        OORTCVC1 01 00000000001575309      0000101810311    A
                MR. JOHN K O'HARA                              661
                553 47TH STREET                               018
                BROOKLYN NY 11220-1310

PAGE    1 OF    1

| Statement Period | | Enclosures | Account Number | | |
|---|---|---|---|---|---|
| JULY 27 - AUG 24,1993 | | 1 | 001-575309 | | |
| Previous Balance | 231.21 | OCredits | .00 | Balances | |
| Closing Balance | 202.21 | 2Debits | 29.00 | Date | Amount |

BASIC CHECKING

CHECKS AND DEBITS

| | | | | | AUG | |
|---|---|---|---|---|---|---|
| AUG 24 | 4.00 MONTHLY SERVICE CHARGE | | | | 3 | 206.21 |
| | MAINTENANCE CHARGE | | | 4.00 | 24 | 202.21 |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| AUG 03 | 520 | 25.00 | | | |

SERVICE CHARGES

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

** D 6**

---

**ChemicalBank**

930824001575406        OORTMBP  01 00000000001575406      0000001840211    A
                MR. ALAN W ALPERN &/OR                         661

**CHEMICAL**

21575205000 19930924

001-00140-8017-00140-
MR JOHN K CHAPA
553 47TH STREET
BROOKLYN NY 11220-1310

-000-1-01-03-00-

# STATEMENT COPY

CHEMICAL
STATEMENT

STATEMENT PERIOD 08-25-93 TO 09-24-93
SERVICE LINE: 935-9935 (TRI-STATE)
1-800-CHEMLINE (OUT-OF-STATE)
ACCOUNT NUMBER 001-575309    PAGE 1 OF 2
2 ITEMS ENCLOSED

YOUR ACCOUNTS AT A GLANCE...

ACCOUNT
BASIC CHECKING        001-575309

OPENING                    CLOSING
BALANCE                    BALANCE
$ 200.21                   $ 312.95

BANKING AT CHEMICAL...

YOUR ACCOUNTS IN DETAIL...
BASIC CHECKING ACCOUNT NO. 001-575309
OPENING BALANCE AS OF 08-25     $ 200.21



STATEMENT COPY

CHEMICAL
STATEMENT

STATEMENT PERIOD 08-25-00 - 09-24-00
PAGE 2 OF 2

DEPOSITS/CREDITS
DATE  DESCRIPTION
09-07  DEPOSIT
        BRANCH DEPOSIT/CREDIT

AMOUNT
$ 700.00

WITHDRAWALS/FEES
DATE  DESCRIPTION
09-24  MONTHLY MAINTENANCE FEE
        WITHDRAWALS/FEES

AMOUNT
$ 4.00

CHECKS
CHECK    DATE          AMOUNT
NO.      PAID
521      09-07        $ 535.26
522      09-15          50.00

* DENOTES A GAP IN CHECK SEQUENCE

AMOUNT
$ 585.26

DAILY BALANCE  CHECKS BALANCE AS OF 09-24
DATE BALANCE                    BALANCE
09-07  500.69                   $ 585.26
09-15  316.95                   316.95
09-24  316.95

# EXHIBIT H

OFFICE OF COURT ADMINISTRATION
P.O. BOX 2806 CHURCH ST. STATION
NEW YORK, N.Y. 10008

2   1706   03-08-1993   2369536
Y   AD

40193                          300.00
                    TOTAL:     300.00

JOHN KENNEDY OHARA ESQ.
MONTCLARE & GUAY
51 BROADWAY
10TH FLOOR SUITE 1000
NEW YORK, NY 10006

FOR THE BIENNIAL REGISTRATION
PERIOD 1993-94

NOTICE OF REQUIREMENT
TO REREGISTER   02/10/93

Section 468-a of the Judiciary Law and the Rules of the Chief Administrator of the Courts call for the biennial registration of all attorneys. As of May 25, 1990 the fee for such registration is $300 (sixty dollars of which shall be deposited in the Lawyers' Fund for Client Protection, and the remainder of which shall be deposited in the Attorney Licensing Fund), except that no fee shall be required from an attorney who certifies that he or she is retired from the practice of law as defined in 22 NYCRR 118.1 (g) (see reverse side).

The information that this office has on file is shown below. To reregister, you must (A) complete any information missing from this form, (B) annotate any information that should be corrected or changed, (C) sign both the Affirmation of Compliance (if applicable) and the affirmation on the bottom of this page, (D) Enclose a check or money order payable to "NYS Office of Court Administration" (No Cash Please) for $300 or sign the certification that you are retired from the practice of law, (E) mail to: NYS Office of Court Administration, P.O. Box 2806, Church Street Station, New York, N.Y., 10008.

*****************************************************************************

Affirmation of Compliance required by the Rules of the 1st and 2d Departments.

I affirm that I have read DR 9-102 of the lawyer's code of professional responsibility as adopted by the New York State Bar Association, as amended, and am in compliance therewith, and with §603.15 (1st Dept.) or §691.12 (2d Dept.) of the Rules of the Appellate Division, governing the Conduct of Attorneys, which requires an attorney to preserve the identity of funds and property entrusted to him or her and to maintain certain records relative thereto.

Signature _____

*****************************************************************************

Retirement Certification (only if applicable): I certify that I am retired from the practice of law as defined in 22 NYCRR 118.1 (g) and therefore am not required to pay the $300 fee.

Signature _____   Date _____

2369536/070291/3/2/468T* * * * * * * * * * * * * * * * * * * * * *

1-LAST NAME           FIRST NAME      MIDDLE NAME        2-DATE OF BIRTH
OHARA               , JOHN            KENNEDY            03/29/61

3-NAME WHEN ADMITTED TO NYS BAR (IF DIFFERENT):         4-YEAR ADMITTED TO
LAST              FIRST              MIDDLE              NYS BAR: 1991

5-HOME ADDRESS:                                         6-COUNTY OF RESIDENCE
                                                        KINGS
~~477 91ST STREET~~
553 - 47th. STREET
BROOKLYN, NY 11220

7-BUSINESS NAME AND ADDRESS                             8-COUNTY OF BUSINESS
                                                        NEW YORK
MONTCLARE & GUAY

51 BROADWAY
10TH FLOOR SUITE 1000

NEW YORK, NY 10006

9-BUSINESS TELEPHONE                10-NYS JUDICIAL DEPARTMENT
(212)509-3900                          OF BUSINESS: FIRST

11-NYS JUDICIAL DEPARTMENT          12-LAW SCHOOL GRADUATED:
   OF ADMISSION: SECOND                CUNY

AFFIRMATION: I AFFIRM THAT THE STATEMENTS CONTAINED HEREIN ARE TRUE TO
           THE BEST OF MY KNOWLEDGE AND BELIEF:

SIGNATURE: _____   DATE: 3-3-93

000312

# EXHIBIT I



# NEW YORK CITY
## CAMPAIGN FINANCE BOARD

40 Rector Street, 7th Floor, New York, New York 10006   (212) 306-7100   FAX: (212) 306-7143/44



## CANDIDATE CERTIFICATION
## 1993 ELECTIONS

### 1. CANDIDATE NAME

LAST: O'Hara    FIRST: John    M.I.: K

### 2. HOME ADDRESS

STREET ADDRESS: 553 - 47th Street    APT. NO.: House

CITY: B'Klyn    STATE: NY    ZIP CODE: 11220    TELEPHONE: —    CFB USE ONLY: C D

### 3. EMPLOYMENT

EMPLOYER NAME: Katz Katz + Blaiker

STREET ADDRESS: 110 Wall Street

CITY: New York    STATE: NY    ZIP CODE: 10005    TELEPHONE: (TTC) 227 - 0001

### 4. PREVIOUS ELECTIONS

Have you been a candidate previously for any office or political party position?   yes ☒   no ☐   If yes, please specify your most recent elections below:

| DATE OF ELECTION MONTH | YEAR | OFFICE OR PARTY POSITION SOUGHT | DISTRICT | PARTY PRIMARY ENTERED |
|---|---|---|---|---|
| 9 | 90 | NYS Assembly | 51 AD | Democrat |
| 9 | 91 | NYC Council | 38 CD | Democrat |
| 9 | 92 | NYS Assembly | 51 AD | Democrat |

### 5. CERTIFICATION

I hereby verify that I have not accepted, and I agree not to accept, any contribution or contributions from any one contributor for the 1993 elections that exceed(s) the contribution limit applicable to the office I am seeking, pursuant to Section 3-703(1)(f) of the New York City Campaign Finance Act ("Act"); that I have not made, and agree not to make, expenditures in excess of the expenditure limits applicable to the office I am seeking, pursuant to Section 3-706 of the Act, for each election (except as otherwise provided in the Act); that I have not used, and I agree not to use, my personal funds or property (or that of my spouse or unemancipated children) for these elections, except as contributions that do not exceed the applicable limit; and that I agree to abide by all other applicable requirements of the Act and the New York City Campaign Finance Board Rules ("Rules"), including requirements for campaign finance disclosure statements and recordkeeping.

I understand that I, the political committees I authorize, and my agents are required to abide by the requirements of the Act and the Rules applicable to the 1993 elections for which this Certification is submitted, regardless whether I:  meet the requirements of law to have my name appear on the official ballot for those elections; meet the threshold for eligibility for public funds; accept public funds; or am otherwise not eligible to receive public funds.

I understand that this Certification is a condition for qualifying to receive public funds in these elections and that the other conditions specified in the Act and the Rules must be satisfied before I may receive public funds pursuant to the Act.

I understand that my home address as provided above is the address to which legal notices, including correspondences and legal papers, should be sent.  I further understand that if it becomes necessary to update this address, I am responsible for promptly notifying the Board, in writing, of the new address.

I understand that failure to abide by the requirements of the Act or the Rules may result in the imposition of such penalties as are provided in Section 3-711 of the Act and any other applicable law.  I verify that the information in this Certification is true and complete to the best of my knowledge and belief.

This Certification does not apply to special elections held to fill vacancies.

SWORN TO ME THIS
29th DAY OF April, 1993

Elaine Naccache
NOTARY PUBLIC

ELAINE NACCACHE
Notary Public, State of New York
No. 41-4772422
Qualified in Queens County
Certificate Filed in New York County
Commission Expires 10/31/1994

CANDIDATE SIGNATURE

000314

# EXHIBIT J

<u>SUBPOENAS</u>:

-DMV RECORDS SHOWING CHANGES IN ADDRESS & ANY VEHICLES REGISTERED TO O'HARA 1990-PRESENT.
-POSSIBLE NJ DMV? (subjects girlfriend and some associates live in Atlantic City area).
-PVB RECORDS 1990-1996
-POST OFFICE CHANGE OF ADDRESS FORMS 1990-1996.
-TRW & CREDIT CARD REPORTS: BANKS. OBTAIN FULL FINANCIAL PROFILE OF O'HARA, SUBPOENA ALL BANK RECORDS AND CREDIT CARD INFORMATION FROM PERIOD IN QUESTION.
-O.C.A. RECORDS & REGISTRATION.
-CON EDISON BILLS AND SUBSCRIBER INFORMATION FOR JOHN K. O'HARA, AND FOR ADDRESSES AT 47TH STREET AND 4TH AVENUE 1992 TO PRESENT.
-CABLE TV BILLS, SAME AS ABOVE.
-B.U.G BILLS
-NYNEX BILLS
BOARD OF ELECTIONS BUFF CARDS FOR O'HARA


<u>CANVASSES</u>
INTERVIEW & OBTAIN RECORDS AT 579 61ST ST.
INTERVIEW & OBTAIN RECORDS AT 553 47TH STREET
INTERVIEW & OBTAIN RECORDS AT 6017 4TH AVENUE
Speak to individual who may confirm or refut presence of O'Hara as visitor or tenant. Speak to any owners or supers. Be aware that O'Hara has friends/family/associates at 61st Street and 4th Avenue, do not disclose exact purpose of investigation to them - ask general questions as to residency of O'Hara. There is a good probability that they will belive that purpose of probe is recent election and they may therefore not be prepared to lie about prior residences. Make sure to keep good records of their reponses as they may change story as case progresses and O'Hara becomes aware of subject of probe.

<u>PEOPLE v. JOHN K. O'HARA</u>
Preparation for Grand Jury presentation


<u>OBJECTIVE</u>:  Proof  that  O'Hara  registered  and  voted  from  false
addresses. Proof to concentrate on use of a fictitous address at
553 47th Street from 1992 to end of 1993. Subsidiary proof of
6017 4th Avenue address as possible false residence beginning in
1993.

# EXHIBIT K

CHRONOLOGICAL DATA SHEET

②

TITLE

CASE NO. OHARA

DATE

A.D.A. OHARA

ACTION

6 - Regarding 553/47TH ST. DIS spoke TO TENNENTS (WHO ARE NEW) AND DID NOT KNOW OHARA.

7 - DID DIS MADE 3 ATTEMPTS TO SPEAK w/ LAZZA LAZANO, NOT, DIS CONFIRMED LAZANO LIVES AT LOCATION AND OWNS BUILDINGING SINCE 1992 MAGGIE LUCAS PREVIOUS OWNER

8 - CABLE CHECK OF 553 47 ST. 3 CUSTOMS IN LAST 5 YEAR NONE OF WHICH ARE OHARA. Coles Check, NO LISTING FO # OHARA. POSTAL, NO LISTALG POSTAL CHANGE OF ADDRESS FORMS for OHARA POSTAL CARRIER STATES MAIL for OHARA Presently BEING DELIVERED @ THIS Location.

9 - 6017 4TH AVE. Coles Check NO LISTING FROM 1992 - 1994, 1995 - OHARA LISTED AS A NEW LISTING TO THE PRESENT. Dec. 1994 CABLE Changed from TINA PELLICCIO TO JOHN OHARA

10 - OHARA RECIEVED 3 MOVING VIOLATIONS DIS CHECKING On WHAT VEHICLE HE WAS DRIVING DIS OBTAINED DMV MATERIAL On OHARA & HIS MOTHER.

CHRONOLOGICAL DATA SHEET                    ③

| TITLE | | CASE NO. | |
|---|---|---|---|
| DATE | | A.D.A. | OHARA |
| | | | OMARA |

ACTION

11- Con ED - SUBPOENAED, BUG - SUBPOENAED,
CABLE TV COMPLETED, NYNEX SUBPOENAED
12- BUFF CARDS - OMARA HAS
13. CANASSES, DI'S CANVASSED - 47TH ST.
DI'S TO CANVASS LOCATION NOT ALREADY
CAVASSED - SEE REPORT

INTERVIEWS:
1- LOZANO - DI'S INTERVIEWED &
OBTAINED LEASE AGREEMENT.
2- SANDRA HELVERSON - DANNY McCLEAN
HAS TRACKED HER TO A PO on THE
JERSEY Shore AND is CONTINUING HIS
INVESTIGATION.
3- LOZANO - DI'S CONFIRMED THAT LOZANO
LIVES @ 47TH ST ADDRESS AND will
ATTEMPT TO INTERVIEW in THE Ava on 10/10/96
4- IMMACULATA PELLICCIO - DI'S TO CONFER
WITH OHARA.
5- MAUREEN STEFFENSEN / Home Phone
845-6666, DI'S McCLEAN AND PRESSER
Spoke W/ HUSBAND JOHN WXO STATED
MAUREEN NOT Home AND will call
DI'S.

14- DAOK FINACIAL INVESTIGATORS- Chief Bob
Ruston - DAIVIC FINACIAL INVESTIGATION

CHRONOLOGICAL DATA SHEET                                    ④

| TITLE | CASE NO. |
|-------|----------|

| DATE | A.D.A. |
|------|--------|

ACTION

AND DRAWING SUBPOEANA TO TWR
JOHN OMARA TO OBTAIN Subpoeana from
BURTIN, Sign IT AND SEND IT.

15- Subpoeana TO office of Court ADm.
OMARA TO REVIEW AND DI BAUER
will SEARVE.

# EXHIBIT L

3525-96

John O'Hara

| | DESCRIPTION | CT DATE | ADA | A S | R A | ANS | DATE REC. DEC. ORDER | JUDGE & DISPOSITION | N E |
|---|---|---|---|---|---|---|---|---|---|
| 1/19/01 | CA Order + a Judges that order is affirmed | | Ferrell | | | | | | |
| 3/7/01 | Atty's motion to vacate | | Bruffee | | | 9/14/01 | | | |
| 11/14/01 | SCSNY Atty's motion For evidentiary Hearing Memorandum OF Law | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

O'Hara ☐

frequently, may have
consulted me

O'Hara did not
mention offer
urges to tell him
confirmed offer still on table

frequently —
believe —
(in chambers)

"Very active"

I'm the
client
not going
to discuss
it
going to trial

Mr. Hernandez
(212) 663-1535

M.L. was perfect
relating to
associate

O'Hara
discussed it @
it before trial

— wanted to
embarrass
Mr. Hynes

a lot of
conversation —
not a passive
lawyer

13525/96    JOHN O'HARA

| DESCRIPTION | CT DATE | ADA | A S | R A | ANS | DATE DEC. | REC. ORDER | JUDGE & DISPOSITION | N E |
|---|---|---|---|---|---|---|---|---|---|
| Recd D'Appllant's Reply Brief | | Ferrell | | | | | | | |
| 3rd MTM TO File Amicus Curie Brief (Atty's) | | Ferrell | | | | 2/21/00 | 3/21/00 | Granted on or before 4-5-2000 | |
| atty's N/M EXT. Stay of Judgment | 3/30/00 | Ferrell | | | | 4/12/00 | 4/12/00 | Denied as unnecessary appeal perfected 12-15-99 | |
| atty's amicus Curie Brief + Appendix | 4/6/00 | Ferrell | | | 4/6/00 | 7/17/00 | 7/17/00 | affirmed remit to S.C.E. for further proceed | 11/24/00 |
| CA JUDGE Assig. Hon. Wesley | 8/7/00 | Ferrell | | | | 9/29/00 | 10/3/00 | Granted | |
| atty's CA Leave Application. | 8/10/00 | Ferrell | | | | | | | |
| atty's motion request Oral argument Leave | 8/22/00 | Ferrell | | | | | | | |
| CA Jurisdiction Statement | 9/7/00 | Ferrell | | | | | | | |

000326

CITY REGISTER RECORDING AND ENDORSEMENT PAGE
- KINGS COUNTY -
(This page forms part of the instrument)

k(s) _757_

s) _54_

_353 47th St._

Record & Return to: Carlo F Rodriguez Abeldo, Sq
_5403 5th Ave, Bklyn, NY, 11220_

Title/Agent Company name: A.R.S. ABSTRACT, LTD.

Title Company number: _SECK 1522_

REEL 3155 PG 132

THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

Examined by (✍): _____

Mtge Tax Serial No.: _____

Mtge Amount ____ $ ____

Taxable Amount ____ $ ____

Exemption (✓) ____ YES ☐ NO ☐

Type: [339EE] [ 255 ] [OTHER ____ ]

Dwelling Type: [1 to 2] [ 3 ] [4 to 6] [OVER 6]

TAX RECEIVED ON ABOVE MORTGAGE ▼

County (basic) ____ $ ____

City (Addt'l) ____ $ ____

Spec Addt'l ____ $ ____

TASF ____ $ ____

MTA ____ $ ____

NYMA ____ $ ____

TOTAL TAX ____

Assumption Mortgage (✓) YES ☐ NO ☐

Joy A. Bobrow, City Register

City Register Serial Number ➡ 59402

Indexed By (✍): ____   Verified By (✍): ✓

Block(s) and Lot(s) verified by (✓):
Address ____   Tax Map ☐
Extra Block(s) ____   Lot(s) ____

Recording Fee ____ $ A21

Affidavit Fee ____ (C) $ ____

TP-584/582 Fee ____ (Y) $ ____

RPTT Fee ____ (R) $ 25

HPD-A ____ ☐   HPD-C ____ ☐

New York State Real Estate Transfer Tax ▼
$ 224
Serial Number ➡ 004816

New York City Real Property Transfer Tax
Serial Number ➡ 14288

New York State Gains Tax Serial Number ➡

PAID 11-15-93
GRNFF $1.00
GRNFF 4489

PAID 11-15-93 BK01
DEED $21.0
DEED 4489

RECORDED IN KINGS COUNTY
OFFICE OF THE CITY REGISTER

1993 NOV 15 A 9:30

Witness My Hand and Official Seal



City Register

CRGF-M09K.BPG  1/93

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 28 day of October, 1993

BETWEEN

MAGALY X. LUCAS, residing at 326 W. 45th Street, Suite 1F, New York, New York

party of the first part, and

QUETZAL MARTINEZ, ROBERTO LOZANO and RAFAEL MUNOZ all residing at 553 47th Street, Brooklyn, New York

party of the second part,

WITNESSETH, that the party of the first part, in consideration of

_____ dollars paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs, or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 47th Street, distant 240 feet westerly from the corner formed by the intersection of the northerly side of 47th Street with the westerly side of 6th Avenue;

RUNNING THENCE northerly parallel with 6th Avenue, and part of the distance through a party wall, 92 feet to the southerly side of land formerly of Thomas Hunt, deceased;

THENCE westerly along said land of Hunt, 20 feet 1/2 of an inch;

THENCE southerly again parallel with 6th Avenue, and part of the distance through another party wall, 90 feet 9 inches to the northerly side of 47th Street;

THENCE easterly along the northerly side of 47th Street, 20 feet to the point or place of BEGINNING.

Said premises being known as and by 553 47th Street, Brooklyn, New York.

Sec: 3
Block: 757
Lot: ,54

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____

_____     Magaly C. Lucas

Form 1290

000328     170

STATE OF NEW YORK, COUNTY OF  KINGS                    ss:

On the 2 7 day of *October* 19 93 , before me
personally came  Magaly C. Lucas

to me known to be the individual      described in and who
executed the foregoing instrument, and acknowledged
that  she  executed the same.

CAROL LEE FLITT
NOTARY PUBLIC, State of New York
No. 24-...0549
Qualified in Kings County
Commission Expires December 31, 1994

STATE OF NEW YORK, COUNTY OF                    ss:

On the       day of             19     , before me
personally came
to me known, who, being by me duly sworn, did depose and
say that   he resides at
                                                  :
that   he is the
of
                              , the corporation described
in and which executed the foregoing instrument; that   he
knows the seal of said corporation; that the seal affixed to said
instrument is such corporate seal; that it was so affixed by
order of the board of directors of said corporation, and
that   he signed h   name thereto by like order.

STATE OF NEW YORK, COUNTY OF                    ss:

On the       day of             19     , before me
personally came

to me known to be the individual      described in and who
executed the foregoing instrument, and acknowledged
that         executed the same.

STATE OF NEW YORK, COUNTY OF                    ss:

On the       day of             19     , before me
personally came
the subscribing witness to the foregoing instrument, with
whom I am personally acquainted, who, being by me duly
sworn, did depose and say that   he resides at
                                        ; that   he knows
                              to be the individual
described in and who executed the foregoing instrument;
that     he, said subscribing witness, was present and saw

                              execute the same; and that   he, said witness,
at the same time subscribed h   name as witness thereto.

## BARGAIN AND SALE DEED

### WITH COVENANT AGAINST GRANTOR'S ACTS

Title No.  SECK1522

Magaly C. Lucas

TO

Quetzal Martinez,
Roberto Lozano and
Rafael Munoz

A.B.S. ABSTRACT, LTD.
Standard Form of New York Board of Title Underwriters
36-12 34th Avenue LIC
Commonwealth
Land Title Insurance Company

SECTION    3
BLOCK      757
LOT        54
COUNTY OR TOWN  Kings
STREET ADDRESS  553 47th Street
               Brooklyn, NY

Recorded at Request of
COMMONWEALTH LAND
TITLE INSURANCE COMPANY

RETURN BY MAIL TO

CASTO F. RODRIGUEZ ARBELO, ESQ.
5403 5th Avenue
Brooklyn, New York 11220

# EXHIBIT B

05/24/96

MORTG NO : CI-50801126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

FORECLOSURE

--------------------------------------------------x
OCI MORTGAGE CORPORATION                          : NOTICE OF
                                                  : MOTION FOR
                                  Plaintiff,       : JUDGMENT OF
                                                  : FORECLOSURE
                                                  : AND SALE
          -against-                               :
                                                  : INDEX NO.
                                                  : 17589/94
                                                  :
                                                  : ASSIGNED TO
                                                  : JUSTICE
MAGALY LUCAS                                       :
QUETZAL MARTINEZ                                   : Gloria Aronin
ROBERTO LOZANO                                     :
RAFAEL MUNOZ                                       :
ALLAN LEE                                          :
NEW YORK CITY PARKING VIOLATIONS BUREAU           :
NEW YORK CITY TRANSIT AUTHORITY, TRANSIT          :
      ADJUDICATION BUREAU                          :
                                                  :
                                                  :
                                  Defendants.      :
--------------------------------------------------x

SIRS:

        PLEASE TAKE NOTICE that upon the summons and verified

complaint; notice of pendency of action;and upon all papers

already on file herein; the annexed affirmation of LISA B.

SINGER dated May 24, 1996 and upon the annexed referee's

computation dated June 27, 1995, the undersigned will move this

court at an IAS part 72 Supreme Court State of New York, County

of KINGS at 360 Adams Street Brooklyn, NY 11201 on JUN 27 1996

_____ at 9:30 a.m. in the forenoon of that day, or as soon

thereafter as counsel may be heard, for confirmation of the

referee's report, for a Judgment of Foreclosure and Sale and

for other and further relief as this Court may deem just and

proper.

PLEASE TAKE FURTHER NOTICE, that pursuant to CPLR

2214(b) answering affidavits, if any, are required to be served

upon the undersigned at least seven (7) days before the return

date of this motion.

Dated: _May 24_____, 1996

Yours, etc.
CULLEN AND DYKMAN
Garden City Center
100 Quentin Roosevelt Blvd.
Garden City, NY  11530
(516) 357-3600

  TO:
MAGALY LUCAS
DEFENDANT
403 West 38TH STREET, #3E
NEW YORK, NY 10018

QUETZAL MARTINEZ
DEFENDANT
553 47TH STREET
BROOKLYN, NY  11220

ROBERTO LOZANO
DEFENDANT
553 47TH STREET
BROOKLYN, NY  11220

RAFAEL MUNOZ
DEFENDANT
553 47TH STREET
BROOKLYN, NY  11220

ALLAN LEE
DEFENDANT
2001 GERRITSEN AVENUE
BROOKLYN, NY  11229

ALAN S. ROTH, ESQ
ATTORNEY FOR DEFENDANT
NEW YORK CITY PARKING VIOLATIONS BUREAU
770 BROADWAY, 15TH FLOOR
NEW YORK, NY  10003

NEW YORK CITY TRANSIT AUTHORITY, TRANSIT
     ADJUDICATION BUREAU

DEFENDANT
505 FULTON STREET
BROOKLYN, NY  11201

WE ARE ATTEMPTING TO COLLECT A DEBT
ANY INFORMATION OBTAINED WILL BE USED
FOR THAT PURPOSE

05/24/96

MORTG NO : CI-50801126

At an IAS part 72 of the Supreme Court held
for the County of KINGS at the Courthouse
thereof, 360 Adams Street, Brooklyn, NY
11201 on May __, 1996.

DIST.
00000

P R E S E N T :                    HON.

SEC.                               JUSTICE.              FORECLOSURE
000
-------------------------------------------------------x

BLOCK    OCI MORTGAGE CORPORATION                        : JUDGMENT OF
00757                                                    : FORECLOSURE
                                         Plaintiff,      : AND SALE
LOT
054
                                                         :
Lis                  -against-                            :
Pendens                                                  :
Filed    MAGALY LUCAS                                    : INDEX NO.
06/14/94 QUETZAL MARTINEZ                                : 17589/94
         ROBERTO LOZANO                                   :
         RAFAEL MUNOZ                                     :
         ALLAN LEE                                        :
         NEW YORK CITY PARKING VIOLATIONS BUREAU         :
         NEW YORK CITY TRANSIT AUTHORITY, TRANSIT        :
             ADJUDICATION BUREAU                         :

                                        Defendants.      :
-------------------------------------------------------x

On the reading of the following, all now duly filed in

the office of the Clerk of KINGS and on all the proceedings

thereon particularly the:

Summons and Verified Complaint filed on May 31, 1994 and

on all the affidavits of service and notices of appearance,

showing that each and all of the defendants herein have been

personally served with said summons and complaint;, or have

voluntarily appeared herein by their respective attorneys; and

upon the

Notice of Pendency of Action filed 06/14/94; and upon the

Order of Reference and Amendment dated April 12, 1995;
appointing a referee to compute the amount due the plaintiff
upon the bond (note) and mortgage set forth in the verified
complaint and to examine and report whether or not the
mortgaged premises can be sold in parcels; and upon the

Oath and Report dated June 27, 1995 in which it appears
that the sum of $206,542.20 was due thereon at the date of said
report; and that the mortgaged premises cannot be sold in
parcels without material injury to the parties interested; and
that the whole amount secured by said bond (note) has become
due; and upon the

Notice of Motion for Judgment of Foreclosure and Sale
dated 05/24/96; and upon the

Affirmations of Regularity and Legal Services each dated
05/24/96 of LISA B. SINGER, an associate of Cullen and Dykman
attorneys for plaintiff,proving that more than thirty days had
elapsed since such service upon said defendants was completed
and since said defendants appeared, as aforesaid, and that none
of the defendants had served an answer to said verified
complaint, moved with respect thereto, nor had their time to do
so been extended; and that no necessary defendant is an infant,
incompetent, absentee or in the military; and that said
defendants are in default,

NOW, on motion of CULLEN AND DYKMAN, plaintiff's
attorneys it is

ORDERED that the plaintiff's motion is hereby granted, and
it is further

ORDERED, ADJUDGED AND DECREED, that the said report of
KAREN B. ROTHENBERG, ESQ the said referee is in all respects
ratified and confirmed, and it is further

ORDERED, ADJUDGED AND DECREED, that the plaintiff is
hereby awarded judgment herein for the sum of $206,542.20
together with interest at the rate set forth in the note and
mortgage from the date specified in the referee's report,
together with legal interest from the date of entry hereof,
together with advances from the date specified in said report,
plus the sum of $_____ to be taxed by the Clerk of the
Court and inserted herein is hereby adjudged to the plaintiff
for costs and disbursements of this action, with interest
thereon from the date of entry hereof, together with an
additional allowance of $_____ hereby awarded to plaintiff
in addition to costs and disbursements, with interest thereon
from the date of entry hereof, and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged
premises described in the complaint in this action, as
hereinafter set forth, be sold at public auction in one parcel
on the foot of the Courthouse steps, facing Adams Street at the
Kings County Courthouse, 360 Adams Street, Brooklyn, NY  11201 _
_____ by: _____
_____, who is
hereby appointed referee for that purpose.  That said referee
give public notice of the time and place of sale, according to
law and the course and practice of this Court, by publishing
notice of sale in the _____
_____

_____; that the plaintiff or any other party to this action may become the purchaser or purchasers at such sale; that said referee execute to the purchaser or purchasers on such sale a deed of the premises sold; that said referee on receiving the proceeds of sale forthwith pay therefrom the taxes, assessments and water and sewer rents which are, or may become liens on the premises at the time of sale and any such payments shall be allowed to the plaintiff and applied by said referee upon the amounts due to the plaintiff as specified above in item marked "THIRD." That said referee then deposit the amount received at sale in _____

_____  _____

_____("Depository") and shall thereafter make the following payments:

First: The statutory fees of said referee, in the amount of $_____.

Second: Expenses of sale and advertising expenses as shown on the bill(s) presented and certified by the referee to be correct. Duplicate receipts shall be annexed to the Report of Sale.

Third: Said referee shall also pay to the plaintiff or its attorneys, the sum of $206,542.20 together with interest at the rate set forth in the note and mortgage from the date specified in the referee's report, together with legal interest from the date of entry hereof, together with advances from the date specified in said report, plus the sum of $_____ adjudged to the plaintiff for costs and disbursements in this action to be taxed by the Clerk of the Court and inserted

herein, with interest thereon from the date of entry hereof, together with an additional allowance of $_____, hereby awarded to plaintiff in addition to costs and disbursements with interest thereon from the date of entry hereof, or so much as the purchase money of the mortgaged premises will pay of the same. The referee shall take a receipt therefor, and file it with the referee's report of sale.

And said referee shall pay to the plaintiff a reasonable sum for preservation of the property upon presentation of receipts for such expenditures to said referee.

And said referee shall pay to plaintiff an attorney's fee as authorized by the said mortgage in the amount of $3,205.

Fourth:  If such referee intends to apply for a further allowance for his fees, he may leave upon deposit such amount as will cover such additional allowance to await the further order of this Court thereon after application duly made.

Fifth:  That in case the plaintiff be purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchaser at said sale and the terms of sale under this Judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with the said referee, said referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff a deed or deeds of the premises sold upon the payment to said referee of the amounts specified above in items marked "FIRST" and "SECOND" and the amounts of the aforesaid taxes, assessments and water and sewer rents, and interest or penalties thereon, or in lieu of the payment of

said last mentioned amounts, upon filing with said referee
receipts of the proper municipal authorities showing the
payment thereof that the balance of the amount bid, after
deducting therefrom the aforesaid amounts paid by the
plaintiff, for preservation of the property, referee fees,
expenses of sale, and taxes, assessments and water and sewer
rents shall be allowed to the plaintiff and applied by said
referee upon the amounts due to the plaintiff as specified
above in item marked "THIRD"; that if after so applying the
balance of the amount bid, there shall be a surplus over and
above the said amounts due to the plaintiff, the plaintiff
shall pay to said referee, upon delivery to it of said
referee's deed, the amount of surplus; that said referee on
receiving said several amounts from plaintiff shall forthwith
pay therefrom said taxes, assessments, water and sewer rents
and interest or penalties thereon, unless the same have already
been paid, and shall then deposit the balance in said
Depository.

Sixth:  That said referee take the receipt of the
plaintiff or its attorneys for the amounts paid as herein
before directed in item marked "THIRD", and file it with the
referee's report of sale; that said referee deposit the surplus
moneys, if any, with the Clerk of the court within five days
after the same shall be received and be ascertainable, to the
credit of this action, to be withdrawn only on the order of the
Court, signed by a Justice of the Court; that the said referee
make a report of such sale and file it with the Clerk of KINGS
County within thirty days of completing the sale and executing

a proper conveyance to the purchaser; and that the purchaser or purchasers at such sale be let into possession on production of the referee's deed or deeds.

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the proceeds of said sale be insufficient to pay the amount so reported due the plaintiff, with the expenses of sale, interest, cost and allowance, as aforesaid, the said referee shall specify the amount of such deficiency in the referee's report of sale; that the plaintiff recover of the defendant MAGALY LUCAS, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount is determined and awarded by an order of this Court as provided for in said section; and that the purchaser or purchasers at such sale be let into possession of the premises sold to them on production of the referees deed or deeds of said premises.

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming through or under them, or any or either of them, after the filing of such notice of pendency of this action, are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof.

Annexed hereto as Schedule "A" is a description of the

said mortgaged premises hereinbefore mentioned;

SUBJECT to covenants, reservations, easements and restrictions contained in prior deeds and/or instruments and agreements of record, if any, to the extent that they are presently enforceable; to any state of facts an accurate survey and physical inspection may show; to conditional bill of sale contracts and/or financing statements of record, if any; to orders and/or notices of violations filed in Municipal, State or U.S. Governmental departments; to zoning restrictions and regulations and any amendments thereof; and to rights, if any, of occupants, to the extent only that said rights may be controlling.

E N T E R

_____

JUSTICE, SUPREME COURT

SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 47th Street, distant 240 feet westerly from the corner formed by the intersection of the northerly side of 47th Street with the westerly side of 6th Avenue:

RUNNING THENCE Northerly parallel with 6th Avenue and part of the distance through a party wall, 92 feet to the southerly side of land formerly of Thomas Hunt, deceased;

THENCE Westerly along said land of Hunt, 20 feet 1/2 of an inch:

THENCE Southerly again parallel with 6th Avenue and part of the distance through another party wall, 90 feet 9 inches to the northerly side of 47th Street;

THENCE Easterly along the northerly side of 47th Street, 20 feet to the point or place of BEGINNING.

PREMISES KNOWN AS: 553 47th Street, Brooklyn, New York.

T-36-Plaintiff's Costs:  on Foreclosure or other Real Property

MORTG NO : CI-50801126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

```
-------------------------------------------------x
OCI MORTGAGE CORPORATION                          : COSTS OF
                                                  : PLAINTIFF
                                    Plaintiff,    :
                                                  :
            -against-                             :
                                                  : INDEX NO.
MAGALY LUCAS                                      : 17589/94
QUETZAL MARTINEZ                                  :
ROBERTO LOZANO                                    :
RAFAEL MUNOZ                                      :
ALLAN LEE                                         :
NEW YORK CITY PARKING VIOLATIONS BUREAU           :
NEW YORK CITY TRANSIT AUTHORITY, TRANSIT          :
    ADJUDICATION BUREAU                           :
                                                  :
                                    Defendants.   :
-------------------------------------------------x
```

<u>COSTS</u>

```
Costs before note of issue CPLR 8201 subd. 1  ....... $200.00
Motion costs CPLR 8202 .............................
Allowance by statute CPLR 8302(a)(b) ................
Percentage on $_____ at 10% (not exceeding $200.00)..   20.00
Additional $_____ at 5% (not exceeding $800.00).....   40.00
Additional $_____ at 2% (not exceeding $2,000.00)...   40.00
Additional $_____ at 1% (not exceeding $5,000.00)...   50.00
Additional allowance CPLR 8302(d) ....................   50.00

                         COSTS........................... $400.00
```

<u>DISBURSEMENTS</u>

```
Fee for index number CPLR 8018(a) 8301(a)(12) ....... $170.00
Referee's fees CPLR 8301(a)1 8003(b) .................  200.00
Clerk's filing notice of pendency CPLR 8021(a)10
                                8301(a)(12) ......   15.00
Paid for searches CPLR 8301(a)10 ... ................  275.00
Serving copy summons & complaint CPLR 8011(c)1
                                8301(d) ..........  280.00
Paid referee's report CPLR 8301(a) 8003(a)(1) .......   50.00
Postage CPLR 8301(a)12 ..............................   15.00
Sheriff's fees on execution CPLR 8011(b) 8012 .......
Fees for publication CPLR 8301(a)3 ..................
Request for Judicial Intervention CPLR 8020(a) ......   75.00
```

DISBURSEMENTS.................... $ 1080.00

TOTAL.............................. $ 1480.00

STATE OF NEW YORK
COUNTY OF NASSAU                    Attorney's Affirmation

The undersigned admitted to practice in the court of this
state affirms that affirmant is an attorney for Cullen and
Dykman, the attorneys of record for plaintiff in the above
entitled action: that the foregoing disbursements have been or
will necessarily be made or incurred in this action and are
reasonable in amount; and that copies of documents or papers as
charged herein were actually and necessarily obtained for use.

The undersigned affirms that the foregoing statements are
true, under the penalties of perjury.

LISA B. SINGER

Dated May 24      , 1996

MORTG NO : CI-50801126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------x

OCI MORTGAGE CORPORATION
                                               : AFFIRMATION
DIST.                               Plaintiff,  :     OF
00000                                          : REGULARITY
                                               :
          -against-                            :
SEC.                                           :
000                                            : INDEX NO.
     MAGALY LUCAS                              : 17589/94
     QUETZAL MARTINEZ                          :
BLOCK     ROBERTO LOZANO                        :
00757     RAFAEL MUNOZ                          :
          ALLAN LEE                            :
LOT       NEW YORK CITY PARKING VIOLATIONS BUREAU :
054       NEW YORK CITY TRANSIT AUTHORITY, TRANSIT :
               ADJUDICATION BUREAU             :
Lis                                            :
Pendens                                        :
Filed                     Defendants.          :
06/14/94  ---------------------------------------------------x

LISA B. SINGER, the undersigned an attorney admitted to
practice in the courts of this state, affirms under penalty of
perjury as follows:

1.    Affirmant is associated with the firm of CULLEN AND
DYKMAN, plaintiff attorneys in the above entitled action, which
was brought to foreclose a mortgage affecting real property
situated in KINGS County, State of New York, and affirmant is
familiar with the details thereof.

2.    The summons and duly verified complaint was filed in
the Office of the Clerk of KINGS County. That thereafter a
notice of pendency of action in due form and containing
correctly and truly all the particulars required by law to be
stated in such notices was duly filed in the Office of the

Clerk of said County on the dates indicated in the left margin herein.

3.    This action was commenced by the filing of the summons and complaint in the Office of the Clerk of said county on May 31, 1994.

4.    All of the necessary parties defendant have been duly served herein with summons and verified complaint in accordance with all applicable laws and statutes, or have voluntarily appeared herein by their respective attorneys.

5.    This action was commenced because of the non-payment of monthly installments of principal and interest and mortgagor(s)'s deposits which became due and payable on January 1, 1994 and on the first day of each subsequent month.  Based upon this default in payment under the terms of the subject mortgage, plaintiff elected to exercise its option under the mortgage to declare the unpaid principal and interest immediately due and payable.

6.    Since the filing of the summons and verified complaint, and notice of pendency of action, the complaint has not been amended in any manner whatsoever.

7.    All of the necessary defendants are of full age and sound mind and that no necessary defendant is an absentee, prior encumbrancer or in the military.

8.    More than thirty days have elapsed since the completion of service of process in this action.

9.    No defendant has answered the complaint or moved with respect thereto and the time to do so has expired

including the time granted pursuant to any extension thereof.

10.    The following defendant has appeared in this action:

Defendant    : NEW YORK CITY PARKING VIOLATIONS BUREAU

Def. attorney: ALAN S. ROTH, ESQ

770 BROADWAY, 15TH FLOOR

NEW YORK, NY  10003

11.    The whole amount secured by said mortgage is due and payable.

12.    All the proceedings in this action have been regular and in accordance with the rules and practice of this Court.

13.    On April 12, 1995 an Order of Reference and Amendment was signed.

14.    The referee appointed herein computed the amount due plaintiff and issued the oath and report which is annexed hereto as Exhibit A.

14A.    That a prior Application for a Judgment of Foreclosure and Sale was submitted.  That at the appearance on November 2, 1995, Deborah Bryant, Esq. of this firm and Defendant Raphael Munoz  were present.  At said appearance, the defendant requested an adjournment to obtain counsel.  It was agreed that the case would be adjourned until December 14, 1995 and marked final.

14B.    However, on December 14, 1995 said case was not on the calendar call and plaintiff's attorney was told that the court had no recollection of this case.

14C.   Thereafter, upon a search of the court file, it was discovered that this case was marked off the calendar on November 2, 1995.

15.   No previous application has been made for a Judgment of Foreclosure and Sale other than the above-mentioned application.

WHEREFORE, plaintiff asks for Judgment for the relief demanded in the complaint in the form annexed hereto as Exhibit B, and for such other and further relief as to the Court may deem just and proper.

LISA B. SINGER

DATED: May 24 , 1996
Garden City, New York

000348

# EXHIBIT C

-2-

<u>INTERVIEWS</u>:Review purpose of investigation, interview further witnesses as evidence develops - concentrate most on Lozano and Parras, they are essential and must testify in the Grand Jury - note that they previiously testified in 1994 civili proceeding.

<u>ROBERTO LOZANO  553 47TH STREET</u>
Owner occupant of building, previously testified that O'Hara did not reside at location in 1992-1994, and that O'Hara asked him to hold mail and lie if asked if O'har lived there.

<u>SANDRA HELVERSON 430 OGDEN AVENUE APT. 8</u>
<u>JERSEY CITY N.J.</u> d.o.b. 1/26/67
Assisted O'Hara in 1994 campaign, may be estranged and in fear, interview concerning circumstances.

<u>IMMACULATA PELLICCIO</u>   <u>Hostile witness !</u>
<u>6017 4TH AVENUE</u>
Owner/ occupant of building where O'Hara claims to reside. Testified that she is lifelong friend of O'Hara and that in fact he did begin living there. There are two apartments above the shop owned by the Pelicanos. One is occupied by <u>EMILY MASSA</u> (Pellicano's daughter) - interview her on a separate occassion. Ask when adnd circumstances of O'Hara moving into building.

<u>QUERUBIN PARRAS 348 HIGHBROOK AVENUE PELHAM N.Y.</u>
Landlord of building at 579 61st Street in 1994. Leases & knowledge of O'Hara residence 1982- ?. O'Hara still occupied in 1994.

<u>MAUREEN STEFFENSEN 519 47TH STREET</u>   <u>Hostile witness!</u>
Close associate/friend of O'Hara, has led petition drives for O'Hara in past and assisted Tanya Ruiz candidacy this time. Should know residencies of O'Hara.

# LAW OFFICES OF JOEL B. RUDIN, P.C.

600 FIFTH AVENUE
10TH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN
———
STEVEN R. AQUINO

GEORGE R. GOLTZER
(Of Counsel)
JABBAR COLLINS
(Legal Analyst)

December 11, 2015

Mark Hale
Chief, Conviction Review Unit
Kings County District Attorney's Office
Renaissance Plaza
350 Jay Street
Brooklyn, New York 11201

> Re:  *People v. John O'Hara*
> Ind. No. 13525/96

Dear Mr. Hale:

Following up on our recent meeting, I am writing to provide information that I believe will assist in your re-investigation of the factual basis for John O'Hara's conviction (even though I believe we already have presented a compelling basis to overturn his conviction for selective prosecution). I understand you now have all three trial transcripts. If this is not the case, please let me know and I'll forward to you any missing transcripts that are in my possession. I am meanwhile forwarding to you the transcript of the civil proceedings in *Dennis L. Pol, et al., v. The Board of Elections of the City of New York and John O'Hara*, Index No. 23414/94 (Sup. Ct., Civ. Term, Part 15) (Aronin, J.S.C.) – the election law hearing, brought by allies of Assemblyman Brennan, which concerned, in part, the bona fides of Mr. O'Hara's residency on 47th Street. My client and I appreciate that you wish to dig into the merits of the underlying criminal prosecution and conviction, and to that end provide the following:

## Affirmative Evidence of Innocence

John O'Hara, now 54 years of age, is an attorney who was never convicted of any crime except for this case. He lived in the same

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 2

neighborhood in Brooklyn, near where his grandparents settled after emigrating from Ireland almost 100 years ago, drove a cab to put himself through law school, volunteered for and served on his local community board until he was convicted, and was constantly involved in political affairs in his community. He battled for years on behalf of Judge John Phillips, whose estate was plundered by friends of District Attorney Hynes, opposed Hynes and his allies for years, and paid a dear price, suffering three trials on the false residence charges and ultimately a felony conviction that cost him his career in law and in politics. After his law license was restored, he worked without fee as part of a successful effort to overturn the wrongful conviction of David McCallum. Although his career has been crippled, he now wishes to clear his name and cleanse his record.

As you know, the People, during the third trial, argued the theory that Mr. O'Hara did not legitimately reside at the 47th Street address at all – that the basement there was uninhabitable, that his claim that he lived there during 1992-93 was a sham, and that he really lived at a 61st Street rent-stabilized apartment that he maintained in his name. This theory was supported by two witnesses who lived upstairs at the 47th Street building, Rafael Munoz and Robert Lozano, and a rebuttal witness, Josephine Vales. The entire case came down to their credibility. However, their testimony was false. Numerous credible witnesses testified, at this trial (and the previous trials), that they saw Mr. O'Hara at the 47th Street basement apartment under circumstances suggesting he was living there, and O'Hara himself testified he lived there for most of one year, candidly acknowledging his purpose in doing so was to establish bona fide residency in the election district following a redistricting – conduct that was lawful.

Meanwhile, there are important witnesses who did not testify, apparently because they were intimidated by the D.A.'s office into fearing for their liberty or livelihood if they did so, and also because of the way in which the prosecution sprung on the defense, without warning, the *false* rebuttal testimony of Ms. Vales. Meanwhile, the jury did not hear of the People's abusive tactics in investigating this case and trying to discourage defense-favorable witnesses from testifying – tactics (all too familiar from the Hynes

RAPS

QUETZAL MARTINEZ
DDA



000354

**LANIGAN, PATRICK**

| | |
|---|---|
| **From:** | WILSON, JESSICA |
| **Sent:** | Wednesday, November 09, 2016 1:51 PM |
| **To:** | LANIGAN, PATRICK |
| **Subject:** | John Graham |

John Graham

Jessica Wilson
Senior Assistant District Attorney
Kings County
Conviction Review Unit
Ph. 718-250-2010
Fax 718-722-5223

**LONGO, DOMINICK**

| | |
|---|---|
| **From:** | RIVERA, JOSE LUIS |
| **Sent:** | Thursday, October 13, 2016 4:45 PM |
| **To:** | LONGO, DOMINICK |
| **Subject:** | Request for Entire Police Case File |

Good afternoon Sergeant Longo. We're hoping you might be able to help us up here in the Conviction Review Unit. ADA Tamara Edelstein is looking for the entire NYPD case file on defendant Terrence Rice, indictment 11210/90. Specifically, the microfiche that might be located in 1 Police Plaza. Any guidance would be appreciated, thank you.

**Jose Luis Rivera**
Paralegal
Conviction Review Unit
Kings County District Attorney's Office
T: 718-250-4838
F: 718-250-4705



Josephine Vales

LAS VEGAS

702- 828-3111

828-3206

FUGITIVE SECTION -
- 702- 828-3578 -

RICK
DEPAOLIS



396

1                    J. O'Hara-redirect-Hernandez

2                        (Whereupon, the jury entered the

3            courtroom)

4                THE COURT:  All jurors being

5            present, both sides waive the jury roll

6            call?

7                MR. HERNANDEZ:  So waived.

8                MR. O'MARA:  So waived.

9                THE COURT:  You have a witness,

10           counsel?

11               MR. O'MARA:  Yes, your Honor.

12               At this time the People would call

13           Josephine Vales to the stand.

14   J O S E P H I N E   V A L E S  called as a witness

15   on behalf of the People, having been first duly

16   sworn, was examined and testified as follows:

17               COURT CLERK:  State your name.

18               THE WITNESS:  Josephine Vales.

19               COURT CLERK:  Spell your last name

20           please?

21               THE WITNESS:  V-A-L-E-S.

22               THE COURT:  You may inquire,

23           counsel.

24

25

397

1                          Vales-direct-O'Mara

2    DIRECT EXAMINATION

3    BY MR. O'MARA:

4         Q    Mrs. Vales, where do you live now?

5         A    Brick, New Jersey.

6         Q    I'm going to ask you about an address

7    553 47th Street in Brooklyn, New York.  Are you

8    familiar with that address?

9         A    Yes.

10        Q    How are you familiar with it?

11        A    I lived there for about 20 years.

12        Q    And did you own that property?

13        A    Yes.

14        Q    When did you leave?

15        A    1990.

16        Q    And did you sell it in 1990?

17        A    Yes.

18        Q    Who did you sell it to?

19        A    Magaly Lucas.

20        Q    Can you tell us and describe for us if

21   you would the building at 553 47th Street?

22        A    It was a three story two family house.

23        Q    And?

24        A    It was a brownstone.

25        Q    Could you tell us what was on the third

398

Vales-direct-O'Mara

2  floor?

3      A    My tenant lived on the third floor.

4      Q    Would that be a person named Layola?

5      A    Layola.

6      Q    How about the second floor?

7      A    My bedroom.

8      Q    How many bedrooms were there?

9      A    Four bedrooms and a bathroom.

10     Q    How about the first floor?

11     A    First floor was living room, dining room

12  and kitchen.

13     Q    What about the basement?

14     A    It was just a basement.  It had a big

15  room, a smaller room with a dryer, one of those

16  little refrigerators, small sink and a little

17  bathroom and on the side there was my washing

18  machine.

19     Q    Okay.  During the 19 or 20 years that

20  you were there, was there ever an apartment down

21  in the basement?

22     A    No.

23     Q    Anybody ever live there?

24     A    No.

25     Q    And prior to the time when you left,

399

Vales-direct-O'Mara

1

2    were any of your children married?

3        A    Yes.

4        Q    And did any of them come back to live

5    with you?

6        A    Yes.

7        Q    Where did they stay?

8        A    Well, I had the four bedrooms upstairs

9    and I emptied out my bedroom so that my son and

10   his family could stay there and I utilized the

11   other three rooms.

12       Q    That would all be on the second floor?

13       A    Yes.

14           MR. O'MARA:  Thank you.

15           I have no further questions.

16           THE COURT:  You may inquire.

17   CROSS-EXAMINATION

18   BY MR. HERNANDEZ:

19       Q    Ms. Vales, my name is Al Hernandez.  I'm

20   the attorney for this young gentlemen here by the

21   name of John O'Hara.

22           Do you know Mr. O'Hara?

23       A    No, sir, I don't.

24       Q    Do you know what this case is about?

25       A    Not really.

400

Vales-cross-Hernandez

1

2      Q   Have you been told what it's about?

3      A   No, they just wanted me to describe the

4  house.

5      Q   When is the first time you talked to the

6  D.A.?

7      A   A few weeks back.

8      Q   A few weeks back.

9          Did the prosecutor at the time that they

10  spoke to you, did they ever tell you what this

11  case was about?

12      A   No.

13      Q   You don't know that the prosecutor's

14  claim is that Mr. O'Hara never ever lived in the

15  basement area of your house?

16      A   I have no idea about that.

17      Q   This is the first time you heard about

18  that, right?

19      A   Yes, sir.

20      Q   All right.  So, it's very important that

21  you are very accurate here.

22      A   Sure.

23      Q   You will be as accurate as possible?

24      A   Right.

25      Q   And truthful?

401

Vales-cross-Hernandez

 2    A    Yes.

 3    Q    Now, you understand what's involved
 4  here?

 5    A    Okay.

 6    Q    You were married to Raymond Vales,
 7  correct?

 8    A    Yes, I am.

 9    Q    And you have children from him?

10    A    Yes.

11    Q    David?

12    A    Yes.

13    Q    Was it Mark?

14    A    Mark.

15    Q    And a daughter?

16    A    Dawn.

17    Q    And one of those had a child?

18    A    Excuse me?

19    Q    One of those had a child?

20    A    At that time when I left.

21    Q    While you were living at 553 47th
22  Street?

23    A    The two boys.

24    Q    Right.

25    A    My two sons, they each had children but

402

1                    Vales-cross-Hernandez

2    then two within two years I think.

3         Q    You know you are not on trial here.  You

4    realize that?

5         A    Yes, I'm fine.

6         Q    While you were living at 553 47th

7    Street, one of your children Mark or David, I

8    think it was Mark?

9         A    It had to be Mark.

10        Q    Had a little boy?

11        A    Right.

12        Q    And didn't you after he had this child,

13   didn't you fix up the basement 'area so that he

14   could stay there with his wife?

15        A    No.

16        Q    Never?

17        A    No, because it was too cold downstairs.

18   There was no heat.

19        Q    So, you know who Yvette Aguirre is?

20        A    Yes.

21        Q    If Yvette Aguirre testified in this case

22   that there was a basement apartment down there,

23   not an apartment but rooms that you set up and

24   that you renovated so that Mr. -- so that Mark

25   could live there with his wife and daughter she

000482

403

1                          Vales-cross-Hernandez

2    would be mistaken?

3        A    No, it's not untruth.  He wanted to but

4    I won't allow it because it was too cold

5    downstairs.

6        Q    Let me be very specific as to what

7    Ms. Aguirre testified.

8            MR. O'MARA:  Your Honor, I'm going

9            to object to that.

10           THE COURT:  Sustained.

11       Q    If Ms. Aguirre indicated that there was

12   a basement apartment down there, that you and your

13   husband had renovated the area so that your son

14   could live in that area with his new born child an

15   his wife --

16       A    Right.

17       Q    -- would that be an inaccurate statement

18   by Ms. Aguirre?

19       A    Yvette is a friend of mine and I won't

20   call her a liar but it's not what I did.

21       Q    What did you do?

22       A    The basement was like that from the time

23   I moved in.

24       Q    So, you are saying you did no repair

25   work whatsoever?

404

1                    Vales-cross-Hernandez

2        A    No.

3        Q    And that your son Mark never lived down

4    there?

5        A    No.  He wanted to but I wouldn't allow

6    it, not with the baby.

7        Q    At no time?

8        A    No.  He lived upstairs and then he moved

9    out and then he came back gain.

10        Q    So, Ms. Aguirre's statement about that

11    is completely false?

12                    MR. O'MARA:  Objection.

13                    THE COURT:  Sustained.

14        Q    You are stating that her statement is

15    completely false?

16        A    She misunderstood then because there was

17    no apartment downstairs.

18        Q    Not an apartment.  It would be illegal

19    for you -- it would be illegal for you to have an

20    apartment down in the basement?

21        A    Of course.

22        Q    We are not worried about whether you had

23    an apartment.  What I'm interested in knowing,

24    ma'am, and it's very important to know, is did you

25    accommodate your son by fixing up that basement

405

Vales-cross-Hernandez

1

2    area so that he could live down there until he

3    could arrange for better living accommodations for

4    his son?

5         A    No.

6         Q    Any claim by any witness in this trial

7    that there were any rooms down there that were

8    livable would be false claims?

9         A    Exactly because it wasn't liveable.

10              MR. HERNANDEZ:  Thank you.

11              MR. O'MARA:  I have no redirect.

12              That's the People's case.

13              THE COURT:  Thank you.

14              You are excused.

15              MR. HERNANDEZ:  I am sorry, Judge,

16         can I ask.

17              THE COURT:  Yes.

18    BY MR. HERNANDEZ:

19         Q    Where does your husband work?

20         A    He works in Bricktown.

21         Q    Brooklyn?

22         A    Bricktown where we live.

23         Q    Was your husband notified about this

24    case?

25         A    No.

**LANIGAN, PATRICK**

| | |
|---|---|
| **From:** | United Airlines, Inc. <unitedairlines@united.com> |
| **Sent:** | Wednesday, June 01, 2016 12:21 PM |
| **To:** | LANIGAN, PATRICK |
| **Subject:** | eTicket Itinerary and Receipt for Confirmation FGZR6D |

## Receipt for confirmation FGZR6D

☒ United logo link to home page

# Confirmation: FGZR6D

Check-In >

# Issue Date: June 01, 2016

## Traveler information

| Traveler | eTicket Number | Frequent FlyerNumber | Seats |
|---|---|---|---|
| LANIGAN/PATRICK | 0162494702377 | UA-XXXXX103 | 8F/12E |
| ZUFFI/ROBERT | 0162494702378 | UA-XXXXX397 | 10F/11F |

# FLIGHT INFORMATION

| Day, Date | Flight | Class | Departure City and Time | Arrival City and Time | Aircraft | Meal |
|---|---|---|---|---|---|---|
| Wed, 08JUN16 | UA1937 | W | NEWARK, NJ (EWR - LIBERTY) 6:40 AM | LAS VEGAS, NV (LAS) 9:24 AM | 737-800 | Purchase |
| Fri, 10JUN16 | UA548 | B | LAS VEGAS, NV (LAS) 5:56 AM | NEWARK, NJ (EWR - LIBERTY) 1:55 PM | 737-800 | Purchase |

# FARE INFORMATION

**Fare Breakdown**

- Airfare:

**Form of Payment:**
AMERICAN EXPRESS
Last Four Digits ▪▪▪▪

1,115.34

USD

- U.S. Transportation Tax:

83.66

- U.S. Flight Segment Tax:

  8.00

- September 11th Security Fee:

  11.20

- U.S. Passenger Facility Charge:

  9.00

- Per Person Total:

  1,227.20

  USD

- eTicket Total:

  2,454.40

  USD

The airfare you paid on this itinerary totals: 2,230.68 USD

The taxes, fees, and surcharges paid total: 223.72 USD

Fare Rules:     Additional charges may apply for changes in addition to any fare rules listed.

NONREF/0VALUAFTDPT/CHGFEE
Cancel reservations before the scheduled departure time or TICKET HAS NO VALUE.

Additional
Charges:

Wed., Jun. 1, 2016/Visa ▮ was charged 113 USD for the SST / EDD 01629260384706
113.00 USD for: Economy Plus Seat

Wed., Jun. 1, 2016/MasterCard ▮ was charged 113 USD for the SST / EDD
01629260377290
113.00 USD for: Economy Plus Seat

Wed., Jun. 1, 2016/MasterCard ▮ was charged 93 USD for the SST / EDD
01629260377286
93.00 USD for: Economy Plus Seat

Wed., Jun. 1, 2016/Visa ▮ was charged 93 USD for the SST / EDD 01629260345801
93.00 USD for: Economy Plus Seat

## Baggage allowance and charges for this itinerary.

### Baggage fees are per traveler

| Origin and destination for checked baggage | 1st bag | 2nd bag | Maximum weight and dimensions per |
|---|---|---|---|

DAVID ALLEN
VALES

SUSAN VALES

5/19/2016



JOSEPHINE

CON-ED

MARK VALES

DAVID VALES

REBECCA VALES

MARK ANTHONY VALES

LAUREN VALES

DAWN MARIE MORIARTY

MARK VALES

SUSAN - VALES

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE

## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| SID Case #:  C1101/2016 | Bureau ID #:  12525/96 |
| Prepared by:  LANIGAN, PATRICK | Title:  Detective Investigator |
| Prepared Date:  June 30, 2016 | Report #:    11 |
| Subject:        Interview of Josephine Vales | |

On 06/08/2016, at approximately 1210 hours, Detectives Lanigan and Zuffi were present at ███████████ Las Vegas, Nevada, for the purpose of speaking with Josephine Vales. Ms. Vales was one of the former owners of 553 47th Street, Brooklyn, who sold the property to Megaly Lucas. Upon arriving at this location we were met by Ms. Vales where she invited us into her home. The writer explained to Ms. Vales the nature of the visit and inquired about the layout of the basement relating to the 553 47th Street property. Ms. Vales relayed the following information; she remembered when officials from the District Attorney's Office visited her when she was living in Brick, New Jersey who inquired about her property as well. She stated that she did not rent the basement area however she did renovate the basement by adding walls, there was a toilet, a kitchen with a sink, but they did not install a heating system down there. The reason for the renovation was to have a recreational place to hang out because they had a pool in the back yard. Ms. Vales further stated that her son wanted to move down there with his girlfriend and their newborn child but she decided against that because of the heat situation and also that her grandchild was having some health issues at that time. In closing, Ms. Vales stated that the basement was livable and could have been utilized as an apartment if heat was provided. The writer provided Ms. Vales with his business card and contact information.  A.D.A. Hale notified of this recent development.

**End of Report**

| Detective:        LANIGAN, PATRICK | Deputy Chief: |
| Supervisor: | Assistant Chief: |

Indicies not needed(subpoena only)

Classification:  Follow Up - Case Enhancement

**Additional Personnel Present**

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE

## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn. NY

| SID Case #: C1101/2016 | Bureau ID #: 12525/96 |
|---|---|
| Prepared by: LANIGAN, PATRICK | Title: Detective Investigator |
| Prepared Date: June 27, 2016 | Report #: 10 |
| Subject: Interview of Vicki Lynn Guveyian | |

On 05/25/2016, at approximately 1500 hours, Detectives Lanigan, Zuffi and A.D.A. Hale were present on the 20th floor conference room K.C.D.A.O. for the purpose of speaking with witness, Vicki Lynn Guveyian, girlfriend of John O'Hara. This interview commenced at approximately 1500 hours, and concluded at approximately 1542 hours. This interview was recorded and agreed to by all parties. This interview is regarding case 1101/16, and the recording was vouchered and carried under voucher number W24441. A copy of this recording was given to A.D.A. Mark Hale for his records.

**End of Report**

Detective:    LANIGAN, PATRICK                Deputy Chief:

Supervisor:                                   Assistant Chief:

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT

| SID Case #: C1101/2016 | Bureau ID #: 12525/96 |
|---|---|
| Prepared by: LANIGAN, PATRICK | Title: Detective Investigator |
| Prepared Date: June 27, 2016 | Report #: 9 |
| Subject: Phone message left Megaly Lucas | |

Renaissance Plaza at
350 Jay Street
Brooklyn, NY

On 05/25/2016, at approximately 0945 hours, Detectives Zuffi and Lanigan were present at ▮▮▮ for the purpose of speaking with witness, Megaly Lucas. At this time after ringing the bell and knocking on the door of this private home no one answered. The writer left a business card and left a message on the phone number listed. After arriving back to the K.C.D.A.O. a message was left by Lucas stating that she does not want to cooperate with this investigation. A.D.A. Hale notified of this recent development.

**End of Report**

| Detective: | LANIGAN, PATRICK | Deputy Chief: |
|---|---|---|
| Supervisor: | | Assistant Chief: |

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

## KINGS COUNTY DISTRICT ATTORNEY'S OFFICE

## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| SID Case #: C1101/2016 | Bureau ID #: 12525/96 |
| Prepared by: LANIGAN, PATRICK | Title: Detective Investigator |
| Prepared Date: June 24, 2016 | Report #: 8 |
| Subject: Grace Phillips | |

On 05/23/16, at approximately 1015 hours, the writer contacted Grace Phillips of ▮▮▮▮▮▮▮▮▮ via telephone number ▮▮▮▮▮ regarding this investigation. Phillips, formally of 557 47th Street, Brooklyn was a neighbor of Megally Lucas during the time of this original investigation. After several attempts calling this potential witness a woman who identified herself as being Grace Phillips finally answered the telephone. The writer asked Phillips if she ever lived at 557 47th Street, Brooklyn, and her response was that she does not remember for she suffered a stroke. When the writer mentioned the name of a neighbor Yvette Aguirre she immediately stated that she sees her daughter on the cable news network. At this time the writer realized that Phillips does not remember that part of her life for Yvette Aguirre's daughter is employed as a reporter on New York One television. At this time the writer had no further questions.

---

**End of Report**

| Detective: LANIGAN, PATRICK | Deputy Chief: |
| Supervisor: | Assistant Chief: |

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

## KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| | |
|---|---|
| **SID Case #:** C1101/2016 | **Bureau ID #:** 12525/96 |
| **Prepared by:** LANIGAN, PATRICK | **Title:** Detective Investigator |
| **Prepared Date:** June 24, 2016 | **Report #:** 7 |
| **Subject:** Yvette Aguirre | |

On 05/20/16, at approximately 1100 hours, A.D.A. Hale, Detectives Lanigan and Zuffi were present on the 20th floor conference room for the purpose of interviewing witness Yvette Agurirre. Aguirre, of 559 47th Street, Brooklyn, lived, and still lives a couple of doors away from the property in question. This interview was recorded and agreed to by all parties. This interview commenced at approximately 1100 hours and concluded at approximately 1145 hours. This recording was vouchered at the K.C.D.A.O. 18th floor wire room carried under voucher number 24431.  A copy of this recording will be given to A.D.A. Mark Hale for his files.

**End of Report**

Detective:    LANIGAN, PATRICK                Deputy Chief:

Supervisor:                                    Assistant Chief:

**Indicies not needed(subpoena only)**

**Classification:** Follow Up - Case Enhancement

**Additional Personnel Present**

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| | |
|---|---|
| **SID Case #:** C1101/2016 | **Bureau ID #:** 12525/96 |
| **Prepared by:** LANIGAN, PATRICK | **Title:** Detective Investigator |
| **Prepared Date:** June 24, 2016 | **Report #:** 6 |
| **Subject:** Quetzal Martinez | |

On 05/17/2016 the writer attempted to locate witness Quetzal Martinez who reportedly resided at 553 47th Street, Brooklyn, New York during the time of the original investigation. This current investigation reveals that Mr. Martinez expired on 01/28/2010 according to a death records search.

**End of Report**

**Detective:**     LANIGAN, PATRICK                **Deputy Chief:**

**Supervisor:**                                       **Assistant Chief:**

**Indicies not needed(subpoena only)**

**Classification:** Follow Up - Case Enhancement

**Additional Personnel Present**

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| SID Case #: C1101/2016 | Bureau ID #: 12525/96 |
|---|---|
| Prepared by: LANIGAN, PATRICK | Title: Detective Investigator |
| Prepared Date: June 24, 2016 | Report #: 5 |
| Subject: Robert Lozano | |

On 05/18/2016, at approximately 0745 hours, the writer contacted witness, Robert Lozano, regarding this investigation via telephone number ████████ Lozano relayed the following information; that he, Lozano, did reside at 553 47th Street, Brooklyn, and while he lived there John O'Hara did not. He then stated that there was a tennant living in the basement for a short period of time but he did not reveal the name of that person. Lozano further states that he did observe O'Hara drinking coffee in front of the building and taking pictures of the building a couple of times but thats all he knows. In closing, Lozano does not wish to speak about this investigation anymore and will not cooperate.

**End of Report**

Detective:       LANIGAN, PATRICK          Deputy Chief:

Supervisor:                                Assistant Chief:

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| SID Case #: | C1101/2016 | Bureau ID #: | 12525/96 |
|---|---|---|---|
| Prepared by: | LANIGAN, PATRICK | Title: | Detective Investigator |
| Prepared Date: | June 24, 2016 | Report #: | 4 |
| Subject: | Rafael Munoz | | |

On 05/17/2016, at approximately 1110 hours, the writer contacted witness Rafael Munoz regarding this case via telephone number ▓▓▓▓▓▓ The writer informed Munoz of the nature of this phone call when he stated the following; that this was a political case and a waste of taxpayers' money. He further stated that when he resided at 553 47th Street O'Hara did not live there and that he is trying to get over. He continued saying that Robert Lozano resided on the first floor and that there was a basement in the building but did not elaborated regarding the condition of it. In closing Munoz stated that O'Hara is lying and that he, Munoz, does not wish to get involved in this case again.

**End of Report**

| Detective: | LANIGAN, PATRICK | Deputy Chief: | |
| Supervisor: | | Assistant Chief: | |

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| SID Case #: C1101/2016 | Bureau ID #: I2525/96 |
| Prepared by: LANIGAN, PATRICK | Title: Detective Investigator |
| Prepared Date: June 24, 2016 | Report #: 3 |
| Subject: attempte to speak with Yvette Aguirre | |

On 05/16/2016, at approximately 1530 hours, the writer was present at 559 47th Street, Brooklyn for the purpose of speaking with Yvette Aguirre, witness, regarding this case. Upon arriving at this location Mr. Joe Aguirre, husband of Yvette, answered the door and stated that his wife was not home. After the writer informed him of the nature of this visit  Aguirre stated that he remembered when John O'Hara  resided at 553 47th Street and that the basement quarters was livable. At this time the writer left his business card and stated that he would like to speak with his wife when she is available.

**End of Report**

| Detective: | LANIGAN, PATRICK | Deputy Chief: |
| Supervisor: | | Assistant Chief: |

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

## KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| SID Case #: C1101/2016 | Bureau ID #: 12525/96 |
| Prepared by: LANIGAN, PATRICK | Title: Detective Investigator |
| Prepared Date: June 24, 2016 | Report #: 2 |
| Subject: Attempt to locate Magaly Lucas | |

On 05/16/2016, at approximately 1600 hours, the writer called witness Magaly Lucas via telephone number ▮▮▮▮▮▮ regarding this investigation. At the time of the original investigation Ms. Lucas was the owner of 553 47th Street, Brooklyn, New York, and during that time she was the girlfriend of John O'Hara. The writer left a message for Ms. Lucas to call.

**End of Report**

Detective:    LANIGAN, PATRICK        Deputy Chief:

Supervisor:                Assistant Chief:

Indicies not needed(subpoena only)

Classification: Follow Up - Case Enhancement

Additional Personnel Present

# KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
## INVESTIGATIVE REPORT



Renaissance Plaza at
350 Jay Street
Brooklyn, NY

| | |
|---|---|
| **SID Case #:** C1101/2016 | **Bureau ID #:** 12525/96 |
| **Prepared by:** LANIGAN, PATRICK | **Title:** Detective Investigator |
| **Prepared Date:** June 24, 2016 | **Report #:** 1 |
| **Subject:** Received Case | |

On 05/16/2016 the writer received case 1101/16 for investigation. This case is assigned to A.D.A. Mark Hale of the Conviction Review Unit. The writer is requested to locate witnesses to be interviewed regarding Indictment number 13525/1996, case of John O'Hara.

**End of Report**

| | |
|---|---|
| **Detective:** LANIGAN, PATRICK | **Deputy Chief:** |
| **Supervisor:** | **Assistant Chief:** |

**Indicies not needed(subpoena only)**

**Classification:** Follow Up - Case Enhancement

**Additional Personnel Present**

Editorial: Clear this man - NY Daily News                    Page 1 of 3

Q  ☰ SECTIONS                                 | OPINION                    f 🐦 📷 ✉

# Clear John O'Hara's wrongly stained record

f  🐦  ✉
13




EDITORIALS
NEW YORK DAILY NEWS Sunday,
January 18, 2015, 4:05 AM

It's time to clear the record of John O'Hara, an attorney and gadfly who was turned into a felon by the persecuting machinations of former Brooklyn District Attorney Joe Hynes.

O'Hara has filed a petition for exoneration in Brooklyn Supreme Court. Hynes' successor, DA Ken Thompson, should give his blessing and a judge grant approval forthwith.

As this page has documented, O'Hara persistently annoyed both Hynes and Hynes' patrons in the Brooklyn Democratic machine. Hynes struck back by indicting O'Hara for voting from the wrong address — not a fake address, but the address of his girlfriend who lived 14 blocks away.

Vengefully, Hynes brought O'Hara to trial three times before convicting him on seven counts; he was fined $20,000, sentenced to 1,500 hours of community service and disbarred.

At that moment, O'Hara joined Susan B. Anthony as the only two New Yorkers ever to be convicted of illegal voting.

"Mr. O'Hara, accurately it appears, claims that the machine went gunning for him," reported a panel of lawyers who successfully recommended in 2009 that the courts restore his law license.

Now, O'Hara is seeking to have his case washed out on grounds of selective prosecution. Papers filed by his lawyer, Joel Rudin, highlight Hynes' hypocrisies.

Brooklyn
Custody
Lawyers

Seasoned Divorce/C
Lawyer When Qual
Experience Matter




Mortgage
Take Huge
15-Year Fixed    30-Y
2.75% APR    3.4
Calculate Payme



Editorial: Clear this man - NY Daily News

Hynes, who owns a condo in Breezy Point, Queens, registered to vote from the DA's office in Brooklyn.

His former top assistant district attorney registered to vote from his parents' house in Queens while living with his family in Long Island.

Hynes, who also convicted O'Hara of filing a false instrument, forged his own wife's signature on a legal document.

As a candidate, Thompson ripped Hynes' "double standard" in prosecuting O'Hara. His office now says it will "determine if his conviction should stand."

It should not. Thompson must say so, and a judge must give O'Hara long-overdue justice.

✉ Send a Letter to the Editor

**JOIN THE CONVERSATION:**    f    𝕨



**Sponsored content on NYDailynews**



Unlock the Equity in Your Home
with a HELOC

BY LENDINGTREE.COM

Borrow up to 85% of your home
equity, rates as low as 3.74% APR
variable. Get free offers in minutes!

**LANIGAN, PATRICK**

| | |
|---|---|
| **From:** | MURPHY, EDWIN |
| **Sent:** | Tuesday, June 07, 2016 2:48 PM |
| **To:** | LANIGAN, PATRICK |
| **Subject:** | RE: Patty please resend the case you need assigned |

C1101/16

**From:** LANIGAN, PATRICK
**Sent:** Tuesday, June 07, 2016 1:53 PM
**To:** MURPHY, EDWIN
**Subject:** RE: Patty please resend the case you need assigned

Just sent it, Thanks Eddie

**From:** MURPHY, EDWIN
**Sent:** Tuesday, June 07, 2016 12:46 PM
**To:** LANIGAN, PATRICK
**Subject:** Patty please resend the case you need assigned

*Deputy Chief Edwin Murphy*
*Commanding Officer*
*Special Investigations Division*
*Kings County District Attorney's Office*
*350 Jay St Brooklyn NY 11201 Rm 1812*
*718 250-2784*
*347 563-3052*

Office of The
**DISTRICT ATTORNEY**
Kings County
**WIREROOM**

VOUCHER # W_____

CASE #_____

## MEDIA EVIDENCE VOUCHER AND CUSTODY RECORD

**1. SET-UP OF RECORDER**

DATE: _____ | TIME: _____

DEVICE: AUDIO ____ VIDEO ____  MAKE _____ MODEL _____ SERIAL # _____

PRINT NAME/TITLE _____  SIGNATURE _____

SHIELD # _____  COMMAND _____

**2. IF TAKEN OUT OF OFFICE**

DATE: _____ | TIME: _____

BY WHOM: _____

PRINT NAME/ TITLE: _____  SIGNATURE _____

SHIELD # _____  COMMAND _____

**3. DEVICE TRANSPORTED BACK TO WIREROOM**

DATE: _____ | TIME: _____

BY: _____

PRINT NAME/TITLE: _____  SIGNATURE _____

SHIELD # _____  COMMAND _____

PRINT RECEIVED BY : _____  SIGNATURE _____

DATE / TIME: _____  COMMAND: _____

**4. DUPLICATION / DOWNLOAD**

DATE: _____ | TIME: _____

BY WHOM:

PRINT NAME / TITLE _____  SIGNATURE _____

SHIELD # _____  COMMAND _____

**5. DISPOSITION OF EVIDENCE / MEDIA:**

DATE: _____ | TIME: _____

SEALED & VOUCHERED BY:    PRINT NAME: _____  SIGNATURE _____

SHIELD # _____  COMMAND _____

WHERE STORED : _____

**6. REMARKS:**

(WHO WORE OR UTILIZED DEVICE)
NAMES OF THOSE INDIVIDUALS RECORDED, IF AID UNIT MONITORED BY WHOM:

_____

_____

_____

_____

_____

_____

COPY: DISTRIBUTION:    WHITE:     REMAINS WITH TAPE
                       YELLOW:    WIREROOM FILE
                       PINK:      ADA
                       GOLD:      OFFICER ASSIGNED

RAC. 25 (REV. 4/98)

000625

Office of The
**DISTRICT ATTORNEY**
Kings County
**WIREROOM**

VOUCHER # W _____

CASE # _____

## MEDIA EVIDENCE VOUCHER AND CUSTODY RECORD

**1. SET-UP OF RECORDER**

| DATE: | | TIME: |
|---|---|---|

**DEVICE:** AUDIO ____ VIDEO ____ MAKE _____ MODEL _____ SERIAL# _____

PRINT NAME/TITLE _____ SIGNATURE _____

SHIELD # _____ COMMAND _____

**2. IF TAKEN OUT OF OFFICE**

| DATE: | | TIME: |
|---|---|---|

**BY WHOM:**

PRINT NAME/ TITLE: _____ SIGNATURE _____

SHIELD # _____ COMMAND _____

**3. DEVICE TRANSPORTED BACK TO WIREROOM**

| DATE: | | TIME: |
|---|---|---|

BY:

PRINT NAME/TITLE: _____ SIGNATURE _____

SHIELD # _____ COMMAND _____

PRINT RECEIVED BY : _____ SIGNATURE _____

DATE / TIME: _____ COMMAND: _____

**4. DUPLICATION / DOWNLOAD**

| DATE: | | TIME: |
|---|---|---|

**BY WHOM:**

PRINT NAME / TITLE _____ SIGNATURE _____

SHIELD # _____ COMMAND _____

**5. DISPOSITON OF EVIDENCE / MEDIA:**

| DATE: | | TIME: |
|---|---|---|

SEALED & VOUCHERED BY: PRINT NAME: _____ SIGNATURE _____

SHIELD # _____ COMMAND _____

WHERE STORED : _____

**6. REMARKS:**
(WHO WORE OR UTILIZED DEVICE)
NAMES OF THOSE INDIVIDUALS RECORDED. IF AID UNIT MONITORED BY WHOM:

_____
_____
_____
_____
_____
_____

| COPY: DISTRIBUTION: | WHITE: | REMAINS WITH TAPE |
|---|---|---|
| | YELLOW: | WIREROOM FILE |
| | PINK: | ADA |
| RAC. 25 (REV. 4/08) | GOLD: | OFFICER ASSIGNED |

000626

# LAW OFFICES OF JOEL B. RUDIN, P.C.

600 FIFTH AVENUE

10TH FLOOR

NEW YORK, NEW YORK 10020

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

STEVEN R. AQUINO

GEORGE R. GOLTZER
(Of Counsel)
JABBAR COLLINS
(Legal Analyst)

December 11, 2015

Mark Hale
Chief, Conviction Review Unit
Kings County District Attorney's Office
Renaissance Plaza
350 Jay Street
Brooklyn, New York 11201

Re: *People v. John O'Hara*
*Ind. No. 13525/96*

Dear Mr. Hale:

Following up on our recent meeting, I am writing to provide information that I believe will assist in your re-investigation of the factual basis for John O'Hara's conviction (even though I believe we already have presented a compelling basis to overturn his conviction for selective prosecution). I understand you now have all three trial transcripts. If this is not the case, please let me know and I'll forward to you any missing transcripts that are in my possession. I am meanwhile forwarding to you the transcript of the civil proceedings in *Dennis L. Pol, et al., v. The Board of Elections of the City of New York and John O'Hara*, Index No. 23414/94 (Sup. Ct., Civ. Term, Part 15) (Aronin, J.S.C.) – the election law hearing, brought by allies of Assemblyman Brennan, which concerned, in part, the bona fides of Mr. O'Hara's residency on 47th Street. My client and I appreciate that you wish to dig into the merits of the underlying criminal prosecution and conviction, and to that end provide the following:

## Affirmative Evidence of Innocence

John O'Hara, now 54 years of age, is an attorney who was never convicted of any crime except for this case. He lived in the same

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 2

neighborhood in Brooklyn, near where his grandparents settled after emigrating from Ireland almost 100 years ago, drove a cab to put himself through law school, volunteered for and served on his local community board until he was convicted, and was constantly involved in political affairs in his community. He battled for years on behalf of Judge John Phillips, whose estate was plundered by friends of District Attorney Hynes, opposed Hynes and his allies for years, and paid a dear price, suffering three trials on the false residence charges and ultimately a felony conviction that cost him his career in law and in politics. After his law license was restored, he worked without fee as part of a successful effort to overturn the wrongful conviction of David McCallum. Although his career has been crippled, he now wishes to clear his name and cleanse his record.

As you know, the People, during the third trial, argued the theory that Mr. O'Hara did not legitimately reside at the 47th Street address at all – that the basement there was uninhabitable, that his claim that he lived there during 1992-93 was a sham, and that he really lived at a 61st Street rent-stabilized apartment that he maintained in his name. This theory was supported by two witnesses who lived upstairs at the 47th Street building, Rafael Munoz and Robert Lozano, and a rebuttal witness, Josephine Vales. The entire case came down to their credibility. However, their testimony was false. Numerous credible witnesses testified, at this trial (and the previous trials), that they saw Mr. O'Hara at the 47th Street basement apartment under circumstances suggesting he was living there, and O'Hara himself testified he lived there for most of one year, candidly acknowledging his purpose in doing so was to establish bona fide residency in the election district following a redistricting – conduct that was lawful.

Meanwhile, there are important witnesses who did not testify, apparently because they were intimidated by the D.A.'s office into fearing for their liberty or livelihood if they did so, and also because of the way in which the prosecution sprung on the defense, without warning, the *false* rebuttal testimony of Ms. Vales. Meanwhile, the jury did not hear of the People's abusive tactics in investigating this case and trying to discourage defense-favorable witnesses from testifying – tactics (all too familiar from the Hynes

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 3

era) which had great bearing on the integrity of the overall prosecution. Had
the jury heard all the relevant witnesses (and had the conduct of the
prosecution been more responsible), the result of the trial likely would have
been different. The witnesses I urge you to contact include the following:

   1. **Vicki Lynn Guveiyian**
      10 Rook Court
      Egg Harbor Township, New Jersey 08234
      (609) 226-2644 (cell)

   Ms. Guveiyian has been O'Hara's girlfriend since 1990, and she will
cooperate with you. As I understand it, she will confirm that she was in the
47th Street house on multiple occasions during 1992-93 and that O'Hara was
living there. (Of course, as discussed below, there
was quite a history between O'Hara and Brennan, and Brennan was a
moving force behind O'Hara's prosecution.) About a month later O'Hara was
indicted. Ms. Guveiyian never testified at his trials because of fear she would
lose her license and source of income based upon her relationship with
O'Hara and out of fear of the D.A.'s vindictiveness.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 4

### 2. Magaly Lucas
226 East 54th Street
New York, N.Y. 10022
(212) 486-7738

Magaly Lucas was O'Hara's girlfriend through 1990. They lived together at the 61st Street apartment while they were in law school from 1985 through 1990. In 1990 she bought the house on 47th Street. During that year, they broke up. She owned the 47th Street house from 1990 through November 1993. In 1992 she rented the upstairs to Munoz, Lozano, and Quetzal Martinez, in exchange for payments that equaled her monthly mortgage obligation, and the basement apartment to O'Hara, with whom she remained on good terms, in exchange for his agreement to assist her in collecting rent from the other tenants and in watching the property. She sold the building to the three men in November 1993 in exchange for their agreement to pay off her mortgage. The deed conveying the property to them was publicly filed. Exh. A, attached hereto. At the time of the closing, O'Hara moved out.

Following the closing, and during the next few years, Munoz, Lozano and Martinez made no mortgage payments and allowed the house to deteriorate. (Munoz and Lozano, in their testimony, admitted that, upon closing on the house, they immediately stopped making mortgage payments, using as an excuse that they never received the deed. However, as O'Hara established at the first trial, the deed was on file at the County Clerk's Office, and was readily available to the men). Ms. Lucas's lender initiated a foreclosure action in May 1994, under Index No. 17589/94. It sued Ms. Lucas as well as Munoz, Lozano and Martinez, attached the property through a lis pendens, and then refiled the foreclosure action in 1996. Excerpts of the foreclosure papers are attached as Exh. B. Lozano testified that the men continued to live there (for free) at least through 1997. Third Trial Tr. 198.

The DA's office, crediting Lozano's claims that he and his friends had purchased the property in 1992 and were the owners during the period O'Hara claimed residency there, did not contact Magaly Lucas until October

L A W   O F F I C E S   O F   J O E L   B .   R U D I N ,   P . C .

Mark Hale
December 11, 2015
Page 5

21, 1996, which is the day the D.A.'s Office arrested O'Hara.  She told D.I.
Allan Presser that O'Hara had lived at 47th Street while she owned it and
that she had not conveyed the property until November 1993.  However, as
she later explained in the first of her two affidavits, which was submitted to
the court as part of a post-trial motion to vacate O'Hara's first conviction in
1997, she was intimidated by the D.A.'s Office into not testifying.  *See* Exh. C.

The last time O'Hara spoke with ex-girlfriend Magaly Lucas (until now)
was after his initial conviction was reversed in 1998 and he was facing a
retrial.  She was upset that the D.A.'s Office had just subpoenaed her tax
returns, was still smarting from the Office's intimidating tactics during the
first trial, and understandably didn't want to be involved with his case
anymore.  She was away when the third trial occurred.  However, after
O'Hara again was convicted, she gave another affidavit, dated September 22,
1999 (attached as Exh. D), in support of another 330 motion.  This affidavit
refuted the false trial testimony of Josephine Vales, a last-minute People's
rebuttal witness, who claimed the cellar or basement space was never
occupied and was uninhabitable.

Attached to Ms. Lucas's affidavit was an appraisal report on file with
her original mortgage lender, Green Point Saving Bank, noting that there
were three apartments:  a duplex, a second floor, and a *"potential rentable in
cellar."*  Exh. D (emphasis added).   (O'Hara also submitted the affidavit of
Denise Murray, *see* Exh. E, who swore -- contrary to Mrs. Vales' false
testimony -- that the basement apartment had been renovated and that Ms.
Murray would eat dinners there with Mrs. Vales' son and daughter-in-law
before Vales sold the house to Ms. Lucas.  The circumstances of the defense
obtaining the Lucas and Murray affidavits after trial are explained in
counsel's 330 motion papers, which are in your file.  The court denied
O'Hara's 330 motion on procedural grounds.)

O'Hara recently called Ms. Lucas, after not being in touch with her for
17 years, to see whether she would be willing to speak with you.  At present,
she teaches and practices law.  She apparently is still wary of any
involvement with your office but I believe you may be able to coax her to

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 6

cooperate with you based upon your track record of independently reviewing
convictions obtained under the previous District Attorney's administration.

### 3. Yvette Aguirre
559 47th Street
Brooklyn, N.Y. 11220
(718) 435-0091 (home)

Mrs. Aguirre was O'Hara's next door neighbor at 47th Street. Her house
was two doors away. She testified at all three trials.

Mrs. Aguirre is a retired school principal who knew O'Hara from the
community board and local politics. She usually supported his opponents. She
testified at all three trials that she saw him coming and going from the
house, and once came to the house to invite him to a party for her daughter
and he came out of the basement apartment. She wasn't in the apartment
while O'Hara lived there but had been there previously when Josephine
Vales owned the house and knew – contrary to her false testimony – it was
habitable.

At his sentencing, Mr. O'Hara alleged that, after his first conviction
was reversed by the Appellate Division in 1998, Mrs. Aguirre was scheduled
to receive an award from District Attorney Hynes at some event, but Dino
Amoroso, counsel to District Attorney Hynes, called to threaten her that if
she testified again for O'Hara she wouldn't get the award, and sure enough,
although her name was printed on the program, she didn't get it. She
testified anyway. But Mr. Amoroso's tactics were highly revealing of how
political this case was and of the lengths the Office was willing to go to
ensure a conviction.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 7

### 4. Juan Perez
500 Ave L, NW Apartment 1010
Winter Haven, Florida 33881
(646) 226-8620

Juan Perez testified at O'Hara's first trial, even though he was a former political opponent. He came to the 47th Street house on Election Day in November 1993. They were campaigning that day for David Dinkins' re-election as Mayor.

Mr. Perez was scheduled to testify at O'Hara's second trial, but my understanding is that ADA O'Mara warned him that he was subject to prosecution for perjury and as a result he didn't show up. O'Hara recently spoke to him and he indicated he was willing to speak with your office.

### 5. Grace Phillips (we have no contact information).

She was the next door neighbor at 47th Street and testified at the first trial about seeing O'Hara at the house. She said that construction by the new upstairs occupants damaged the house and that she saw dozens of crack vials outside it (after O'Hara had left) (*see* First Trial Tr. 359-71). She testified that, shortly before Magaly Lucas purchased the house and she saw O'Hara apparently living in it, the basement apartment was in "perfect" condition (Third Trial Tr. 246-261). (This was consistent with the affidavit of Denise Murray, Exh. E.)

### 6. James McCall
8701 Shore Road – Apt: 136
Brooklyn, New York 11209
(718) 833-0111

He was O'Hara's election law attorney in 1993 and visited him at the 47th Street residence during that time. My understanding is the defense did not call him out of fear that the prosecution would insinuate fraud allegations in cross-examination which would prejudice the defense even though they

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 8

weren't true.  He can explain as well the election law litigation that O'Hara
was immersed in during this period.

### 7. **Denise Murray** (deceased in 2014)

Her affidavit, see Exh. E, together with the affidavit of Magaly Lucas
and the appraisal report, refutes the false rebuttal testimony of Josephine
Vales that the D.A.'s Office used to convict O'Hara at the third trial.  Vales'
testimony that the basement was never habitable as an "apartment" also is
contradicted by the testimony during the first trial of People's witness
Munoz, who acknowledged that the basement was "an apartment" and
included a stove, refrigerator, sink and bathroom (Tr. 226-27), and by his
testimony during the 1994 civil proceeding (Tr. 37) (responding, when asked
"[h]ow many units are in the building," that "[t][here's three floors and the
basement" and that he rented them out).

### 8. **Other witnesses.**

Any of the other witnesses who testified in O'Hara's favor at the three
trials.

### 9. **Documentary Evidence showing residency at 47th Street**
(page references are to the first trial):

American Express monthly statements from February to September
1993 mailed to 47th Street, introduced at trial as Exh. F and
attached hereto also as Exh. F (*see* T. 350-352);

Monthly Chase bank statements from February to September 1993
mailed to 47th Street crime scene, introduced at trial as Exh. G and
attached hereto also as Exh. G (*see* T. 341-345);

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 9

> OCA attorney registration with change of residence to 47th Street
> during normal biennial registration date of March 1993, introduced
> at trial as Defense Exh. D and attached here as Exh. H (*see* T. 475-
> 77);

> Documents from NYC Campaign Finance Board listing 47th Street
> as O'Hara's residence, introduced at trial as Exh. B and reproduced
> here as Exh. I (*see* T. 411- 414); and

> Testimony of Eugene Moore, District Manager from the local
> Community Board, that notices of meetings were mailed to O'Hara
> at the 47th Street residence (1st trial, pp. 434-43).

## <u>Facts to Consider About the Veracity and Integrity of the People's Case</u>

This case, as the records of your Office establish, resulted from a complaint to the State Elections Board, and then to the D.A.'s Office, by John O'Hara's political and personal rival, James Brennan, and his staff member, James Keefe. Brennan and his allies, and O'Hara, had been challenging each other's election petitions and candidacies for years. In 1994, Brennan retained a private investigator to investigate O'Hara's residence, filed a complaint with the Elections Board, initiated the civil proceeding challenging O'Hara's candidacy for the Assembly, and then complained to the D.A.'s Office, which used the information Brennan spoon fed it to build a criminal case against O'Hara.

As a document in your Office's files, entitled "People v. John K. O'Hara, Preparation for Grand Jury Presentation," indicates, *see* Exh. J, the People's theory, given to them by Brennan, was that O'Hara really was living only at 579 61st Street, a rent-stabilized apartment, all along, and his claimed residencies at 553 47th Street, and then 6017 4th Avenue, were false in order to qualify him to run for office in particular election districts (see "Objective: Proof that O'Hara registered and voted from false addresses. … Subsidiary

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 10

proof of 6017 4th Avenue address as possible false residence beginning in
1993.") Indeed, this had been the claim in the civil proceeding – that both
claimed residences were false. But the problem with this theory, which the
D.A.'s Office ultimately abandoned, is that investigation showed that O'Hara
really was living, as of January 1994, at the 4th Avenue location. If he was
really living there, why wouldn't he previously have established an actual
occupancy at 47th Street?

Numerous law-abiding, respectable individuals testified, or gave
affidavits under oath establishing, that O'Hara really did establish an actual
residency, during 1992-93, at the 47th Street location, and as the defense
documentary exhibits showed, he gave that listing to various government
entities and businesses and received mail there. (See, e.g., Exh. K, D.A.'s
Chronological Data Sheet, noting that DIs' investigation of 553 47th Street
had revealed that "postal carrier states mail for O'Hara presently being
delivered @ this location."). Why would these legitimate individuals have
perjured themselves at all, let alone at a time when Hynes' Office was so
powerful and would regularly use heavy-handed tactics with witnesses? If
they knew O'Hara really wasn't living there, wouldn't they have feared
prosecution for lying? What was the evidence proving O'Hara had
orchestrated a sham residence and recruited all these individuals to lie for
him? It was the testimony of two fraudsters with criminal records who had a
substantial motivation to lie, Munoz and Lozano, and the surprise, last-
minute testimony of Ms. Vales.

ADA O'Mara continually portrayed Munoz, Lozano, and their co-
resident, Quetzal Martinez, as poor, pathetic dupes who had somehow been
tricked into buying the 47th Street house from O'Hara's former girlfriend
Magaly Lucas, and made it seem as if O'Hara was in on the fraud. Martinez
had a very substantial criminal record, including current cases, and was not
called to testify, even though he was in court. Munoz, too, had a serious
felony record for a shooting assault and had just been released from four
years in prison when he moved into the house. Lozano admittedly was
operating his ice cream truck business without a valid driver's license, which
subjected him to potential arrest and the loss of his principal source of

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 11

income.    All three men admittedly defrauded the State of Virginia by
certifying they were residing there, to illegally obtain drivers' licenses, when
they were in fact residing in New York.   As Ms. Lucas can tell you, they
falsely claimed to be brothers and they admitted at the third trial having
used those false Virginia drivers' licenses as identification to deceive her into
entering into the contract with her.   None of the men's criminal acts from
Virginia to New York were of any interest to the Brooklyn D.A.'s Office under
Mr. Hynes, which had just one mission: to convict John O'Hara.

### The People Manufacture A Real Estate Scam
### To Deflect Attention From Their Witnesses' Own Deceit

The prosecution at each trial insisted, based upon their two witnesses'
testimony, that the men had never received a deed for the 47th Street house
and somehow they had been defrauded.   At the first trial, ADA O'Mara
referred to the house transaction as a "scam" and accused O'Hara and
Magaly Lopez of taking the men for a "ride" (T. 688).   At the second trial,
O'Mara elicited from Munoz that his signature was not on the deed, as if that
supported his claim he had been scammed. Tr. 129.  This led the defense,
anticipating a similar sleight-of-hand at the third trial, to introduce expert
testimony that only the seller signs such a deed, not the buyer.  Tr. 236.  Still,
at the third trial, Roberto Lozano again claimed he never received a deed and
believed he was being "gypped" (Tr. 197-98)  Before a jury that included 11
black people, ADA O'Mara then compared O'Hara's alleged complicity in
fraud with Ms. Lucas to those of a murderer and slave trader, invoking the
biblical story of Joseph:

> "I remember the story of Joseph. Now Joseph had a
> multi layered coat and he was preferred by his father
> and that upset his brothers and the brothers, the
> older brothers took him out to the field and they were
> going to kill him so the inheritance would go to them,
> but they got greedy. So, they didn't kill him. They
> sold him into slavery and took the money, but as long

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 12

> as he was alive the inheritance didn't go back to
> them. When they went back to the father, they took
> goat's blood and spread it on the coat so they would
> get the inheritance. Fooled the father for a little
> while until Joseph appeared again because he wasn't
> dead. That's just a superficial effort to try to fool
> people. Ask yourselves if that is not what happened
> here ...." (T. 464).

In fact, it was the three men who scammed Ms. Lucas. They induced Ms. Lucas to trust them, claiming they were hard-working "brothers" with valid Virginia drivers' licenses, except they weren't brothers, they had serious criminal records, and their Virginia licenses were fraudulent. They exercised their option to buy the house without any down payment, just an agreement to assume the mortgage payments, only to then not make a single payment while simultaneously earning rental income. *See* Third Trial Tr. at pp. 198-99 (Lozano admits making no payments on the building while collecting rent from tenants). Meanwhile, they ran the house into the ground; neighbors found large numbers of crack vials outside the house. The deed they claimed had been fraudulently withheld from them was publicly filed at the County Clerk's Office. *See* third trial tr., pp. 231-36, and Exh. A. It had been easily available all along. All they had to do was ask their attorney for it. The prosecution knew this. Yet they used their witnesses to shamelessly manipulate the jury.

These three men – in and out of criminal trouble, defrauding the State of Virginia into issuing false drivers' licenses, operating an unlawful ice cream truck business without a valid driver's license, violating a purchase agreement that they had induced the previous owner to enter into through fraud, and facing foreclosure – had every reason to please an influential Assemblyman, and then the D.A.'s Office, when they were approached to lend their assistance in making a case against John O'Hara.

L A W   O F F I C E S   O F   J O E L   B .   R U D I N ,   P . C .

Mark Hale
December 11, 2015
Page 13

Lozano and Munoz gave demonstrably false statements and testimony about crucial issues bearing upon not only their credibility but about the charges against Mr. O'Hara. One such false statement, described above, was their false claim that they didn't make mortgage payments because they didn't receive a deed. Another was their false statements concerned when they obtained ownership of the 47th Street house. At the 1994 civil proceeding brought against O'Hara, Lozano erroneously testified that he obtained ownership of the building in 1992, but then was shown the New York City records showing the conveyance to him and his partners in November, 1993, and corrected himself. Civil Tr. 32-33. Notwithstanding his awareness that the conveyance occurred in November 1993, he repeated his false statement to the D.A.s Office, when he was interviewed, that the conveyance occurred in 1992. *See* Exh. K, D.A.'s Chronological Data Sheet "DIs' confirmed Lazano [sic] lives at location and owns building since 1992..."). As the purported owner from 1992 on, his claim that he knew O'Hara didn't live there during 1992-93 might have seemed credible to prosecutors single-mindedly trying to make a case against O'Hara, and they would have had little reason to check with the previous owner, Ms. Lucas. This may explain why she wasn't interviewed until *after* O'Hara was indicted.

Also relevant to the two witnesses' credibility was Lozano's false story at the first two trials that their reason for agreeing to go along with O'Hara's story that he was living at the 47th Street house was O'Hara's promise, like some Tammany Hall fixer, to take care of their "sanitation" or "garbage" tickets. *See* Lozano's testimony at first trial, pp. 160-61 ("He said he would take care of it") and second trial, pp. 135-37 ("[H]e said, 'Look, I'll take care of those tickets, don't worry about it...'"). Lozano and the People dropped this claim at the third trial after O'Hara proved, at the second trial, that no such ticket for that location was issued until 1994 – after O'Hara moved out – at which point 11 such tickets were issued (evidently because it was then that the new owners made the house into an unlivable construction zone). *See* Second Trial Tr., at 168-75 (testimony of Bob Delasalla). It is difficult to understand how anyone could credit their testimony then (or now) in view of

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 14

Lozano's fundamental lie about their purported reason for going along with
O'Hara's alleged fraud.[2]

After indicting O'Hara and, no doubt under pressure from District
Attorney Hynes to continue this prosecution regardless of the inconvenient
facts undercutting the men's credibility, ADA O'Mara succeeded in blunting
the impact of the men's fraudulent involvement in the house conveyance, and
their false statements. He did so by creating the untrue impression that
O'Hara had somehow been involved in defrauding *them*. Through this tactic,
the prosecution succeeded in diverting attention from their star witnesses'
deceitful, manipulative tactics, obscured the true facts, and unfairly used the
situation to disparage O'Hara.

As for Josephine Vales, her surprise, last-minute testimony that the
basement area wasn't inhabitable when she sold the house to Ms. Lucas in
1990, shocked the defense, which had no ability to challenge it, as it came

---

[2] Significantly, at the third trial, the People dropped any effort to have the jury infer,
based upon utility and postal records, that O'Hara did not establish a residency at 47th Street,
relying instead entirely on the credibility of its two initial and one rebuttal witnesses. O'Hara
had shown at the first two trials, and also proved as part of his defense in the third trial, that the
overwhelming documentary evidence on this point was in his favor. The difficulty of using
records to establish that O'Hara did or did not establish a residency at 47th Street was illustrated
by the Brooklyn Union Gas records, for example, which showed the absence of any account for
Lozano at 47th Street before December 28, 1992, whereas Magaly Lucas's account continued at
least through November 30, 1992. (There was no account in Munoz's name until February,
1995.) One could infer from this evidence that O'Hara was living there in November, as he
testified, whereas Lozano did not move in until the end of December, contrary to the testimony
of Lozano and Munoz that they moved in during October. Thus, it could further be inferred, they
weren't in a position to know whether O'Hara was there in November, when he registered to
vote from that residence – the basis for several of the counts of conviction. *See, e.g.,* Testimony
of Washington Donoso, Brooklyn Union Gas Company, Second trial, pp. 140-41. Significantly,
Mr. Donoso acknowledged that he could not tell whether the meter on the first floor might have
also covered a gas line into the basement, further undercutting the significance of the
documentary evidence with respect to whether the basement apartment was occupied by Mr.
O'Hara. Tr. 141-42.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 15

immediately before summations.  Her testimony was important to buttress
the otherwise questionable testimony of Lozano and Munoz.  The defense was
given no prior notice of her testimony before she appeared, for the first time,
as a rebuttal witness for the People during the third trial.  What brought
about her testimony is known only to her, ADA O'Mara, and perhaps the
D.I.s who found her, but certainly, at least after the end of the trial, it was
apparent she had lied.

The defense 330 motion showed that the cellar or basement area she
claimed had never been used as an apartment and was essentially
uninhabitable in fact was a rentable apartment, according to the bank
appraisal conducted in 1990 at the time she sold the house, as well as the
detailed affidavits of Magaly Lucas and Denise Murray. Indeed, it also was
contradicted by Lozano's own admission in the civil proceeding in 1994:
when asked "[h]ow many units are in the building," he answered: "There's
three floors and *the basement*." Tr. 37 (emphasis added). The D.A.'s Office
prevailed upon the court to deny the defense 330 motion on the theory that
the testimony of these witnesses could have been presented at trial, even
though the defense had not known that Ms. Vales, after not having testified
at either of the first two trials, suddenly would emerge as a last-minute
rebuttal witness and would lie. The CRU is not so constrained and can take
another look at her testimony and investigate what may have led her to give
it. There were rumors in the neighborhood after the trial that she may have
been motivated by the vulnerability of her son, David Vales, who had a
criminal record and had filed for bankruptcy. O'Hara's attorney's affirmation
in support of his 330 motion noted rumors in the community that David Vales
had a truck hijacking charge. While we haven't been able to substantiate
this rumor, you would have superior access to law enforcement records,
including any proceeding that may have been dismissed and sealed. You also
may be able to determine if Ms. Vales had any other reason to lie. Even if
her motivation cannot be uncovered (perhaps she simply responded to
pressure by the D.A.'s Office), the weight of the evidence shows that her
testimony was untruthful.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 16

## Other Things To Investigate

Exh. K, the Chronological Data Sheet, upon information and belief, was
never disclosed to the defense. It contains *Rosario* material – Lozano's false
statement that he owned the house since 1992, which he apparently made to
the D.A.'s Office even though it was brought to his attention at the 1994 civil
proceeding and he acknowledged that the conveyance occurred in November
1993 – and *Brady* material – the statement by the postal carrier that he had
delivered mail to O'Hara at the location. The only postal carrier who
testified at trial was in another district and had no knowledge of mail
deliveries on 47th Street.[3]

---

[3] This does not appear to be the only *Rosario/Brady* violation committed by the D.A.'s
office in this prosecution. During the first trial, ADA O'Mara tried to smear O'Hara by asking a
defense witness if she was "aware" that O'Hara's petitions to get on the ballot as a candidate for
the Assembly had been invalidated for "fraud." O'Hara had not put his character in evidence,
nor was there any evidence that he was personally responsible for any defective, let alone
fraudulent, petitions. When O'Hara's counsel objected that this was a distortion of what had
occurred, ADA O'Mara represented that he had the "actual transcript of the proceedings. What
occurred is this: There was a challenge to the petitions, including those by the way of the person
who was up on the stand. There is substantial testimony taken. The Judge began to issue a
ruling concerning Mr. O'Hara's residency and also concerning the petitions, and, in fact, had
verbally said he was disqualifying them..." First Trial Tr. 404-05. However, ADA O'Mara did
not disclose the transcript to the defense until 1999, shortly before the second trial, when the
defense demanded it. It contained the testimony of People's witnesses Lozano (pp. 30-38) and
Parras (pp. 18-30), and plainly constituted (at least) *Rosario* material. (ADA O'Mara had
obtained it through a subpoena notwithstanding that it was sealed; it had not been available to the
defense.)

The civil transcript also shows that Mr. O'Mara's representations to the court were
inaccurate. Most of the testimony at the hearing concerned whether there were insufficient valid
petition signatures to sustain O'Hara's candidacy -- whether campaign workers had obtained
some signatures that they did not personally witness or which were otherwise technically
defective -- but little or no evidence of fraud, and none of the failings were shown to have been
known to or caused by O'Hara. At no time did the judge indicate he was going to make a
finding that O'Hara's residency was fraudulent, or that the petitions were fraudulent. In the end,
O'Hara agreed to withdraw his petitions and to end his candidacy, "without admitting any of the

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 17

Handwritten notes from the case file indicate that the Office considered offering O'Hara an ACD, evidently because it "would foreclose [a] lawsuit for malicious prosecution." Exh. L. It would be interesting to learn who wrote this and why.

Finally, we wonder about whether there was any undisclosed financial, law enforcement, or other consideration given Lozano and Munoz, each of whom testified at no less than three trials even though, they claimed, they had no interest in this matter. Interestingly, their friend and co-purchaser of the 47th Street house, Quetzal Martinez, had an extensive criminal record, including a drug use history, and it is possible his friends were motivated to testify by their knowledge, expectation, or hope that not only would they obtain law enforcement consideration for themselves, but that Martinez would as well. ████████████████████████ I have more than 50 transcripts for his court appearances if you would be interested in examining them as part of a further inquiry. I could find no reference to this case, but that does not mean that the District Attorney's attitude wasn't influenced by his and his friends' cooperation against John O'Hara.

Please let me know if I can assist your re-investigation in any other

allegations ... based on an insufficient number of [valid] signatures in the petition," nothing more. Tr. 322-24.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Mark Hale
December 11, 2015
Page 18

way. I look forward to hearing from you.

Sincerely yours,

Joel B. Rudin

JBR/tp
Encls.

# EXHIBIT A

CITY REGISTER RECORDING AND ENDORSEMENT PAGE
## - KINGS COUNTY -
*(This page forms part of the instrument)*

k(s) ___757___

s) ___54___

153 47th St.

Record & Return to: Carlo F Rodriguez Arbelo, Esq
5403 5th Ave, Bklyn, NY, 11220

Title/Agent Company name: A.R.S. ABSTRACT, LTD.

Title Company number: SECK 1522

REEL 3155 PG 132

**THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**

Examined by (✓): _____

Mtge Tax Serial No.: _____

Mtge Amount ___ $

Taxable Amount ___ $

Exemption (✓) _____ YES ☐   NO ☐

Type: [339EE]  [255]  [OTHER_____]

Dwelling Type: [1 to 2]  [3]  [4 to 6]  [OVER 6]

TAX RECEIVED ON ABOVE MORTGAGE ▼

County (basic) ___ $
City (Addt'l) ___ $
Spec.Addt'l ___ $
TASF ___ $
MTA ___ $
NYCTA ___ $   11-15-93
TOTAL TAX ___ $

Apportionment Mortgage (✓)  YES ☐  NO ☐
TOA1  BKO1  11-15-93

Joy A. Bobrow, City Register

City Register Serial Number ➡ 59402

Indexed By (✓): ____   Verified By (✓): ____

Block(s) and Lot(s) verified by (✓):
Address ☐   Tax Map ☐
Extra Block(s) ___   Lot(s) ___

Recording Fee ___ $ A21
Affidavit Fee ___(C) $
TP-584/582 Fee __(Y) $
RPTT Fee ___(R) $ 25
HPD-A ☒   HPD-C ☐

New York State Real Estate Transfer Tax ▼
$ 224
Serial Number ➡ 004816

New York City Real Property Transfer Tax
Serial Number 14288

New York State Gains Tax Serial Number ➡

GNRFF $1.0
GNRFF 4498

DEED $21.0
DEED 4498



RECORDED IN KINGS COUNTY
OFFICE OF THE CITY REGISTER

1993 NOV 15 A 9 30

Witness My Hand and Official Seal

City Register

CRGFM89K.BPG   1993

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 28 day of October, 1993

BETWEEN

MAGALY X. LUCAS, residing at 326 W. 45th Street, Suite 1F, New York, New York

party of the first part, and

QUETZAL MARTINEZ, ROBERTO LOZANO and RAFAEL MUNOZ all residing at 553 47th Street, Brooklyn, New York

party of the second part,

WITNESSETH, that the party of the first part, in consideration of

dollars

paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs, or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 47th Street, distant 240 feet westerly from the corner formed by the intersection of the northerly side of 47th Street with the westerly side of 6th Avenue;

RUNNING THENCE northerly parallel with 6th Avenue, and part of the distance through a party wall, 92 feet to the southerly side of land formerly of Thomas Hunt, deceased;

THENCE westerly along said land of Hunt, 20 feet 1/2 of an inch;

THENCE southerly again parallel with 6th Avenue, and part of the distance through another party wall, 90 feet 9 inches to the northerly side of 47th Street;

THENCE easterly along the northerly side of 47th Street, 20 feet to the point or place of BEGINNING.

Said premises being known as and by 553 47th Street, Brooklyn, New York.

Sec: 3
Block: 757
Lot: 54

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____    _____
Magaly C. Lucas

Form 3290

STATE OF NEW YORK, COUNTY OF KINGS            ss:

On the 2 7 day of *October* 19 93 , before me
personally came   Magaly C. Lucas

to me known to be the individual      described in and who
executed the foregoing instrument, and acknowledged
that   she executed the same.

_Carol Lee Flitt_

CAROL LEE FLITT
NOTARY PUBLIC, State of New York
No. 24-5030519
Qualified in Kings County
Commission Expires December 31, 19 94

STATE OF NEW YORK, COUNTY OF             ss:

On the     day of        19    , before me
personally came
to me known, who, being by me duly sworn, did depose and
say that   he resides at                        ;

that   he is the
of
                    , the corporation described
in and which executed the foregoing instrument; that   he
knows the seal of said corporation; that the seal affixed to said
instrument is such corporate seal; that it was so affixed by
order of the board of directors of said corporation, and
that   he signed h   name thereto by like order.

STATE OF NEW YORK, COUNTY OF             ss:

On the     day of        19    , before me
personally came

to me known to be the individual      described in and who
executed the foregoing instrument, and acknowledged
that     executed the same.

STATE OF NEW YORK, COUNTY OF             ss:

On the     day of        19    , before me
personally came
the subscribing witness to the foregoing instrument, with
whom I am personally acquainted, who, being by me duly
sworn, did depose and say that   he resides at

                    ; that    he knows
                    to be the individual
described in and who executed the foregoing instrument;
that   he, said subscribing witness, was present and saw

            execute the same; and that   he, said witness,
at the same time subscribed h   name as witness thereto.

# Bargain and Sale Deed

### WITH COVENANT AGAINST GRANTOR'S ACTS

Title No. __SECK1522__

Magaly C. Lucas

TO

Quetzel Martinez,
Roberto Lozano and
Rafael Munoz

A.B.S ABSTRACT, LTD.
Standard Form of New York Board of Title Underwriters
36-12 34th Avenue
L.I.C. NY 11106

Commonwealth.
Land Title Insurance Company

| | |
|---|---|
| SECTION | 3 |
| BLOCK | 757 |
| LOT | 54 |
| COUNTY OR TOWN | Kings |
| STREET ADDRESS | 553 47th Street<br>Brooklyn, NY |

Recorded at Request of
COMMONWEALTH LAND
TITLE INSURANCE COMPANY

RETURN BY MAIL TO

CASTO F. RODRIGUEZ ARBELO, ESQ.
5403 5th Avenue
Brooklyn, New York 11220

THIS SPACE FOR USE OF RECORDING OFFICE

A. 171
000648

# EXHIBIT B

05/24/96

MORTG NO : CI-50801126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

FORECLOSURE

------------------------------------------------x
OCI MORTGAGE CORPORATION                              : NOTICE OF
                                                     : MOTION FOR
                                     Plaintiff,      : JUDGMENT OF
                                                     : FORECLOSURE
                                                     : AND SALE
          -against-                                  :
                                                     : INDEX NO.
                                                     : 17589/94
                                                     :
                                                     : ASSIGNED TO
                                                     : JUSTICE
MAGALY LUCAS                                          :
QUETZAL MARTINEZ                                      : Gloria Aronin
ROBERTO LOZANO                                        :
RAFAEL MUÑOZ                                          :
ALLAN LEE                                             :
NEW YORK CITY PARKING VIOLATIONS BUREAU              :
NEW YORK CITY TRANSIT AUTHORITY, TRANSIT            :
     ADJUDICATION BUREAU                             :
                                                     :
                                                     :
                                     Defendants.     :
------------------------------------------------x

SIRS:

        PLEASE TAKE NOTICE that upon the summons and verified

complaint; notice of pendency of action;and upon all papers

already on file herein; the annexed affirmation of LISA B.

SINGER dated May 24, 1996 and upon the annexed referee's

computation dated June 27, 1995, the undersigned will move this

court at an IAS part 72 Supreme Court State of New York, County

of KINGS at 360 Adams Street Brooklyn, NY 11201 on **JUN 2 7 1996**

_____ at 9:30 a.m. in the forenoon of that day, or as soon

thereafter as counsel may be heard, for confirmation of the

referee's report, for a Judgment of Foreclosure and Sale and

for other and further relief as this Court may deem just and

proper.

PLEASE TAKE FURTHER NOTICE, that pursuant to CPLR
2214(b) answering affidavits, if any, are required to be served
upon the undersigned at least seven (7) days before the return
date of this motion.

Dated: May 24 , 1996

Yours, etc.
CULLEN AND DYKMAN
Garden City Center
100 Quentin Roosevelt Blvd.
Garden City, NY  11530
(516) 357-3600

TO:
MAGALY LUCAS
DEFENDANT
403 West 38TH STREET, #3E
NEW YORK, NY 10018

QUETZAL MARTINEZ
DEFENDANT
553 47TH STREET
BROOKLYN, NY  11220

ROBERTO LOZANO
DEFENDANT
553 47TH STREET
BROOKLYN, NY  11220

RAFAEL MUNOZ
DEFENDANT
553 47TH STREET
BROOKLYN, NY  11220

ALLAN LEE
DEFENDANT
2001 GERRITSEN AVENUE
BROOKLYN, NY  11229

ALAN S. ROTH, ESQ
ATTORNEY FOR DEFENDANT
NEW YORK CITY PARKING VIOLATIONS BUREAU
770 BROADWAY, 15TH FLOOR
NEW YORK, NY  10003

NEW YORK CITY TRANSIT AUTHORITY, TRANSIT
    ADJUDICATION BUREAU

DEFENDANT
505 FULTON STREET
BROOKLYN, NY  11201

WE ARE ATTEMPTING TO COLLECT A DEBT
ANY INFORMATION OBTAINED WILL BE USED
FOR THAT PURPOSE

05/24/96

MORTG NO : CI-50801126

At an IAS part 72 of the Supreme Court held
for the County of KINGS at the Courthouse
thereof, 360 Adams Street, Brooklyn, NY
11201 on May __, 1996.

DIST.
00000

P R E S E N T :                    HON.

SEC.                               JUSTICE.                    **FORECLOSURE**
000     ---------------------------------------------------x

BLOCK    OCI MORTGAGE CORPORATION                      : JUDGMENT OF
00757                                                  : FORECLOSURE
                                         Plaintiff,    : AND SALE
LOT
054
                                                       :
Lis              -against-                              :
Pendens                                                : INDEX NO.
Filed    MAGALY LUCAS                                   : 17589/94
06/14/94 QUETZAL MARTINEZ                               :
         ROBERTO LOZANO                                 :
         RAFAEL MUNOZ                                   :
         ALLAN LEE                                      :
         NEW YORK CITY PARKING VIOLATIONS BUREAU        :
         NEW YORK CITY TRANSIT AUTHORITY, TRANSIT       :
            ADJUDICATION BUREAU                         :

                                    Defendants.   :
         ---------------------------------------------------x

On the reading of the following, all now duly filed in

the office of the Clerk of KINGS and on all the proceedings

thereon particularly the:

Summons and Verified Complaint filed on May 31, 1994 and

on all the affidavits of service and notices of appearance,

showing that each and all of the defendants herein have been

personally served with said summons and complaint;, or have

voluntarily appeared herein by their respective attorneys; and

upon the

Notice of Pendency of Action filed 06/14/94; and upon the

Order of Reference and Amendment dated April 12, 1995;
appointing a referee to compute the amount due the plaintiff
upon the bond (note) and mortgage set forth in the verified
complaint and to examine and report whether or not the
mortgaged premises can be sold in parcels; and upon the

Oath and Report dated June 27, 1995 in which it appears
that the sum of $206,542.20 was due thereon at the date of said
report; and that the mortgaged premises cannot be sold in
parcels without material injury to the parties interested; and
that the whole amount secured by said bond (note) has become
due; and upon the

Notice of Motion for Judgment of Foreclosure and Sale
dated 05/24/96; and upon the

Affirmations of Regularity and Legal Services each dated
05/24/96 of LISA B. SINGER, an associate of Cullen and Dykman
attorneys for plaintiff,proving that more than thirty days had
elapsed since such service upon said defendants was completed
and since said defendants appeared, as aforesaid, and that none
of the defendants had served an answer to said verified
complaint, moved with respect thereto, nor had their time to do
so been extended; and that no necessary defendant is an infant,
incompetent, absentee or in the military; and that said
defendants are in default,

NOW, on motion of CULLEN AND DYKMAN, plaintiff's
attorneys it is

ORDERED that the plaintiff's motion is hereby granted, and
it is further

ORDERED, ADJUDGED AND DECREED, that the said report of
KAREN B. ROTHENBERG, ESQ the said referee is in all respects
ratified and confirmed, and it is further

ORDERED, ADJUDGED AND DECREED, that the plaintiff is
hereby awarded judgment herein for the sum of $206,542.20
together with interest at the rate set forth in the note and
mortgage from the date specified in the referee's report,
together with legal interest from the date of entry hereof,
together with advances from the date specified in said report,
plus the sum of $_____ to be taxed by the Clerk of the
Court and inserted herein is hereby adjudged to the plaintiff
for costs and disbursements of this action, with interest
thereon from the date of entry hereof, together with an
additional allowance of $_____ hereby awarded to plaintiff
in addition to costs and disbursements, with interest thereon
from the date of entry hereof, and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged
premises described in the complaint in this action, as
hereinafter set forth, be sold at public auction in one parcel
on the foot of the Courthouse steps, facing Adams Street at the
Kings County Courthouse, 360 Adams Street, Brooklyn, NY  11201 _
_____ by: _____
_____, who is
hereby appointed referee for that purpose.  That said referee
give public notice of the time and place of sale, according to
law and the course and practice of this Court, by publishing
notice of sale in the _____
_____

_____; that the plaintiff or any other party

to this action may become the purchaser or purchasers at such

sale; that said referee execute to the purchaser or purchasers

on such sale a deed of the premises sold; that said referee on

receiving the proceeds of sale forthwith pay therefrom the

taxes, assessments and water and sewer rents which are, or may

become liens on the premises at the time of sale and any such

payments shall be allowed to the plaintiff and applied by said

referee upon the amounts due to the plaintiff as specified

above in item marked "THIRD." That said referee then deposit

the amount received at sale in _____

_____    _____

_____("Depository") and shall thereafter make the following

payments:

First: The statutory fees of said referee, in the amount

of $_____.

Second: Expenses of sale and advertising expenses as

shown on the bill(s) presented and certified by the referee to

be correct. Duplicate receipts shall be annexed to the Report

of Sale.

Third: Said referee shall also pay to the plaintiff or

its attorneys, the sum of $206,542.20 together with interest at

the rate set forth in the note and mortgage from the date

specified in the referee's report, together with legal interest

from the date of entry hereof, together with advances from the

date specified in said report, plus the sum of $_____

adjudged to the plaintiff for costs and disbursements in this

action to be taxed by the Clerk of the Court and inserted

herein, with interest thereon from the date of entry hereof,
together with an additional allowance of $_____ hereby
awarded to plaintiff in addition to costs and disbursements
with interest thereon from the date of entry hereof, or so much
as the purchase money of the mortgaged premises will pay of the
same.  The referee shall take a receipt therefor, and file it
with the referee's report of sale.

And said referee shall pay to the plaintiff a reasonable
sum for preservation of the property upon presentation of
receipts for such expenditures to said referee.

And said referee shall pay to plaintiff an attorney's
fee as authorized by the said mortgage in the amount of $3,205.

Fourth:  If such referee intends to apply for a further
allowance for his fees, he may leave upon deposit such amount
as will cover such additional allowance to await the further
order of this Court thereon after application duly made.

Fifth:  That in case the plaintiff be purchaser of said
mortgaged premises at said sale, or in the event that the
rights of the purchaser at said sale and the terms of sale
under this Judgment shall be assigned to and be acquired by the
plaintiff, and a valid assignment thereof filed with the said
referee, said referee shall not require the plaintiff to pay in
cash the entire amount bid at said sale, but shall execute and
deliver to the plaintiff a deed or deeds of the premises sold
upon the payment to said referee of the amounts specified above
in items marked "FIRST" and "SECOND" and the amounts of the
aforesaid taxes, assessments and water and sewer rents, and
interest or penalties thereon, or in lieu of the payment of

said last mentioned amounts, upon filing with said referee receipts of the proper municipal authorities showing the payment thereof that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the plaintiff, for preservation of the property, referee fees, expenses of sale, and taxes, assessments and water and sewer rents shall be allowed to the plaintiff and applied by said referee upon the amounts due to the plaintiff as specified above in item marked "THIRD"; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to said referee, upon delivery to it of said referee's deed, the amount of surplus; that said referee on receiving said several amounts from plaintiff shall forthwith pay therefrom said taxes, assessments, water and sewer rents and interest or penalties thereon, unless the same have already been paid, and shall then deposit the balance in said Depository.

Sixth:  That said referee take the receipt of the plaintiff or its attorneys for the amounts paid as herein before directed in item marked "THIRD", and file it with the referee's report of sale; that said referee deposit the surplus moneys, if any, with the Clerk of the court within five days after the same shall be received and be ascertainable, to the credit of this action, to be withdrawn only on the order of the Court, signed by a Justice of the Court; that the said referee make a report of such sale and file it with the Clerk of KINGS County within thirty days of completing the sale and executing

a proper conveyance to the purchaser; and that the purchaser or purchasers at such sale be let into possession on production of the referee's deed or deeds.

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the proceeds of said sale be insufficient to pay the amount so reported due the plaintiff, with the expenses of sale, interest, cost and allowance, as aforesaid, the said referee shall specify the amount of such deficiency in the referee's report of sale; that the plaintiff recover of the defendant MAGALY LUCAS, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount is determined and awarded by an order of this Court as provided for in said section; and that the purchaser or purchasers at such sale be let into possession of the premises sold to them on production of the referees deed or deeds of said premises.

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming through or under them, or any or either of them, after the filing of such notice of pendency of this action, are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof.

Annexed hereto as Schedule "A" is a description of the

said mortgaged premises hereinbefore mentioned;

SUBJECT to covenants, reservations, easements and restrictions contained in prior deeds and/or instruments and agreements of record, if any, to the extent that they are presently enforceable; to any state of facts an accurate survey and physical inspection may show; to conditional bill of sale contracts and/or financing statements of record, if any; to orders and/or notices of violations filed in Municipal, State or U.S. Governmental departments; to zoning restrictions and regulations and any amendments thereof; and to rights, if any, of occupants, to the extent only that said rights may be controlling.

ENTER

_____
JUSTICE, SUPREME COURT

·ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 47th Street, distant 240 feet westerly from the corner formed by the intersection of the northerly side of 47th Street with the westerly side of 6th Avenue:

RUNNING THENCE Northerly parallel with 6th Avenue and part of the distance through a party wall, 92 feet to the southerly side of land formerly of Thomas Hunt, deceased;

THENCE Westerly along said land of Hunt, 20 feet 1/2 of an inch:

THENCE Southerly again parallel with 6th Avenue and part of the distance through another party wall, 90 feet 9 inches to the northerly side of 47th Street;

THENCE Easterly along the northerly side of 47th Street, 20 feet to the point or place of BEGINNING.

PREMISES KNOWN AS: 553 47th Street, Brooklyn, New York.

T-36-Plaintiff's Costs:  on Foreclosure or other Real Property

MORTG NO : CI-50801126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

```
----------------------------------------------------x
OCI MORTGAGE CORPORATION                            : COSTS OF
                                                    : PLAINTIFF
                            Plaintiff,              :
                                                    :
        -against-                                   :
                                                    : INDEX NO.
MAGALY LUCAS                                        : 17589/94
QUETZAL MARTINEZ                                    :
ROBERTO LOZANO                                      :
RAFAEL MUNOZ                                        :
ALLAN LEE                                           :
NEW YORK CITY PARKING VIOLATIONS BUREAU             :
NEW YORK CITY TRANSIT AUTHORITY, TRANSIT            :
    ADJUDICATION BUREAU                             :
                                                    :
                            Defendants.             :
----------------------------------------------------x
```

## COSTS

```
Costs before note of issue CPLR 8201 subd. 1  ........ $200.00
Motion costs CPLR 8202 ...............................
Allowance by statute CPLR 8302(a)(b) .................
Percentage on $_____ at 10% (not exceeding $200.00)..   20.00
Additional $_____ at 5% (not exceeding $800.00).....   40.00
Additional $_____ at 2% (not exceeding $2,000.00)...   40.00
Additional $_____ at 1% (not exceeding $5,000.00)...   50.00
Additional allowance CPLR 8302(d) ....................   50.00

               COSTS...................... $400.00
```

## DISBURSEMENTS

```
Fee for index number CPLR 8018(a) 8301(a)(12) ........ $170.00
Referee's fees CPLR 8301(a)1 8003(b) ................   200.00
Clerk's filing notice of pendency CPLR 8021(a)10
                            8301(a)(12) ......    15.00
Paid for searches CPLR 8301(a)10 ... .............   275.00
Serving copy summons & complaint CPLR 8011(c)1
                            8301(d) ..........   280.00
Paid referee's report CPLR 8301(a) 8003(a)(1) .......    50.00
Postage CPLR 8301(a)12 .............................    15.00
Sheriff's fees on execution CPLR 8011(b) 8012 .......
Fees for publication CPLR 8301(a)3 ..................
Request for Judicial Intervention CPLR 8020(a) ......    75.00
```

DISBURSEMENTS.................... $ 1080.00

TOTAL................................. $ 1480.00

STATE OF NEW YORK
COUNTY OF NASSAU                    Attorney's Affirmation

    The undersigned admitted to practice in the court of this
state affirms that affirmant is an attorney for Cullen and
Dykman, the attorneys of record for plaintiff in the above
entitled action: that the foregoing disbursements have been or
will necessarily be made or incurred in this action and are
reasonable in amount; and that copies of documents or papers as
charged herein were actually and necessarily obtained for use.

    The undersigned affirms that the foregoing statements are
true, under the penalties of perjury.

_____
LISA B. SINGER

Dated May 24    , 1996

MORTG NO : CI-50801126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------x

DIST.
00000

SEC.
000

BLOCK
00757

LOT
054

Lis
Pendens
Filed
06/14/94

OCI MORTGAGE CORPORATION

                                 Plaintiff,

           -against-

MAGALY LUCAS
QUETZAL MARTINEZ
ROBERTO LOZANO
RAFAEL MUNOZ
ALLAN LEE
NEW YORK CITY PARKING VIOLATIONS BUREAU
NEW YORK CITY TRANSIT AUTHORITY, TRANSIT
    ADJUDICATION BUREAU

                           Defendants.

: AFFIRMATION
:     OF
: REGULARITY
:
:
: INDEX NO.
: 17589/94
:
:
:
:
:
:
:
:

---------------------------------------------------x

      LISA B. SINGER, the undersigned an attorney admitted to

practice in the courts of this state, affirms under penalty of

perjury as follows:

      1.    Affirmant is associated with the firm of CULLEN AND

DYKMAN, plaintiff attorneys in the above entitled action, which

was brought to foreclose a mortgage affecting real property

situated in KINGS County, State of New York, and affirmant is

familiar with the details thereof.

      2.    The summons and duly verified complaint was filed in

the Office of the Clerk of KINGS County. That thereafter a

notice of pendency of action in due form and containing

correctly and truly all the particulars required by law to be

stated in such notices was duly filed in the Office of the

Clerk of said County on the dates indicated in the left margin herein.

3.   This action was commenced by the filing of the summons and complaint in the Office of the Clerk of said county on May 31, 1994.

4.   All of the necessary parties defendant have been duly served herein with summons and verified complaint in accordance with all applicable laws and statutes, or have voluntarily appeared herein by their respective attorneys.

5.   This action was commenced because of the non-payment of monthly installments of principal and interest and mortgagor(s)'s deposits which became due and payable on January 1, 1994 and on the first day of each subsequent month.  Based upon this default in payment under the terms of the subject mortgage, plaintiff elected to exercise its option under the mortgage to declare the unpaid principal and interest immediately due and payable.

6.   Since the filing of the summons and verified complaint, and notice of pendency of action, the complaint has not been amended in any manner whatsoever.

7.   All of the necessary defendants are of full age and sound mind and that no necessary defendant is an absentee, prior encumbrancer or in the military.

8.   More than thirty days have elapsed since the completion of service of process in this action.

9.   No defendant has answered the complaint or moved with respect thereto and the time to do so has expired

including the time granted pursuant to any extension thereof.

10.    The following defendant has appeared in this action:

Defendant    : NEW YORK CITY PARKING VIOLATIONS BUREAU

Def. attorney: ALAN S. ROTH, ESQ

770 BROADWAY, 15TH FLOOR

NEW YORK, NY  10003

11.    The whole amount secured by said mortgage is due and
payable.

12.    All the proceedings in this action have been regular
and in accordance with the rules and practice of this Court.

13.    On April 12, 1995 an Order of Reference and
Amendment was signed.

14.    The referee appointed herein computed the amount due
plaintiff and issued the oath and report which is annexed
hereto as Exhibit A.

14A.    That a prior Application for a Judgment of Foreclosure
and Sale was submitted.  That at the appearance on November
2, 1995, Deborah Bryant, Esq. of this firm and Defendant Raphael
Munoz  were present.  At said appearance, the defendant requested
an adjournment to obtain counsel.  It was agreed that the case
would be adjourned until December 14, 1995 and marked final.

14B.    However, on December 14, 1995 said case was not
on the calendar call and plaintiff's attorney was told that the
court had no recollection of this case.

14C.   Thereafter, upon a search of the court file, it was discovered that this case was marked off the calendar on November 2, 1995.

15.   No previous application has been made for a Judgment of Foreclosure and Sale other than the above-mentioned application.

WHEREFORE, plaintiff asks for Judgment for the relief demanded in the complaint in the form annexed hereto as Exhibit B, and for such other and further relief as to the Court may deem just and proper.

LISA B. SINGER

DATED: May 24_____, 1996
Garden City, New York

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK    :

          -against-    :    Indictment No. 13525-96

JOHN K. O'HARA,    :    AFFIRMATION

             Defendant.    :

----------------------------------------x

STATE OF NEW YORK, COUNTY OF KINGS

     MAGALY LUCAS, an attorney duly admitted to practice before the courts of the State of New York, affirms under penalty of perjury, as follows:

    1. I submit this affirmation in connection with the case of People v. John O'Hara, the trial of which ended on May 13, 1997. I was scheduled to testify in that trial -- to be called by the defense -- but I refused to do so because I had been threatened by the prosecutor, Mr. O'Mara, that <u>if I testified</u> and John O'Hara "went down", I would "go down with him".

    2. Sometime in 1990 I bought the building at 553 47th Street, Brooklyn, New York. I also lived there until November 30, 1992 -- one month after Mr. O'Hara moved in to an apartment in the same building. After I moved out others moved in on December 1, 1992, rented for a period of time and then, about a year later, purchased the building.

    3. Mr. O'Hara said he wanted to move in to that building because it was in the district in which he wanted to run for

assemblyman. I agreed to permit him to live rent free because he had permitted me to live rent free in his apartment when we were living together in 1990. He agreed, at my request, to make sure my renters paid their rent to the bank.

4. On October 21, 1996 I was contacted for the first time by Allen Presser, an investigator from the Brooklyn District Attorney's office. He left a post-it note on my door asking me to call him and I did so the next day and we spoke. He called me *when* again on October 29 and he questioned me again thereafter. Our conversations concerned my ownership of the building on 553 47th Street in Brooklyn and John O'Hara's residence in that building in 1992 and 1993.

5. In March of 1997, I was served with a subpoena to bring certain records *limited* to court, which I did, and ADA O'Mara copied what he wanted. However, Mr. O'Mara told me that I could get in big trouble for what I told Mr. Presser.

6. Some weeks later I was asked to come to court by Mr. O'Hara's attorney, Mr. Meyers. I appeared in court ready to testify at trial. But the trial was adjourned and the Judge told me to come back another day. At that time, Mr. O'Mara told me, that he was not going to call me and that "If you testify and he goes down, you'll go down" and "and we're not giving you any immunity."

7. I started to complain to the Judge about what Mr. O'Mara said, but she cut me off, telling me it was not her jurisdiction. I assumed she had heard most, if not all, of what he

- 2 -

had threatened.

8.   Thereafter I told Mr. Meyers I would not testify, in view of the DA's threats.   I was frightened, that the District Attorney's Office would get on my case, would try to indict me for something (the way they did with Mr. O'Hara), that they might do something to affect my license to practice law.   I do not practice criminal law.   No one told me and I did not know that I could get immunity if I appeared and claimed my fifth amendment privilege, despite what Mr. O'Mara said -- and that I could not be forced to testify unless I got immunity.   Had I been told that, I would not have refused to appear.

9.   If not for the DA's threats, I would have testified at John's trial to the fact that he did reside at the 47th Street house beginning in October 1992.

Dated July 23rd 1997
New York, New York

Magaly Lucas

- 3 -

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY :    PART 17
-------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                                                               **Indictment No. 13525/96**

      -against-

                                                                **AFFIRMATION**

JOHN KENNEDY O'HARA,

                      **Defendant.**
-------------------------------------------------------------X

STATE OF NEW YORK) ss: KINGS COUNTY)

        **MAGALY LUCAS,** an attorney duly admitted to practice before the courts of the State of New York, affirms under penalty of perjury, as follows:

1. That, in late June of 1999 during the course of a conversation with Mr. Carlos Ferreiro, a client and friend, Mr. Ferreiro, informed me that Mr. Hernandez was trying to urgently get in touch with me. At the time that Mr. Hernandez was looking for me I was employed by the New York City Board of Education and worked as a teacher at P.S. 128, which is located on Audubon Avenue and 169th street in Manhattan.;

2. I recall the specifically date of my conversation with Mr. Ferreiro because it was just after 5th grade graduation.  Mr. Ferreiro informed me that Mr. Hernandez had called about two weeks prior on several occasions.

3. After the graduation, which took place June 25, 1999, I went on vacation with my family to Cape May, New Jersey.  My family had planned this vacation to coincide with the end of the school year and my sister's arrival from Zimbabwe.

4. I returned from my vacation after the Fourth of July weekend, and began to work on a special project at the district 6 main office.   About a week latter I contacted Mr. Hernandez, who informed me that he wanted me to testify at Mr. O'Hara's trial. However the trial had already taken place.  At that time he informed me of the outcome of the trial and specifically discussed the testimony of Mrs. Josephine Vales. He stated that Mrs. Vales had disavowed the existence of a finished basement at 553 47th street, Brooklyn, New York.  I told Mr. Hernandez that statement was untrue and that I recall an appraiser's report which referred to the apartment in the basement of that building;

EXHIBIT A

5.  Finding the document was difficult because I had recently moved from 319 West 47th Street, New York to 40-74th Street, Apt. 2B, North Bergen, New Jersey.  My correspondence was forwarded to my office located at 403 West 38th Street, New York, New York.  My voice mail was also forwarded to that address.  I have worked primarily as a teacher, since the spring of 1997.   During the spring and early summer of 1999 I seldom return to the 38th Street office/apartment;

6.  Sometime in late August I found the appraiser's report on the 553 47th Street property. The report had been prepared by the GreenPoint Savings Bank in 1990.  I gave the report to Mr. Hernandez.  The report indicates that there was a finished basement at 553 47th street, Brooklyn, New York  at the time that I purchased the property from Mr. and Mrs. Vales in 1990.

7.  In 1991 I decided to sell the building and moved to a subleased apartment on West 45th Street in Manhattan, N.Y.  At that point in time I permitted John O'Hara to live in the basement apartment in return for his commitment to supervise the work and payment of the mortgage by Messrs. Lozano, Munoz and Martinez pending the closing of the property. These three individuals signed a lease with an option to buy the property within a year.

Dated: September 22, 1999
        New York, New York

Magaly Lucas



**The Green Point Savings Bank**

Chartered 1868    Member FDIC

MORTGAGE APPRAISAl
Telephone (718) 670-7557

41-60 MAIN STREET ● FLUSHING, N.Y. 11355-3620

MAGALY LUCAS
45 DANNER AVENUE
HARRISON, NY  10528

                              Re :   PRUCHASE
                         Premises:   553 47 STREET
                                     BROOKLYN, NY  11220

        We have received your request for a copy of an appraisal report
of the above stated premises.

        Enclosed please find your copy.

                                        Sincerely,

                                        Mortgage Appraisal Department

        Enc.

000675

EXHIBIT C

RUSH

**VALUATION**

0000090000265

crofiche No: _____

PLACEMENT VALUE :

Application No. _____

d 20 x 90 1722 Range of Sales :
Lot Size @ Value of :                    $ 80000

ROVEMENTS :
36000    Square feet
         Cubic ft. @ $ 5.10    Per Sq. Foot  113600    $ 146880    Garage
                               Per Cuba

% Depreciation                 36780
CBD

d Depreciated Value            146880        Total $ 836886

| APPRAISAL | ASSESSED VALUE | FIRE INSURANCE REQUIRED (60%) |
|---|---|---|
| $ 80000 | $ 2400 | Struct.: A $ |
| rmts $ 185000 | $ | B $ |
| $ 2105000 | $ 12000 | C $ 150000 |
| 19.90    Year | Taxes $ 1140 | Total $ 150000 |

I hereby certify that I have examined the above property and according to my best judgement the value is as stated above and
amount is that the amount of $                                    12 45 - 1
                                                                          Appraiser

BAY RIDGE | S 14

Commitment Issued ____
Mortgage number 184042-0-14  5-4-90
FEB 13 1980
Map Section 3  Block 757  Lot 54  DATE 1.9.90

SMSA _____  Quadrant 10 BIS

EMBER A: 553  47 ST  BROOKLYN  11220
EMBER B: _____

UNTY: KINGS  LOT SIZE: 20 X 90.75 etc.  AREA 1827  sq. ft. ZONING Residential / Commer.

RUCTURE[U]: No. of Stories 2+BASE  Type BROWNSTONE + BRICK  2 FAMILY
[ ] Detached  [ ] Semi-Detached  [ ] Attached  Year Built ABT 1910

DIMENSIONS:
Main 20 X 45  Ext. 7 X 6 VEST (R)  Ext.
Ext.  Ext. 4 X 2 2+BASEBAY (F)  Ext.
Ext.  Ext.  Courts

Layout:  RENT
st Level
nd Level
rd Level 5R · B  450 NL
th Level 4R · B  OWNER
Basement 3R · B
ellar 3R · B BOIL 5'R"

Total No. Apts. 2  Total Rooms 15
Total Baths 4  Total Bedrooms 6
Total Kitchens 3  Other BOIL
Garage: Att-Det NONE
Driveway: Common-Pvt. NONE
Monthly Rent $ OWNER+450  Ann. Rent $ 0+5400

NEIGHBORHOOD: GOOD RESIDENTIAL / COMMERCIAL AREA  SIMILAR AND VARIOUS TYPE DWELLINGS ON BLOCK.
S OF 39 ST
E OF 4TH AV
AVERAGE INCOME GROUP.

NEIGHBORHOOD FACILITIES: Schools 2 BL  Churches 2 BL  Stores ON BL  Other
Transportation BUS  Utilities [+] water [+] electric [+] gas [+] sewers [ ] cesspools [ ]

| | E | G | F | P | EXTERIOR | | E | G | F | P | INTERIOR | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL CONDITION | | ✓ | | | | GENERAL CONDITION | | ✓ | | | | |
| PAVEMENT | | ✓ | | | [ ] mac [ ] asph [ ] | FLOORS | | ✓ | | | [ ] hw [ ] pk [ ] ply [ ] | |
| SIDEWALKS & CURBS | | ✓ | | | [ ] conc [ ] slate [ ] | WALLS | | ✓ | | | [ ] dry/wall [ ] pl [ ] | |
| DRIVEWAY | | ✓ | | | [ ] conc [ ] mac [ ] | CEILINGS | | ✓ | | | [ ] dry/wall [ ] pl [ ] | |
| ROOF | | ✓ | | | [ ] asph [ ] rubb [ ] | KITCHENS-FLOORS | | ✓ | | | [ ] lvt [ ] lino [ ] cer [ ] crpt [ ] | |
| CHIMNEYS | | ✓ | | | [ ] bk [ ] galv [ ] | CABINETS | | ✓ | | | [ ] wd [ ] form [ ] met [ ] | |
| LEADERS & GUTTERS | | ✓ | | | [ ] alum [ ] copp [ ] galv [ ] | SINKS | | ✓ | | | [ ] s/s [ ] st/s [ ] st/s [ ] porc [ ] | |
| FIRE ESCAPES | | | ✓ | | [ ] YES [+] NO | APPLIANCES | | ✓ | | | [ ] frqtrig [ ] d/w [ ] wsh/mch [ ] | |
| PAINT | Q | | | | WORK REQUIRED: [ ] YES [ ] NO | RANGES | | ✓ | | | [ ] gas [ ] elec [+] [ ] two [ ] | |
| CORNICE | | ✓ | | | [ ] asph [ ] slate [+] wd [+] MET | BATHS-FLOORS | | ✓ | | | [ ] cer [ ] vit [ ] lino [ ] crpt [ ] | |
| FOUNDATION | | ✓ | | | [+] conc [ ] CB [ ] stone [ ] | WALLS | | ✓ | | | [ ] cer [ ] dry/wall [ ] pl [ ] | |
| FRONT WALL | | ✓ | | | [ ] bk [ ] alum [ ] stucco [ ] wd/sh [ ] | TUBS | | ✓ | | | [ ] ci bl [ ] bl [ ] legs [ ] | |
| | | | | | [ ] asb/sh [ ] asph/sh [+] | SHOWERS | | ✓ | | | [ ] st [ ] mas [ ] | |
| SIDE & REAR WALLS | | ✓ | | | [+] bk [ ] alum [ ] stucco [ ] wd/sh | BASINS | | ✓ | | | [ ] vanity [ ] hang [ ] ped [ ] | |
| | | | | | [ ] asb/sh [ ] asph/sh [ ] | FUEL/FUEL CAPACITY | | ✓ | | | [ ] gas [+] oil [ ] elec [ ] | GALS |
| FRAME AND SASH | | ✓ | | | [+] wd [ ] alum [ ] slide [ ] perm frame | HEATING SYSTEM | | ✓ | | | [ ] steam [ ] hw [ ] hot air [ ] | |
| | | | | | [ ] alum [ ] wd [ ] vinyl [+] | HOT WATER SUPPLY | | ✓ | | | [ ] gas [+] oil [ ] elec [ ] indep [ ] auto | |
| PORCH | | | ✓ | | [ ] EP [ ] OP [ ] scr/P [ ] | AIR CONDITIONING | | | | | YES [ ] NO [+] [ ] cntrl [ ] wall [ ] window | |
| GARAGE | | | | | | PLUMBING | | ✓ | | | [ ] brass [+] cl [ ] galv [ ] | |
| MISCELLANEOUS | | | | | | MISCELLANEOUS | | ✓ | | | [ ] DAMP LK | |



46 ST
[diagram: box with 949 / 92]
5  AV  6  AV  N
47 ST

OWNS PROP 18 YRS
BUYER TO OCCUP 1st OWNER
C & I ACTION TEAM SOLD  NET NA
60's KITCH + 2 60's BATH 1st DUPLEX
40's KITCH + 20's BATH  2ND FL
POTENTIAL RENTABLE 2nd FL BUT AL NO
PRIVATE ENTRANCE - SMALL ROOMS
RECENT IMPROV NONE

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY :    PART 17
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

          -against-

JOHN O'HARA,

                 **Defendant.**
------------------------------------------------------------X

                                 Indictment No. 13525/96

                                   **AFFIDAVIT**

STATE OF NEW YORK) ss: KINGS COUNTY)

DENISE MURRAY, being duly sworn, deposes and says:

1. I am familiar with the matters hereinafter set forth. This affidavit is submitted in support of the above-named defendant's motion for an order pursuant to Criminal Procedure Law § 330.30, to set aside the verdict;

2. I lived at 563 47th street, Brooklyn, New York, a two-family residential brownstone, for approximately 29 years. I moved from that locale in 1991. I currently reside at 89 Bard Avenue, Staten Island, New York, 10301, apartment 2R. I am 38 year old and on disability retirement from the U.S. Postal Service;

3. The area of 47th street where I lived was and still is very a family oriented neighborhood. During my 29 years living at 563 47th street I became well acquainted with most of my neighbors. This included the Vales, who lived a few houses down at 553 47th street. In the late summer of 1989 I was invited to live with the Vales in their home at 553 47th street. I lived with them for approximately 4 months. I lived on the second floor of their brownstone. It was my practice to often have meals in the basement apartment with, David and Rebecca, Mrs. Vales' son and daughter-in-law. We were childhood friends and contemporaries. All our meals were made, served and eaten in the basement. The basement had one large studio room, a small parlor, a functional kitchen and separate bathroom;

4. I am also aware that the Vales had renovated and finished the basement apartment of the 553 47th street location in the early/ mid-1980's to accommodate their older son Mark, whose wife Debbie had given birth to a son, Mark, Jr. They lived in the basement prior to David, his wife Rebecca and their two young daughters, Christie and Michele. .

000679
EXHIBIT B

5. During my stay at the Vales I often helped Rebecca tend to her young daughters. Christie was two at the time, and Michele, was a newborn. This also took place in the basement apartment of David and Rebecca located at 553 47th street location;

6. I became aware of Mrs. Josephine Vales' testimony in a passing conversation with an old neighborhood friend, Grace Phillips. She asked me whether or not I had not once lived with the Vales. This conversation occurred in late August. At that time I informed her that I would be willing to speak the Mr. O'Hara's attorney. I called his office in the first week of September. I do not personally know Mr. O'Hara.


*Denise T Murray*
DENISE MURRAY

*Denise Murray*
(Print Name)


On September 18, 1999, before me personally came Denise Murray, to me known to be the person described in and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that she executed the same.

*Charles D. Parisi Jr.*
Notary Public
Commission Expires: April 22, 2000
NYs Drivers License 762-486-345

Charles D. Parisi  Jr.
Notary Public, State of New York
Registration #02PA5059032
Qualified in Richmond County
My Commission Expires
April 22, 2000

000680

# EXHIBIT F

# Statement of Account

ARAQ0201 1365

0021/0026

09 7    1

TERMS - PAYMENT DUE IN FULL.  PLEASE PAY BY 10/04/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 10-04-93 | $424.55 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526 000042455000042455B

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 09-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $535.26 | $535.26 | $424.55 | $424.55 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835249-0 | | PAYMENT RECEIVED - THANK YOU | 09/06 | | 535.26 |
| 007250-2 | 001 | ACHILLEUS OE, ATHENS GREECE | | | |
| | | 26,900 GREEK DRACHMA  BILLED AS | | 117.45 | |
| 501250-2 | 002 | DITMARS FLOWER SHOP ASTORIA | NY | 173.20 | |
| | | 025012833 FLOWERS/PLANTS NY144530 | 09/07/93 | | |
| 501253-2 | 003 | MEDICI SHOES      NEW YORK | NY | 86.60 | |
| | | 360425876 MEN/WOMENS APPAREL/ACC | 09/09/93 | | |
| 501257-2 | 004 | TUTTA PASTA BROOKLYN NY | | 17.80 | |
| | | 000392474 FOOD AND BEVERAGE | 09/14/93 | | |
| 501260-2 | 005 | HARRY HASSON & SON FATLANTIC CITY | NJ | 29.50 | |
| | | 26000505  FLOWERS | 09/16/93 | | |
| | | ACCOUNT TOTAL | | $424.55 | $535.26 |

*Dept For Evid*
*Santo, Acc*
*5/27/99*

To serve you better, we are making changes to the Cardmember newsletter.
Watch for a new look coming soon!

W2    001 OZ.
(12L  BL)





# Statement of Account

ABAQ020:
3498

0019/0C26

08 7       2

YOUR ACCOUNT IS 30 DAYS PAST DUE. PAYMENT MUST BE RECEIVED
BY 09/06/93 TO AVOID A DELINQUENCY CHARGE.

| Account Number | Closing Date | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 08-18-93 | $535.26 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526 000535260000228399

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 08-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone. Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $306.87 | $.00 | $228.39 | $535.26 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | Charges | Credits |
|---|---|---|---|---|
| 090229-2 | 001 | LAPIS, ATHENS | | |
| | | GREECE | | |
| | | 53,500 GREEK DRACHMA   BILLED AS | 228.39 | |
| | | ACCOUNT TOTAL | $228.39 | $.00 |

We are pleased to announce that Car Rental Loss and Damage Insurance (CRLDI) continues
to be available for rentals from all agencies that accept the Card, both domestically
and internationally (except rentals in Italy and New Zealand). This supersedes the program
materials restricting coverage to only fifteen rental companies.

008683

001 0Z
(12 3L  )

# Statement of Account

0017/0026

ARA00203
666

07 7        1

TERMS - PAYMENT DUE IN FULL.  PLEASE PAY BY 08/03/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 08-03-93 | $306.87 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526 0003068700003068675

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 07-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $2,677.17 | $2,677.17 | $306.87 | $306.87 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835175-0 | | PAYMENT RECEIVED - THANK YOU | 06/24 | | 1,200.00 |
| 832183-2 | | PAYMENT RECEIVED- AMEX OFFICE | 07/02 | | 1,477.17 |
| 552195-2 | 001 | BRITTANIA BEACH HTL NASSAU BAHAMAS | | | |
| | | REFER TO CHARGE FROM NASSAU BAHAMAS | | 38.89 | |
| 052196-2 | 002 | DOLLAR RENT A CAR BROOKLYN NY | | | |
| | | INV#376320 | | 136.46 | |
| 501170-2 | 003 | VICTORIA SECRET CAT COLUMBUS | OH | | |
| | | 684961071 CATLG MDSE 800-888-1500 06/18/93 | | 131.52 | |
| | | **ACCOUNT TOTAL** | | **$306.87** | **$2,677.17** |

Travel smart this summer and get your Travelers Cheques the easy way: call 1-800-ORDER-TC
24 hours a day and get your Travelers Cheques in any of seven currencies delivered right to your
door.  First Class Mail delivery is FREE and you pay only the customary 1% transaction fee.
Order with the Optima Card or use a personal check (please have your checkbook handy).
To order your Travelers Cheques, call 1-800-ORDER-TC.

W2      001 0Z
(12L     )



# Statement of Account

BRAQ0301
2703

0015/0026

06 7    2

YOUR ACCOUNT IS 30 DAYS PAST DUE. PAYMENT MUST BE RECEIVED
BY 07/06/93 TO AVOID A DELINQUENCY CHARGE.

| Account Number | Closing Date | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 06-17-93 | $2,677.17 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY ·11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY  10116-2855

1101251526 002677170001004836

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 06-17-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone. Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $1,672.34 | $.00 | $1,004.83 | $2,677.17 |

| Amex Ref. No. | Item No | Listing of Charges and Credits | | | Charges | Credits |
|---|---|---|---|---|---|---|
| 501147-2 | 001 | APPLE VACATIONS | NEWTOWN SQUARE | PA | | |
| | | 000459233 TOURS/TICKETS | | 05/26/93 | 644.00 | |
| 501156-2 | 002 | CONFORT INN | EDGEWATER | NJ | | |
| | | 015630781 LODGING | | 06/03/93 | 44.52 | |
| 501160-2 | 003 | BALLY'S PARK PLACE | ATLANTIC CITY | NJ | | |
| | | 001330970 LODGING | | 06/07/93 | 225.76 | |
| 501162-2 | 004 | BRIDGE CAFE | NEW YORK | NY | | |
| | | 016210827 FOOD/BEV | | 06/10/93 | 90.55 | |
| | | **ACCOUNT TOTAL** | | | **$1,004.83** | **$.00** |

WZ    001 OZ
(12L3L  )

000685



# Statement of Account

ARAQ0203
4050

0013/0026

05 7 1

TERMS - PAYMENT DUE IN FULL. PLEASE PAY BY 06/03/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 06-03-93 | $1,672.34 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN NY  11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY  10116-2855

1101251526 0016723400016723409

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 05-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone. Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $1,009.87 | $1,009.87 | $1,672.34 | $1,672.34 |

| Amex Ref. No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 832132-2 | | PAYMENT RECEIVED- AMEX OFFICE | 05/12 | | 1,009.87 |
| 873118-2 | 001 | HOLIDAY INN CROWN PLAZA SAN JUAN PR<br>INV#415539 | | 162.60 | |
| 872124-2 | 002 | DISCOUNT RENT A CAR SANTURCE PR<br>INV#596461 | | 149.75 | |
| 663111-2 | 003 | TRANS WORLD AIRLINES BROOKLYN      NY<br>TKT# 0151508548601 | 04/05 | 358.00 | |
| 501116-2 | 004 | WINDOWS ON THE WORLDNEW YORK      NY<br>D1160721 FOOD-BEV | 04/25/93 | 45.18 | |
| 501119-2 | 005 | HOTEL CARIB INN ISLA VERDE PR<br>0428      LODGING | 04/29/93 | 703.55 | |
| 501124-2 | 006 | RAM'S HEAD INN #3 ABSECON NJ<br>000597575 FOOD AND BEVERAGE | 05/01/93 | 193.39 | |
| 501124-2 | 007 | RAM'S HEAD INN #3 ABSECON NJ<br>000292560 FOOD AND BEVERAGE | 05/01/93 | 59.87 | |
| | | **ACCOUNT TOTAL** | | **$1,672.34** | **$1,009.87** |

#2
001 OZ.
(12L 4  )

Case 1:17-cv-04766-LDH-RML    Document 145-7    Filed 02/26/24    Page 688 of 719 PageID #: 4590

# Statement of Account

0011/0026

BBA003005
2163

04 7    12  0  1

TERMS - PAYMENT DUE IN FULL.  PLEASE PAY BY 05/03/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 05-03-93 | $1,009.87 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN          NY
11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY  10116-2855

1101251526 00100987000100987 2

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 04-17-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $1,136.55 | $1,136.55 | $1,009.87 | $1,009.87 |

| Amex Ref No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 835091-O | | PAYMENT RECEIVED - THANK YOU | 04/01 | | 1,136.55 |
| 501095-2 | 001 | ST MAGGIE'S CAFE NEW YORK NY 000108899 FOOD AND BEVERAGE | 04/02/93 | 92.75 | |
| 501095-2 | 002 | LA SERRE RESTAURANT ALBANY NY 000611195 FOOD AND BEVERAGE | 04/05/93 | 300.85 | |
| 501096-2 | 003 | OMNI ALBANY NEW YORK ALBANY NY 29550    LODGING | 04/06/93 | 163.79 | |
| 603098-2 | 004 | TRANS WORLD AIRLINES MARLTON NJ TKT# 0159200124444 | 03/05 | 452.48 | |
| | | ACCOUNT TOTAL | | $1,009.87 | $1,136.55 |

W2

The Purchase Protection(sm) Plan and Lorton Assurance have been extended
through July 31, 1993.  Watch for the June statement insert for changes effective August 1, 1993.
The Purchase Protection Plan is underwritten by Insurance Company of North America,
a CIGNA company.  Coverage is subject to the terms, conditions and exclusions of the policy.



# Statement of Account

0009/0026

TERMS - PAYMENT DUE IN FULL.  PLEASE PAY BY 04/03/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 04-03-93 | $1,136.55 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN          NY
11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2855
NEW YORK NY  10116-2855

1101251526 0011365500012169215

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-012515-22006 | 03-18-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone.  Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $256.14 | $388.80 | $1,269.21 | $1,136.55 |

| Amex Ref No. | Item No. | Listing of Charges and Credits | | Charges | Credits |
|---|---|---|---|---|---|
| 501048-2 | | BALLY'S PARK PLACE    ATLANTIC CITY    N | | | |
| | | 001358860 LODGING | 02/15 | | 388.80 |
| 501048-2 | 001 | BALLY'S PARK PLACE    ATLANTIC CITY    NJ | | | |
| | | 001358940 LODGING | 02/15/93 | 388.80 | |
| 501048-2 | 002 | BALLY'S PARK PLACE    ATLANTIC CITY    NJ | | | |
| | | 001358900 LODGING | 02/15/93 | 388.80 | |
| 501049-2 | 003 | SHORT RIBS RSTR BROOKLYN NY | | | |
| | | 000500533 FOOD AND BEVERAGE | 02/17/93 | 25.00 | |
| 501055-2 | 004 | WINDOWS ON THE WORLDNEW YORK    NY | | | |
| | | DO550258 FOOD-BEV | 02/18/93 | 34.69 | |
| 501056-2 | 005 | MACY'S HERALD SQUARENEW YORK    NY | | | |
| | | 011616038 JEWELRY | 02/24/93 | 431.92 | |
| | | | ACCOUNT TOTAL | $1,269.21 | $388.80 |

W2

Look in this month's Newsletter for valuable information on the
Benefits and Services available exclusively to Cardmembers.



# Statement of Account

0007/0026

02 7  12 0 1

W2  ABA00203.
3485

TERMS - PAYMENT DUE IN FULL. PLEASE PAY BY 03/04/93.

| Account Number | Pay By | Total Amount Due |
|---|---|---|
| 3711-012515-22006 | 03-04-93 | $256.14 |

JOHN KENNEDY OHARA
553 47TH STREET
BROOKLYN          NY
11220-1310

MAIL PAYMENT TO:
AMERICAN EXPRESS
P.O. BOX 2853
NEW YORK NY  10116-2853

1101251526  0002561400002561l44

# Summary of Account

| Cardmember Name | Account Number | Closing Date |
|---|---|---|
| JOHN KENNEDY OHARA | 3711-D12515-22006 | 02-16-93 |

For fast balance and payment information, call our automated service line at
1-800-292-AMEX using a touch tone phone. Please have your account number ready.
If you have a question about your account, call 1-800-528-4800 (24 hours/7 days).

Page 1 of 2

| Previous Balance | Credits/Payments | New Charges | New Balance |
|---|---|---|---|
| $88.68 | $88.68 | $256.14 | $256.14 |

| Amex Ref. No. | Item No | Listing of Charges and Credits | Charges | Credits |
|---|---|---|---|---|
| 835026-O | | PAYMENT RECEIVED - THANK YOU          01/26 | | 88.68 |
| 822017-2 | | ANNUAL MEMBERSHIP FEE JOHN KENNEDY OHARA | | |
| | | PERIOD 03/93 THRU 02/94 | 55.00 | |
| 063021-2 | 001 | BRONX ACURA BRONX NY          INV#112541 | 50.00 | |
| 501021-2 | 002 | TROPWORLD          ATLANTIC CITY     NJ | | |
| | | 000000668 LODGING          01/20/93 | 33.55 | |
| 501029-2 | 003 | CAFE IGUANA          NEW YORK     NY | | |
| | | DO294780 FOOD-BEV          01/28/93 | 29.25 | |
| 501029-2 | 004 | CAFE IGUANA          NEW YORK     NY | | |
| | | DO294783 FOOD-BEV          01/27/93 | 16.00 | |
| 501029-2 | 005 | ST MAGGIE'S CAFE NEW YORK NY | | |
| | | 000302038 FOOD AND BEVERAGE          01/29/93 | 48.40 | |
| 501033-2 | 006 | WINDOWS ON THE WORLDNEW YORK     NY | | |
| | | DO330377 FOOD-BEV          01/28/93 | 23.94 | |
| | | **ACCOUNT TOTAL** | **$256.14** | **$88.68** |

Read the enclosed "For Members Only" newsletter for information
on the financial planning benefits of the American Express® Card.



# EXHIBIT G



May 25,1999

NYS Supreme Court
CIVIC CENTER Part 10
360 Adams Street
Subpoena Records Dept.-rm 436
Brooklyn NY 11201

RE:    People V. John O'Hara

Dear Sir/Madam:

Enclosed please find photocopies of documents you had requested responsive to the above referenced summons served upon Chase Bank. .

The enclosed documents are true and accurate records kept by Chase in its

normal course of business.

I trust that this will comply with any evidentiary rules of the court. This information is provided in compliance with the subpoena, but in lieu of appearance.

Very truly yours,

Ona Weiner
212 552-2707

Enc.
FILE:   29050

*Deft G in Evid*
*Senti, Acc.*
*5/27/99*

**ChemicalBank**

$30323001575309     00RTCVC1 01 00000000001575309     0000501810311   A
⌐MR. JOHN K O'HARA                                              661
 553 47TH STREET                                                018
 BROOKLYN NY 11220-4636

PAGE   1 OF   2

| Statement Period | Enclosures | Account Number | | |
|---|---|---|---|---|
| FEB 25 - MAR 23,1993 | 5 | 001-575309 | | |
| Previous Balance 954.19 | 2Credits 2,896.89 | | Balances | |
| Closing Balance 2,847.24 | 11Debits 1,003.84 | Date | Amount | |

BASIC CHECKING

|  |  |  |  | FEB | |
|---|---|---|---|---|---|
| | | | | 26 | 2,282.64 |
| | DEPOSITS AND CREDITS | | | MAR | |
| FEB 26 | 1,448.45 MONTCLARE&GUA | AS OF 02-26 | | 2 | 2,228.64 |
| | SALARY DEP  ECS PM$ 08263 | | | 4 | 2,171.16 |
| MAR 15 | 1,448.44 MONTCLARE&GUA | AS OF 03-15 | | 8 | 2,071.16 |
| | SALARY DEP  ECS PM$ 08263 | | | 10 | 1,771.16 |
| | | | | 15 | 3,153.34 |
| | | | | 17 | 3,073.34 |
| | CHECKS AND DEBITS | | | 18 | 2,973.34 |
| | | | | 19 | 2,852.74 |
| FEB 26 | 120.00 ATM-4600  WITHDWL CARD$ 00046658377 | | | 23 | 2,847.24 |
| | WORLD TRADE  23272 | AS OF  2-25 | | | |
| | NEW YORK CITY,NY NYCE | SEQ-100534 | | | |
| MAR 08 | 100.00 ATM-2301  WITHDWL CARD$ 00046658377 | | | | |
| | BALLY PARK PLACE 3 | AS OF  3-06 | | | |
| | ATLANTIC CITY,NJ NYCE | SEQ-112590 | | | |
| MAR 17 | 80.00 ATM-6611  WITHDWL CARD$ 00046658377 | | | | |
| | 52 BROADWAY | AS OF  3-16 | | | |
| | N.Y.C.        ,NY CBNY | SEQ-004246 | | | |
| MAR 18 | 100.00 ATM-8883  WITHDWL CARD$ 00046658377 | | | | |
| | 401 FLATBUSH AVE. | AS OF  3-18 | | | |
| | B'KLYN        ,NY CBNY | SEQ-008643 | | | |
| MAR 19 | 100.00 ATM-7461  WITHDWL CARD$ 00046658377 | | | | |
| | 260 COLUMBUS AVE. | AS OF  3-18 | | | |
| | N.Y.C.        ,NY CBNY | SEQ-003986 | | | |
| MAR 23 | 5.50 MONTHLY SERVICE CHARGE | | | | |
| | $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH | | | | |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAR 02 | 320 | 54.00 | MAR 15 • | 363 | 66.26 |
| MAR 04 | 321 | 57.48 | MAR 19 | 364 | 20.60 |
| MAR 10 • | 324 | 300.00 | | | |

• INDICATES SKIP IN CHECK SEQUENCE

SERVICE CHARGES

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS  $   5.50,

•• T 3••

---

**ChemicalBank**

$30323001575309     00RTCVC1 01 00000000001575309     0000501810311   A
⌐MR. JOHN K O'HARA                                              661
                           000692                                018

**ChemicalBank**

930323001575309       DORTCVC1 01 0000000001575309    0000501810311    A
              MR. JOHN K O'HARA                        661
              553 47TH STREET                          018
              BROOKLYN  NY  11220-4636

PAGE  2 OF  2

| Statement Period | Enclosures | Account Number | | |
|---|---|---|---|---|
| FEB 25 - MAR 23, 1993 | 5 | 001-575309 | | |
| Previous Balance | | Credits | Balances | |
| Closing Balance | | Debits | Date | Amount |

$ 4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR SAM CASH MACHINES.

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS

**ChemicalBank**

930423001575309        OORTCVCI 01 00000000001575309    0000901810311   A
                MR. JOHN K O'HARA                                    661
                553 47TH STREET                                      018
                BROOKLYN NY 11220-4636

PAGE  1 OF  2

| Statement Period | | Enclosures | Account Number | | |
|---|---|---|---|---|---|
| MAR 24 - APR 23,1993 | | 9 | 001-575309 | | |
| Previous Balance | 2,847.24 | 2 Credits | 2,896.91 | Balances | |
| Closing Balance | 2,553.53 | 15 Debits | 3,090.62 | Date | Amount |

BASIC CHECKING

| | | | MAR | |
|---|---|---|---|---|
| DEPOSITS AND CREDITS | | | 26 | 2,415.28 |
| | | | 29 | 2,195.28 |
| MAR 31 | 1,448.45 MONTCLARE&GUA        AS OF 03-31 | | 31 | 3,553.73 |
| | SALARY DEP   ECS PM# 08263 | | APR | |
| APR 15 | 1,448.46 MONTCLARE&GUA        AS OF 04-15 | | 2 | 2,207.18 |
| | SALARY DEP   ECS PM# 08263 | | 6 | 2,193.18 |
| | | | 7 | 1,809.37 |
| | CHECKS AND DEBITS | | 12 | 1,759.37 |
| | | | 14 | 1,548.44 |
| MAR 29 | 50.00 ATM-6617  WITHDWL CARD# 00046658377 | | 15 | 2,921.90 |
| | 52 BROADWAY        AS OF  3-29 | | 19 | 2,661.28 |
| | N.Y.C.       ,NY CBNY  SEQ-009180 | | 23 | 2,653.53 |
| MAR 29 | 170.00 ATM-7462  WITHDWL CARD# 00046658377 | | | |
| | 260 COLUMBUS AVE.     AS OF  3-27 | | | |
| | N.Y.C.       ,NY CBNY  SEQ-003128 | | | |
| MAR 31 | 90.00 ATM-6613  WITHDWL CARD# 00046658377 | | | |
| | 52 BROADWAY        AS OF  3-31 | | | |
| | N.Y.C.       ,NY CBNY  SEQ-005940 | | | |
| APR 02 | 210.00 ATM-7461  WITHDWL CARD# 00046658377 | | | |
| | 260 COLUMBUS AVE.     AS OF  4-02 | | | |
| | N.Y.C.       ,NY CBNY  SEQ-005122 | | | |
| APR 06 | 14.00 CHECKBOOK CHARGE | | | |
| | AS OF 02-93 | | | |
| APR 23 | 7.75 MONTHLY SERVICE CHARGE | | | |
| | $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH | | | |

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAR 26 | 325 | 383.81 | APR 07 • | 370 | 383.81 |
| MAR 26 • | 365 | 48.15 | APR 14 | 371 | 47.43 |
| APR 02 | 366 | 1,136.55 | APR 14 • | 373 | 163.50 |
| APR 15 | 367 | 75.00 | APR 19 | 374 | 260.62 |
| APR 12 | 368 | 50.00 | | | |

• INDICATES SKIP IN CHECK SEQUENCE

SERVICE CHARGES

•• Q23••

**ChemicalBank**

OORTCVCI 01 00000000001575309    0000901810311   A

ChemicalBank

930423001575309     OORTCVC1 01 0000000001575309     0000901810311     A
MR. JOHN K O'HARA                    661
553 47TH STREET                      018
BROOKLYN NY 11220-4636

PAGE  2 OF  2

| Statement Period | Enclosures | Account Number | | |
|---|---|---|---|---|
| MAR 24 - APR 23, 1993 | 9 | 001-575309 | | |
| Previous Balance | | Credits | | Balances |
| Closing Balance | | Debits | Date | Amount |

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS $  7.75,
$  4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR $AM CASH MACHINES.

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

•• P23 ••

ChemicalBank

ChemicalBank
930525001575309      OORTCVC1 01 00000000001575309    0000701810311    A
        MR. JOHN K O'HARA                    661
        553 47TH  STREET                     018
        BROOKLYN  NY  11220-1310

PAGE  1 OF  2

| Statement Period | Enclosures | Account Number | | |
|---|---|---|---|---|
| APR  24 - MAY  25,1993 | 7 | 001-575309 | | |
| Previous Balance | 2,653.53 | 1Credits | 1,000.00 | Balances |
| Closing Balance | 1,527.53 | 13Debits | 2,126.00 | Date  Amount |

BASIC CHECKING

|  | | APR | |
|---|---|---|---|
| DEPOSITS AND CREDITS | | 27 | 2,503.53 |
| | | 28 | 2,403.53 |
| MAY 13   1,000.00 DEPOSIT | | MAY | |
| | | 4 | 2,352.09 |
| | | 5 | 2,312.09 |
| CHECKS AND DEBITS | | 10 | 2,212.09 |
| | | 11 | 2,152.09 |
| APR 27   150.00 ATM-4900  WITHDWL CARD# 00046658377 | | 12 | 681.65 |
| BPPR EXP. SAN JUAN      AS OF  4-27 | | 13 | 1,681.65 |
| PR8AN JUAN   ,PR NYCE    SEQ-002325 | | 14 | 1,597.10 |
| APR 28   100.00 ATM-4900  WITHDWL CARD# 00046658377 | | 17 | 1,534.53 |
| CARIBE HILTON SAN    AS OF  4-27 | | 25 | 1,527.53 |
| SAN JUAN   ,P NYCE    SEQ-005320 | | | |

MAY 10   100.00 ATM-2598  WITHDWL CARD# 00046658377
              5323 5TH AVENUE      AS OF  5-08
              BROOKLYN   ,NY NYCE    SEQ-017743
MAY 11   60.00 ATM-0031  WITHDWL CARD# 00046658377
              BLKHR8E/ENG CK 397    AS OF  5-10
              PLEASANTVILLE,NJ NYCE    SEQ-026518
MAY 14   20.00 ATM-2301  WITHDWL CARD# 00046658377
              BALLY PARK PLACE 3    AS OF  5-14
              ATLANTIC CITY,NJ NYCE    SEQ-101185
MAY 25   7.00 MONTHLY SERVICE CHARGE
              $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAY 05 | 376 | 40.00 | MAY 12 | 504 | 1,009.87 |
| MAY 04 | 377 | 51.44 | MAY 14 | 505 | 19.55 |
| MAY 12 * | 502 | 460.57 | MAY 14 | 506 | 45.00 |
| MAY 17 | 503 | 62.57 | | | |

        * INDICATES SKIP IN CHECK SEQUENCE


            SERVICE CHARGES

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS  $   7.00,
$  4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR $AM CASH MACHINES.

** J24**

•• J24••

Chemical Bank

930525001575309     OORTCVC1 01 00000000001575309     0000701810311   A
                    MR. JOHN K O'HARA                              661
                    553 47TH STREET                               018
                    BROOKLYN NY 11220-1310

PAGE  2 OF  2

| Statement Period | Enclosures | Account Number | | |
|---|---|---|---|---|
| APR 24 - MAY 25,1993 | 7 | 001-575309 | | |
| Previous Balance | Credits | | Balances | |
| Closing Balance | Debits | | Date | Amount |

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

•• K24••

ChemicalBank

930623001575309_____    OORTCVC1 01 00000000001575309    0000601810311    A
MR. JOHN K O'HARA                                         661
553 47TH STREET                                          018
BROOKLYN   NY   11220-1310

PAGE   1 OF   1

| Statement Period | | Enclosures | Account Number | | |
|---|---|---|---|---|---|
| MAY 26 - JUNE 23,1993 | | 6 | 001-575309 | | |
| Previous Balance | 1,527.53 | Credits | 1,200.00 | Balances | |
| Closing Balance | 1,504.67 | 7 Debits | 1,222.86 | Date | Amount |

BASIC CHECKING

DEPOSITS AND CREDITS

JUN 23    1,200.00 CASH DEPOSIT

CHECKS AND DEBITS

JUN 23         4.00 MONTHLY SERVICE CHARGE
              $4.00 MAINT + 75¢ CHK/WTHDWL/PURCH

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| MAY 27 | 507 | 37.22 | JUN 18 | 512 | 25.00 |
| JUN 03 | 508 | 403.00 | JUN 23 | 513 | 500.00 |
| JUN 09 • | 511 | 170.00 | JUN 16 • | 526 | 83.64 |

              • INDICATES SKIP IN CHECK SEQUENCE

|  |  |
|---|---|
| MAY 27 | 1,490.31 |
| JUNE 3 | 1,087.31 |
| 9 | 917.31 |
| 16 | 833.67 |
| 18 | 808.67 |
| 23 | 1,504.67 |

SERVICE CHARGES

YOUR SERVICE CHARGE THIS STATEMENT PERIOD WAS  $   4.00.
$  4.00 MAINTENANCE PLUS 75¢ PER CHECK, PURCHASE AND
WITHDRAWAL FROM CHEMICAL, NYCE, MAC OR SAM CASH MACHINES.

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

** K13**

ChemicalBank
930623001575406___    OORTMBP 01 00000000001575406    0000001840211    A
                                                      661

ChemicalBank

930726001575309      OORTCVC1 01 00000G00001575309    0000701810311   A
MR. JOHN K O'HARA                              661
553 47TH STREET                                018
BROOKLYN  NY  11220-1310

| PAGE   1 OF   1 | | | |
|---|---|---|---|
| Statement Period | Enclosures | Account Number | |
| JUNE 24 - JULY 26, 1993 | 7 | 001-575309 | |
| Previous Balance | 1,504.67 | 1 Credits | 400.00 | Balances |
| Closing Balance | 231.21 | 9 Debits | 1,673.46 | Date | Amount |

BASIC CHECKING

DEPOSITS AND CREDITS

JUL 20       400.00 CASH DEPOSIT

CHECKS AND DEBITS

JUL 16       20.00 ATM-6611  WITHDWL CARD# 00046658377
52 BROADWAY          AS OF  7-15
N.Y.C.        ,NY CBNY   SEQ-009258
JUL 26       4.00 MONTHLY SERVICE CHARGE
MAINTENANCE CHARGE       4.00

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| JUN 25 | 514 | 29.65 | JUL 22 | 518 | 33.39 |
| JUN 25 | 515 | 1,200.00 | JUL 14 * | 527 | 20.94 |
| JUL 22 | 516 | 25.00 | JUL 19 | 528 | 113.78 |
| JUL 26 | 517 | 226.70 | | | |

* INDICATES SKIP IN CHECK SEQUENCE

SERVICE CHARGES

| | |
|---|---|
| JUNE | |
| 25 | 275.02 |
| JULY | |
| 14 | 254.08 |
| 16 | 234.08 |
| 19 | 120.30 |
| 20 | 520.30 |
| 22 | 461.91 |
| 26 | 231.21 |

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

•• M16••

**ChemicalBank**

930824001575309        OORTCVC1 01 00000000001575309    0000101810311    A
                    MR. JOHN K O'HARA                              661
                    553 47TH STREET                                018
                    BROOKLYN NY 11220-1310

PAGE   1 OF   1

| Statement Period | | Enclosures | Account Number | | | |
|---|---|---|---|---|---|---|
| JULY 27 - AUG 24,1993 | | 1 | 001-575309 | | | |
| Previous Balance | 231.21 | OCredits | .00 | | Balances | |
| Closing Balance | 202.21 | 2Debits | 29.00 | Date | | Amount |

BASIC CHECKING

CHECKS AND DEBITS

AUG 24        4.00 MONTHLY SERVICE CHARGE
              MAINTENANCE CHARGE            4.00

| DATE | CK.NO. | AMOUNT | DATE | CK.NO. | AMOUNT |
|---|---|---|---|---|---|
| AUG 03 | 520 | 25.00 | | | |

| AUG | Amount |
|---|---|
| 3 | 206.21 |
| 24 | 202.21 |

SERVICE CHARGES

PLEASE EXAMINE AT ONCE. EXCEPT FOR ELECTRONIC TRANSFERS,
ACCOUNT WILL BE CONSIDERED CORRECT IF NO REPORT IS
RECEIVED WITHIN 14 DAYS. DIRECT ALL INQUIRIES TO (212)
935-9935 OR WRITE 52 BROADWAY, NY, NY 10004

** D 6**

**ChemicalBank**

930824001575406        OORTMBP 01 00000000001575406    0000001840211    A
                    MR. OLON N ALPERN &/OR                         661

# CHEMICAL

# STATEMENT COPY

01575305000 1993092H

001-00140-8017-00140-          -000-1-01-03-00
MR. JOHN K O'HARA
553 47TH STREET
BROOKLYN NY  11220-1310

CHEMICAL
STATEMENT

STATEMENT PERIOD 08-25-93 TO 09-24-93
SERVICELINE: 935-9935 (TRI-STATE)
1-800-935-9935 (OUTSIDE TRI-STATE)
ACCOUNT NUMBER: 001-575309
2 ITEMS ENCLOSED                    PAGE 1 OF 2

YOUR ACCOUNTS AT A GLANCE...

| ACCOUNT | | OPENING BALANCE | CLOSING BALANCE |
|---|---|---|---|
| BASIC CHECKING | 001-575309 | $ 202.21 | $ 312.95 |
| | | | $ 312.95 |

BANKING AT CHEMICAL
        ALL OF YOUR ACCOUNTS LINKED IN A CHEMICAL BANK RELATIONSHIP CAN WORK
    TOGETHER TO REDUCE CHECKING AND SAVINGS MONTHLY MAINTENANCE FEES,
    PER CHECK FEES, TELLER WITHDRAWAL FEES, ATM FEES, AND P.O.S. MERCHANT
    DEBIT FEES.  WE WOULD BE HAPPY TO DISCUSS WITH YOU WAYS IN WHICH YOUR
    ACCOUNTS AT CHEMICAL BANK CAN REDUCE MONTHLY FEES.  PLEASE VISIT YOUR
    BRANCH FOR DETAILS.

CHEMICAL PLANNER
QUESTIONS ABOUT YOUR ACCOUNT OR
STATEMENT?  NOW YOU CAN CALL THE
SERVICELINE NUMBER INDICATED IN THE
UPPER RIGHT HAND CORNER OF YOUR
STATEMENT ANYTIME. 24 HOURS A
DAY, 7 DAYS A WEEK,
FOR ACCOUNT INFORMATION AND
PERSONAL CUSTOMER ASSISTANCE FROM
ONE OF OUR CUSTOMER SERVICE
REPRESENTATIVES.

YOUR ACCOUNTS IN DETAIL...
BASIC CHECKING ACCOUNT                    ACCOUNT NO. 001-575309
            OPENING BALANCE AS OF 08-25.

16 WALL STREET, NEW YORK, NY 10005
                                        $ 202.21

**CHEMICAL**

# STATEMENT COPY

001575309000 19930924

001-00140-8017-00140          000-1-01-03-00
MR. JOHN K O'HARA

CHEMICAL
STATEMENT

STATEMENT PERIOD 08-25-93 TO 09-24-93
SERVICE LINE: 1-209-935-3 (TRI-STATE)
1-800-935-9935 (OUTSIDE TRI-STATE)
ACCOUNT NUMBER: 001-575309

PAGE 2 OF 2

DEPOSITS/CREDITS
| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 09-07 | DEPOSIT | | 700.00 |
| | 1 DEPOSIT/CREDIT | | $ 700.00 |

WITHDRAWALS/FEES
| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 09-24 | MONTHLY MAINTENANCE FEE | | 4.00 |
| | 1 WITHDRAWALS/FEES | | $ 4.00 |

CHECKS                                    * DENOTES A GAP IN CHECK SEQUENCE

| CHECK NO. | DATE PAID | AMOUNT | CHECK NO. | DATE PAID | AMOUNT | CHECK NO. | DATE PAID | AMOUNT |
|-----------|-----------|--------|-----------|-----------|--------|-----------|-----------|--------|
| 521 | 09-07 | 535.26 | 522 | 09-15 | 50.00 | | | |
| | | 2 CHECKS | | | | | | $ 585.26 |

CLOSING BALANCE AS OF 09-24                                                     $ 312.95

DAILY BALANCE
| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 09-07 | 366.95 | 09-15 | 316.55 | 09-24 | 312.95 |

# EXHIBIT H

PAGE 02

STATE OF NEW YORK
OFFICE OF COURT ADMINISTRATION
P.O. BOX 2806 CHURCH ST. STATION
NEW YORK, N.Y. 10008

| | | | |
|---|---|---|---|
| 2 | 1706 | 03-08-1993 | 2369534 |
| Y | AD | | |

| 60193 | | 1 | 300.00 |
|---|---|---|---|
| | | TOTAL: | 300.00 |

JOHN KENNEDY OHARA ESQ.
MONTCLARE & GUAY
61 BROADWAY
10TH FLOOR SUITE 1000
NEW YORK, NY 10006

FOR THE BIENNIAL REGISTRATION
PERIOD 1993-94

NOTICE OF REQUIREMENT
TO REREGISTER    02/10/93

---

Section 468-a of the Judiciary Law and the Rules of the Chief Administrator of the Courts call for the biennial registration of all attorneys. As of May 25, 1990 the fee for such registration is $300 (sixty dollars of which shall be deposited in the Lawyers' Fund for Client Protection, and the remainder of which shall be deposited in the Attorney Licensing Fund), except that no fee shall be required from an attorney who certifies that he or she is retired from the practice of law as defined in 22 NYCRR 118.1 (g) (see reverse side).

The information that this office has on file is shown below. To reregister, you must (A) complete any information missing from this form, (B) annotate any information that should be corrected or changed, (C) sign both the Affirmation of Compliance (if applicable) and the affirmation on the bottom of this page, (D) Enclose a check or money order payable to "NYS Office of Court Administration" (No Cash Please) for $300 or sign the certification that you are retired from the practice of law, (E) mail to: NYS Office of Court Administration, P.O. Box 2806, Church Street Station, New York, N.Y., 10008.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Affirmation of Compliance required by the Rules of the 1st and 2d Departments:

I affirm that I have read DR 9-102 of the lawyer's code of professional responsibility as adopted by the New York State Bar Association, as amended, and am in compliance therewith, and with §603.15 (1st Dept.) or §691.12 (2d Dept.) of the Rules of the Appellate Division, governing the Conduct of Attorneys, which requires an attorney to preserve the identity of funds and property entrusted to him or her and to maintain certain records relative thereto.

Signature _____

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Retirement Certification (only if applicable): I certify that I am retired from the practice of law as defined in 22 NYCRR 118.( 1g) and therefore am not required to pay the $300 fee

Signature _____    Date _____

2369536/070291/3/2/468T* * * * * * * * * * * * * * * * * * * *

| 1-LAST NAME | FIRST NAME | MIDDLE NAME | 2-DATE OF BIRTH |
|---|---|---|---|
| OHARA | , JOHN | KENNEDY | 03/29/61 |

| 3-NAME WHEN ADMITTED TO NYS BAR (IF DIFFERENT): | | | 4-YEAR ADMITTED TO |
|---|---|---|---|
| LAST | FIRST | MIDDLE | NYS BAR: 1991 |

5-HOME ADDRESS:

~~479 61ST STREET~~
553 - 47th STREET
BROOKLYN, NY 11220

6-COUNTY OF RESIDENCE
KINGS

7-BUSINESS NAME AND ADDRESS

MONTCLARE & GUAY

61 BROADWAY
10TH FLOOR SUITE 1000
NEW YORK, NY 10006

8-COUNTY OF BUSINESS
NEW YORK

9-BUSINESS TELEPHONE
(212)509-3900

10-NYS JUDICIAL DEPARTMENT
OF BUSINESS: FIRST

11-NYS JUDICIAL DEPARTMENT
OF ADMISSION: SECOND

12-LAW SCHOOL GRADUATED:
CJNY

AFFIRMATION: I AFFIRM THAT THE STATEMENTS CONTAINED HEREIN ARE TRUE TO
THE BEST OF MY KNOWLEDGE AND BELIEF:

000704

SIGNATURE _____    DATE: 3-3-93

# EXHIBIT I



# NEW YORK CITY
# CAMPAIGN FINANCE BOARD



40 Rector Street, 7th Floor, New York, New York 10006   (212) 306-7100   FAX: (212) 306-7143/44

## CANDIDATE CERTIFICATION
## 1993 ELECTIONS

### 1. CANDIDATE NAME

| LAST | FIRST | M.I. |
|------|-------|------|
| O'Hara | John | K |

### 2. HOME ADDRESS

| STREET ADDRESS | APT. NO. | CFB USE ONLY |
|---|---|---|
| 553 - 47th Street | House | CO |

| CITY | STATE | ZIP CODE | TELEPHONE |
|------|-------|----------|-----------|
| Bklyn | NY | 11220 | ( ) - |

### 3. EMPLOYMENT

| EMPLOYER NAME |
|---|
| Katz Katz + Rizzotti |

| STREET ADDRESS |
|---|
| 110 Wall Street |

| CITY | STATE | ZIP CODE | TELEPHONE |
|------|-------|----------|-----------|
| New York | NY | 10005 | (212) 227-0001 |

### 4. PREVIOUS ELECTIONS

Have you been a candidate previously for any office or political party position?  yes ☒  no ☐   If yes, please specify your most recent elections below:

| DATE OF ELECTION MONTH | YEAR | OFFICE OR PARTY POSITION SOUGHT | DISTRICT | PARTY PRIMARY ENTERED |
|---|---|---|---|---|
| 9 | 90 | NYS Assembly | 51 AD | Democrat |
| 9 | 91 | NYC Council | 38 CD | Democrat |
| 9 | 92 | NYS Assembly | 51 AD | Democrat |

### 5. CERTIFICATION

I hereby verify that I have not accepted, and I agree not to accept, any contribution or contributions from any one contributor for the 1993 elections that exceed(s) the contribution limit applicable to the office I am seeking, pursuant to Section 3-703(1)(f) of the New York City Campaign Finance Act ("Act"); that I have not made, and agree not to make, expenditures in excess of the expenditure limits applicable to the office I am seeking, pursuant to Section 3-706 of the Act, for each election (except as otherwise provided in the Act); that I have not used, and I agree not to use, my personal funds or property (or that of my spouse or unemancipated children) for these elections, except as contributions that do not exceed the applicable limit; and that I agree to abide by all other applicable requirements of the Act and the New York City Campaign Finance Board Rules ("Rules"), including requirements for campaign finance disclosure statements and recordkeeping.

I understand that I, the political committees I authorize, and my agents are required to abide by the requirements of the Act and the Rules applicable to the 1993 elections for which this Certification is submitted, regardless whether I: meet the requirements of law to have my name appear on the official ballot for those elections; meet the threshold for eligibility for public funds; accept public funds; or am otherwise not eligible to receive public funds.

I understand that this Certification is a condition for qualifying to receive public funds in these elections and that the other conditions specified in the Act and the Rules must be satisfied before I may receive public funds pursuant to the Act.

I understand that my home address as provided above is the address to which legal notices, including correspondence and legal papers, should be sent. I further understand that if it becomes necessary to update this address, I am responsible for promptly notifying the Board, in writing, of the new address.

I understand that failure to abide by the requirements of the Act or the Rules may result in the imposition of such penalties as are provided in Section 3-711 of the Act and any other applicable law. I verify that the information in this Certification is true and complete to the best of my knowledge and belief.

This Certification does not apply to special elections held to fill vacancies.

ELAINE NACCACHE
Notary Public, State of New York
No. 41-4772422
Qualified in Queens County
Certificate Filed in New York County
Commission Expires 10/31/1994

SWORN TO ME THIS
29th DAY OF
April , 1993

Elaine Naccache      Eб. 110 82      CANDIDATE SIGNATURE
NOTARY PUBLIC

Def Exhibit B Evid 5/26/99

# EXHIBIT J

PEOPLE v. JOHN K. O'HARA
Preparation for Grand Jury presentation


OBJECTIVE: Proof that O'Hara registered and voted from false
addresses. Proof to concentrate on use of a fictitous address at
553 47th Street from 1992 to end of 1993. Subsidiary proof of
6017 4th Avenue address as possible false residence beginning in
1993.


SUBPOENAS:
-DMV RECORDS SHOWING CHANGES IN ADDRESS & ANY VEHICLES
REGISTERED TO O'HARA 1990-PRESENT.
-POSSIBLE NJ DMV? (subjects girlfriend and some associates live in
Atlantic City area).
-PVB RECORDS 1990-1996
-POST OFFICE CHANGE OF ADDRESS FORMS 1990-1996.
-TRW & CREDIT CARD REPORTS: BANKS. OBTAIN FULL FINANCIAL PROFILE OF
O'HARA, SUBPOENA ALL BANK RECORDS AND CREDIT CARD INFORMATION FROM
PERIOD IN QUESTION.
-O.C.A. RECORDS & REGISTRATION.
-CON EDISON BILLS AND SUBSCRIBER INFORMATION FOR JOHN K. O'HARA,
AND FOR ADDRESSES AT 47TH STREET AND 4TH AVENUE 1992 TO PRESENT.
-CABLE TV BILLS, SAME AS ABOVE.
-B.U.G BILLS
-NYNEX BILLS
BOARD OF ELECTIONS BUFF CARDS FOR O'HARA


CANVASSES
INTERVIEW & OBTAIN RECORDS AT 579 61ST ST.
INTERVIEW & OBTAIN RECORDS AT 553 47TH STREET
INTERVIEW & OBTAIN RECORDS AT 6017 4TH AVENUE
Speak to individual who may confirm or refut presence of O'Hara as
visitor or tenant. Speak to any owners or supers. Be aware that
O'Hara has friends/family/associates at 61st Street and 4th Avenue,
do not disclose exact purpose of investigation to them - ask
general questions as to residency of O'Hara. There is a good
probability that they will belive that purpose of probe is recent
election and they may therefore not be prepared to lie about prior
residences. Make sure to keep good records of their reponses as
they may change story as case progresses and O'Hara becomes aware
of subject of probe.

-2-

<u>INTERVIEWS</u>:Review purpose of investigation, interview further witnesses as evidence develops - concentrate most on Lozano and Parras, they are essential and must testify in the Grand Jury - note that they previiously testified in 1994 civili proceeding.

<u>ROBERTO LOZANO  553 47TH STREET</u>
Owner occupant of building, previously testified that O'Hara did not reside at location in 1992-1994, and that O'Hara asked him to hold mail and lie if asked if O'har lived there.

<u>SANDRA HELVERSON 430 OGDEN AVENUE APT. 8</u>
<u>JERSEY CITY N.J.</u> d.o.b. 1/26/67
Assisted O'Hara in 1994 campaign, may be estranged and in fear, interview concerning circumstances.

<u>IMMACULATA PELLICCIO</u>   <u>Hostile witness !</u>
<u>6017 4TH AVENUE</u>
Owner/ occupant of building where O'Hara claims to reside. Testified that she is lifelong friend of O'Hara and that in fact he did begin living there. There are two apartments above the shop owned by the Pelicanos. One is occupied by <u>EMILY MASSA</u> (Pellicano's daughter) - interview her on a separate occassion. Ask when adnd circumstances of O'Hara moving into building.

<u>QUERUBIN PARRAS 348 HIGHBROOK AVENUE PELHAM N.Y.</u>
Landlord of building at 579 61st Street in 1994. Leases & knowledge of O'Hara residence 1982- ?. O'Hara still occupied in 1994.


<u>MAUREEN STEFFENSEN 519 47TH STREET</u>   <u>Hostile witness!</u>
Close associate/friend of O'Hara, has led petition drives for O'Hara in past and assisted Tanya Ruiz candidacy this time. Should know residencies of O'Hara.

# EXHIBIT K

CHRONOLOGICAL DATA SHEET                                ②

| TITLE | | CASE NO. | OHARA |
|---|---|---|---|
| DATE | | A.D.A. | OHARA |

ACTION

6 - Regarding 553/47TH ST. DI's spoke to TENNENTS (WHO ARE NEW) AND DID NOT KNOW OHARA.

7 - DID DI's MADE 3 ATTEMPTS TO SPEAK W/ LAZZO LAZANO. NOT, DI's CONFIRMED LAZANO LIVES AT LOCATION AND OWNS BUILDING SINCE 1992 MAGGIE LUCAS PREVIOUS OWNER

8 - CABLE CHECK OF 553 47 ST. 3 CUSTOMS IN LAST 5 YEARS NONE OF WHICH ARE OHARA. Coles Check, NO LISTING FO A OHARA. POSTAL, NO LISTING POSTAL CHANGE OF ADDRESS FORMS for OHARA POSTAL CARRIER STATES MAIL for OHARA Presently BEING DELIVERED @ THIS Location.

9 - 6017 4TH AVE. Coles Check NO LISTING FROM 1992-1994, 1995 - OHARA LISTED AS A NEW LISTING TO THE PRESENT. Dec. 1994 CABLE Changed from TINA PELLICCIO TO JOHN OHARA

10 - OHARA RECIEVED 3 MOVING VIOLATIONS DI's CHECKING ON WHAT VEHICLE HE WAS DRIVING DI's OBTAINED DMV MATERIAL ON OHARA & HIS MOTHER.

CHRONOLOGICAL DATA SHEET                    ③

| TITLE | | CASE NO. |
| DATE | | A.D.A. |

CASE NO. OHARA
A.D.A. OMARA

ACTION

11- Con ED - SUBPOEANAED , BUG - SUBPOEANAED,
CABLE TV COMPLETED , NYNEX SUBPOEANAED
12- BUFF CARDS - OMARA HAS
13. CAVASSES , DI's CANVASSED - 47TH ST.
DI'S TO CANVASS LOCATION NOT ALREADY
CAVASSED - SEE REPORT

INTERVIEWS:
1- LOZANO  HARRIS - DI's INTERVIEWED &
OBTAINED LEASE AGREEMENT.
2- SANDRA HELVERSON - DANNY McCLEAN
HAS TRACKED HER TO A PO ON THE
JERSEY Shore AND is CONTINUING HIS
INVESTIGATION.
3- LOZANO - DI's CONFIRMED THAT LOZANO
LIVES @ 47TH St ADDRESS AND will
ATTEMPT TO INTERVIEW in THE AM on 10/10/96
4- IMMACULATA PELLICCIO - DI's TO CONFER
WITH Dan OMARA.
5- MAUREEN STEFFENSEN /Home Phone
845-6666, DI's McCLEAN AND PRESSER
Spoke W/ HUSBAND JOHN WHO STATED
MAUREEN NOT Home AND will Fut call
DI's.

14- DAOK FINACIAL INVESTIGATORS- Chief Bob
Ruston - DOING  FINACIAL INVEST-

CHRONOLOGICAL DATA SHEET ④

| TITLE | CASE NO. |
|---|---|

DATE | A.D.A.

ACTION

AND DRAWING SUBPOENA TO TWR
JOHN OMARA TO OBTAIN SUBPOENA from
BURTIN, SIGN IT AND SEND IT.

15= SUBPOENA TO office of Court ADM.
OMARA TO REVIEW AND DI BAUER
will SEARVE.

# EXHIBIT L



B525-96

John O'Hara

| | DESCRIPTION | CT DATE | ADA | A S | R A | ANS | DATE DEC. | REC. ORDER | JUDGE & DISPOSITION | N E |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/9/01 | CA Order Fad judges that order is affirmed | | Ferrell | | | | | | | |
| 7/3/01 | atty's motio to vacate SCSNY | | Buffee | | | 9/14/01 | | | | |
| 11/14/01 | atty's motion for evidentiary Hearing Memorandum of Law | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

000716

O'Mara [⊙]

frequently, may have
consulted re

frequently —
believe —
in chambers

"Very active"

O'Hara did not
grasp offer
urges to tell him
confused offer still on table

I'm the
client
not going
to discuss
it
going to trial

Mr. Hernandez
(312) 663-1555

M.L was
the client
relaying to
associate

O'Hara
discussed it w/
it before 1st trial

— wanted to
embarass
Mr. Hynes —

a lot of
conversations
not a passive
witness

13525/96    John O'HARA

| | DESCRIPTION | CT DATE | ADA | A S | R A | ANS | DATE DEC. | REC. ORDER | JUDGE & DISPOSITION | N E |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/ 00 | Recd L'APPLANT'S Reply Brief | | Ferrell | | | | | | | |
| 3/1 00 | 3Brd M/M TO File AMICUS Curie Brief (Att'ys) | | ferrell | | | | 3/ 21/ 00 | 3/ 22/ 00 | Granted on or before 4-5-2000 | |
| 3/30 00 | Atty's M/M EXT. STAY of Judgment | | ferrell | | | | 4/ 12/ 00 | 4/ 12/ 00 | Denied as unnecessary appeal perfected 10-15-99 | |
| 4/6 00 | atty's amicus Curie Brief + appendix | | Ferrell | | | 4/6/00 | 7/17/00 | 7/17/00 | affirmed remit to S.C.E. for further proceed | I 7/ 24/ 00 |
| 8/7/00 | CA JUDGE assig. Hon. WESLEY | | Ferrell | | | | 9/29/ 00 | 10/3/00 | Granted | |
| 8/9/00 | atty CA Leave Application. | | Ferrell | | | | | | | |
| 8/23 00 | Atty's motion request CA reassessment Leave | | Ferrell | | | | | | | |
| 9/7 00 | CA jurisdiction Statement | | Ferrell | | | | | | | |