# EXHIBIT I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JOHN O'HARA,

                *Plaintiff,*

    - against -

CITY OF NEW YORK, DISTRICT ATTORNEY CHARLES J. HYNES, ASSISTANT DISTRICT ATTORNEY JOHN P. O'MARA, ASSISTANT DISTRICT ATTORNEY ANGELO M. MORELLI, ASSISTANT DISTRICT ATTORNEY DINO AMOROSO, DISTRICT ATTORNEY INVESTIGATOR ALLEN PRESSER, ASSEMBLYMAN JAMES F. BRENNAN, JOHN W. CARROLL, ESQ., JOHN KEEFE, and JEFFREY WAITE, ESQ.,

                *Defendants.*
---------------------------------------------------------------X

Civil Case No.:
17-cv-4766 (ILG)(SMG)

**AFFIDAVIT OF DEFENDANT JOHN W. CARROLL IN SUPPORT OF MOTION TO DISMISS**

STATE OF NEW YORK    }
                               }ss
COUNTY OF NEW YORK  }

JOHN W. CARROLL, being duly sworn, deposes and says:

1. I am an attorney at law duly admitted to practice before the Courts of the State of New York, and am a named Defendant in the above-captioned matter. As such, I am fully familiar with, and have personal knowledge of the facts and allegations stated herein.

2. This affidavit is respectfully submitted in support of a motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss Plaintiff's Complaint in its entirety and with prejudice based on the following grounds: (1) Plaintiff's claims are barred by the statute of limitations; (2) the Complaint fails to allege facts to satisfy the pleading requirements to sustain § 1983 claims; (3) Plaintiff's Claims are precluded by the Rooker-Feldman doctrine and the principles of res judicata and collateral estoppel.

## BACKGROUND

3. I am a graduate of Columbia Law School and have been a good-standing member of the bar of the State of New York for over thirty-nine (39) years. I am admitted to practice in the United States District Court for the Eastern and Southern Districts of New York and the United States Court of Appeals for the Second Circuit. I am a founder and member of Wolfson & Carroll, which I established with my law partner in 1984. My current practice consists of corporate governance, complex litigation as well as franchising and licensing matters. I was also a member of the City Bar Association Special Committee on Election Law for many years and authored a report on electronic voting. When the rules of the Kings County Democratic Committee were amended to provide for the appointment of a reform member to its Judicial Screening Committee, I was the first reform appointee and served for two years. I am currently a member of the Judicial Screening Committee appointed by the Appellate Division, Second Department.

4. Over the course of my legal career, I have represented numerous candidates running for various state and city elected positions. I have advised clients regarding a variety of election law-related issues including campaign finance and disclosure, ballot access, and compliance with rules governing petitioning on the ballot and assuring that opposition candidates likewise complied with the requisite election law rules and procedures.

5. With regard to all election law matters that I have handled, including during the years alleged in the Complaint, i.e., from 1988 through 1996, I was always retained as a private attorney to represent the private interests of my clients, the individual candidates and/or elected officials. I was never a government attorney nor was I ever retained by any government official, including but not limited to former Assemblyman James F. Brennan (a named Defendant in this action), to carry out any state functions. I was never on staff with former Assemblyman Brennan

2

or an employee of former Assemblyman Brennan.

6. My family members have been involved in Brooklyn politics for many years. However, neither my family members nor I have ever been associated with the "Brooklyn Democratic Machine". My father was one of the founders of the Central Brooklyn Independent Democrats in the 1960's, which is the oldest reform club in Brooklyn, and I have consistently supported candidates against the so-called "Brooklyn Democratic Machine." In fact, my election practice was for many years limited to representing candidates in the Central Brooklyn Independent Democrats and the overwhelming majority of election cases that I tried have been defenses of candidates challenged by the "Brooklyn Democratic Machine". I unsuccessfully ran for office twice – the first was in 1978 for State Senate and the second was in 2001 for City Council. I have been politically inactive since then.

## PETITION CHALLENGES INVOLVING PLAINTIFF

7. As part of my election law practice, I represented clients in petition challenges and also defended petition challenges brought against my clients. There were occasions in which I represented clients in petition challenges against Plaintiff, and also occasions in which I defended my clients in petition challenges brought by Plaintiff. In all of these matters I was always retained as a private attorney to represent the private interests of my clients, the individual candidates and/or elected officials.

8. With respect to the 1994 petition challenge, I was retained as a private attorney by Felix Ortiz, personally, who, at that time was a Democratic candidate seeking to represent the 51st District in the New York State Assembly. Plaintiff was also campaigning and circulating a petition for the Democratic nomination for the same position as Mr. Ortiz. Plaintiff and Mr. Ortiz were running against the incumbent, Javier Nieves.

9. On behalf of Mr. Ortiz, personally, I commenced a civil action in the State Supreme

Court of New York, County of Kings challenging Plaintiff's petition pursuant to Article 16 of the Election Law based on residency grounds and the validity of signatures appearing on the petition. There were other individuals who were also objecting to Plaintiff's petition, whom I did not represent. The key issue in the 1994 petition challenge ultimately turned on whether Plaintiff resided at 553 47th Street, Brooklyn, New York.

10. In preparation for trial, I gathered evidence by serving subpoenas to various utility companies seeking documents corroborating Plaintiff's alleged residence at 553 47th Street and also by serving subpoenas seeking testimony from witnesses who had knowledge of Plaintiff's residence. Plaintiff presented evidence attempting to show that he did, in fact, reside at 553 47th Street.

11. The trial was held before the Honorable Irving S. Aronin, J.S.C. During the trial, I introduced extensive evidence demonstrating that Plaintiff did <u>not</u> reside at 553 47th Street, Brooklyn, New York. Specifically, there were no utility records to support Plaintiff's residence at 553 47th Street. Moreover, there was no evidence that Plaintiff had a lease or paid rent at the 553 47th Street residence. Additionally, the owner of the 553 47th Street building testified that Plaintiff did not reside there at the time of trial nor at any time prior to trial.

12. At the conclusion of the 1994 trial, the evidence against Plaintiff was so overwhelming that Plaintiff offered to voluntarily withdraw his petition. Plaintiff's offer was contingent upon the objectioners' (including my client, Mr. Ortiz's) consent to have the Court order the sealing of the trial record. Plaintiff's justification for sealing the record was that it contained inculpatory information relative to a woman who worked on his campaign and who was then a law student. Plaintiff maintained that he was concerned that this woman's professional career may be compromised if the record was not sealed. On or about August 5, 1995, the Court declared Plaintiff's petition invalid and ordered the trial record to be sealed.

4

13. All of the legal services I provided as counsel for Mr. Ortiz in connection with the 1994 petition challenge were lawful, made in good-faith, and based on information and evidence that was available at that time, which supported the invalidation of Plaintiff's petition.

## THE STATE BOARD OF ELECTIONS' INVESTIGATION INTO PLAINTIFF'S RESIDENCE

14. On or about November of 1995, I was contacted by Mr. Jeffrey Wait[1] (a named Defendant in this action) who at that time was an attorney for the New York State Board of Elections. Mr. Wait advised that the State Board of Elections was investigating Plaintiff's residence and that the trial record of the 1994 petition challenge in which I represented Mr. Ortiz was relevant to the investigation. Mr. Wait informed me that he would be filing an application with the Court seeking to unseal the trial record of the 1994 petition challenge and inquired as to whether I would consent to the unsealing of the trial record.

15. I advised that I did not have any objection to the unsealing of the trial record of the 1994 petition challenge and filed an affirmation dated November 27, 1995 in support of Mr. Wait's application to unseal. See annexed hereto as **Exhibit 1** a true and complete copy of my affirmation dated November 27, 1995.

16. I do not have personal knowledge as to whether the application to unseal was granted or whether the trial record was procured through a subpoena. However, it is now my understanding that Mr. Wait and the State Board of Elections ultimately succeeded in obtaining a copy of the trial record in the 1994 petition challenge.

## PLAINTIFF'S INVESTIGATION, CRIMINAL PROSECUTION, AND CONVICTION

17. I was not involved in the State Board of Elections' investigation into Plaintiff or his residence. When the Kings County District Attorney's Office was conducting their investigation

---

[1] Upon information and belief, Mr. Wait is currently a sitting Judge in Saratoga Springs, New York.

5

of Plaintiff's residence, I was requested to produce my legal file from the 1994 petition challenge against Plaintiff, which I did. Other than providing my legal file, I did not play a role in the District Attorney's Office's investigation of Plaintiff. I also had no involvement or participation in the indictment of Plaintiff or in any of Plaintiff's criminal trials. I similarly had no involvement or participation in any of Plaintiff's criminal trials or appeals.

18. I never entered into any agreement to carry out any actions to prosecute, or convict Plaintiff of any crimes. In fact, I am not aware of any agreement to indict, prosecute or convict Plaintiff of any crimes. I did not interact with any of the other named Defendants, including former District Attorney Charles J. Hynes, former District Attorney John P. O'Mara, former Assistant District Attorney Angelo M. Morelli, former Assistant District Attorney Dino Amoroso, former District Attorney Investigator Allen Presser, former Assemblyman James F. Brennan, John Keefe or Jeffrey Wait, about taking any action to prosecute or convict Plaintiff of any crimes. I never had any meetings with any of the other named Defendants in furtherance of prosecuting or convicting Plaintiff of any crimes.

19. My communications with the Kings County District Attorney's Office with respect to Plaintiff were limited to an investigation was opened about an incident in which I was physically attacked in 1996 and severely injured by an individual wielding a claw hammer. Plaintiff was a suspect in the attack because of comments by Plaintiff's former attorney denouncing me to Mr. Wait after oral argument on Mr. Wait's application to unseal the trial record of the 1994 petition challenge which I handled. Other than providing information about the circumstances of my attack, I had no other discussions with anyone at the Kings County District Attorney's Office about indicting, prosecuting or convicting Plaintiff for residency fraud.

20. Based on the foregoing, together with the legal arguments set forth in the Accompanying Memorandum of Law, it is respectfully requested that Plaintiff's Complaint be

dismissed in its entirety, with prejudice, together with such other and further relief as this Court deems just and proper.

JOHN W. CARROLL

Sworn to before me this

15th day of November, 2017

NOTARY PUBLIC

NATASHA REIZIS
NOTARY PUBLIC, State of New York
No. 02RE6355761
Qualified in New York County
Commission Expires March 13, 2021