# EXHIBIT P

In the Matter of the Application of
Barbara Berger,
                                   Petitioner,

                -against-                            24296/93

Howard L. Lasher,
                                   Candidate,

    -and-

Board of Elections in the City of New York
                                   Respondent.

Present: Hon. Joseph S. Levine

### Introduction

Just as the swallows return to Capistrano in the Springtime, so too does Assemblyman Lasher return to his nest in Brighton Beach when the election season rolls around. The birds are following their instinct for self-preservation, and so too is Assemblyman Lasher. However, while the avian migration is a source of wonder and delight, the political travels of Mr. Lasher bear witness to the odd state of our election laws.

Four matters are before the Court. The first two special proceedings seek to

disenroll and cancel the registrations as Democrats of both Assemblyman Lasher and his wife, Susan. The third proceeding seeks to invalidate the nominating petitions filed on behalf of Assemblyman Lasher for the Democratic Party's nomination for the office of member of the City Council for the twenty-seventh council district of the City of New York. In the fourth proceeding, the petitioner seeks to invalidate the nominating petitions filed on behalf of Mr. Lasher for the Liberal Party's nomination for the same City Council office.

The matters were consolidated for the purpose of trial and this memorandum decision will dispose of all four special proceedings. Although each of the special proceedings contain a number of allegations challenging the validity of the various nominating petitions, a single common thread runs through them. In the trial the sole issue before the Court concerned the Lashers' residence and whether their intermittent use of an apartment in Brighton Beach is sufficient to make them residents of the Council District. The followings are the Court's findings of fact and conclusions of law.

Findings of Fact

The Lashers maintain two residences in Brooklyn. One is a single bedroom cooperative apartment at 50 Brighton First Road in Brighton Beach. The second residence is a four bedroom house located at 4211 Ocean Avenue in Manhattan Beach. It is Mr. and Mrs. Lasher's contention that the former apartment is their residence, as that term is defined in the Election Law. This apartment is in Mr. Lasher's Assembly district as well as the twenty-seventh City Council District. The

3

house in Manhattan Beach is in neither. Mr. and Mrs. Lasher are registered to vote and are enrolled as Democrats at the Brighton Beach address.

Mr. Lasher became a lessee in the apartment building in Brighton Beach in 1981 and later the purchaser of shares in a cooperative unit in the same building. Three times over the years the Lashers rented the apartment to acquaintances. Each sub-tenant stayed for lengthy periods of time, one stayed approximately approximately one year. Each of the three sub-tenants had exclusive use of the apartment and supplied their own furniture. When the apartment was vacant of tenants, Mr. Lasher would use the place approximately once or twice a week. Most recently, he would sleep there with his wife and young son on the Sabbath. Mr. Lasher was careful to use this one bedroom apartment as his political home, making use of its address for a variety of official filings, such as the attorney's registration with the Office of Court Administration, tax returns, and his driver's license. As previously stated, Mr. and Mrs. Lasher are registered to vote and are enrolled as Democrats at the Brighton Beach address. When leased to others, Mr. Lasher would still receive mail at the Brighton Beach apartment. On a regular basis, his wife or himself would visit the premises to remove their mail from the mail box.

Their was a sharp dispute at trial as to whether or not the apartment was unfurnished when the sub-tenants took possession. The Court heard testimony from two of the three sub-tenants and found their testimony the more credible that they took possession of a vacant apartment. The last sub-tenant was told to vacate by Mrs. Lasher sometime in May of this year. As Mrs. Lasher testified, she asked this person to vacate because "...at that time Councilman Sam Horowitz decided

to retire and my husband decided to run for city counsel (sic) and we knew we would have to reside more *permanently* at the 50 Brighton 1st Street (sic) Road residence." [trial transcript, p. 34, emphasis supplied].

Mr. Lasher maintains significant and extensive ties to the Brighton Beach community, as shown by his memberships in many civic, religious, and political organizations in the area. While the permanence and continuity of his residence in the neighborhood is subject to question, his presence in the community is not. However, Manhattan Beach and Brighton Beach are neighboring communities and the nature and extent of his ties to Brighton Beach would probably not suffer should he choose to make Manhattan Beach his exclusive residence.

The Lashers spend most of their time at the Manhattan Beach house. They have a total of five children and one foster child, ranging in ages from 6 to 23. Except for their youngest, none of the other children make use of the Brighton Beach apartment. The recent Bar Mitzvah of the Lashers' son was held at the Manhattan Beach Jewish Center, where the Lashers also attend services for the High Holy Days. These facts are indicative of their attachment to the house in Manhattan Beach.

## Conclusions of Law

It is clear from the finding of facts that the Lashers home is in Manhattan Beach. It is also clear that the apartment in Brighton Beach is a residence of convenience, designed to satisfy the law's requirement that a member of the State

Assembly and a candidate for City Council reside in the district he or she represents or seeks to represent. However, it appears to the Court that the apartment in Brighton Beach does, in fact, satisfy the requirements of the law.

The Election Law defines residence as "that place where a person maintains a fixed, permanent, and principal home to which he, wherever temporarily located, always intends to return." Election Law Section 1-104(22). Mr. Lasher certainly intended to return to the Brighton Beach apartment, <u>although not in a manner probably intended</u> by the legislature. Whenever a campaign for re-election would present itself, Mr. Lasher would throw out his sub-tenant at the time and establish himself as the sole resident of 50 Brighton 1st Road.

The residency issue before the Court concerns only the City Council. The Public Officers Law requires a local office holder to be a resident of the political subdivision he or she represents at the time of election. Public Officers Law Section 3(1). Moreover, Section 6-122 of the Election Law prohibits a person from being designated or nominated for public office who cannot meet the statutory qualifications at the commencement of the office.

Mr. Lasher has re-established himself as a resident of 50 Brighton 1st Road as of May, 1993. The case law indicates this is acceptable.

The Court of Appeals has ruled that where a candidate has two residences he or she may choose one to which there are legitimate, significant, and continuing attachments for the purposes of the election law. <u>Ferguson v. McNab</u>, 60 NY2d 598 (1983). In <u>Bressler v. Holt-Harris</u>, 37 AD2d 898 (3rd Dep't. 1971), <u>aff'd</u>. 30

NY2d 529 (1971), the candidate had even less attachment to his Albany apartment than Mr. Lasher has to his apartment in Brighton Beach. Nonetheless, the courts accepted that apartment as satisfying the law's requirements, relying on a "continuity of conduct on the part of said respondent for many years evincing an intention to remain a resident of the city of Albany...as well as a continuous voting record from said address." Bressler, at 37 AD2d 899. In Gallagher v. Dinkins, 41 AD2d 946 (2d Dep't. 1972), aff'd., 32 NY2d 839 (1973), the Second Department stated at p. 947 that

> [t]here is no rule which prohibits a candidate for public office from having two residences; and where the record is clear, as at bar, that both residences are places where he maintains a significant and legitimate attachment. It is for him to decide which address he considers as his voting address.

Although unexpressed by the Court of Appeals, it is an inescapable conclusion that the case law does, in fact, recognize the validity of a "voting address." Mr. Lasher has artfully contrived to fit himself within the meaning of the term "residence" as interpreted by the case law. The case law presented by the petitioners is inapposite.

A subsidiary issue is whether the Lashers have at times abandoned their residence in Brighton Beach and whether such abandonment requires the Court to vacate their voters' registration and disenroll them from membership in the Democratic Party. The petitioners argue that even if the Court found the Lashers to have re-established their residence in Brighton Beach in May of this year, their

previous withdrawals from the apartment resulted in their loss of registration and enrollment and would require a new registration and party enrollment.

It is not necessary for the Court to reach the issue of abandonment and the proffered remedy advanced by the petitioners.. The case law makes such a remedy prospective in nature and subject to the exhaustion of administrative remedies before the Board of Elections pursuant to a hearing on notice. There is no automatic loss of franchise or party enrollment in the law. See, Election Law Section 5-400(2), 5-402; Nesci v. Canary, 112 AD2d 1056, (2d Dep't. 1985); and Leaks v. Gill, 123 Misc2d 342 (Sup. Ct., Kings Co. 1984).

Therefore, based upon the foregoing the Court finds for the respondents and dismisses the petitions.

August 9, 1993

Joseph S. Levine