Case 1:17-cv-04766-LDH-RML   Document 146-3   Filed 02/26/24   Page 1 of 18 PageID #: 5822

Defendant did, however, object to the trial court's second reference to the Election Law definition of "residence" on the ground that it "might be somewhat confusing" for the jury. According to defendant, under the court's charge, his failure to relinquish the 61st Street apartment compromised his assertion that the 47th Street apartment also was his residence for purposes of registration and voting, and therefore, in essence dictated a guilty verdict. We disagree.

In this case, all the counts of the indictment stem from defendant's affirmation in his voter registration form that 553 47th Street was his place of residence pursuant to the Election Law during 1992-1993 for voting purposes. A person commits the offense of "false registration" under the Election Law when he or she "[k]nowingly gives a false residence within the election district when registering as an elector" (Election Law § 17 (/nyctap-cgi/ez-nylaw?ELN+17)-104[4]). "Illegal voting" is committed when a person "[v]otes or offers or attempts to vote at an election, * * * in an election district or from a place where he does not reside" (Election Law § 17 (/nyctap-cgi/ez-nylaw?ELN+17)-132 [3]). Finally, a person violates Penal Law § 175.35 (/nyctap-cgi/ez-nylaw?PEN+175.35) "when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state * * * he offers or presents it to a public office * * * with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records" of that public office.

The Election Law defines residence as "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return" (Election Law § 1 (/nyctap-cgi/ez-nylaw?ELN+1)-104 [22]). Thus, to be a resident of a place, a person must be physically present with the intent to remain for a time (see, *Matter of Palla v Suffolk County Bd. of Elections*, , 31 NY2d 36 (/nyctap-cgi/nyctap.cgi?31+36), 47; see also, *Williams v Salerno*, 792 F2d 323, 327 [2d Cir]). The definition of "residence" comes from traditional notions of domicile (*Matter of Palla, supra*, 31 NY2d, at 47; seealso, *Matter of Hosley v Curry*, , 85 NY2d 447 (/nyctap-cgi/nyctap.cgi?85+447), 451, *rearg denied* , 85 NY2d 1033 (/nyctap-cgi/nyctap.cgi?85+1033)). The determination of an individual's residence is dependent upon an individual's expressed intent and conduct (*Matter of Palla, supra*, 31 NY2d, at 47).

New York courts have recognized that in this modern and mobile society, an individual can maintain more than one bona fide residence (*see, e.g., Matter of Gallagher v Dinkins*, 41 AD2d 946, *affd*, 32 NY2d 839 (/nyctap-cgi/nyctap.cgi? 32+839); *Matter of Gladwin v Power*, 21 AD2d 665, *affd*, 14 NY2d 771 (/nyctap-cgi/nyctap.cgi?14+771); *Matter of Chance v Power*, 14 AD2d 595, *affd*, 10 NY2d 792 (/nyctap-cgi/nyctap.cgi?10+792)). However, for the purposes of the Election Law, one cannot create an address solely for the purpose of circumventing residency requirements (*Matter of Hosley v Curry*, 207 AD2d 116, 118 *revd on other grounds*, 85 NY2d 447 (/nyctap-cgi/nyctap.cgi?85+447), *supra; see also, Matter of Lemishow v Black*, 104 AD2d 460, *affd*, 63 NY2d 684 (/nyctap-cgi/nyctap.cgi?63+684), 685).

The crucial determination whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence "without any aura of sham" (*Matter of Gallagher, supra*, 41 AD2d at 947). As this Court has stated, an individual having two residences may choose one to which she has "legitimate, significant and continuing attachments as her residence for purposes of the Election Law" (*Matter of Ferguson v McNab*, , 60 NY2d 598 (/nyctap-cgi/nyctap.cgi? 60+598), 600). Generally, where there is no reason to assume that a residence has been asserted merely for the purposes of voting, where no fraud or deception has been practiced and where there is a history of the residence employed, the courts have upheld a fact-finder's determination of residency (*Matter of Gallagher, supra*, 41 AD2d at 947; *see also, Matter of Ferguson*, 96 AD2d 916 *affd*, 60 NY2d 598 (/nyctap-cgi/nyctap.cgi?60+598), *supra; Matter of Gladwin, supra; Matter of Chance, supra*).

Here, the jury was not asked, as defendant claims, to determine whether as between two residences, defendant picked the more appropriate one. The sole issue here was whether defendant genuinely took up residence at 553 47th Street for voting purposes. In considering whether 553 47th Street was a bona fide residence from which defendant could vote, the jury needed to be informed of the Election Law's definition of residence. The jury was not instructed to convict defendant if it found that he actually maintained two residences. The charge, when read as a whole, was not

confusing as a matter of law. It instructed the jury on how to
determine whether 553 47th Street could be considered
defendant's residence for voting purposes, and it informed the
jury that if the proof established that defendant had two
residences he could pick one as long as the "residence" he
picked (553 47th Street) was indeed a residence of his, and
not a sham. The jury applied that instruction to the facts it
found, and convicted defendant on all counts of the indictment.

We respond to the dissent with three points. First, the
arguments it addresses overwhelmingly are unpreserved; they
were not made before the Trial Judge. Second, we cannot
agree with the dissent's foundation premise that the Election
Law and case law definitions of residence cannot stand side-by
-side (an argument plainly not made to the Trial Judge).
Finally, the dissent points out that defendant's own testimony,
"if credited," would have been sufficient to establish residency
under our own Election Law cases (Dissent, at 6). The jury,
however, also heard -- and by its verdict credited -- testimony
from the phone company employee that defendant had
telephone service at 61st Street but not 47th Street; the 61st
Street landlord that defendant was a tenant there; and the
owners of the 47th Street premises that the basement where
defendant says he resided was uninhabitable.

Accordingly, the order of the Appellate Division should be
affirmed.


## Rosenblatt, J. (dissenting):

Defendant was arrested after he registered to vote and voted
in five elections using an apartment on 47th Street in Brooklyn
as his legal voting residence. He was indicted on one count of
false registration under Election Law § 17 (/nyctap-cgi/ez-
nylaw?ELN+17)-104(4), five counts of illegal voting under
Election Law § 17 (/nyctap-cgi/ez-nylaw?ELN+17)-132(3) and
one count of offering a false instrument for filing under Penal
Law § 175.35. Convictions for such felonies are punishable by
up to four years in prison (Penal Law § 55.10 (/nyctap-cgi/ez-
nylaw?PEN+55.10)[1][b]). Because defendant acknowledged
that he had listed the 47thStreet apartment as his residence,
the only fact issue at trial was whether that apartment was his
"residence" within the meaning of the Election Law.

2 of 15 - The People ex rel. John O'Hara
Case: 1:16-cv-04766-DLI-RML   Document 146-3   Filed 02/26/24   Page 4 of 18 PageID #: 5825
Page 2 of 15

What qualifies as a voter's "residence" in New York, however, is far from crystal clear. Election Law § 22 (/nyctap-cgi/ez-nylaw?ELN+22)) defines "residence" as "that place where a person maintains a *fixed, permanent and principal* home and to which he, wherever temporarily located, always intends to return" (emphasis added). Under the statutory definition, residence is the equivalent of domicile (*see, Palla v Suffolk Cty Bd of Elections*, , 31 NY2d 36 (/nyctap-cgi/nyctap.cgi?31+36), 47). Over the last several decades, however, this Court has not adhered to the strict, literal meaning of this statutory definition.

In *Gladwin v Power* (21 AD2d 665), a candidate for assembly had a family home outside her assembly district. She also rented space within the district, which she used as an office and "for occasional living." A rival primary candidate brought an action to invalidate her designating petition. The Appellate Division held that "[t]he evidence establishes satisfactorily the current intention and the persisting intention over a number of years of [the candidate] to maintain a legal residence" in the district (*Gladwin v Power, supra*, at 665). We affirmed without opinion (14 2 771).

Similarly, in *Bressler v Holt-Harris* (37 AD2d 898), a voter lived in a house with his family outside the City of Albany. At the same time, to remain eligible to run for citywide elected office, he kept a studio apartment in the City, for which his law firm paid the rent. He kept a few personal items in the apartment and had eaten and slept there *once* in seven years. He also had his political mail sent there. A rival candidate brought an application to strike the voter from the City's registry. Applying an identically-worded election law statute, the Appellate Division concluded that the voter had established residence by showing a "continuity of conduct * * * for many years evincing an intention to be and remain a resident of the City * * * as well as a continuous voting record from said address for several years last past" (*Bressler v Holt-Harris, supra*, at 898). This Court affirmed on the Appellate Division's opinion (, 30 NY2d 529 (/nyctap-cgi/nyctap.cgi?30+529)).

In both cases, as in numerous others, the alleged "residence" located inside the voting district was by no means "a fixed, permanent and principal home" to which the candidate "always intend[ed] to return." As New York appellate courts have repeatedly refused to invalidate candidacies based on failures

to comply strictly with statutory residency requirements, an alternative, judicially-created test for residence has crept into the jurisprudence. Candidates may now have two "residences," providing that they "choose one to which [they] ha[ve] *legitimate, significant and continuing attachments*" (*Ferguson v McNab*, , 60 NY2d 598 (/nyctap-cgi/nyctap.cgi?60+598), 600 [citing *Gallagher v Dinkins*, 41 AD2d 946, *affd without opinion*, , 32 NY2d 839 (/nyctap-cgi/nyctap.cgi?32+839)]; *see also*, *Isabella v Hotaling*, 207 AD2d 648; *Geller v Lasher*, 196 AD2d 613; *Umland v Board of Elections of City of New York*, 143 AD2d 240).

The narrower statutory definition of residence cannot logically be read compatibly with the dual residency authorized by *Ferguson*. A voter cannot have two "fixed, permanent and principal homes." "Principal" is defined as "first, highest, or foremost in importance, rank, worth, or degree, chief" (*see*, American Heritage College Dictionary, at 1088 [3d ed]). It is not possible to have two living quarters both of which are "first, highest or foremost in importance."

In Election Law cases involving more than one residence, courts have endeavored to reconcile this incompatibility by deeming the narrow statutory definition of residence satisfied when a candidate has "legitimate, significant and continuing" attachments to the particular residence chosen for Election Law purposes (*see*, *Ferguson v McNabb*, *supra*). Thus, a residence chosen by the voter and satisfying the *Ferguson* standard essentially has been held to constitute that candidate's "fixed, permanent and principal" residence even though such a residence objectively might not satisfy the narrow statutory definition.

The charge in this case did not instruct the jury that a residence satisfying the *Ferguson* standard is deemed to be a "fixed, permanent and principal" residence for purposes of the Election Law. The judge instructed the jury that it must determine whether defendant's 47th Street apartment satisfied the statutory definition of residence, then noted that a candidate could have two residences under the *Ferguson v McNab* formulation, and finally reiterated that the defendant's residence "must comport with" the statutory definition. Defense counsel objected, claiming that the charge as a whole was confusing.[1] It was.

A jury, upon hearing the entire charge, "must be able to gather from its language the correct rules which should be applied in arriving at decision" (*People v Ladd*, , 89 NY2d 893 (/nyctap-cgi/nyctap.cgi?89+893), 895 [quoting *People v Russell*, 266 NY 147, 153]). A party is entitled to "an unambiguous instruction of the pertinent law" (*see*, *Schafer v Norwood Equip. Corp.*, 277 App Div 933, 934). It is not sufficient to excerpt portions of statutes or holdings in the abstract without adequately explaining them in a manner understandable to a lay person (*see*, *Stryzinski v Arnold*, 285 App Div 780, 782-783).

Here, the court's instruction on the issue of defendant's residence -- two terse paragraphs -- was the crucial charge which would definitively guide the jury in determining guilt or innocence. It was confusing in two ways. First, the jury could have understood the charge as requiring defendant to meet *both* the statutory definition *and* the *Ferguson* dual- residence qualification. As we have demonstrated, however, the literal Election Law definition and the *Ferguson* standard cannot stand side-by-side. The charge failed to synthesize the statutory definition with the *Ferguson* formulation. It charged both without any further explanation. In essence, the court asked the twelve jurors to do the impossible: integrate and comprehend two facially incompatible formulations of residence. This should not be countenanced in a felony prosecution. We cannot fathom the rule that would apply in this case if a voter's chosen residence had to qualify under both *Ferguson* and the literal statutory definition. Nor could a jury.

Moreover, the instruction also could readily have been interpreted as subordinating the *Ferguson* dual-residence standard to the stringent statutory residence test. Viewed in that light, the jury was told, in effect, that it could acquit defendant only if the 47th Street apartment was in fact his "principal" residence -- *i.e.*, the home that was "first, highest and foremost in importance." This was a clear departure from the dual- residence jurisprudence of civil Election Law cases involving the same statutory definition.

Defendant testified that he moved to the 47th Street apartment in 1993 with the "intent to set up residency" there. He further testified that he moved his clothes and lamps to that apartment, where he initially stayed overnight "all the time" until construction work on the building began, after

which he "stayed there a lot." This testimony, if credited, certainly would have been sufficient to establish residency under the *Ferguson* formulation as applied in our civil Election Law jurisprudence. Indeed, these facts are far stronger than those in *Bressler v Holt-Harris*, where the voter's one-room apartment was held to satisfy the Election Law definition of residence even though the voter regularly lived with his wife in a two-story house outside the City and could remember eating and sleeping at the apartment only once in seven years. Clearly, under the court's charge, the jury, in this criminal prosecution, could have returned a guilty verdict on facts indistinguishable from those held sufficient to establish a legal residence in *Bressler* -- a civil case.[2]

Historically, the "residence" issue has been addressed in the context of civil election appeals. In those cases, members of the Board of Election and appellate judges have determined on a case-by-case basis whether the connection between a particular voter and the asserted voting residence is sufficient. Central to each determination is a full understanding of relevant authority, which allows a comparison between the facts of the case at bar to the facts of cases that have already been decided.

This, however, was a criminal prosecution, and a unique one at that. So far as we can discern, defendant is the only person ever brought to trial in New York on a charge of this kind.[3] If politically-charged disputes such as this and questions of "residence" are going to be resolved in the criminal arena and decided by juries, with the possibility of criminal conviction and incarceration, we should ensure that the definition of residence is plainly fixed and easily understood.

Accordingly, we would reverse the conviction and order a new trial.

Order affirmed. Opinion by Judge Wesley. Chief Judge Kaye and Judges Smith, Ciparick and Graffeo concur. Judge Rosenblatt dissents and votes to reverse in an opinion in which Judge Levine concurs.

Decided June 14, 2001

# Footnotes

2 of 8  The People ex rel. John O'Hara
Case 1:18-cr-01045-DLI-RML  Document 146-3  Filed 02/26/24  Page 8 of 18 PageID #: 5829
Page 1 of 5

1  The majority correctly points out that defense counsel "ha [d] no problem" with the court charging just the statutory definition and then the *Ferguson* formulation. It was, however, the court's reiteration of the statutory definition that rendered the charge as a whole "confusing." The majority holds that defense counsel, by withholding his objection until after the reiteration of the statutory standard, somehow is foreclosed from arguing that asking the jury to apply both formulations simultaneously was confusing as a matter of law. We disagree. Counsel obviously viewed the *Ferguson* standard as *modifying* the statutory definition and therefore had no objection to the charge until the court erroneously engrafted the statutory definition back onto the *Ferguson* formulation. Counsel's objection at that point unambiguously alerted the trial court to his assertion that, objectively, the statutory definition and *Ferguson* formulation cannot abide one another and thus could not be charged conjunctively.

2  We cannot agree that the jury must have credited the testimony that contradicted defendant's position that he resided at the 47th Street apartment. It is impossible to tell what testimony the jury actually credited because the erroneous charge would have allowed the jury to return a guilty verdict even if it fully credited defendant's testimony.

3  Defendant is one of two persons who have been criminally prosecuted for the failure to establish legal residence inside a voting district (*see, People v Ramos*, slip op [Sup Ct, Bronx Cty, Nov 9, 1999], *affd*, 223 AD2d 495). There, the defendant was prosecuted criminally for using his inlaws' Bronx County apartment as his legal residence. The prosecutor instructed the grand jury on the issue of residence using only the statutory definition. The Supreme Court dismissed the indictment, holding that "it was not enough to simply read the Election Law definition of residence to the grand jury. Such an instruction did not convey the applicable law in a manner that fairly apprised the grand jury of the issue it had to decide" (slip op at 4). The Appellate Division affirmed.

Toolbox

Stay Involved

LII Announce Blog (http://blog.law.cornell.edu/)

LII Supreme Court Bulletin
(http://www.law.cornell.edu/supct/cert)
MAKE A DONATION
(HTTP://WWW.LAW.CORNELL.EDU/DONORS)
CONTRIBUTE CONTENT
(HTTP://WWW.LAW.CORNELL.EDU/LII/HELP_OUT/CREATE)
BECOME A SPONSOR
(HTTP://WWW.LAW.CORNELL.EDU/LII/HELP_OUT/SPONSOR)
GIVE FEEDBACK
(HTTP://WWW.LAW.CORNELL.EDU/LII/CONTACT)

All lawyers
(https://lawyers.law.cornell.edu/lawyers/locate/)

**ABOUT LII**
**(/LII/ABOUT/ABOUT_LII)**

**CONTACT US**
**(/LII/ABOUT/CONTACT_US)**

**ADVERTISE HERE (/LII/HELP_OUT/SPONSOR)**

**HELP**
**(/LII/HELP)**

**TERMS OF USE**
**(/LII/TERMS/DOCUMENTATION)**

**PRIVACY**
**(/LII/TERMS/PRIVACY_POLICY)**

$$\Big[\text{L}\,\text{II}\,\Big]\ (/)$$

45

S.C. CRIM. NO. 41          SUPREME COURT
   (Rev. 6/75)                OF THE                      ORDER
                          STATE OF NEW YORK

        PART    46        COUNTY   BRONX

------------------------------------x    Indictment Number   5993 1994

THE PEOPLE OF THE STATE OF NEW YORK,     :    Motion for:   OMNIBUS

              -against-                  :

BENJAMIN RAMOS,                          :    Submitted_____19___

                  Defendant.             :

------------------------------------x    Present:


                              Hon. Phylis Skloot Bamberger
                                        J.S.C.

                                         :    Papers Numbered    :
                                         :                       :
Notice of Motion and Affidavit Annexed..........:...................:
Order to Show Cause and Affidavits Annexed......:...................:
Answering Affidavits............................:...................:
Replying Affidavits.............................:...................:
Exhibits........................................:...................:
Stenographer's Minutes..........................:...................:
Stipulation.....................................:...................:

     Upon the foregoing papers this motion is decided as follows.

     The motion to inspect the grand jury minutes is granted.  This Court

has inspected the transcript of the grand jury proceedings and it holds

that an error in the instructions to the grand jury impaired the integrity

of the grand jury proceedings and prejudiced the defendant.    C.P.L.

§§190.30(7), 210.20(1)(c), 210.35(5).  Accordingly, the motion to dismiss

the indictment is granted.  The People are given leave to re-present the

case to another grand jury and the case is adjourned to December 22, 1994.

The People may advance the case, on notice to the defendant, to an earlier

date if they obtain another indictment.


                              A. 6

0001

The defendant is charged with three counts of offering a false instrument for filing in the first degree, three counts of falsifying business records in the first degree, one count of false registration and four counts of illegal voting. All of these charges share the common allegation that the defendant claimed to but did not in fact reside at 1307 E. L. Grant Highway, apartment 5D, in the period between October 6, 1992, and November 2, 1993. Apartment 5D was leased by Emilio Garcia and his wife, Carmen Diaz-Garcia. The Garcias are the defendant's wife's parents. The defendant and the Garcias both testified that the defendant lived in the E. L. Grant apartment and also maintained a residence in New Jersey, which he used on the weekends and in the summer time. There was other evidence that suggested the defendant lived in New Jersey during the period in question. Therefore, the grand jury was presented with a clearly raised question of fact[1] and the definition of residency, the legal principle on which the grand jury's determination of the fact question had to be based, was crucial to whether an indictment would be voted.

When instructing the grand jury on the issue of residency, the prosecutor stated:

> Okay. Also, I am going to read the definition of residence as stated in the Election Laws. That comes from section 1.104, subsection two-twenty:

---

1    In response to the omnibus motion, the prosecutor asserted that the evidence before the grand jury "clearly" established that the defendant did not have any residence in the Bronx. On November 9, 1994, this Court heard argument on whether the indictment should be dismissed and the prosecutor conceded during this proceeding that there was evidence that the defendant lived at 1307 E. L. Grant Highway. The prosecutor's assertion that this evidence was not believable is not relevant because it is the grand jury's evaluation of the evidence that is controlling. See People v. Jennings, 69 N.Y.2d 103, 114 (1986); People v. Warner-Lambert Co., 51 N.Y.2d 295, 298-99, 305 (1980).

2

47

> The term residence shall be deemed to mean that place a person maintains a fixed, permanent and principle home, and to which he, whereever temporary located, [sic] always tends [sic] to return.

Although the grand jury need not be instructed with the same degree of precision as the petit jury, <u>People v. Darby</u>, 75 N.Y.2d 449, 454 (1990), it must be given enough information to enable it to intelligently to decide whether a crime has been committed, <u>People v. Calbud, Inc.</u>, 49 N.Y.2d 389, 394-95 (1980). In this case, the prosecutor's instruction concerning residency was incomplete and did not place before the grand jury the true issue that was critical to the question at issue.

Under the case law, a candidate for public office may have more than one residence and when both residences are places where the candidate maintains significant and legitimate attachments, it is for the candidate to decide which address he considers as his voting address. <u>Gallagher v. Dinkins</u>, 41 A.D.2d 946, 946 (2d Dept. 1973). A place of residence is based upon express intent coupled with physical manifestations. As long as a residence is not a sham, the candidate is free to choose that residence for voting purposes even if the candidate lives there only occasionally. <u>Id.</u>; <u>Gladwin v. Power</u>, 21 A.D.2d 665 (1st Dept.), affirmed without opinion, 21 N.Y.2d 771 (1964). The prosecutor's instruction on residence did not discuss the possibility of having two residences or the need to determine that a residence is a sham in order to void the defendant's choice of 1307 E. L. Grant Highway as his voting residence.[2] On the facts presented to

---

2   Although this fact is not essential to this decision, the Court notes that the District Attorney is apparently aware of this case law concerning residency. At argument on the motion to dismiss, the defendant relied upon a press release from the Bronx District Attorney's office that announced the District Attorney's decision not to prosecute Gerard Esposito, who was recently elected to the Supreme Court in Bronx County but

3

48

the grand jury, these principles were crucial to an intelligent evaluation of the evidence.  Thus, it was not enought to simply read the Election Law definition of residence to the grand jury.  Such an instruction did not convey the applicable law in a manner that fairly apprised the grand jury of the issue it had to decide and it undermined the grand jury's function of deciding whether a crime had been committed and whether the evidence submitted was legally sufficient to support an indictment.

The motion to dismiss is granted.[3]  This decision constitutes the order of the Court.

Dated _____ November 9, ____ 1994 _____    ____ /S/ ____
                                                    J.S.C.

Briefs:  People ____ Mark Schein _____    Defendant ____ Solomon Kaplan _____

whose principle residence was said to be in Westchester County.  When explaining the announcement, the District Attorney's office implicitly acknowledged the difficulties associated with prosecuting someone who has more than one residence and it recommended that the Legislature "consider amending the definition to require that if a person maintains more than one residence, the premises with which he or she has the most significant actual contact shall be deemed his or her voting residence."

[3]    In light of the order dismissing the indictment, the defendant's motion concerning discovery is denied without prejudice to renew if he is indicted a second time.

4

A. 9

0004

Goldfeder, Jerry 6/6/2016
For Educational Use Only

People v. Ramos, 223 A.D.2d 495 (1996)
637 N.Y.S.2d 93

223 A.D.2d 495
Supreme Court, Appellate Division,
First Department, New York.

The PEOPLE of the State of New York, Appellant,
v.
Benjamin RAMOS, Defendant–Respondent.

Jan. 30, 1996.

The Supreme Court, Bronx County, Bamberger, J., dismissed, with leave to represent, indictment charging defendant with offering false instrument for filing in the first degree, falsifying business records in the first degree, false voter registration, and illegal voting, and appeal was taken. The Supreme Court, Appellate Division, held that indictment was properly dismissed on ground that defendant was prejudiced by impairment of integrity of grand jury proceedings.

Affirmed.

West Headnotes (1)

[1]    **Grand Jury**
         Charge
       **Indictment and Information**
         Grand or petit jury irregularities
       Indictment charging defendant with offering false instrument for filing in the first degree, falsifying business records in the first degree, false voter registration, and illegal voting was properly dismissed, with leave to represent, on ground that defendant was prejudiced by impairment of integrity of the grand jury proceedings; while determination of charges by grand jury hinged upon definition of the term "residence," prosecutor's instructions to grand jury in that regard did not provide it with enough information to enable it intelligently to decide whether crime had been committed and to determine whether there existed legally

sufficient evidence to establish material elements of the crime. McKinney's CPL § 210.35, subd. 5.

5 Cases that cite this headnote

**Attorneys and Law Firms**

**93 S. Levy, for appellant.

D. Fusco, for defendant-respondent.

Before ROSENBERGER, J.P., and WALLACH, NARDELLI, WILLIAMS and TOM, JJ.

**Opinion**

*495 MEMORANDUM DECISION.

Order, Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), entered November 9, 1994, which dismissed, with leave to represent, the indictment charging defendant with offering a false instrument for filing in the first degree (three counts), falsifying business records in the first degree (three counts), false voter registration, and illegal voting (four counts), unanimously affirmed.

While determination of the charges herein by the Grand Jury hinged upon the definition of the term "residence", the prosecutor's instructions to the Grand Jury in that regard did not provide it "with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (*People v. Calbud, Inc.*, 49 N.Y.2d 389, 394–395, 426 N.Y.S.2d 238, 402 N.E.2d 1140). Thus, the indictment was properly dismissed, with leave to re-present, on the **94 ground that defendant was prejudiced by the impairment of the integrity of the Grand Jury proceedings (CPL 210.35 [5]; *see, People v. Darby*, 75 N.Y.2d 449, 455, 554 N.Y.S.2d 426, 553 N.E.2d 974).

**All Citations**

223 A.D.2d 495, 637 N.Y.S.2d 93

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.



**OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY**

RENAISSANCE PLAZA at 350 JAY STREET
BROOKLYN, N.Y. 11201-2908
(718) 250-2500

CHARLES J. HYNES
*District Attorney*

Anne Gutmann
Assistant District Attorney
(718) 250-2134

July 7, 2005

The Honorable Abraham Gerges
Justice of the Supreme Court
Kings County

Re:     People v. John O'Hara
        Kings County Indictment Number
        13525/96

Dear Justice Gerges:

In response to your directive concerning the origins of the investigation of the defendant in the referenced matter, please be advised that:

- At the end of May or beginning of June of 1996, Assistant District Attorney Angelo Morelli, Chief of the Investigations Bureau, met with Assemblyman Brennan and his staff member John Keefe concerning a recent assault on Mr. Jack Carroll, an election lawyer who had served as counsel to the Assemblyman and his campaign committee. Mr. Carroll had filed a complaint with the NYPD.

- At the meeting, both Assemblyman Brennan and Mr. Keefe expressed the belief that John O'Hara was involved in the assault on Mr. Carroll. They were also not completely satisfied with the investigation conducted by the Police Department. Mr. Keefe stated that he feared that he also might have been targeted, because he believed that someone had been following him on the night of the attack on Mr. Carroll. A.D.A. John O'Mara, of the Investigations Bureau, joined the meeting. The possible motive for the attack was discussed. There was speculation that O'Hara had been motivated by the fact that Jack Carroll had successfully represented challengers to O'Hara's petitions for candidacy for public office. In fact, earlier in the day of the attack on Carroll,

0123

People v. John O'Hara
Page 2

    O'Hara had verbally confronted Carroll in the hallway of the Supreme Courthouse at 360 Adams Street.

- During this meeting, the Assemblyman and Mr. Keefe expressed the belief that O'Hara did not, in fact, reside at the address he was claiming on his voter registration. They further stated that a judge who had presided over a civil Election Law matter involving O'Hara had mentioned that he might refer that matter to the District Attorney for investigation. No such referral was made.

- Approximately mid-June 1996, A.D.A. O'Mara was advised by A.D.A. Morelli to return the call of Mr. Jeff Waite, an investigating attorney with the State Board of Elections. A.D.A. O'Mara spoke to Mr. Waite and learned that the Board of Elections was pursuing an investigation, and had collected evidence, of voter-residence fraud involving O'Hara and sought the assistance of the District Attorney's Office in pursuing the investigation of O'Hara's possible violation of the election law. Mr. Waite subsequently forwarded documents relating to the investigation.

- The investigation was commenced.

    Finally, in response to your inquiry concerning First Assistant District Attorney Dino Amoroso, I have verified that he joined the District Attorney's staff on February 15, 1990. On or about June 20, 2005, Richard Brown, the Queens District Attorney, announced that his office had concluded that A.D.A. Amoroso had lawfully registered to vote from a residence in Queens County.

                          Sincerely,

                          Anne Gutmann
                          Assistant District Attorney

Cc by FAX and mail:
Barry M. Fallick
Rochman Platzer Fallick Sternheim Luca & Pearl, LLP
Attorney for John O'Hara
666 Third Avenue –17th Floor
New York, New York 10017

## SIDER, ZACHARY

| | |
|---|---|
| **From:** | LANIGAN, PATRICK <LANIGANP@BrooklynDA.org> |
| **Sent:** | Wednesday, May 18, 2016 3:41 PM |
| **To:** | HALE, MARK |
| **Subject:** | appoinments |

#5 Juan Perez, living in Florida, will speak by telephone, ████████

#6 James McCall willing to come in and speak with us, confirm date tomorrow