UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN O'HARA,<br><br>                Plaintiff,<br><br>vs.<br><br>THE CITY OF NEW YORK, PATRICIA L. HYNES, as Administrator of the Estate of Charles J. Hynes, ADA JOHN P. O'MARA, ADA ANGELO M. MORELLI, ADA DINO AMOROSO, DET. INVESTIGATOR ALLEN PRESSER, ASSEMBLYMAN JAMES F. BRENNAN, JOHN W. CARROLL, ESQ., JOHN KEEFE and JEFFREY WAITE,<br><br>                Defendants. | Docket No. 17-CV-4766 (ILG)(RML) |

---

### KINGS COUNTY DISTRICT ATTORNEY'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

---

On the brief:
Zachary Sider, Esq.
Assistant District Attorney


**Kings County District Attorney's Office**
Civil Litigation Bureau
350 Jay Street, 20th Floor
Brooklyn, NY 11201
Tel: (718) 250-2000
Email: Siderz@brooklynda.org

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................................... iii
**PRELIMINARY STATEMENT** ........................................................................................................... 1
**FACTUAL BACKGROUND** ................................................................................................................ 1
**ARGUMENT** ............................................................................................................................................ 5
    **I.    THE SIX SPECIFIED RECORDS THE PLAINTIFF SEEKS HAVE ALREADY BEEN PRODUCED TO THE PLAINTIFF**_____.............. 5
    **II.   PLAINTIFFS FAILED TO SHOW A COMPELLING AND PARTICLURIZED NEED FOR THE GRAND JURY MATERIALS BECAUSE PLAINTIFFS REASONING ARE BASED ON SPECULATION AND CONCLUSORY ALLEGATIONS** ........................................................ 5
    **III.  THE WORK PRODUCT DOCTRINE PROTECTS BOTH THE REDACTIONS MADE TO THE CONVICTION REVIEW MEMORANDUM AND THE KCDA DETECTIVE INVESTIGATOR REPORTS.** .............................................................................................................. 8
        *A.    The redactions to the conviction review memo were proper and protect core attorney work product.* ........................................................................................................................................ 9
        *B.    The work product doctrine also protects KCDA detective investigator reports.* ........................ 10
    **IV.  THE DETECTIVE INVESTIGATOR REPORTS SHOULD ALSO BE PROTECTED BECAUSE THEY FALL UNDER THE LAW ENFORCEMENT PRIVILEGE** ........................... 12
**CONCLUSION** ..................................................................................................................................... 14

**TABLE OF AUTHORITIES**

Page(s)

Cases

A. Michael's Piano, Inc. v. F.T.C.,
  18 F.3d 138 (2d Cir. 1994) .................................................................................................... 11
Abdell v. City of New York,
  2006 WL 2664313 (S.D.N.Y. 2006) ...................................................................................... 8
Aboeid v. Saudi Arabian Airlines, Inc.,
  2012 WL 3637430 (E.D.N.Y. Aug. 22, 2012) ..................................................................... 10
Allied Irish Banks v. Bank of Am., N.A.,
  240 F.R.D. 96 (S.D.N.Y. 2007) ............................................................................................. 8
Baker v. U.S. Steel Corp.,
  492 F.2d 1074 (2d Cir. 1974) ................................................................................................ 7
Blasini v. City of New York,
  2012 WL 983547 (S.D.N.Y. Mar. 22, 2012) ......................................................................... 6
Bonelli v. City of New York,
  2012 WL 13041997 (E.D.N.Y. May 4, 2012) ....................................................................... 6
Cherry v. Rodenburg,
  No.04-CV-1902 (JMA),2008 WL 4610302 (E.D.N.Y. Oct. 15, 2008)................................... 7
Costabile v. Westchester, New York,
  254 F.R.D. 160 (S.D.N.Y. 2008) ..................................................................................... 10,11
Domni v. Cnty. of Nassau,
  2020 WL 7625417 (E.D.N.Y. Dec. 21, 2020) ....................................................................... 6
Hickman v. Taylor,
  329 U.S.495 (1947) ................................................................................................................ 8
In re Dep't of Inv. of City of New York,
  856 F.2d 481 (2d Cir. 1988) ................................................................................................ 12
In re Grand Jury Proceedings,
  219 F.3d 175 (2d Cir. 2000) ............................................................................................... 8,9
In re Grand Jury Subpoena,
  220 F.R.D. 130 (D. Mass. 2004) .......................................................................................... 11
In re The City of New York,
  607 F.3d 923 (2d Cir. 2010) ........................................................................................... 12, 13
James v. Donovan,
  130 A.D.3d 1032 (2d Dep't 2015)........................................................................................... 5
Klosin v. E.I. du Pont Nemoours and Company,
  561 F.Supp.3d 343 (W.D.N.Y. 2021).................................................................................... 11
Koumoulis v. Indep. Fin. Mktg. Grp., Inc.,
  295 F.R.D. 28 (E.D.N.Y. 2013).............................................................................................. 9
Lora v. Bd. of Ed. of City of New York,
  74 F.R.D. 565 (E.D.N.Y. 1977).............................................................................................. 6
NXIVM Corp. v. O'Hara,
  241 F.R.D. 109 (N.D.N.Y. 2007) ........................................................................................... 8

Palazzetti Imp./Exp., Inc. v. Morson,
  2000 WL 1015921 (S.D.N.Y. July 21, 2000) .................................................................. 8

Rehberg v. Paulk,
  132 S. Ct. 1497 (2012) ................................................................................................... 5

Ross v. City of New York,
  2017 WL 455410 (E.D.N.Y. Feb. 2, 2017) .................................................................... 6

Ruggiero v. Fahey,
  103 A.D.2d 65, 478 N.Y.S.2d 337 (1984) ..................................................................... 7

Strauss v. Credit Lyonnais, S.A.,
  242 F.R.D. 199 (E.D.N.Y. 2007) ................................................................................... 9

Strougo v. BEA Assocs.,
  199 F.R.D. 515 (S.D.N.Y. 2001) ................................................................................... 8

United States v. Blondet,
  2019 WL 5690711 (S.D.N.Y. Nov. 4, 2019) ................................................................. 6

United States v. Ghavami,
  882 F.Supp.2d 532 (S.D.N.Y. 2012) ............................................................................. 9

**Statutes**

New York Criminal Procedure Law § 190.25(4) .................................................................. 6

**Other Authorities**

New York Penal Law § 215.70 ............................................................................................. 5

iv

Palazzetti Imp./Exp., Inc. v. Morson,
  2000 WL 1015921 (S.D.N.Y. July 21, 2000) .................................................................. 8

Rehberg v. Paulk,
  132 S. Ct. 1497 (2012) ................................................................................................... 5

Ross v. City of New York,
  2017 WL 455410 (E.D.N.Y. Feb. 2, 2017) .................................................................... 6

Ruggiero v. Fahey,
  103 A.D.2d 65, 478 N.Y.S.2d 337 (1984) ..................................................................... 7

Strauss v. Credit Lyonnais, S.A.,
  242 F.R.D. 199 (E.D.N.Y. 2007) ................................................................................... 9

Strougo v. BEA Assocs.,
  199 F.R.D. 515 (S.D.N.Y. 2001) ................................................................................... 8

United States v. Blondet,
  2019 WL 5690711 (S.D.N.Y. Nov. 4, 2019) ................................................................. 6

United States v. Ghavami,
  882 F.Supp.2d 532 (S.D.N.Y. 2012) ............................................................................. 9

**Statutes**

New York Criminal Procedure Law § 190.25(4) .................................................................. 6

**Other Authorities**

New York Penal Law § 215.70 ............................................................................................. 5

## PRELIMINARY STATEMENT

Before the Court is a motion to compel "compliance" with a subpoena served in 2019 upon the Kings County District Attorney's Office ("KCDA"), for which the Plaintiff received 1,211 pages of records. In those 1,211 pages the KCDA asserted a number of Privileges including but not limited to the work product and law enforcement privileges. Unfortunately for Plaintiff, core attorney work product receives the strongest protection under the law and is released in only the most exceptional circumstances.

The work product doctrine also protects KCDA detective investigator reports. With regard to these reports, Plaintiff's motion fails because they have shown neither a substantial need nor that they cannot obtain a substantial equivalent without undue hardship. Plaintiff is attempting to free ride off the work and diligence of the KCDA, and preventing this result, through a party's attempts at unfettered discovery, is one of the reasons the work product doctrine exists.

For these reasons, explained more fully below, the Plaintiff's motion should be denied in its entirety.

## FACTUAL BACKGROUND

The universe of records in this case is exceptionally expansive. (Sider Aff. ¶ 2.) Indeed, the prosecution of Plaintiff involved three trials, substantial post-conviction litigation, a KCDA Conviction Review Unit investigation, and, according to Plaintiff, a Board of Election investigation. (Sider Aff. ¶ 3.) The production of "any and all" records in the non-party KCDA's possession is unnecessary and abusive, particularly where Plaintiff concedes that he is in possession of ten (10) boxes of documents. (Sider Aff. ¶ 4.) Undoubtedly, many of the records in the KCDA's possession are duplicative of those in Plaintiff's possession. (Sider Aff. ¶ 5.) For

these reasons, any subpoena directed at the KCDA should be "targeted" to the extent necessary to avoid subpoena abuse. (Sider Aff. ¶ 6.)

The Plaintiff appeared to agree with this position to the extent that its first subpoena, served in June of 2019, limited its request to the "Conviction Review Unit's file . . . " (pertaining to the investigation of Plaintiff's conviction). (Sider Aff. ¶ 7.) This was obviously directed at records not in the Plaintiff's possession, and the KCDA produced those records accordingly. (Sider Aff. ¶ 8.)

Most importantly, included in the KCDA's production was the Conviction Review Memo. (Sider Aff. ¶ 9.) Redacted from the memo were references to grand jury proceedings and sealed cases, as well as core attorney work product relating to attorney mental impressions and interpretations of legal precedent in the election law space. (Sider Aff. ¶ 10.) Finally, the KCDA also redacted CRU attorney conclusions and recommendations. (Sider Aff. ¶ 11.)

It is noted that the "facts" in the CRU memo were disclosed. (Sider Aff. ¶ 12.) Additionally, case citations in the memo were left unredacted. (Sider Aff. ¶ 13.) So while not giving the Plaintiff their interpretation of the legal precedent relied upon, the Plaintiff knows both the facts and exactly what legal precedent was relied upon. (Sider Aff. ¶ 14.) What more could a litigant obtain short of expecting a non-party to waive their privilege? Such an expectation is unreasonable and absurd.

If there was a problem with the initial 2019 production, or the supplemental March 2021 productions, the Plaintiff certainly sat on his hands for an extended period before approaching the KCDA. (Sider Aff. ¶ 15.) Indeed, the KCDA did not hear anything from the Plaintiff about any of their productions for the next fourteen (14) months. (Sider Aff. ¶ 16.)

Instead, on or about February 11, 2022, Plaintiff forwarded a second, overbroad, subpoena to the KCDA seeking "any and all" records in its possession related to People v. O'Hara. (Sider Aff. ¶ 17.) The KCDA filed timely objections to this second subpoena, citing numerous procedural defects. (Sider Aff. ¶ 18.) Moreover, the KCDA noticed that this latest subpoena demanded "records that are already in the possession of the Plaintiff and, therefore, would be cumulative and add unnecessary expense to compliance." (Sider Aff. ¶ 19.)

In response to the KCDA's objections, on May 9, 2022, Plaintiff's reached out to the undersigned stating as follows:

> Hey George, I'm following up on your objections to the subpoena which Dennis Kelly had served. While I do agree that some of your objections may have some merit, others are unfounded. We can go ahead and re-serve a subpoena, but that would just be a waste of time. Any chance we can just cut to the chase and agree to the production of documents?

(Sider Aff. Ex. H.)

The KCDA replied to Plaintiff's outreach as follows:

> Hi Mirel, we are always willing to talk. In fact, I think your communication with our office led to our initial production. I note that we did contact Mr. Kelly immediately to discuss the subpoena – but he was unwilling to negotiate anything. Hence, the objections. I am trying to file a few motions today, and I have a full day Wednesday, but we can talk Thursday or Friday. Please let me know your availability.

(Id.)

On May 12, 2022, the Plaintiff and KCDA were able to convene for a teleconference. (Sider Aff. ¶ 22.) During the call, Plaintiff noted that the KCDA did not produce a privilege log for the first 718-page production (in July of 2019).[1] (Sider Aff. ¶ 23.) In turn, the KCDA noted

---

[1] A privilege log was produced with the second and third productions at the time of production.

3

that Plaintiff, by his own admission, had at least ten (10) boxes of records in his possession so a more targeted subpoena than the second one received was appropriate. (Sider Aff. ¶ 24.)

After the meeting, it was the KCDA's understanding that the parties agreed: 1) that the KCDA would serve a privilege log identifying records withheld/redacted from the first production of records; and 2) the Plaintiff would withdraw the second subpoena, and serve a new, targeted, subpoena on the KCDA. (Sider Aff. ¶ 25.)

In accordance with the agreement, on June 17, 2022, the KCDA served its privilege log for the first set of records produced, and followed up on the status of the new, targeted, subpoena. (Sider Aff. ¶ 26.) In response, the Plaintiff stated, "I did not forget about the updated subpoena. I've just been swamped and will get it out as soon as possible." (Sider Aff. Ex. J.)

Since that day the KCDA has continued to negotiate with the Plaintiff in good faith, even agreeing to run additional email searches and review materials again at the request of Plaintiff (Sider Aff. ¶ 30.) In Fact, Plaintiff has since filed a motion to unseal grand jury materials in New York State Supreme Court, Criminal Term, which was denied. (Sider Aff. ¶ 33.) The KCDA on multiple occasion asserted that the privileges over the materials presented and noted that it is a felony to disclose grand jury materials without a court order. (Sider Aff. ¶ 34.)

But, for the reasons discussed below, Plaintiff's motion should be denied in its entirety.

# ARGUMENT

## I. THE SIX SPECIFIED RECORDS THE PLAINTIFF SEEKS HAVE ALREADY BEEN PRODUCED TO THE PLAINTIFF

On or about January 11, 2023, the KCDA sent a letter to the Plaintiff outlining three categories of documents and produced seventeen pages responsive to petitioner requests named "Bates 1212- 1228". Further, at no time during our discussion has Plaintiff complained that they have not received the documents. Plaintiff has had multiple attorneys working on this case and the KCDA has sent documents to three attorneys. Moreover, since the letter the KCDA has realized that it has produced trial transcript of the 1994 civil election case against Mr. O'Hara. Thus, the KCDA has produced all of the documents that are outstanding from Plaintiff's request and thus Plaintiff's arguments are moot. Moreover, the KCDA has prior to this motion had a discussion with Plaintiff and has reproduced the "outstanding" documents.

## II. PLAINTIFFS FAILED TO SHOW A COMPELLING AND PARTICLURIZED NEED FOR THE GRAND JURY MATERIALS BECAUSE PLAINTIFFS REASONING ARE BASED ON SPECULATION AND CONCLUSORY ALLEGATIONS

First, it is imperative to note that the KCDA does not simply refuse to turn over Grand Jury Materials to the Plaintiff. The policy in favor of the secrecy of Grand Jury proceedings is so strong that unauthorized disclosure of those proceedings has been made a class E felony in this state under P.L. § 215.70. Indeed, the United States Supreme Court recently reaffirmed the importance of secrecy to the proper functioning of the Grand Jury system. See Rehberg v. Paulk, 132 S. Ct. 1497, 1509 (2012). CPL § 215.70; see also James v. Donovan, 130 A.D.3d 1032, 1036 (2d Dep't 2015) ("So strong are the principles of grand jury secrecy and the policies underlying it that unauthorized disclosure of grand jury evidence is a felony in New York.").

5

Under New York Criminal Procedure Law § 190.25(4), grand jury testimony is secret and may not be disclosed without a court order. In order to obtain such an order, a movant must show a "compelling and particularized need" for access. Although federal courts "are not bound" by that law, "'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to substantive and procedural policy.'" Blasini v. City of New York, 2012 WL 983547, at *1 (S.D.N.Y. Mar. 22, 2012) (quoting Lora v. Bd. of Ed. of City of New York, 74 F.R.D. 565, 576 (E.D.N.Y. 1977). As a result, " 'in evaluating applications to unseal state grand jury minutes, federal courts have required the same demonstrations of particularized need required for the unsealing of federal grand jury minutes. Bonelli v. City of New York, No. 11CV0395KAMJO, 2012 WL 13041997, at *1 (E.D.N.Y. May 4, 2012). "A federal court may ... authorize the disclosure of sealed state grand jury proceedings, even after a state court has declined to do so, upon a showing of particularized need outweighing the need for secrecy." Ross v. City of New York, No. 16-CV-0813, 2017 WL 455410, at *1 (E.D.N.Y. Feb. 2, 2017) This consideration weighs heavily in favor of keeping the requested testimony secret. Domni v. Cnty. of Nassau, No. CV 19-83 (JMA) (AKT), 2020 WL 7625417, at *6 (E.D.N.Y. Dec. 21, 2020), aff'd, No. 19CV00083JMAAKT, 2021 WL 9638656 (E.D.N.Y. June 17, 2021), and objections overruled, No. 19CV00083JMALGD, 2022 WL 16950055 (E.D.N.Y. Nov. 14, 2022).

In the present matter, Plaintiff speculates that the prosecutors improperly presented prejudicial evidence and failed to present exculpatory evidence to the grand jury and that the disclosure of all of the grand jury material will help prove that the defendants conspired against the Plaintiff. Mere "speculation" about misconduct, however, "does not justify unsealing grand jury materials." United States v. Blondet, No. 16-CR-387, 2019 WL 5690711, at *4 (S.D.N.Y.

6

Nov. 4, 2019). Accordingly, although it might be useful for Plaintiff to have access to the grand jury minutes in order to prove his case the grand jury transcripts should not be released to "to permit general discovery in a civil case". Baker v. U.S. Steel Corp., 492 F.2d 1074, 1079 (2d Cir. 1974); Cherry v. Rodenburg, No. 04-CV-1902 (JMA), 2008 WL 4610302, at *4 (E.D.N.Y. Oct. 15, 2008)(Holding that plaintiff has not articulated with any particularity why he seeks the grand jury transcripts of a witness when arguing that disclosure of these transcripts would allow Plaintiff to gather information necessary to show that defendant, through coercion, caused a witness to testify falsely before the grand jury.).

Moreover, "[a] generalized desire for discovery needed to prove one's case ... does not constitute the requisite showing of particularized need. Rodenburg, No. 04-CV-1902 (JMA), 2008 WL 4610302, at *2 (E.D.N.Y. Oct. 15, 2008); Ruggiero v. Fahey, 103 A.D.2d 65, 478 N.Y.S.2d 337 (1984)(Holding that strong presumption of confidentiality of grand jury proceedings was not overcome by conclusory statements that state grand jury testimony was needed to impeach witnesses, refresh their recollections, if necessary, or adequately prepare for trial in the civil action pending in the United States District Court).

Here, Mr. O'Hara not only seeks wholesale disclosure of all the grand jury records, but he does so in the absence of a compelling and particularized need. Plaintiff's claims of compelling and particularized need are based on speculation and conclusory allegations that grand jury material will provide evidence that is needed to prove Mr. O'Hara's civil case. This point is further exemplified by the Decision and Order from Judge Rhonda Tomlinson in Plaintiff's motion to unseal grand jury materials in front of the Supreme Court, Kings County. Judge Thomlinson not only found it unnecessary to balance the public benefit of the disclosure against the need to maintain secrecy. Judge Thomlinson also ruled "that the Court understands that the grand jury

7

minutes may help the petitioner prepare his case and be useful as potential impeachment materials, but those reasons do not constitute a compelling and particularized need". After reviewing Plaintiff's arguments in front of this Court, the Plaintiff is making similar if not identical arguments and thus, this Court should rule in the same manner as the State Court and deny Plaintiff's motion to unseal grand jury materials. Thus, Plaintiff's motion to unseal grand jury materials should be denied.

### III. THE WORK PRODUCT DOCTRINE PROTECTS BOTH THE REDACTIONS MADE TO THE CONVICTION REVIEW MEMORANDUM AND THE KCDA DETECTIVE INVESTIGATOR REPORTS.

Common law work product protects the portions redacted in the conviction review records and records created by KCDA detective investigators during their re-investigation into Plaintiff's conviction. See generally Hickman v. Taylor, 329 U.S.495 (1947). Indeed, "the work product doctrine as articulated in *Hickman v. Taylor, . . .* is broader than Rule 26(b)(3)." Abdell v. City of New York, 2006 WL 2664313, *2-3 (S.D.N.Y. 2006).

In analyzing the applicability of the work-product doctrine, courts distinguish between factual and opinion work product. See, e.g., Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 105 (S.D.N.Y. 2007) ("[T]he work product doctrine protects both factual and opinion work product...."); NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 127 (N.D.N.Y. 2007). Whereas opinion work product includes "mental impressions, conclusions, opinions, or legal theories of an attorney," In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000), non-opinion or factual work product includes "nonprivileged facts." Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001).

It is well-established that "[o]pinion work product receives higher protection so that litigation strategy is not revealed...." Strougo, 199 F.R.D. at 521; see also Palazzetti Imp./Exp.,

8

Inc. v. Morson, 2000 WL 1015921, at *3 (S.D.N.Y. July 21, 2000). Non-opinion work product, therefore, "is not discoverable absent a showing of 'substantial need,'" and opinion work product "is not discoverable absent a 'highly persuasive showing' of need." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 39 (E.D.N.Y. 2013) (quoting In re Grand Jury Proceedings, 219 F.3d at 190-91), aff'd, 29 F.Supp.3d 142 (E.D.N.Y. 2014); see also United States v. Ghavami, 882 F.Supp.2d 532, 540 (S.D.N.Y. 2012) (holding that opinion work product "is entitled to virtually absolute protection"); Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 230 (E.D.N.Y. 2007) ("[F]actual material may be ordered upon a showing that the party seeking discovery has substantial need of the materials and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."). The Plaintiff has failed to make a showing to warrant disclosure of any fact work product, let alone opinion work product.

    A. *The redactions to the conviction review memo were proper and protect core attorney work product.*

The conviction review memorandum was drafted by the head of the Conviction Review Unit for the Kings County District Attorney. It typically represents the culmination of a months-long investigation. To that end, in addition to relevant facts (chosen to support the Unit's findings) it contains the CRU attorney's research, mental impressions and recommendations. Furthermore, it is created by Assistant District Attorneys with the experience and expertise to uncover defects in a prosecution, if any. In short, the CRU memorandum contains classic core attorney work product.

Here, the KCDA has provided the facts contained in the memorandum, and the case citations for the legal precedent relied upon. But, inexplicably, this is not enough for Plaintiff. Plaintiff now wants the KCDA's interpretation of the applicable legal precedent and the conviction

9

review expert's ultimate recommendations and conclusions. This is the ultimate illustration of counsel attempting to free ride on the work of an adversary.

Furthermore, it is noted that the KCDA maintains as robust a Conviction Review Unit as there is in the nation. For its mission to succeed, conviction review attorneys must have a space to share their findings, expertise and critiques in an open dialogue with the District Attorney and his executives. Indeed, much of the information about former defendants and prosecutors written in conviction review memorandums is necessarily unflattering. This information may not be written at all if the specter of public release is a strong possibility.

Finally, in the Plaintiff's withdrawn motion and something that is important to note when reviewing Plaintiff's papers is a purported publication of the redacted conviction review memorandum in an Albany Times Union in June of 2021[2]. But it is likely that Plaintiff was the source of that publication. After all, the KCDA created the memorandum and it has been in existence since before Plaintiff's conviction was vacated in 2017, yet there was no leak to the press. Once the redacted version was turned over to Plaintiff, however, (redactions made only in response to this subpoena) it, mysteriously, appears in the Albany Times Union for the purpose of smearing an Albany County judge. The fact that the memorandum was leaked should give the Court greater pause in releasing critical core attorney work product.

B. *The work product doctrine also protects KCDA detective investigator reports.*

The work product doctrine "protects not only materials which are prepared by attorneys themselves, but also by their agents." Costabile v. Westchester, New York, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (denying access to investigator reports); see also Aboeid v. Saudi Arabian Airlines, Inc., 2012 WL 3637430, at *3 (E.D.N.Y. Aug. 22, 2012). "Agents include those who are

---

[2] https://www.timesunion.com/news/article/Brooklyn-DA-Saratoga-Judge-Wait-offered-16274474.php

10

enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation." Costabile, 254 F.R.D. at 164.

Additionally, the detective investigator reports were prepared in anticipation of litigation. Indeed, with respect to government agencies, most courts that have addressed the issue have held "that once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement." Klosin v. E.I. du Pont Nemoours and Company, 561 F.Supp.3d 343, 357 (W.D.N.Y. 2021) (reversing magistrate judge's decision that investigative incident report was not work product); see also In re Grand Jury Subpoena, 220 F.R.D. 130, 147 (D. Mass. 2004). These holdings are in line with Second Circuit holdings that state, "[t]he courts have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye towards litigation.'" A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 146 (2d Cir. 1994).

Here, the KCDA commenced an investigation into the prosecution and conviction of Plaintiff. Like any Conviction Review Unit investigation, it was brought knowing that there was a chance that its findings would result in litigation to vacate the conviction. Indeed, while the Conviction Review Unit receives hundreds of requests for case re-examination each year, only the most meritorious are given a full investigative review. Moreover, when a conviction is vacated, years of ensuing civil litigation in both New York State and Federal Court is all but guaranteed so there should be no dispute that the KCDA detective investigator reports are created in anticipation of litigation and protected under the work product doctrine.

11

      i.   <u>Plaintiff has shown neither a substantial need or undue hardship</u>

When documents constitute work product prepared in anticipation of litigation, they are protected from disclosure unless the party seeking the records can show both: 1) that they have substantial need for the records; and 2) that they cannot obtain a substantial equivalent without undue hardship. See <u>Klosin</u>, 561 F.Supp.3d at 360. Plaintiff has made neither showing. Instead, Plaintiff sets forth a litany of conclusory and speculative arguments that are little more that shots in the proverbial dark. Plaintiffs certainly have not shown that they cannot locate the witness names provided on their own, with their own private investigators. Moreover, Plaintiff claims that in their papers that Accurint Report are so easily accessible then why do they not run their own search. Once again, Plaintiff's efforts are little more than an attempt to free ride.

**IV.   THE DETECTIVE INVESTIGATOR REPORTS SHOULD ALSO BE PROTECTED BECAUSE THEY FALL UNDER THE LAW ENFORCEMENT PRIVILEGE**

The detective investigator reports are also protected under the law enforcement privilege. The purpose of the law enforcement privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." <u>In re Dep't of Inv. of City of New York</u>, 856 F.2d 481, 483 (2d Cir. 1988). Moreover, an investigation need not be ongoing for the privilege to apply, if disclosure of the information at issue would impair the law enforcement agency's ability to conduct future investigations. See <u>In re The City of New York</u>, 607 F.3d 923, 944 (2d Cir. 2010).

The party asserting the law enforcement privilege bears the burden of demonstrating that the material at issue falls within the privilege. Id. at 948. But once the party asserting the law enforcement privilege shows that it applies, there is a strong presumption against lifting the privilege. Id. at 945.

To rebut the presumption against lifting the privilege, the party seeking disclosure must show (1) that its request is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that there is a "compelling need" for the information relevant to the party's case. Id. at 948. Even if the party seeking disclosure successfully rebuts the presumption against disclosure, the court will still balance the public interest in non-disclosure against the need of the litigant for access to the privileged information. Id. at 945.

In this case, because conviction integrity units are relatively novel, the techniques and procedures associated with their investigations are not well known. Ensuring district attorneys' offices do not tip their hand with respect to protocols associated with conviction review is paramount in ensuring the accuracy and legitimacy of future investigations. After all, conviction reviews typically take place years after a finding of guilt that, usually, has been affirmed by multiple courts on appellate review. Before this Office reverses course and substitutes its judgment for that of a jury and several courts, it must be certain that it is coming to the right conclusion. That can only happen if its investigative techniques are protected.

Detective investigator reports are an essential part of getting to the right conclusion.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to compel should be denied in its entirety.

                                                                                                      s/Zachary Sider
                                                  Zachary Sider, Esq.
                                                  Assistant District Attorney
                                                  **Kings County District Attorney's Office**

Dated: April 9, 2024