UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN O'HARA,

                Plaintiff,

     -against-

The CITY OF NEW YORK, PATRICIA L. HYNES,
as Administrator of the estate of Charles J. Hynes,
ASSISTANT DISTRICT ATTORNEY JOHN P.
O'MARA, ASSISTANT DISTRICT ATTORNEY
DINO AMOROSO, DISTRICT ATTORNEY
INVESTIGATOR ALLEN PRESSER,
ASSEMBLYMAN JAMES F. BRENNAN,
JOHN W. CARROLL, JOHN KEEFE, and
JEFFREY WAITE,

                Defendants.
----------------------------------------------------------------X

MEMORANDUM
AND ORDER
17 CV 4766 (LDH)(RML)

LEVY, United States Magistrate Judge:

        Plaintiff John O'Hara ("plaintiff" or "O'Hara") moves to unseal his Grand Jury materials and to compel the Kings County District Attorney's office ("KCDA") to produce certain documents and unredacted materials. For the reasons stated below, plaintiff's motion to unseal his Grand Jury materials is granted and the motion to compel documents and unredacted materials is granted in part and denied in part.

### BACKGROUND

        Plaintiff commenced this action in August 2017 "to recover damages for the politically motivated baseless prosecution, which was knowingly supported by fabricated evidence and witnesses who were coerced and bribed to provide false testimony in violation of his constitutional and civil rights, which ultimately resulted in him being indicted [on election law charges], tried three times, and convicted." (Complaint, dated Aug. 15, 2017, Dkt. No. 1, ¶ 1.) Plaintiff alleges that in 1996, he "was unlawfully indicted and convicted, and thereafter

disbarred from the practice of law, because he made enemies with individuals who controlled the 'Brooklyn Democratic Machine'" and that in 2017, "twenty years later, his conviction was vacated and the indictment was dismissed, after the [KCDA] finally acknowledged that material evidence which resulted in O'Hara's conviction was false and misleading." (Id. ¶ 22.)

Plaintiff now seeks to unseal materials from his grand jury proceedings ("Grand Jury materials"). (Plaintiff's Memorandum of Law in Support of the Motion to Compel, dated Feb. 26, 2024 ("Pl.'s Mem."), Dkt. No. 145, at 4; Plaintiff's Reply Affirmation in Support of the Motion to Compel, dated Apr. 16, 2024 ("Reply Aff."), Dkt. No. 148, ¶ 2.) Additionally, plaintiff moves to compel the KCDA to produce: (1) an enclosure referenced at the end of a complaint filed by defendant Brennan ("Brennan Complaint") that initiated the investigation of plaintiff; (2) redacted pages from a confidential memorandum from defendant Waite ("Waite Memo") to the Board of Commissioners recommending that the Board "investigate the validity of Mr. O'Hara's voter registration"; and (3) an affirmation by defendant O'Mara ("O'Mara Affirmation"), which is referenced in the KCDA's Conviction Review Unit's Report ("CRU Report").

## DISCUSSION

I. **Grand Jury Materials**

Plaintiff requests that the court "unseal [his] Grand Jury materials." (Reply Aff. ¶ 2.) Under New York Criminal Procedure Law § 190.25(4), grand jury testimony is secret and may not be disclosed without a court order. In order to obtain such an order, a movant must show a "compelling and particularized need" for access. Although federal courts "are not bound" by that law, "'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost

2

to substantive and procedural policy.'" Blasini v. City of New York, No. 11 CV 3002, 2012 WL 983547, at *1 (S.D.N.Y. Mar. 22, 2012) (quoting Lora v. Bd. of Ed. of City of New York, 74 F.R.D. 565, 576 (E.D.N.Y. 1977)). As a result, "in evaluating applications to unseal state grand jury minutes, federal courts have required the same demonstrations of particularized need required for the unsealing of federal grand jury minutes." Bonelli v. City of New York, No. 11 CV 395, 2012 WL 13041997, at *1 (E.D.N.Y. May 4, 2012) (internal quotation marks and citation omitted).

"A federal court may . . . authorize the disclosure of sealed state grand jury proceedings, even after a state court has declined to do so, upon a showing of particularized need outweighing the need for secrecy." Ross v. City of New York, No. 16 CV 813, 2017 WL 455410, at *1 (E.D.N.Y. Feb. 2, 2017). "A party seeking such relief must show that the requested disclosure 'is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed.'" Id. (quoting United States v. Carneglia, No. 15 CV 2198, 2017 WL 421922, at *1 (2d Cir. Jan. 31, 2017)).

A typical showing of particularized need arises when the grand jury transcript is used "to impeach a witness, to refresh his recollection, to test his credibility and the like." Douglas Oil Co. of California v. Petrol Stops NW, 441 U.S. 211, 222 n.12 (1979) (citation omitted). The need "to avoid a possible injustice" in a case of malicious prosecution can be sufficient to allow for unsealing the grand jury minutes where "plaintiffs adduce facts that strongly suggest misconduct at the grand jury sufficient to rebut the presumption of probable cause if ultimately proven true." Vazquez v. City of New York, No. 10 CV 6277, 2013 WL 2449181, at *1 (S.D.N.Y. June 6, 2013) (internal quotation marks and citation omitted); see also

3

Barone v. United States, No. 12 CV 4103, 2015 WL 6736203, at *4 (S.D.N.Y. Oct. 29, 2015) ("To justify access to grand jury materials, the movant must proffer facts 'giving rise to a strong inference of misconduct.'") (quoting In re Matter of Grand Jury Minutes in U.S. v. Tam, No. 96 CV 2810, 1997 WL 21369, at *4 (E.D.N.Y. Jan. 9, 1997)).

"[A]n unsupported allegation that there is reason to believe that misconduct occurred before the grand jury is insufficient to meet this burden." Barone, 2015 WL 6736203, at *4 (internal citations omitted). Rather, the moving party must make at least a "'preliminary evidentiary showing of facts concerning police behavior' to warrant potential unsealing[.]" Id. (internal quotation marks and citation omitted). Mere "speculation" about misconduct "does not justify unsealing grand jury materials." United States v. Blondet, No. 16 CR 387, 2019 WL 5690711, at *4 (S.D.N.Y. Nov. 4, 2019); Ruggiero v. Fahey, 478 N.Y.S.2d 337 (N.Y. 1984) (holding that strong presumption of confidentiality of grand jury proceedings was not overcome by conclusory statements that state grand jury testimony was needed to impeach witnesses, refresh their recollections, if necessary, or adequately prepare for trial in the civil action pending in the district court).

Grand jury testimony may also be unsealed where a plaintiff cannot obtain the relevant information elsewhere. See, e.g., Rhooms v. City of New York, No. 11 CV 5910, 2014 WL 4385856, at *1 (E.D.N.Y. Sept. 4, 2014) (plaintiff demonstrated need where officers testified at deposition that they could not remember the specifics of their grand jury testimony, or if they even testified); Frederick v. New York City, No. 11 CV 469, 2012 WL 4947806, at *9 (S.D.N.Y. Oct. 11, 2012) (plaintiff alleging wrongful prosecution demonstrated need where witnesses could not accurately recall their testimony). However, "requests for wholesale disclosures are generally not allowed in civil cases." Barone, 2015 WL 6736203, at *4 (citing

4

Tam, 1997 WL 21369, at *3-4); see also Baker v. U.S. Steel Corp., 492 F.2d 1074, 1076 (2d Cir. 1974) ("A generalized desire for discovery needed to prove one's case . . . does not constitute the requisite showing of particularized need."); Alvarado v. City of New York, No. 04 CV 2558, 2006 WL 2252511, at *3-4 (E.D.N.Y. Aug. 5, 2006) (denying plaintiff's motion to unseal where "the only argument advanced by the plaintiff concerning his need for the material is a desire to sift through the grand jury minutes in order to obtain information that may help him[.]").

Plaintiff previously filed a motion to unseal his Grand Jury materials on June 6, 2023 in the New York State Supreme Court, Kings County. (Kings County District Attorney's Brief in Opposition to Plaintiff's Motion to Compel, dated Apr. 9, 2024 ("Opp. Mem."), Dkt. No. 147, at 7-8; see also Affirmation of Zachary Sider, Esq., dated Apr. 9, 2024 ("Sider Aff."), Dkt. No. 147-1, ¶ 33.) The motion was denied by Judge Rhonda Tomlinson on October 20, 2023. (See Decision and Order, attached as Ex. L to the Opp. Mem., dated Oct. 20, 2023, Dkt. No. 147-13.) In that motion, plaintiff moved "for an order unsealing grand jury minutes to obtain a copy of testimony given by witnesses who testified about his place of residency. The petitioner seeks the minutes for his federal lawsuit for false arrest and malicious prosecution and other related claims." (Decision and Order, at 1.) Judge Tomlinson found that plaintiff had not made a compelling and particularized showing of his need for the Grand Jury materials, which he alleged were central to his claim of malicious prosecution. (Id.) Judge Tomlinson concluded that, while "the grand jury minutes may help [plaintiff] prepare his case and be useful as potential impeachment material . . . those reasons do not constitute the compelling and particularized need required to overcome the presumption of confidentially that attaches to grand jury testimony." (Id. at 2.) Plaintiff acknowledges the previous denial, but "believes that the correct case law compels the discovery of the Grand Jury material." (Pl.'s Mem. at 8.)

5

In opposition to plaintiff's instant motion, the KCDA argues that plaintiff seeks a wholesale disclosure of all Grand Jury records in the absence of a compelling and particularized need. (Opp. Mem. at 7.) The KCDA contends that plaintiff's claims are "based on speculation and conclusory allegations that grand jury material will provide evidence that is needed to prove [his] civil case." (Id.) The KCDA further asserts that the court should deny plaintiff's motion to unseal the Grand Jury materials for the same reasons that Judge Tomlinson previously denied a similar "if not identical" motion. (Id. at 8.)

Plaintiff argues that disclosure of the Grand Jury materials is warranted because "more than twenty-seven years have passed since plaintiff's trials" and six since dismissal of the charges against him, thus "there is no danger of flight of persons who may be indicted . . . there can be no interference with the grand jury's freedom to deliberate as there will be no further grand jury activity" and "there is no danger of [suborning] of perjury as there will not be any further criminal litigation and no need to protect an innocent accused person other than [plaintiff]." (Pl.'s Mem. at 34-35.) Further, plaintiff argues that he cannot obtain comparable evidence from separate and independent sources because the Grand Jury materials cannot be located and are unavailable from other sources, and the official court file is devoid of the O'Mara Affirmation. (Id. at 35-36.) Additionally, plaintiff indicates that the testimony and statements within the Grand Jury materials should be made available to plaintiff for impeachment purposes. (Id.)

Plaintiff asserts that there is a compelling and particularized need for the Grand Jury materials because (1) "they are central to the allegations of a nearly thirty-year conspiracy," (2) the "presentment to the Grand Jury is the fulfillment of the defendants' conspiracy," and (3) the "materials presented to the Grand Jury are unavailable from other sources[.]" (Id.)

6

Furthermore, plaintiff insists that the O'Mara Affirmation, referenced in the CRU Report, is "vitally important to Plaintiff's case in chief insofar as it further explains Mr. O'Mara's intent with the Plaintiff's prosecution." (Reply Aff. ¶ 2(3).)

Perhaps most importantly, the CRU Report itself "notes the one-of-a-kind nature of the grand jury indictment, concluding: 'it is almost self-evident that O'Hara was singled out for purposes other than flagrant criminal conduct which demanded redress.'" (Pl.'s Mem. at 36 (citing Conviction Review Unit Report, attached as Ex. B to the Pl.'s Mem., Dkt. No. 145-3, at 26).) Plaintiff further asserts that the "charges and information presented to the Grand Jury . . . had no basis in law." (Pl.'s Mem. at 36.) Plaintiff contends that the "fraudulent investigation produced extensive amounts of exculpatory evidence . . . all reflecting a legal address, which would obviate the claims asserted in the indictment." (Id. at 36-37.) Plaintiff further argues that he has a substantial need for the Grand Jury materials "which would expose whether ADA O'Mara relied on the discredited residency issue and/or informed the Grand Jury of the extensive amount of exculpatory evidence in the KCDA's possession[.]" (Id. at 38.) Finally, plaintiff contends that, in addition to his compelling need for the Grand Jury documents, the public interest in this case compels disclosure because of the "strong public interest in exposing and holding extensive public corruption accountable that which silenced, accused and convicted a political opponent." (Id. at 39-40.)

Based on the foregoing, I find that plaintiff has "adduce[d] facts that strongly suggest misconduct at the grand jury sufficient to rebut the presumption of probable cause if ultimately proven true," which are further supported by the information in the CRU Report. See Vazquez, 2013 WL 2449181, at *1. Plaintiff has also established that the materials sought are

7

not available from other sources. Therefore, plaintiff's motion to unseal his Grand Jury materials is granted.[1]

## II. Non-Disclosed and Redacted Materials

Plaintiff seeks three documents: (1) an "enclosure" referenced at the end of the Brennan Complaint; (2) redacted pages from the Waite Memo; and (3) the O'Mara Affirmation.[2] (Reply Aff. ¶ 2.) Additionally, plaintiff requests that the court order the KCDA to produce the unredacted version of the CRU Report. (Id. ¶¶ 12, 13.) The KCDA argues generally that the redacted materials are protected under the work-product doctrine and law enforcement privilege. (See Opp. Mem.) Aside from the O'Mara Affirmation, I will address each request in turn.

First, the Brennan Complaint was provided to plaintiff, but not the enclosure. (Reply Aff. ¶ 2(1); see also Brennan Complaint, attached as Ex. A to the Reply Aff., dated June 28, 1994, Dkt. No. 148-1.) The KCDA has not addressed this specific request. Plaintiff argues that the document is relevant and necessary to plaintiff's action insofar as it supports plaintiff's allegations of his malicious political prosecution. (Reply Aff. ¶ 3.) To the extent that the enclosure contains non-privileged material and is in the possession of the KCDA, I find that it should be produced to plaintiff.

As to the redacted materials, "the work-product doctrine is distinct from and broader than the attorney-client privilege." In re Grand Jury Proc., 219 F.3d 175, 190 (2d Cir. 2000) (citation omitted). The work product doctrine is designed "to preserve a zone of privacy

---

[1] Plaintiff will discuss the contours of the unsealing order with the KCDA and advise whether there is an agreement to tailor the scope of the materials to be unsealed to avoid an improper, wholesale disclosure. (See Minute Entry, dated May 2, 2024.)

[2] Plaintiff asserts that the O'Mara Affirmation is contained within his Grand Jury materials. Because the motion to unseal the Grand Jury materials is granted, I will not address plaintiff's request for this document in this section.

8

in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). The doctrine protects "factual material, including the result of a factual investigation" — commonly referred to as fact work product — as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" — commonly referred to as opinion work product. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

The party asserting work product protection must demonstrate that the material at issue "(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (citation omitted). "The Second Circuit has interpreted the 'in anticipation of litigation' requirement broadly." Nat'l Cong. for Puerto Rican Rts. v. City of New York, 194 F.R.D. 105, 108 (S.D.N.Y. 2000). "In anticipation of litigation" means that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Adlman, 134 F.3d at 1202 (citation omitted).

A party may obtain fact work product by showing that it "has a 'substantial need' for the information . . . and that equivalent information cannot be obtained from other sources without 'undue hardship.'" Id. By contrast, a party may only obtain opinion work product if a "highly persuasive showing [of need] is made." Crosby v. City of New York, 269 F.R.D. 267, 278 (S.D.N.Y. 2010) (internal quotations omitted); accord Obeid v. La Mack, No. 14 CV 6498, 2015 WL 5581577, at *3 (S.D.N.Y. Sept. 16, 2015) (if "the document reflects the so-called

9

mental processes of the attorney, even a showing of 'substantial need' and 'undue hardship' may not suffice to set aside the presumptive immunity of the material from disclosure."); see also Crosby, 269 F.R.D. at 277-78 (While "factual work product is subject to disclosure once the required showings are made, core work product is entitled to more stringent protection," and is "described by some courts as 'absolute' or 'near absolute.'").

"A substantial need exists 'where the information sought is 'essential' to the party's [claim or] defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010) (quoting Nat'l Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)).  The burden of showing "substantial need" is on the party seeking the documents.  See, e.g., Obeid, 2015 WL 5581577, at *3 ("the burden . . . is placed on the discovering party to demonstrate, in the case of so-called factual work product, that the party has a 'substantial need' for the information contained in the document and that equivalent information cannot be obtained from other sources without 'undue hardship'").

The purpose of the law enforcement privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Inv. of City of New York, 856 F.2d 481, 483 (2d Cir. 1988).  Moreover, an investigation need not be ongoing for the privilege to apply if disclosure of the information at issue would impair the law enforcement agency's ability to conduct future investigations.  See In re The City of New York, 607 F.3d 923, 944 (2d Cir. 2010).  The party asserting the law enforcement privilege bears the

10

burden of demonstrating that the material at issue falls within the privilege, but once it is shown to apply, there is a strong presumption against lifting the privilege. Id. at 944-45.

To rebut the presumption against lifting the privilege, the party seeking disclosure must show (1) that its request is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that there is a "compelling need" for the information relevant to the party's case. Id. at 948. Even if the party seeking disclosure successfully rebuts the presumption against disclosure, the court will still balance the public interest in non-disclosure against the need of the litigant for access to the privileged information. Id. at 945.

Regarding the Waite Memo and CRU Report redactions, plaintiff argues that the work product privilege asserted by the KCDA should not apply because plaintiff has a substantial need for the redacted material because there "is nowhere else to receive this relevant information which was relied upon for the previous conviction and therefore is paramount to the Plaintiff's case in chief." (Reply Aff. ¶ 12.) Additionally, plaintiff contends that the law enforcement privilege asserted by the KCDA "should not blanketly apply therein, despite the KCDA's documents stating differently, insofar as the Court must balance the factors favoring and disfavoring disclosure[.]" (Id. ¶ 13.)

The KCDA indicates that the redacted portions of the CRU Report include "references to grand jury proceedings and sealed cases, as well as core attorney work product related to attorney mental impressions and interpretations of legal precedent in the election law space" and "CRU attorney conclusions and recommendations." (Opp. Mem. at 2; Sider Aff. ¶¶ 10, 11.) The KCDA argues that the common law work product privilege protects the portions redacted in the CRU Report and records created by KCDA detective investigators during their

11

re-investigation into plaintiff's conviction. (Opp. Mem. at 8.) Specifically, the KCDA indicates that the CRU Report contains "contains classic core attorney work product" in that it "represents the culmination of a months-long investigation" and "in addition to relevant facts chosen to support the CRU's findings, it contains the CRU attorney's research, mental impressions, and recommendations." (Id. at 9.) The KCDA notes that it has provided the facts contained in the memorandum and the case citations for the legal precedent relied upon to plaintiff. (Id.) The KCDA argues that plaintiff is not entitled also to the KCDA's interpretation of the applicable legal precedent and the conviction review expert's ultimate recommendations and conclusions. (Id. at 9-10.)

        The KCDA similarly maintains that the detective investigator reports were prepared in anticipation of litigation and are therefore protected by the work product doctrine. (Id. at 10-11.) The KCDA notes that "when a conviction is vacated, years of ensuing civil litigation in both New York State and Federal Court is all but guaranteed so there should be no dispute that the KCDA detective investigator reports are created in anticipation of litigation and protected under the work product doctrine." (Id. at 11.) The KCDA further posits that these reports are protected under the law enforcement privilege. (Id. at 12-13 ("In this case, because conviction integrity units are relatively novel, the techniques and procedures associated with their investigations are not well known. Ensuring district attorneys' offices do not tip their hand with respect to protocols associated with conviction review is paramount in ensuring the accuracy and legitimacy of future investigations.").) Finally, the KCDA argues that plaintiff has shown neither a substantial need nor undue hardship to justify producing the requested materials. (Id. at 12.)

After careful review of the parties' submissions, I find that plaintiff has not shown substantial need or undue hardship justifying the production of unredacted versions of the Waite Memo or CRU Report.[3] The redacted portions of these materials fall at the very least under the work product doctrine based on their surrounding contexts. (See, e.g., Conviction Review Unit Report (redacting text under headings such as "State of the Law" and "CRU Investigation and Analysis: Weight and Sufficiency of the Evidence"); see also Waite Memo, attached as Ex. B. to the Reply Aff., Dkt. No. 148-2 (redacting pages underneath the heading "Recommendation")[4].) The KCDA has provided the factual portions of these materials, and plaintiff has not met the higher burden necessary to entitle him to opinion work product. Therefore, plaintiff's motion to compel the unredacted versions of the Waite Memo and CRU Report is denied.

---

[3] However, to the extent that the redacted portions of the CRU Report contain information related to plaintiff's Grand Jury materials, those portions should be produced consistent with the order unsealing plaintiff's Grand Jury materials.

[4] It bears noting that, based on plaintiff's own description of this document, plaintiff already knows what was recommended in the Waite Memo. The only redacted portion of the memo falls under the heading "Recommendations." Plaintiff has not established a basis for disclosing the redacted portions of the Waite Memo.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to unseal his Grand Jury materials is granted and the motion to compel the KCDA to produce documents and certain unredacted materials is granted in part and denied in part.

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      May 7, 2024