

| **MURIEL GOODE-TRUFANT** | The City of New York | **QIANA SMITH-WILLIAMS** |
| --- | --- | --- |
| *Corporation Counsel* | **LAW DEPARTMENT** | (212) 356-3500 |
| | 100 CHURCH STREET | Fax: (212) 356-3509 |
| | NEW YORK, N.Y. 10007 | qwilliam@law.nyc.gov |

December 12, 2025

Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    O'Hara v. City of New York, et al.
                 17-CV-4766 (LDH)(RML)

Your Honor:

      I am an attorney in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, counsel for defendants City of New York, Patricia L. Hynes, as administrator of the estate of Charles J. Hynes ("DA Hynes"), John P. O'Mara, Dino Amoroso, and Allen Presser (collectively "City Defendants") in the above-referenced matter. City Defendants write in opposition to plaintiff's motion to amend his complaint. City Defendants respectfully request that the Court deny plaintiff's eleventh-hour request to expand the scope of his Monell claim.

      **I.**    **Relevant Summary of Plaintiff's Claims**

      According to the operative complaint, "In 1996, John O'Hara was the subject of [a] politically motivated prosecution. O'Hara was unlawfully indicted and convicted, and thereafter disbarred from the practice of law, because he made enemies with individuals who controlled the 'Brooklyn Democratic Machine.'" See Complaint at ¶ 22. The complaint thereafter includes allegations regarding (1) the "Efforts to Impede O'Hara's Political Activities," including alleged unfulfilled campaign promises by former District Attorney Hynes, as well as challenges by DA Hynes and co-defendant Brennan to campaigns undertaken or supported by plaintiff (Id. at ¶¶ 23-53); (2) "O'Hara's Politically-Motivated Prosecution," including allegations that various defendants formed a conspiracy to neutralize plaintiff as a political opponent via the commencement of a baseless criminal prosecution (Id. at ¶¶ 54-156); (3) "O'Hara's Unprecedented Three Criminal Trials," alleging that plaintiff was the first person to be criminally prosecuted for illegal voting since Susan B. Anthony in 1873 (Id. at ¶¶ 157-214); and (4) allegations that plaintiff was selectively prosecuted (Id. at ¶¶ 215-251). Thus, more than two hundred paragraphs – far more than half of the

complaint – is dedicated to unwarranted claims that DA Hynes conspired to sideline plaintiff's political ambitions, ensured that the Kings County District Attorney's Office ("KCDA") commenced a criminal prosecution against plaintiff in furtherance of such conspiracy and had one of his most loyal employees handle the litigation, and that DA Hynes was well aware of the unethical practices undertaken by his office in order to secure a conviction.[1]

Regarding the purported Monell claim, the operative complaint alleges that DA Hynes created a policy and practice of using KCDA to eliminate his political opponents, as well as those of his allies, and that he actively participated in same, resulting in the deprivation of plaintiff's constitutional rights. Id. at ¶¶ 236-251, 325-327. Thus, though City Defendants dispute the viability of the Monell claim, it is arguably tailored to the underlying facts of the complaint. In the proposed amended complaint, however, the purported Monell claim is untethered to the allegations of a selective prosecution based on political affiliation. Instead, plaintiff now attempts to base his Monell claim on any and all alleged shortcomings of KCDA. See, e.g., Proposed Amended Complaint ("Am. Compl.") at ¶ 236 ("The misconduct that was condoned as a result of a failure to investigate or discipline included but was not limited to witness tampering, Brady violation, coaching witnesses, improper summation, and lack of candor to the court."); ¶¶ 239-243 (allegations related to the wholly dissimilar Collins v. City of New York, 11-CV-766, litigation, including allegations of holding witnesses against their will in hotels and claims that former ADA Michael Vecchione threatened a witness; ¶¶ 244-247 (references to two criminal prosecutions wherein witnesses were allegedly intimated and/or grand jury testimony was improperly introduced at trial). However, none of these new allegations are sufficiently similar to the underlying facts such that plaintiff can establish a policy or practice that was the driving force of plaintiff's alleged constitutional violation. Accordingly, the Court should decline to permit plaintiff to amend the complaint to set forth these claims.

## II.     Plaintiff's Motion to Amend Should be Denied

In deciding whether to grant leave to amend, the Court should consider whether there was any "undue delay, bad faith or dilatory motive on the part of the movant . . ., [or] undue prejudice to the opposing party." Foman v. Davis, 371 U.S. 178, 182 (1962). Further, the court may deny leave to amend if such relief is likely to be futile. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). If a claim could not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court does not abuse its discretion by denying leave to amend. Schwasnick v. Fields, No. 08-CV-4759(JS)(ARL), 2010 U.S. Dist. LEXIS 65958, at *28-29 (E.D.N.Y. June 30, 2010) (citing Dougherty v. N. Hempstead Bd. of Zoning, 282 F.3d 83, 88 (2d Cir. 2002). Notably, courts in this Circuit routinely deny motions to amend based solely on futility of the proposed amendments. CWS Invs., Inc. v. Manners, No. 2:23-CV-02188 (NJC) (JMW), 2025 U.S. Dist. LEXIS 43035, at *20-21 (E.D.N.Y. Mar. 8, 2025) (citing 6340 NB LLC v. Cap. One, N.A., No. 20-CV-02500 (OEM) (JMW), 2024 U.S. Dist. LEXIS 43872, at *14 (E.D.N.Y. Mar. 11, 2024) (denying defendant's motion to amend its answer and add counterclaims where "[a]though Defendant appears to have overcome the delay and prejudice prongs, the futility factor points in a far different direction");

---

[1] The proposed amended complaint largely mirrors these same allegations.

McGrath v. Indus. Waste Techs., No. 20 Civ. 2858 (KPF), 2021 U.S. Dist. LEXIS 36480, at *8 (S.D.N.Y. Feb. 26, 2021) ("[L]eave to amend may independently be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim ...."). Here, there was undue delay in seeking the amendment, defendants would be unduly prejudiced by such amendment at this late stage of the litigation, and the amendment would be futile.

### A. Plaintiff Unduly Delayed Seeking to Amend the Complaint

"[A] court has discretion to deny leave to amend where the motion is made 'after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceeding by, for example, introducing new issues for discovery.'" State Farm Ins. Cos. v. Kop-Coat, Inc., 183 F. App'x 36, 37-38 (2d Cir. 2006) (quoting Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000)). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (quotation marks and citation omitted). Courts have denied motions to amend when the request is made several years after the commencement of the action and shortly before trial. See, e.g., Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995) (denying motion to amend made two and a half years after the action was filed and three months before trial); Amusement Indus. v. Stern, 07 Civ. 11586, 2014 U.S. Dist. LEXIS 129275, at *62 (S.D.N.Y. Sept. 11, 2014) (denying motion, finding that the moving parties were aware of the essentials of the claims approximately 18 months before filing the motion to amend).

Plaintiff has not provided a good faith explanation for his motion to amend the complaint eight years after the commencement of the litigation, after the close of fact discovery, and on the eve of the conclusion of depositions. Plaintiff's argument for the inordinate delay appears to be twofold: (1) that defendants were on notice of the proposed amendment as of the time that plaintiff filed his opposition to City Defendants' motion to dismiss in March 2018, or via correspondence from plaintiff in August, September and/or November 2025; and (2) there really has been no undue delay since the 12(b)(6) litigation was not resolved until October 2021, there were two years of litigation over privilege assertions that were only resolved in May 2024, and plaintiff did not serve his first Monell discovery requests until August 1, 2025 – neither explanation is convincing.

Regarding the purported notice in March 2018, plaintiff offers no explanation for why he took no steps to actually amend the complaint during the more than seven years since he purportedly announced his intention to do so. Plaintiff's correspondence within the three-month period preceding the motion to amend, at the tail end of discovery, does not serve as sufficient notice and surely cannot salvage the more than seven years plaintiff delayed in seeking to amend. Plaintiff's contention that the instant motion is not truly delayed fares no better since conveniently missing from the timeline set forth by plaintiff is any explanation as to how the time spent litigating privilege assertions or the start of fact depositions in March 2025 precluded plaintiff from moving to amend the complaint before now – it did not.

Contrary to plaintiff's contention, the extremely belated amendment of the complaint would unduly prejudice City Defendants as it would both require City Defendants to expend significant resources to conduct the new Monell discovery and it would significantly delay the resolution of this

3

litigation. Plaintiff's new Monell theory is that "a widespread policy or practice of failing to discipline all types of [prosecutorial] misconduct can cause officials to engage in misconduct of all types." See Plaintiff's Motion to Amend at 3. Unlike the Monell claim in the operative complaint, which appears to cabin the issue to instances of criminal prosecutions of political opponents, pursuant to the newly proposed claim, virtually any alleged wrongdoing by KCDA would suffice to establish the Monell claim. Put another way, the discovery plaintiff could seek would be boundless. In fact, the discovery demands served by plaintiff in or about August and October 2025 have been extremely far-reaching. By way of example, plaintiff's second set of document requests seeks:

> All directives, policy statements, memos, communications, training materials, and other records containing policies, procedures, practices or customs of the KCDAO pertaining to discipline or supervision of prosecutors accused or found to have committed prosecutorial misconduct including but not limited to suppression of Brady Material, improper, false or misleading arguments, using false evidence at trial or in the grand jury, tailoring testimony, and witness intimidation and or tampering dated, created and/or in effect, between January 1, 1990 and December 31, 2013 (the tenure of KCDA Charles, J. Hynes).[2]

To that end, plaintiff's suggestion that City Defendants would not have to expend significant resources in litigating the reasonableness of the demands and/or locating, reviewing and producing this overly burdensome discovery is disingenuous. Moreover, as plaintiff acknowledges, discovery in this matter is set to close in a little over a month. As such, it is both extremely shortsighted to expect that City Defendants would be able to produce the exorbitant amount of discovery requested in less than two months and patently unfair to expect defendants to do so in the time remaining in the discovery period simply because of plaintiff's belated expansion of the Monell claim. In light of plaintiff's seven-year delay in seeking to amend the

---

[2] Plaintiff's second set of document requests contains 38 requests for documents, the vast majority of which are similarly broad and seek documents for the entirety of the more than twenty year period of DA Hynes's tenure, including, but not limited to requests for "All records of the KCDAO, concerning the investigation, discipline, or decision not to investigate or discipline, prosecutors who were accused of prosecutorial misconduct including but not limited to suppression of Brady material, improper, false or misleading arguments, using false evidence at trial or in the grand jury, tailoring testimony, and witness intimidation and or tampering;" all training materials, manuals, rules, policies, procedures, practices and customs regarding the disclosure of Brady, Giglio and Rosario material, prosecutor's obligation not to present false evidence or tamper with witnesses, investigation of prosecutors alleged to have violated professional or ethical standards, obligation of prosecutors to disclose material witness applications, orders, and proceedings, relocation assistance promised or provided to witnesses or potential witnesses, or other promises or rewards offered to witnesses or potential witnesses, and obligation of FOIL officers to discover and/or disclose these materials when discovered.

complaint, City Defendants have more than demonstrated the unfair prejudice that would ensue if plaintiff were permitted to amend at this very late juncture of the litigation.

### B. The Motion to Amend Should be Denied as Futile

In addition to the undue delay and unfair prejudice to City Defendants, plaintiff's motion should be denied as futile as the proposed Monell claim could not survive a motion to dismiss pursuant to Rule 12(b)(6). There is no *respondeat superior* liability under § 1983. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). To hold a municipality liable pursuant to § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985); Monell, 436 U.S. at 690-91 (liability exists only where "action pursuant to official municipal policy of some nature caused a constitutional tort"). In order to state a claim for municipal liability, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Additionally, where plaintiff proceeds upon a theory of deliberate indifference, he must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Wray v. City of New York, 490 F.3d 189, 196 (2d Cir. 2007) (internal citations omitted).

As an initial matter, plaintiff's Monell claim is not viable because he is not suing City Defendants based on their advocacy functions. See Am. Compl. at ¶¶ 8-10 ("District Attorney Hynes did not perform advocacy functions with respect to the allegations giving rise to liability against him"; "ADA O'Mara acted in an investigative capacity when he performed functions normally performed by the police…Plaintiff is not seeking to hold ADA O'Mara liable for actively presenting the case against O'Hara to the Grand Jury that indicted him, or for actively prosecuting O'Hara's three criminal trials.") Under this theory of liability, any KCDA policies or practices regarding the overall prosecution of criminal cases, or alleged deliberate indifference in training and supervision, are irrelevant and cannot serve as the basis of a Monell claim.

Regardless, throughout the more than eight-year duration of this litigation, plaintiff's claim has remained that DA Hynes orchestrated his prosecution as a means of eliminating him as a political threat. Furthermore, plaintiff has consistently alleged that DA Hynes actively participated in his prosecution and/or was intimately aware of the purported tactics employed by the prosecuting attorneys. Plaintiff has also alleged the rarity of his prosecution, alleging that there has not been such a criminal prosecution since 1873. To that end, plaintiff is not alleging that some rogue prosecutor commenced his criminal prosecution believing that there would be no repercussions for a baseless prosecution or that there was any type of training that could have been employed that would have prevented his prosecution and/or the alleged tactics used therein. As such, plaintiff's Monell claim necessarily fails.

Finally, notably, plaintiff cannot satisfy the causation requirement of a Monell claim. Causation is an essential element in pleading a Monell claim: the alleged policy or custom must be the "moving force" behind the violation of plaintiff's constitutional rights. Oklahoma City v. Tuttle, 471 U.S. at 823, n.8 ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force'

behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that . . . an official policy or custom [was] the cause of the deprivation of constitutional rights. . . . The plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.") (quotations and citations omitted)).

Here, the new Monell theory alleges that the practice of failing to discipline any type of prosecutorial misconduct results in officials engaging in any and all types of misconduct. Plaintiff's theory turns the causation prerequisite of a Monell claim on its head. While the underlying factual allegations setting forth an alleged constitutional violation do not need to exactly mirror the purported policy or practice, they must be closely related such that it is clear that the policy and/or deliberate indifference to training was the cause of plaintiff's constitutional deprivation. The gist of plaintiff's claim is that he was prosecuted due to his status as a political opponent. Thus, alleged Brady violations, tampering with witnesses, imprecise summations, or any other broad category of prosecutorial misconduct referenced were not the driving force behind plaintiff's claimed constitutional violation.

A review of the proposed amended complaint makes clear that plaintiff purported Monell claim is nothing more than a *respondeat superior* claim masquerading as a Monell claim.

Accordingly, City Defendants respectfully request that the Court deny plaintiff's motion to amend the complaint. Thank you for your consideration herein.

Respectfully submitted,

*Qiana Smith-Williams*

Qiana Smith-Williams

cc: All Counsel of Record (Via ECF)