**MURIEL GOODE-TRUFANT**
*Corporation Counsel*



The City of New York
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

ELISSA B. JACOBS
(212) 356-3540
Fax: (212) 356-3509
ejacobs@law.nyc.gov

January 13, 2026

Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    <u>O'Hara v. City of New York, et al.</u>
                  17-CV-4766 (LDH)(RML)

Your Honor:

      I am an attorney in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, counsel for defendants City of New York, Patricia L. Hynes, as administrator of the estate of Charles J. Hynes, John P. O'Mara, Dino Amoroso, and Allen Presser ("City Defendants") in the above-referenced matter. City Defendants write in response to plaintiff's December 23, 2025 letter regarding the burden associated with plaintiff's proposed amendment to his *Monell* claim.

      Plaintiff initially filed his case on August 15, 2017, claiming, *inter alia*, that he was maliciously prosecuted by Charles Hynes, the KCDA District Attorney. *See* ECF No. 1, generally. After several rounds of motion practice, an initial discovery order was put in place in January 2022. *See* ECF No. 126. The parties conducted primarily paper discovery, including litigation over subpoenas and requests to KCDA. *See, e.g.*, ECF Nos. 145-148. Following the completion of the majority of paper fact discovery, the parties entered into a schedule for depositions. On June 23, 2025, the Court held a conference, and ruled that fact discovery was closed, with the exception of "reasonable follow up to requests made during depositions," and that *Monell* discovery was limited to paper discovery until individual liability was established. *See* June 23, 2025 Docket Entry. Plaintiff served document demands labelled *Monell* discovery on August 1, 2025, October 14, 2025 and October 15, 2025. *See* ECF Nos 192-1, 192-2 and 192-3. City Defendants objected to these requests, arguing, in part, that the information sought was not relevant to the *Monell* claim as pled in the Complaint. *See* Minute Entry, dated November 13, 2025. Plaintiff now seeks to amend his Complaint and, at the Court's direction, the current exchange of letters pertains to the parties' dispute regarding the potential burden associated with any such amendment. *See* ECF Nos. 183, 192.

"[A] district court may decline to grant such leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024). In determining whether an amendment will cause undue prejudice, courts will generally consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 284 (2d Cir. 2000) (cleaned up), with more emphasis on the first two considerations, *see, e.g., E.E.O.C. v. Morgan Stanley & Co., Inc.,* 211 F.R.D. 225, 227 (S.D.N.Y. 2002); *Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir. 1986).

Here, plaintiff served three sets of discovery requests labelled *Monell* discovery, requesting a broad swath of discovery disconnected from his claim as pled. Plaintiff's operative Complaint alleges that the District Attorney himself instructed the office to prosecute his political allies, and that the KCDA "maintained an unlawful policy and custom of conducting illegal and unethical acts . . . against political opponents of District Attorney Hynes and his political allies." *See* Complaint, ECF No. 1, ¶¶ 324-325. In fact, plaintiff's entire complaint centers on the claim that he was personally targeted by DA Hynes because of his political activity. Despite this, eight years into this litigation, plaintiff is now seeking to amend his complaint to import allegations of misconduct completely disconnected from any political motivation. Permitting plaintiff to proceed on his new, boundless, allegations of prosecutorial misconduct would delay the resolution of the matter and require City Defendants to unnecessarily expend resources to defend against wholly unrelated allegations.

Perhaps realizing the overwhelming discovery burden attendant to his new *Monell* theories, plaintiff says that he is now limiting *Monell* discovery to four discrete categories, the first three of which he believes can be obtained from the *Jabar Collins* litigation team.[1] Plaintiff intends to seek documents related to KCDA's "hoteling" program; a list of 229 ADAs who were disciplined during Hyne's tenure, personnel files of 50 ADAs allegedly involved in prosecutorial

---

[1] Plaintiff now claims that the October 14th and 15th document requests, which were labelled *Monell* discovery, are not truly *Monell* discovery but, instead, are simply follow-up demands after the depositions of John O'Mara, Yvette Aguire, and Juan Perez and an affidavit from Vicki Guvieyian. *See* ECF No. 192 ("All the October demands are a sidenote to the ongoing Monell dispute."). As an initial matter, defendants have concerns regarding the genuineness of plaintiff's representation. Had plaintiff truly believed that the requested documents were relevant fact discovery, the requests should have been made years ago as plaintiff was well aware of the facts concerning John O'Mara, Yvette Aguire, Juan Perez and Vicki Guvieyian since same were reflected in the operative Complaint that was filed in 2017. There were surely no new facts discovered in any of those witnesses' depositions and/or the Guvieyian affidavit that would justify the requests. In any event, plaintiff's argument, raised for the first time in his December 23rd letter, is not yet properly before the Court and appears to be an attempt to sidestep the Court's limitation of paper discovery to only reasonable follow-ups to depositions.

misconduct,[2] and "Employee Handbooks." Even this purported limited request would cause undue prejudice.

While the burden of receiving documents from plaintiff is minimal, permitting plaintiff to amend his complaint and importing swaths of documents unrelated to the allegations in this case would cause both delay and prejudice. KCDA has not yet been able to determine whether the Employee Handbooks from the relevant time period (1990-2013) are readily available in a format that can be produced, and so it is unclear what expense might be associated with locating them. However, the vast majority of the information contained therein is irrelevant to the allegations of a politically motivated prosecution. As to the "hoteling" program, there are **no** allegations that any witness in this case was a part of the hoteling program, unlike the *Collins* litigation. Requiring the City Defendants to review, respond to, and require witnesses to answer questions about a program so completely disconnected from the allegations in this case would increase expenses and cause significant delay. Plaintiff's second and third categories of documents are similarly irrelevant to the claims in the operative Complaint. Neither the list of individuals who were terminated nor the personnel files are related to the prosecution of a political opponent. If plaintiff is permitted to amend his complaint in order to plead a broader *Monell* claim, City Defendants would suffer undue prejudice in having to respond to and differentiate each of these cases from the allegations in this case. Beyond this, it appears that plaintiff's attorneys in the *Collins* litigation, from whom plaintiff represents he should be able to obtain documents, have not been able to locate the personnel files plaintiff claims would be relevant in this case, nor have City Defendants been able to find copies of the production.[3] Thus, plaintiff's assertion that the burden would be minimal is belied by fact that the majority of the documents he is seeking have not actually been located to date. Permitting the discovery and the amendment would cause undue delay and undue prejudice, and should not be permitted.

---

[2] The list plaintiff provided contains 50 *cases,* and more than 50 names of ADAs.

[3] The Jabar Collins matter settled in 2014, over ten years ago. This office does not appear to have an electronic version of the personnel files as produced in *Collins* and would have to confirm the existence of the hard copy file, request same from our storage facility to the extent that it still exists, and search same for a copy of the production.

Accordingly, for these reasons and the reasons stated in City Defendants' letter, dated December 12, 2026, plaintiff's extremely belated motion to amend his Complaint should be denied.

Thank you for your consideration herein.

Respectfully submitted,

*Elissa B. Jacobs*
Elissa B. Jacobs

cc: All Counsel of Record (Via ECF)